Kay Burningham (Utah Bar # 04201)
kay@kayburningham.com
*Attorney for Laura A. Gaddy and for the Class*
Kay Burningham, Attorney at Law
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111

Phone: 1.888.234.3706

## IN THE UNITED STATES DISTRICT

## COURT DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**[The] CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>*Defendant.* | MOTION FOR INITIAL SCHEDULING CONFERENCE and MEMORANDUM IN SUPPORT THEREOF<br><br>(DEMAND FOR JURY TRIAL)<br><br>Case: **2:19-cv-00554 RJS**<br><br>The Hon. Judge: Robert J. Shelby<br><br>Magistrate Judge: Evelyn J. Furse |

### MOTION TO SET INITIAL SCHEDULING CONFERENCE

Plaintiff, Laura A. Gaddy, hereby moves the Court to set an Initial Scheduling Conference. The Complaint was filed August 5, 2019. Defendant, the Corporation of the President of the Church of Jesus Christ of Latter-day Saints

1

("COP") was served August 6, 2019. COP appeared August 27, 2019, by moving to dismiss under Fed. R. Civ. P. 12(b)1 or, alternatively, 12(b)(6). Plaintiff was granted an additional two weeks to respond. That response is due October 8, 2019.

## MEMORANDUM IN SUPPORT OF MOTION TO SET INITIAL SCHEDULING CONFERENCE.

### 1. PERTINENT FACTUAL BACKGROUND.

The parties, through their counsel, have met twice (telephonically): once on August 22, 2019, and again on September 12, 2019, to discuss, among other things, attorney planning meeting issues. At that time, Defense Counsel made clear that even if its 12 (b) motion is denied, it will request interlocutory appeal. Plaintiff initially agreed with Defense Counsel that discovery should be stayed pending the Court's ruling on COP's 12(b) motion.[1]

Subsequently, Plaintiff considered the upcoming November 4, 2019, 90-day deadline for filing her Motion for Class Certification under Fed. R. Civ. Pro. 23-1 and decided that Class Discovery should be exempt from the discovery stay agreed upon by the parties. To obtain sufficient information upon which to move to certify the Class in time to comply with the DUCivR 23-1(d), 90-day deadline, Plaintiff

---

[1] Though realizing that it is the Court's prerogative, Plaintiff does not waive her right to object to a request for interlocutory appeal in the event that Defendant's Motion is denied.

must serve Class Discovery on Defendant soon. And although Defendant eventually agreed to extend the deadline for Plaintiff's motion to so certify, it is up to the Court to grant any such extension of time. Furthermore, absent proceeding with the propounding of Class Discovery, Plaintiff would be placed in the untenable position of asking the Court for an extension of the time within which to move for certification, when Plaintiff had propounded no Class Discovery at all.

Additionally, though Defendant agreed to stipulate to an extension of time within which Plaintiff could bring the class certification motion, it would not agree to Class Discovery. Nor would it agree to complete "Defendant recommends the following" section in the proposed Attorney Planning Meeting Report or agree to a Joint Motion for Initial Scheduling Conference. Both pleadings had been prepared by the undersigned and forwarded to Defense Counsel. (See Exhibits #1 & #2, which are copies of both documents referenced above, and Exhibit #3, copy of Attorney Jordan's responsive email).

Plaintiff now intends to serve Defendant with Class Discovery in the next few days and to issue at least one subpoena to ensure readiness for the November 4, 2019 deadline. The Class Discovery intended to be served at this point will not invade Defendant COP's religious beliefs or doctrines; the proposed discovery will in general relate to identifying those individuals who have resigned from the

Church since August 4, 2015 and seek production of documents confirming those resignations.[2] Class Discovery would also relate to information contained within the LDS Personal Faith Crisis Report (see *infra*.).

2. <u>THE RELATIVELY RECENT MASS RESIGNATIONS FROM THE CHURCH ARE PRIMARILY DUE TO THE DISCOVERY OF FRAUD.</u>

Plaintiff argues that Defendant's correlated misrepresentations of historical fact, as more fully described in the Complaint, are a substantial factor, if not the primary factor, which has caused tens of thousands of Mormons to resign from the Church over the last several years. Indeed, upon information and belief, as of mid-September, 2019, QuitMormon alone has processed 43,325 resignations since Attorney Mark Naugle began offering his services to the public in or about 2012.[3]

The causal link between those factual misrepresentations and resignations from the Mormon Church was made clear in the *LDS Personal Faith Crisis* report, which is referenced in the Complaint, but which was not filed as an exhibit to the Complaint due to the report's subtitle labeled: "Proprietary and Confidential."[4]

---

[2] Previously, COP issued a confirmation of resignation to the resignee; however, upon information and belief, approximately 2-3 years ago Defendant stopped providing that confirmation directly to the former member. It is also believed that Defendant has now outsourced its resignation procedure to the Kirton and McConkie Law Firm.

