David J. Jordan (1751)
david.jordan@stoel.com
Wesley F. Harward (15623)
wesley.harward@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone:  801.328.3131

*Attorneys for Defendant Corporation of the*
   *President of The Church of Jesus Christ of*
   *Latter-day Saints*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>              Defendant. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) OR, ALTERNATIVELY, 12(B)(6)**<br><br>Case No. 2:19-cv-00554-RJS-DBP<br><br>The Honorable Robert J. Shelby<br>The Honorable Dustin B. Pead<br><br>**ORAL ARGUMENT REQUESTED** |

The Corporation of the President of The Church of Jesus Christ of

Latter-day Saints (the "Church") submits this reply memorandum in support of its

motion to dismiss (the "Motion") (Docket 6).

**TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................. 3

I.   THE FIRST AMENDMENT REQUIRES DISMISSAL OF
EVERY ONE OF MS. GADDY'S CLAIMS ................................. 3

   A.   The First Amendment prohibits judicial review of
religious claims, whether characterized as "facts" or
"beliefs." ............................................................................... 3

   B.   The Cases Cited by Ms. Gaddy Do Not Support Her
Arguments ............................................................................. 9

   C.   Ms. Gaddy's Arguments Regarding Adjudication of
Sincerity of Belief and Regulation of Actions Fail ............. 13

II.   UTAH LAW PROHIBITS MS. GADDY'S FIDUCIARY
DUTY CLAIMS ......................................................................... 15

III.   MS. GADDY'S RICO CLAIM FAILS ....................................... 16

CONCLUSION ......................................................................................... 18

i

## Cases

*Christofferson v. Church of Scientology of Portland,*
   644 P.2d 577 (Or. App. 1982) ........................................................7, 14

*Emp't Div., Dep't of Human Res. of Or. v. Smith,*
   494 U.S. 872 (1990) ........................................................................3, 18

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N.
   Am.,*
   344 U.S. 94 (1952) (emphasis added) ................................................8

*Kikumura v. Hurley,*
   242 F.3d 950 (10th Cir. 2001) ..........................................................14

*McDaniel v. Paty,*
   435 U.S. 618 (1978) ..........................................................................15

*Molko v. Holy Spirit Association, Inc.,*
   762 P.2d 46 (Cal. 1988) ..............................................................11, 12

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l
   Presbyterian Church,*
   393 U.S. 440 (1969) ............................................................................8

*Stickley v. State Farm Mut. Auto. Ins. Co.,*
   505 F.3d 1070 (10th Cir. 2007) ........................................................16

*Tal v. Hogan,*
   453 F.3d 1244 (10th Cir. 2006) ...................................................16, 17

*In re The Bible Speaks,*
   869 F.2d 628 (1st Cir. 1989) .............................................................13

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.,*
   450 U.S. 707 (1981) ..........................................................................16

*United States v. Ballard,*
   322 U.S. 78 (1944) .....................................................................passim

*Van Schaick v. Church of Scientology of California, Inc.,*
    535 F.Supp. 1125 (D. Mass. 1982) ............................................................9, 10, 11

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ................................................................................................7

**Rules**

Fed. R. Civ. P. 11(b) ................................................................................................18

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) ..................................................................4

# INTRODUCTION

Ms. Gaddy alleges that her former faith was fraudulently induced by the Church's claims about Joseph Smith's visions and translations of ancient scriptural records. She would not have believed that Joseph was a prophet who received divine revelations, she says, if the Church had not *lied* to her about Joseph Smith having a vision of God and Jesus Christ, and had it not told her that Joseph translated the Book of Mormon and the Book of Abraham from ancient records. Opp. at 7-8. Explicit in her argument is the assertion the Constitution allows this Court to decide whether these religious claims are true, or whether Joseph Smith and the Church he founded are a fraud. Nothing less than that is at stake.

Both the Free Exercise Clause and the Establishment Clause prohibit Ms. Gaddy's claims. The Free Exercise Clause absolutely, without any qualification, protects a church's right to teach and proclaim its doctrine, no matter how non-believers may regard those teachings or measure them against prevailing secular or scientific standards. The Establishment Clause prohibits courts from becoming entangled in religious affairs—and exercising control over religion—by declaring some religious teachings false and others true. It separates church from state in the realm of religious doctrine.

