Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main, Suite #1375
Salt Lake City, Utah 84111
Phone: 1.888.234.3706

*Attorney for Laura A. Gaddy and the Class.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>*Defendant* | **PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL)<br>**2:19-cv-00554-RJS--DBP**<br><br>Presiding Judge: Robert J. Shelby |

1.   MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Fed. R. Civ. P. 7(a) makes clear that a motion to dismiss is not a responsive pleading.[1]

However, Plaintiff seeks leave of this Court to file the attached [proposed] Amended Complaint

under Fed. R. Civ. P. 15-1 and DUCivR 15-1, due to the Court's having taken Defendant's

Motion to Dismiss under advisement as of February 13, 2020 (Minute Order, ECF #31).

---

[1] *Vincent v. Utah Plastic Surgery Soc.,* 621 F. App'x 546, 551 (10th Cir. 2015).

## 2.  PERTINENT PROCEDURAL BACKGROUND

Plaintiff filed her original Complaint on August 5, 2019. (ECF #2). Defendant filed a Motion to Dismiss on August 27, 2019. (ECF #6). Plaintiff filed an Opposition on October 8, 2019 (ECF # 23). Defendant raised the First Amendment as a defense under both the free exercise and establishment clauses in its Nov. 25, 2019, Reply (ECF, # 26 p. 5.) Oral argument was held on February 13, 2020, after which the Court took the matter under advisement (ECF# 31). As of this date, no decision has been filed by the Court.

The primary basis upon which Defendant argues for application of a First Amendment defense is the Church Autonomy Doctrine ("CAD") *aka,* the ministerial exception, which both the Tenth Circuit Court of Appeals and more recently, the Supreme Court of the United States, has held is an affirmative defense as opposed to a jurisdictional bar under Fed.R. Civ. P. 12(b)(1).[2]

## 3.  ARGUMENT IN FAVOR OF ALLOWING AMENDMENT

A.    COP's Brethren must believe what they claim; otherwise, there is no Right to Raise a First Amendment Defense.

In the proposed Amended Complaint, Plaintiff adds factual allegations that COP, by and through the Brethren and those who are in charge of Correlation, did not, and do not, sincerely believe the truth of the statements they made, and continue to make, i.e. that Smith translated the

---

[2] A conflict has arisen in the Courts of Appeals over whether the ministerial exception is a jurisdictional bar or a defense on the merits… (internal citations omitted). *We conclude that the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar. That is because the issue presented by the exception is "whether the allegations the plaintiff makes entitle him to relief," not whether the court has "power to hear [the] case." [Emphasis Added].* Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 195, 132 S. Ct. 694, 709, 181 L. Ed. 2d 650 (2012).

*Book of Mormon* from plates as opposed dictated it from a seer stone; that his 1820 first vision account was one where he saw two personages, one of whom told him that all churches were false; and, that the Hebrew prophet Abraham wrote upon the Egyptian papyrus and is depicted in its facsimiles, among other misrepresentations of religious fact.

The newly pleaded facts also rebut the second element of the twin requirements of Defendant's First Amendment Free Exercise defense:  1) that the expression or activity at issue (which has yet to be identified by Defendant, but which is essentially the right to lie, if not to commit fraud) is a "religious *belief,*" 2) that is "sincerely held."[3]

Justice Neal Gorsuch identified the difference between religious fact and belief here:

"…Faith means belief in something concerning which doubt is still theoretically possible." William James, *The Will To Believe* 90 (1897). And even if it were otherwise, federal judges are hardly fit arbiters of the world's religions. When inquiring into a claimant's *sincerity,* then, our task is instead a more modest one, limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court—whether he actually holds the beliefs he claims to hold…" (internal citations omitted).

Yellowbear v. Lampert, 741 F.3d 48, 54 (10th Cir. 2014).

Dicta in Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 655 (10th Cir. 2002) purporting to allow churches an almost *carte blanche* immunity from tort actions where ecclesiastical activity is concerned notwithstanding, the real issue in this case is whether "Lying for the Lord" to the extent that it rises to the level of fraud, is a protected exercise within the CAD, which has historically been limited to the choice of ministers (as was the case even in

---

[3] Apostle Dallin Oaks at a Fireside Address to faculty, students, and alumni of BYU, September 12, 1993:
 "…[D]oes this mean we condone deliberate and important misrepresentations of fact in a circumstance in which they are clearly intended to be believed and relied upon? Never! Lying is sinful, as it has always been, and there is no exempt category for so-called "lying for the Lord." Lying is simply outside the range of permitted or condoned conduct by Latter-day Saints—members or leaders. This statement, when compared to the obvious lies COP has told, could very well be an example of one of COP's agents "Lying for the Lord."

in *Bryce, Id.,* where the issue involved the extent and scope of the discussion of the qualifications of Plaintiff, a youth minister, where any alleged sexual harassment would likely be a result of negligent, as opposed to intentional conduct), and property disputes.