[3] Given historical issues with COP's processing resignation requests, QuitMormon, a non-profit organization, was created by former Mormon Mark Naugle, to assist those members who had decided to resign from the Church with the process of resignation. www.QuitMormon.org

[4] *LDS Personal Faith Crisis* (Prepared for President Dieter F. Uchtdorf, Proprietary and

Misrepresentations of the historical facts upon which the Church was created, particularly as to the historical claims made by COP regarding the method of creation of the *Book of Abraham*, method of creation of the *Book of Mormon,* and Church history in general, were acknowledged in the report as the primary reasons why the over 3,000 members surveyed had experienced a personal faith crisis. The report was compiled and written by experts in psychology, law, brand and business strategy, among other disciplines. It defined the authors' use of the "faith crisis" phrase in compiling and writing their report as follows:

> "Faith Crisis is defined as a state of intense emotional and spiritual distress *resulting from the discovery of Church history facts that do not align with the traditional LDS narrative*. This distress results in members losing faith in some or all foundational truth claims of the LDS Church and in the Church itself." [5]

[Emphasis Added].

3. <u>DEFENSE COUNSEL HAS OBJECTED TO THE VERY CONCEPT OF CLASS DISCOVERY IN THIS CASE.</u>

Plaintiff also requests that discovery be accomplished in the following phases: 1) Class Discovery; 2 Merits Discovery; and, 3) Damages Discovery.

---

Confidential), June 2013. Upon information and belief, the report was leaked with permission of three of its creators: Travis Stratford, John Dehlin and Greg Prince in October of 2018.
[5] *LDS Personal Faith Crisis* report, June 2013, p. 10.

However, Defendant has objected to the very concept of Class Discovery. For example: "Kay, we do not believe that class discovery will ultimately be necessary in this case. We are therefore not willing to stipulate that you will, in fact, have class discovery..."[6] And, "We do not believe that this case is properly certifiable as a class action. We will oppose certification and any pre-certification discovery." [7]

Therefore, this Motion for Initial Scheduling Conference has been filed. And though Plaintiff has no objection to a stay of discovery as to the Merits or Damages pending the Court's ruling on Defendant's Motion to Dismiss, it is respectfully requested that the Court order an Initial Scheduling Conference so that the issues surrounding the conducting of Discovery in Phases, and in particular, Class Discovery, may be addressed with the Court's assistance.

4. CLASS DISCOVERY IS NECESSARY IN ORDER TO ENABLE THE COURT TO CONDUCT THE RIGOROUS ANALYSIS REQUIRED TO DECIDE THE MOTION FOR CLASS CERTIFICATION.

The Ninth Circuit Court of Appeals recently held that the Central District of California's local rule requiring a bright line 90-day motion for class action

---

[6] Email from Wes Harward to Kay Burningham on Friday, September 13, 2019 4:19 PM.
[7] Email from Wes Harvard to Kay Burningham Saturday, September 14, 2019 5:34 PM.

deadline was incompatible with the Federal Rules. The Federal Rule calls for a determination on class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). But whether a case is appropriate for class action can only be decided after the trial court undertakes a "rigorous analysis" of the certification prerequisites. (Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350–51, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)). The Ninth Circuit found that such an analysis could require discovery, and that to deny it in such cases would be an abuse of discretion. ABS Entm't, Inc. v. CBS Corp., 908 F.3d 405 (9th Cir., 2018).

The Tenth Circuit has held that plaintiff need not show that all the elements of a claim seeking class certification entail common questions of law and fact, but only that the predominance inquiry "asks whether the common, aggregation-enabling [ ] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues...," (Citations omitted.) And to do that, the court must first "...characterize the issues in the case as common or not, and then weigh which issues predominate." *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, (10th Cir. 2019).[8]  This is where class discovery will

---

[8] This link is a Casemaker public version. The Utah State Bar's legal database available to its members changed from Casemaker to Fastcase during the period of time that Plaintiff's counsel researched the Naylor Farms case and the additional cases cited herein.

assist in the case at bar. Plaintiff believes she can demonstrate, as indicated in the *LDS Personal Faith Crisis* report, that the primary and indeed common reason for these resignations is due to the resignees' recent discovery of the fraudulent misrepresentations made by Defendant concerning key foundational facts upon which the Church was founded.

"Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." (Citation omitted.) *Id.,* at p. 789.

WHEREFORE, Plaintiff respectfully requests that the Court order an Initial Scheduling Conference.

Dated: September 17, 2019.        By Kay Burningham, Attorney at Law

<u>/s/ Kay Burningham</u>

Kay Burningham,
Attorney for Laura A. Gaddy & the Class