Ms. Gaddy makes a futile effort to avoid the First Amendment by claiming that she is only asking the Court to adjudicate questions of "fact," not ones of "belief."  And—as she defines those terms—the Church's religious teachings about which she complains are issues of "fact" not "belief."  But the line the First Amendment draws is *not* between belief and fact, it is between religious and nonreligious.  Religious claims, even if deemed false by some secular standard, are absolutely protected by the First Amendment.  "Men may believe what they cannot prove.  They may not be put to the proof of their religious doctrines or beliefs." *United States v. Ballard*, 322 U.S. 78, 86 (1944).  Regardless of the label Ms. Gaddy applies to the Church's teachings, they are inherently *religious*.  The First Amendment does not allow the government—including the judiciary—to declare that any religious doctrine is true or false.  Instead, the law properly leaves that determination to individual citizens.

Unsurprisingly, Ms. Gaddy cannot point to any court in the country that has adopted her "fact" versus "belief" construct.  The construct itself makes no sense because a great many religious *beliefs* are about historical *facts*.  Examples include: Jesus Christ's resurrection, Mohammed's ascension to heaven, Moses' parting of the Red Sea, Noah's construction of the ark, and many, many more.  Individuals and religious organizations have a great many religious *beliefs* about these

2

religious *facts*.  To say that a court may adjudicate their truth or falsity because they are questions of fact would strip all meaning from the First Amendment's protection of religious liberty.  Indeed, the United States Supreme Court has consistently held that "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires."  *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990).  Ms. Gaddy's lawsuit directly attacks that fundamental right and therefore must be dismissed— with prejudice.

## ARGUMENT

## I.    THE FIRST AMENDMENT REQUIRES DISMISSAL OF EVERY ONE OF MS. GADDY'S CLAIMS.

### A.    The First Amendment prohibits judicial review of religious claims, whether characterized as "facts" or "beliefs."

Ms. Gaddy's primary argument is that the First Amendment protects only religious "beliefs," not religious "facts" (as defined by Ms. Gaddy).  "Facts are susceptible to proof," she says.  "Beliefs are not; if proven, beliefs become facts." Opp. at 7.  Tellingly, Ms. Gaddy cites no case law to support her contention.  It is unsurprising that no court has ever adopted this reasoning because it would spell the end of religious freedom.

"Beliefs" versus "facts" is a false dichotomy.  Individuals have "beliefs" about "facts"—including religious ones.  Black's Law Dictionary defines "belief" as "[a] state of mind that regards the existence or truth of something as likely or relatively certain; conviction about the truth of something."  *Black's Law Dictionary*, 189 (11th ed. 2019).  Thus, a religious belief is a "conviction about the truth" of something religious in nature.  Indeed, many religious beliefs relate to historical fact.  The following two questions, for example, are religious beliefs about historical facts:

- Was Jesus Christ resurrected three days after being crucified?

- Did Moses part the Red Sea?

Both questions relate to the historicity of religious claims.  And both are theoretically "susceptible to proof."  As to Jesus Christ's resurrection, believers would point to written accounts of witnesses testifying to have seen him after his crucifixion.  Indeed, some attest that they spoke with him and felt the wounds in his hands, feet, and side.  In contrast, non-believers would point to the testimonies of Roman soldiers that Jesus Christ's body was stolen from his tomb by his disciples.  And non-believers could no doubt marshal expert medical testimony that the human body is incapable of resurrection, especially after the passage of three days.

4

The biblical account of Moses parting the Red Sea is equally a question of historical "fact" that is "susceptible to proof."  Archaeological experts could provide testimony on the evidence (or lack thereof) of a mass exodus from Egypt in ancient times.  They could similarly offer evidence (or lack thereof) about whether an Egyptian army was drowned in the Red Sea.  Egyptologists could provide evidence on whether ancient Egyptian texts support the account of enslavement of the Hebrew people and Moses leading them to freedom through the Red Sea.  And hydrologists could testify that a body of water like the Red Sea could not have been "parted" as described in the book of Exodus.