Plaintiff argues that CAD should not be expanded to protect a religious organization's sanctioned lies—misrepresentations of fact—not belief, doctrine or faith, upon which members and potential members rely to their detriment and damage. That is, under current case law there is no exemption for a religious organization from a law of general applicability—here, civil fraud laws—just because it is a Church. [4]

Defendant must show both that the exercise at issue is a "religious belief," and that it is "sincerely held," to satisfy the elements of a defense under the free expression Clause. "The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 863–64, 13 L. Ed. 2d 733 (1965)." *Thomas v. Review Bd. of the Ind. Employment Sec. Div.,* 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981). Snyder v. Murray City Corp., 124 F.3d 1349, 1352 (10th Cir. 1997), opinion vacated in part on reh'g en banc, 159 F.3d 1227 (10th Cir. 1998). The above cases involve challenges by Plaintiffs to their free exercise rights and so sincerity of belief is pleaded as part of their *prima facie* case; here, the

---

[4] The following Florida Supreme Court case, cited by Bryce, *supra.* at 657, appropriately reasons as follows: A law establishing standards of conduct does not implicate the Free Exercise Clause unless adherence to those standards interferes with religious belief or activity. *See Lukumi Babalu Aye,* 508 U.S. at 532, 113 S.Ct. 2217. Thus, the "threshold inquiry is whether there is a conflict between conduct that is required by law [here not to defraud] and conduct that is prohibited by religious principles." [Not so here, unless Defendant COP asserts that "Lying for the Lord" is a sincerely held religious belief.] *Smith v. O'Connell,* 986 F.Supp. at 78. Malicki v. Doe, 814 So. 2d 347, 360 (Fla. 2002).

prima facie case involves sincerity to the extent that defendants knew their statements were false. Additionally, sincerity of belief arises as a required element of COP's First Amendment defense.

Analytically, therefore, in lieu of deciding at the outset whether the statements claimed as fraudulent are statements of fact or belief, which the Court could rule upon as a matter of law (and without waiving the argument that they are indeed factual), it makes more analytical sense and, respectfully, is procedurally more appropriate, to simply set forth such allegations as part of Plaintiff's *prima facie* case for fraud, which certainly would be statements of fact sufficient to allege a claim for fraud in anything other than a religious context, and then leave it to Defendant to show that the substance of the statements Plaintiff has alleged to be fraudulent involve an aspect of their "religious belief," which is "sincerely held." Thus, in order to successfully mount a First Amendment defense under the free exercise prong, COP must show that the law restricts a "religious belief" that is "sincerely held." Sincerity is a credibility issue and therefore ordinarily an issue of fact, as opposed to law.[5]

B. Leave shall be Freely Granted Absent Abuse or Undue Prejudice.

Though in the trial court's discretion, leave to amend shall be freely granted when:

> (Internal citations omitted) In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Polin v. Dun & Bradstreet, Inc., 511 F.2d 875, 877 (10th Cir. 1975)

---

[5] *United States v. Quaintance*, 608 F.3d 717 (10th Cir. 2010) where the Tenth Circuit reaffirmed that sincerity of belief must be established *before* the protections of the RFRA [or, arguably the First Amendment] can be invoked. Members of the current LDS First Presidency have all held top leadership positions in the Church since the mid-1980s—Nelson and Oaks as members of the Quorum of the 12 Apostles; Eyring in the CPB, and later in the Q12.

C.  Grounds for Amendment: Omitted Factual Background.

During oral argument there was a discussion wherein Plaintiff's counsel argued that she could plead additional facts indicating Defendant's lack of a sincere belief in the statements at issue, characterized as facts by Plaintiff and initially as beliefs by COP. Then the Court asked: "If I were to allow you to amend, how much time you would need—30 days?" The undersigned responded with "45 days." Wherefore, Plaintiff brings this motion within that time period.

Plaintiff submits in the proposed Amended Complaint a more concise statement of facts (balancing the requirement that fraud must be pleaded with specificity), which includes additional facts addressing an element of Plaintiff's prima facie case for fraud that Defendant did not believe the statements it was making, or, put another way, lacked "sincerity of belief" in those statements, a requisite element of Defendant's First Amendment affirmative defense.[6]

Plaintiff has also withdrawn her claim for breach of fiduciary duty and replaced it in the proposed Amended Complaint with a claim for breach of the duty of full disclosure.

Finally, the case also includes factual allegations that COP's use of tithing is not what it had represented, which information was disclosed by the IRS Whistleblower Complaint in late 2019, after filing the Gaddy Original Complaint. Allegations that COP devised a scheme or artifice to defraud as to how the 10% of Plaintiff's and the Class's income, paid as tithing, would be used are included as part of the RICO claim. Representations that tithing had not been and would not be used for profit-making businesses were disseminated to Plaintiff and the Class. Such misrepresentations support a RICO claim with mail and wire fraud predicate acts, since reliance is

---

[6] Recently, the Tenth Circuit upheld a dismissal where plaintiff failed to offer "grounds for the requested amendment" or "how Plaintiffs would amend their complaint to provide necessary, but omitted, factual background." Vincent, *supra*. at 551.

not a requirement.[7] These allegations also support Plaintiff's allegations of COP's general pattern and practice of lying to its members/potential members about material facts and that COP's agents don't believe their own rhetoric set forth in the propaganda that they disseminate.

4.    CONCLUSION

This case is in the early pleading stage.  Indeed, according to Fed. Rules of Civil. P. 7(a), and relevant case law thereunder, no responsive pleading has been filed. It is highly doubtful that Defendant could show any undue prejudice in allowing said Amended Complaint to be filed.

Wherefore, it is respectfully requested that the Court grant Plaintiff's Motion, and order the attached [proposed] Amended Complaint filed *nunc pro tunc*, with relation back to the original filing date.

Respectfully Submitted,

Dated: the 30th day of March, 2020                By: /s/ Kay Burningham

Kay Burningham
kay@kayburningham.com
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111

Telephone: (888) 234-3706

*Attorney for Laura A. Gaddy and the Class*

---

[7] "Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim..." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 655–57, 128 S. Ct. 2131, 2142-44, 170 L. Ed. 2d 1012 (2008).