Ms. Gaddy's Complaint envisions a similar trial regarding some of the Church's religious teachings.  The canonical account of Joseph Smith's First Vision would be defended by the Church.  The Church would point to Joseph Smith's expansive 1838 account where he described a vision of two "personages"—God and Jesus Christ.  Ms. Gaddy would seek to discredit that account with another that references only the Lord.  Similarly, the Church would defend its teaching that Joseph Smith translated the Book of Mormon—"by the gift and power of God."  Ms. Gaddy would disagree that the process was a "translation."  Finally, the Church would maintain that the Book of Abraham is a

5

divinely inspired translation of the teachings of the biblical prophet Abraham. Ms. Gaddy would dispute that assertion.

Under Ms. Gaddy's theory, each of these questions are ones of "fact" (not "belief") and are therefore capable of adjudication. In theory, a jury could weigh the written testimonies of early Christians against those of the Roman soldiers. It could also weigh those witnesses against the testimony of medical experts. And the jury could ultimately reach a conclusion about whether Jesus Christ was resurrected, or about which of the different accounts of the resurrection in the four Gospels is accurate. In the course of doing so, the jury might have to decide which of scriptural account of Paul's vision of the resurrected Jesus is accurate. Similarly, a jury could decide whether Moses parted the Red Sea by weighing the testimony of archaeologists, Egyptologists, and hydrologists. And a jury could decide whether Joseph Smith saw God and Jesus Christ or only the Lord. But a jury verdict that Jesus Christ was (or was not) resurrected or that Moses did (or did not) part the Red Sea or that Joseph Smith did (or did not) see God and Jesus Christ would be meaningless. The idea that those fundamental theological questions—which have been debated by millions of people for hundreds, or in some instances, thousands of years—can be "proven" (or "disproven") in court and settled by a judge and jury is absurd.

6

Regardless, the distinction Ms. Gaddy attempts to draw between "facts" and "beliefs" is false. The resurrection of Jesus Christ is a deeply-held religious *belief* for Christians. Similarly, many orthodox Jews, Christians, and Muslims *believe* in the historicity of Moses parting the Red Sea. And members of the Church *believe* that God and Jesus Christ appeared to Joseph Smith and that he translated the Book of Mormon and the Book of Abraham by the gift and power of God. Clearly, "beliefs" and "facts" are not mutually exclusive concepts, as Ms. Gaddy maintains.[1]

Philosophical and epistemological problems aside, Ms. Gaddy cannot cite to a *single* case that has ever adopted her "beliefs" versus "facts" distinction. Rather, "[t]he fundamental qualification for protection based on the Free Exercise Clause of the First Amendment is that that which is sought to be protected must 'religious.'" *Christofferson v. Church of Scientology of Portland*, 644 P.2d 577, 600 (Or. App. 1982) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)).

Ms. Gaddy expressly bases her claims on three fundamental questions:

---

[1] Ms. Gaddy's "fact" versus "belief" distinction would render the First Amendment meaningless. She asserts that the First Amendment protects only religious "beliefs"[1] but she also asserts that "beliefs," by definition, cannot be proven true or false. Thus, the First Amendment only prohibits the court from determining the truth or falsity of something that, by definition, cannot be proven true or false. This is circular and vacuous.

7

- Did God and Jesus Christ appear to Joseph Smith in 1820?

- Did Joseph Smith translate the Book of Mormon by the power of God?

- Is the Book of Abraham true scripture from the biblical prophet Abraham?

Opp. at 8. Each of these questions is clearly *religious*—regardless of whether they are characterized as religious beliefs, doctrines, matters of faith, or questions of religious fact. As such, they are protected by the First Amendment.

The Supreme Court has consistently held that religious organizations have the "power to decide for themselves, free from state interference, matters of church government as well as those of *faith* and *doctrine*." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952) (emphasis added). That right derives from the First Amendment. *Id.* Civil courts cannot "engage in the forbidden process of interpreting and weighing church doctrine." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969). And "[h]eresy trials are foreign to our Constitution. Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs." *United States v. Ballard*, 322 U.S. 78, 86 (1944).

Simply put, there is no non-frivolous argument that this Court can adjudicate the religious questions raised by Ms. Gaddy in her Complaint.[2]  Accordingly, Ms. Gaddy's claims should be dismissed.

### B.    The Cases Cited by Ms. Gaddy Do Not Support Her Arguments.

Ms. Gaddy discusses two cases for her contention that "a false statement of material fact, offered as an inducement to join a religion is a recognized tort, beyond First Amendment protection."  Opp. at 10.  She also cites, but does not discuss, a third case.  Each of these cases, in fact, supports the Church's arguments, not Ms. Gaddy's, and each is addressed in turn.

In *Van Schaick v. Church of Scientology of California, Inc.*, a former member of the Church of Scientology brought various claims including: fraud, fraud in the inducement, breach of contract, and RICO violations.  535 F. Supp. 1125 (D. Mass. 1982).  After dismissing a number of claims on non-constitutional grounds, the court turned to the First Amendment.  The court explained that some of the allegations regarded "*purely secular* representations allegedly made to" the

---

[2] Ms. Gaddy's opposition includes a section arguing that the free speech provision of the First Amendment does not necessarily protect "fraudulent" speech. Although Ms. Gaddy's claims regarding what the Church may (or may not) preach likely implicate free speech protections, the Church's Motion relies on the religious liberty protections of the First Amendment.

9

plaintiff.  *Id.* at 1140 (emphasis added).  Specifically, the plaintiff alleged that the defendant promised that the plaintiff "would receive benefits, including training, room and board, and various work and research opportunities, after undergoing a period of auditing."  *Id.*  The court noted that the First Amendment did not protect these "purely secular" statements because "adjudicating [them] would not force this court to consider the truth or falsity of religious doctrine, the sort of inquiry *Ballard* forecloses."  *Id.*  The court similarly concluded that the First Amendment did not necessarily protect the defendant's "[s]tatements citing science as their source" but noted that if those same statements "relied on religious belief for [their] authority," they would be protected.  *Id.* at 1141.

The court then addressed other claims that the plaintiff "was fraudulently induced to become a scientologist by false representations concerning the nature of the Scientology movement [] and the content of Scientology doctrine."  *Id.* at 1142.  The Court held that if the Scientology movement were a religion entitled to protection by the First Amendment,[3] those claims would fail.  The court reasoned

_____

[3] In *Van Schaick*, the plaintiff disputed whether Scientology qualified as a religion entitled to protection under the First Amendment.  The court reviewed various cases on that precise question and determined that, if the allegations in the complaint were true, Scientology might not qualify as a religion.  *Van Schaick*, 535 F. Supp. at 1141-45.  In this case, Ms. Gaddy does not contest that the Church qualifies as a religion and is entitled to First Amendment protection.

that "[s]ince an essential element of a cause of action for fraud is the falsity of the representation in question" and *Ballard* "prevent[s] [the court] from examining [the statements'] veracity," the claim should be dismissed. *Id.*

Thus, *Van Schaick* does not distinguish between "belief" and "fact." Instead, it distinguishes between religious and "purely secular." The claims and statements challenged by Ms. Gaddy are plainly religious, not secular. And the challenged statements rely on religion for their authority. They are therefore protected by the First Amendment.[4]

Similarly, in *Molko v. Holy Spirit Association, Inc.*, the court allowed a fraud claim against a religious organization where the alleged statement was secular and *not* one of religious doctrine. 762 P.2d 46 (Cal. 1988). In that case, the plaintiffs were approached by members of the Unification Church who lied to the plaintiffs and said they were members of a socially conscious community group that was *not* a religion or even religiously affiliated. *Id.* at 50. Through this false representation, the plaintiffs were convinced to join the church members at a commune where they were "brainwashed" into joining the Unification Church. *Id.*

---

[4] Like the resurrection of Jesus Christ, evidence could be adduced both affirming and contesting the truth of the religious doctrines Ms. Gaddy challenges. But simply because a religious doctrine may be disputed by non-believers does not mean it can be adjudicated by the courts.

at 53-54.  In that case, the court allowed the fraud claim to proceed.  Specifically, it allowed a claim based on the Unification "Church's practice of misrepresenting or concealing its identity" and noted that such a claim was *not* a challenge "to the Church's teachings."  *Id.* at 59.  Once again, the allegedly fraudulent statement at issue was purely secular—were the individuals who approached the plaintiffs associated with the Unification Church?  Indeed, the statement was *intentionally* secular, and its purpose was to disclaim any affiliation with religion.  Adjudicating that question did not require interpreting, weighing, or opining on the truth or falsity of any religious doctrine.

In short, *Molko* stands for the unremarkable proposition that a religious organization may be held liable if it misrepresents its identity as a religious organization.  For example, a church would be liable if its representatives claimed to be from the Red Cross and collected money from individuals believing they were donating to the Red Cross.  But those are not the allegations in this case.  The Church never claimed to be anything other than a religious organization and its teachings are openly religious.  Accordingly, *Molko* does not support Ms. Gaddy's claims.

Finally, Ms. Gaddy cites, but does not discuss, *In re The Bible Speaks* for the proposition that a church may not "'use the cloak of religion' to commit fraud or

undue influence."  Opp. at 12.  Ms. Gaddy omits the court's holding that the First

Amendment "does not allow *purely secular* statements of fact to be shielded from

legal action because they are made by officials of a religious organization."  *In re*

*The Bible Speaks*, 869 F.2d 628, 645 (1st Cir. 1989).  The court explained:

> Neither our decision in this case nor the proceedings
> below implicates the religious tenets of [the religious
> organization] or the beliefs of its adherents.  The findings
> and rulings rest solely on secular statements and actions.
> The facts relied upon have not been derived from an
> inquiry into the religious principles of [the organization]
> or the truth and sincerity of its adherents' beliefs.

*Id.*  In contrast, the claims asserted by Ms. Gaddy directly implicate the Church's

religious tenets and are not based on "purely secular" statements.  Thus, this case

does not support Ms. Gaddy's contention that this Court may adjudicate the truth

or falsity of the Church's *religious* teachings.

### C.  Ms. Gaddy's Arguments Regarding Adjudication of Sincerity of Belief and Regulation of Actions Fail.

Ms. Gaddy briefly makes two other arguments in attempts to avoid the First

Amendment's prohibition of her claims.  First, she contends that courts are

permitted to adjudicate the "sincerity of belief."  Second, she argues that the state

remains free to regulate actions, as distinct from beliefs.  Neither of these

arguments is applicable to this case.

First, Ms. Gaddy cites *Ballard* for the proposition that courts may adjudicate

the "sincerity of belief."[5]  This argument does not save her claims.  To succeed on

her fraud claims Ms. Gaddy would have to prove *both* that the Church's teachings

about Joseph Smith's First Vision, the Book of Mormon, and the Book of Abraham

are false *and* that the Church knew they were false.  Sincerity of belief is relevant,

if at all, only to the second element.  Accordingly, whether or not the court can

adjudicate that element is irrelevant where the First Amendment prohibits

adjudication of the first element.[6]

Second, Ms. Gaddy's argument that the First Amendment protects actions to

a lesser degree than beliefs is irrelevant.  As described above, each of Ms. Gaddy's

---

[5] Specifically, Ms. Gaddy states the "Supreme Court found that the Ballard defendants could be convicted of fraud for falsely espousing something they truly did not believe."  Opp. at 16.  This is incorrect.  The Supreme Court did not opine on whether the Ballard defendants could be convicted.  Instead, it ruled that that the Ninth Circuit erred in its ruling that the truth or falsity of the religious teachings should have been presented to the jury.  322 U.S. at 85-86.  *See also*, *Christofferson*, 644 P.2d at 604 (rejecting plaintiff's argument that *Ballard* stands "for the proposition that the sincerity of the proponents of religious belief is a proper subject for inquiry in an action for fraud" and explaining that "*Ballard* did not address the question of the propriety of submitting the issue of the defendants' sincerity to the jury").

[6] Sincerity of belief arises in the context of a religion seeking an exception to a statute or regulation.  *See, e.g., Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001) (reciting as an element of a RFRA challenge that the belief at issue be "sincerely held").  Those cases have no applicability here.  The Church does not seek an exception to any statute or regulation in this case.

14

claims depends on her ability to prove that the Church's religious teachings are false. The First Amendment prohibits this absolutely, regardless of the government's ability to regulate "actions." There is no support for Ms. Gaddy's contention that *preaching* one's religious beliefs constitutes an "action" that has less protection than "beliefs" under the First Amendment. Apparently, Ms. Gaddy contends the Free Exercise Clause encompasses only the freedom to believe what is in one's own mind, and does not extend to professing one's beliefs. That contention is rejected by Supreme Court precedent. The Supreme Court has explained that "the right to the free exercise of religion *unquestionably* encompasses the right to preach, proselyte, and perform other similar religious functions." *McDaniel v. Paty*, 435 U.S. 618, 626 (1978) (emphasis added).

## II. UTAH LAW PROHIBITS MS. GADDY'S FIDUCIARY DUTY CLAIMS.

Ms. Gaddy's fiduciary duty claim relies on the same alleged misrepresentations as her fraud claim and is therefore barred by the First Amendment for the same reasons. It should also be dismissed because the Utah Supreme Court has expressly rejected the fiduciary duty theory Ms. Gaddy advances. Indeed, Ms. Gaddy implicitly concedes as much by arguing that the Utah Supreme Court's *Franco* decision "was wrongly decided" and failed "to take into consideration" other factors. Opp. at 22. But this Court does not sit in review

15

of the Utah Supreme Court's pronouncements on Utah law.  Indeed, such decisions

are binding by direct application of the *Erie* Doctrine.[7]  *See, e.g.*, *Stickley v. State*

*Farm Mut. Auto. Ins.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (applying the *Erie*

Doctrine and explaining that "[w]hen the federal courts are called upon to interpret

state law, the federal court must look to rulings of the highest state court").

Accordingly, *Franco* is controlling and Ms. Gaddy's fiduciary duty claims fail.

## III.   MS. GADDY'S RICO CLAIM FAILS.

Ms. Gaddy's RICO claim also relies on the same alleged misrepresentations

as her fraud claim and fails for the same First Amendment reasons.  It also fails for

other reasons.

"The elements of a civil RICO claim are (1) investment in, control of, or

conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."  *Tal*

---

[7] Ms. Gaddy appears to argue—with no case law citations—that *Franco* "improperly favor[s] religion and its clergy over secular fact patterns" in violation of the Utah Constitution and the First Amendment.  Opp. at 25.  Once again, the Utah Supreme Court's interpretation of Utah law, including the Utah Constitution, is binding and not subject to review by this Court.  As for the First Amendment argument, it is well recognized that the First Amendment itself protects religion in ways distinct from "secular fact patterns."  Indeed, the Supreme Court has explained that the First Amendment "by its terms, gives special protection to the exercise of religion."  *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 713 (1981).

16

*v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). "Racketeering activity" is defined as "any 'act which is indictable' under federal law." *Id.*

Ms. Gaddy's opposition ignores the Church's argument entirely. Ms. Gaddy cites precedent for the proposition that not every member of an enterprise needs to have engaged in criminal activity for a defendant to be found liable under RICO.[8] Opp. at 26-29. In other words, an "enterprise" may include innocent parties. But that misses the point. Regardless of how the enterprise is defined, a RICO violation still requires that *someone* be "indictable under federal law." *Tal*, 453 F.3d at 1261.

The idea that a United States Attorney could indict the Church or its leaders for teaching the Church's religious doctrine is absurd. The First Amendment clearly protects the teaching of religious doctrines. And as the United States Supreme Court has explained, "[i]f one could be sent to jail because a jury in a hostile environment found [religious] teachings false, little indeed would be left of religious freedom." *Ballard*, 322 U.S. at 87. To the contrary, "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Smith*, 494 U.S. at 877. The notion that a Church

---

[8] Ms. Gaddy also devotes a section of her brief to the unremarkable proposition that cash is personal property. Opp. at 29. This is not in dispute.

17

or its leaders could be indicted for teaching religious doctrines is simply not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing law or for establishing new law."  Fed. R. Civ. P. 11(b).

## CONCLUSION

Ms. Gaddy's claims are barred by the First Amendment.  Accordingly, the Church's Motion should be granted.

This memorandum is 3,999 words long.

DATED:  November 5, 2019.

STOEL RIVES LLP


*/s/ David J. Jordan*
David J. Jordan
Wesley F. Harward

*Attorneys for Defendant Corporation of
   the President of The Church of Jesus
   Christ of Latter-day Saints*

18