Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main, Suite #1375
Salt Lake City, Utah 84111
Phone: 1.888.234.3706

*Attorney for Laura A. Gaddy and the Class.*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>  *Plaintiff,*<br><br>  v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>  *Defendant* | **PLAINTIFF'S [REVISED] MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL)<br><br>**2:19-cv-00554-RJS—DBP**<br><br>**(Request for Telephonic Argument)**<br><br>Presiding Judge: Robert J. Shelby<br><br>Magistrate Judge: Dustin B. Pead |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

  Plaintiff LAURA GADDY, individually, and on behalf of the class, moves to amend her Complaint in accordance with the Court's Order of March 31, 2020 (ECF#33) allowing 45 days within which to move. Additionally, though likely premature, and due to the confusion surrounding the procedural posture of this case, she may file a Notice of Appeal of that Order within the next two days in case the Court denies this Motion for Leave to Amend. If she does so, she will file an Amended Notice of Appeal should leave to amend her Complaint be denied.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

TABLE OF CONTENTS

I. PERTINENT PROCEDURAL BACKGROUND ................................................................ 2
II. ARGUMENT IN FAVOR OF ALLOWING AMENDMENT ........................................... 3
   A. COP's Brethren must Believe What They Claim; Otherwise, they have No Right to Raise a First Amendment Defense. ................................................................................................... 3
      1. Under the Free Exercise Prong, COP must Demonstrate that a Sincerely Held Religious Belief is Infringed by the Imposition of Generally Applicable Fraud Laws and Statutes. ............................. 5
      2. Establishment Clause Case Law Has Not been Extended to Protect Fraud. ................. 7
   B. Leave shall be Freely Granted Absent Abuse or Undue Prejudice. .......................................... 9
   C. Grounds for Amendment: Omitted facts & New Cause of Action .......................................... 9
   Based on the Same Set of Facts. ................................................................................................... 9
III. CHANGES IN THE REVISED [PROPOSED] AMENDED ........................................... 10
COMPLAINT IDENTIFIED. ................................................................................................... 10
   A. Sincerity. ................................................................................................................................ 10
   B. Duty of Full Disclosure. ........................................................................................................ 10
   C. Violation of the *Utah Charitable Solicitations Act.* ............................................................. 11
   D. Material Omissions do Not Require Adjudication of Truth or Falsity ................................. 12
   E. Material Omissions Satisfy the Predicate Acts of Fraud under RICO. ................................ 13
   F. Relevance of the Newly Discovered Fraudulent Statements re: Tithing Use. ....................... 13
IV. CONCLUSION ................................................................................................................... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PERTINENT PROCEDURAL BACKGROUND

Plaintiff filed her original Complaint on August 5, 2019. (ECF #2). Defendant filed a Motion to Dismiss on August 27, 2019. (ECF #6). Plaintiff filed an Opposition on October 8, 2019 (ECF # 23). In its Reply brief, Defendant claimed protection of the First Amendment under both the Free Exercise and Establishment Clauses (ECF, # 26 p. 5). Oral argument was held on February 13, 2020, after which the Court took the matter under advisement (ECF# 31). The

Court granted Plaintiff leave to file a motion to amend in its Order of March 31, 2020. (ECF#33). Applicable case law holds that filing Plaintiff's Motion to Amend within 28 days after the Court's Order will toll the running of the time within which to appeal that Order. Coll v. First Am. Title Ins. Co., 642 F.3d 876, 884–86 (10th Cir. 2011).

The primary basis upon which Defendant argues for application of a First Amendment defense is the Church Autonomy Doctrine ("CAD"), which both the Tenth Circuit Court of Appeals and more recently, the Supreme Court of the United States, has held is an affirmative defense as opposed to a jurisdictional bar under Fed. R. Civ. P. 12(b)(1).[1]

## II.   ARGUMENT IN FAVOR OF ALLOWING AMENDMENT

### A.   COP's Brethren must Believe What They Claim; Otherwise, they have No Right to Raise a First Amendment Defense.

In the attached revised [proposed] Amended Complaint, Plaintiff adds factual allegations that COP, by and through the Brethren and others in charge of Correlation, did not and do not, sincerely believe the truth of the statements they made, and continue to make: that Smith translated the *Book of Mormon* from plates as opposed dictated it from a seer stone; that the Hebrew prophet Abraham wrote upon the Egyptian papyrus and is depicted in its facsimiles, among other misrepresentations of religious fact. Nor did/do they believe their correlated version of Smith's 1820 first vision account, the one where he saw two personages, one of whom told him that all churches were false to be a fair account of what happened without disclosure that

---

[1] A conflict has arisen in the Courts of Appeals over whether the ministerial exception is a jurisdictional bar or a defense on the merits… (internal citations omitted). *We conclude that the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar. That is because the issue presented by the exception is "whether the allegations the plaintiff makes entitle him to relief," not whether the court has "power to hear [the] case." [Emphasis Added].* Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 195, 132 S. Ct. 694, 709, 181 L. Ed. 2d 650 (2012).

Smith's handwritten 1832 account differed substantially from the correlated version, that the *Fifth Lecture on Faith* for which Smith had ultimate approval characterizes God the Father as spirit instead of an embodied being, and that no mention was made in any of the official and important LDS Church publications, including the first edition of the Doctrine and Covenants, of the correlated two personage version for decades after it purportedly had occurred—due to material omissions, the correlated version is a misleading and deceptive account.

In its Order, the Court ruled that the key difference in holding a Church accountable for fraud is the difference between religious and secular fact. Plaintiff respectfully disagrees, but aside from citing the following quotation, she will move on from that point to demonstrate how her case can yet be properly adjudicated under the current state of applicable law.

> Justice Neal Gorsuch identified the difference between religious fact and belief here:
>
> "…Faith means belief in something concerning which doubt is still theoretically possible." William James, *The Will [T]o Believe* 90 (1897). And even if it were otherwise, federal judges are hardly fit arbiters of the world's religions. When inquiring into a claimant's *sincerity,* then, our task is instead a more modest one, limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court—whether he actually holds the beliefs he claims to hold…" (internal citations omitted).

Yellowbear v. Lampert, 741 F.3d 48, 54 (10th Cir. 2014).

Case law has upheld fraud convictions in situations where the leaders of a bona fide religious organization did not believe the statements they made in relation to Church solicitations or donation requests.

> The nature of the Church of Hakeem, and its teachings as a whole, are not issues in this case. The government has conceded that the Church is a bona fide religious organization. Rather, the government contends that Rasheed and Phillips engaged in conduct based on knowingly false representations to induce others to donate money to the Church through the "Dare to be Rich" program. So analyzed, the issue in this case becomes whether Rasheed and Phillips held sincere religious

4

> beliefs in the allegedly fraudulent aspects of the "Dare to be Rich" program. If they made assertions with knowledge of the falsity of those assertions, then they could not have been acting pursuant to sincere religious belief.

United States v. Rasheed, 663 F.2d 843, 847 (9th Cir. 1981); See also United States v. Ballard, 322 U.S. 78, 81–84, 64 S. Ct. 882, 884–85, 88 L. Ed. 1148 (1944).

Like the criminal defendants in the cases cited above, COP's Brethren who direct Correlation did not and do not sincerely believe the misrepresentations they have made over the decades.

1. Under the Free Exercise Prong, COP must Demonstrate that a Sincerely Held Religious Belief is Infringed by the Imposition of Generally Applicable Fraud Laws and Statutes.

Newly pleaded facts in the Amended Complaint rebut the twin requirements of Defendant's First Amendment Free Exercise defense: that the expression or activity at issue (which has yet to be identified by Defendant, but which is essentially the right to lie, if not to commit fraud) is, 1) a "religious *belief*," that is, 2) "sincerely held."[2] The questions of whether the activity at issue risks a "sincerely held religious belief" must be determined before Defendant COP is allowed to avail itself of a First Amendment defense under the Free Exercise Clause.

Defendant must show both that the exercise at issue is a "religious belief," and that it is "sincerely held," to satisfy the elements of a defense under the Free Exercise Clause. "The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether they are sincerely held." United States v. Seeger, 380 U.S. 163, 185, 85 S. Ct. 850, 863–64, 13 L. Ed. 2d 733 (1965).  Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 714, 101 S. Ct. 1425, 1430, 67 L. Ed. 2d 624 (1981).

---

[2] Apostle Dallin Oaks at a Fireside Address to faculty, students, and alumni of BYU, September 12, 1993, denied that lying is an LDS Church policy. "…[D]oes this mean we condone deliberate and important misrepresentations of fact in a circumstance in which they are clearly intended to be believed and relied upon? Never! Lying is sinful, as it has always been, and there is no exempt category for so-called "lying for the Lord." Lying is simply outside the range of permitted or condoned conduct by Latter-day Saints—members or leaders.

Snyder v. Murray City Corp., 124 F.3d 1349, 1352 (10th Cir. 1997), opinion vacated in part on r eh'g en banc, 159 F.3d 1227 (10th Cir. 1998). The above cases involve challenges by Plaintiffs to their free exercise rights, therefore sincerity of belief is pleaded as part of their *prima facie* case; here, the *prima facie* case involves sincerity to the extent that Defendant knew its statements were false. Sincerity of belief also arises as a required element of a Free Exercise defense.

Analytically, therefore, in lieu of deciding at the outset whether the statements claimed as fraudulent are statements of fact or belief, which the Court could rule upon as a matter of law (and without waiving the argument that they are indeed statements of fact), it makes more analytical sense and, respectfully, is procedurally more appropriate, to simply set forth such allegations as part of Plaintiff's *prima facie* case for fraud, which certainly would be statements of fact sufficient to allege a claim for fraud in any other context, and then leave it to Defendant to show that the substance of the statements Plaintiff has alleged to be fraudulent involve an aspect of their "religious belief," which is "sincerely held." Thus, in order to successfully mount a First Amendment defense under the Free Exercise prong, COP must show that the law restricts a "religious belief" of the Church which is "sincerely held." Furthermore, sincerity is a credibility issue and therefore ordinarily an issue of fact, as opposed to law.[3]

Although the sincerity of defendant's religious beliefs was not disputed in an RFRA context, the Supreme Court has reasoned that Congress has not excluded for-profit corporations

---

[3] United States v. Quaintance, 608 F.3d 717 (10th Cir. 2010) where the Tenth Circuit reaffirmed that sincerity of belief must be established *before* the protections of the RFRA [or, arguably the First Amendment] can be invoked. Members of the current LDS First Presidency have all held top leadership positions in the Church since the mid-1980s—Nelson and Oaks as members of the Quorum of the 12 Apostles; Eyring in the CPB, and later in the Q12. Therefore, during the life of Plaintiff LAURA GADDY, and, upon information and belief, most of the adult lives of many if not most of the others in the putative Class, these men are those whose beliefs control & inform Correlation.

from RFRA's protection. Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 717–18, 134 S. Ct. 2751, 2774, 189 L. Ed. 2d 675 (2014). And that determining sincerity is an important task because "a corporation's pretextual assertion of a religious belief in order to obtain an exemption under RFRA [or, the Free Exercise clause of the First Amendment] for financial reasons would fail." (internal citations omitted). Burwell, 573 U.S. at 717.

   2.   Establishment Clause Case Law Has Not been Extended to Protect Fraud.

Notwithstanding dicta in Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 655 (10th Cir. 2002) purporting to allow churches an almost *carte blanche* immunity from tort actions where ecclesiastical activity is concerned, the real issue in this case is whether "Lying for the Lord" to the extent that it rises to the level of fraud, is a protected exercise within the CAD, which has historically been limited to the choice of ministers (as was the case even in Bryce, 289 F.3d 648, where the issue involved the extent and scope of discussion about the qualifications of Plaintiff, a youth minister, where any alleged sexual harassment would likely be a result of negligent, as opposed to intentional conduct), and church real property disputes.

Thus, even under the Establishment Clause prong of the First Amendment, Plaintiff argues that CAD should not now be expanded to protect a religious organization's sanctioned lies—intentional and material misrepresentations of fact, or material factual omissions—not belief, doctrine or faith, upon which members and potential members rely to their detriment and damage. That is, under current case law there is no blanket exemption for a religious organization from a law of general applicability (selection of clergy and real property disputes excepted)—here, civil fraud laws—just because the defendant is a religious organization.

From Gonzalez v. Roman Catholic Archbishop of Manila, 280 U.S. 1, 50 S. Ct. 5, 74 L. Ed. 131 (1929), abrogated by Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich, 426 U.S. 696, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976) onward, the Supreme Court continues to suggest there is no protection from judicial scrutiny for cases alleging fraud. Jones v. Wolf, 443 U.S. 595, 609, 99 S. Ct. 3020, 3028, 61 L. Ed. 2d 775 (1979). Regardless of whether the statements and omissions are characterized as fact, belief, or doctrine, Defendant should not have it both ways: it cannot avail itself of the protection of the First Amendment by arguing that its statements are statements of belief or doctrine where the substance of those statements are not sincerely believed. For, as the Supreme Court has recently held in the context of a securities fraud case, every statement, even of opinion [synonymously, belief], is evidence of at least one fact—the state of mind of the person who makes the statement. Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 184, 135 S. Ct. 1318, 1326, 191 L. Ed. 2d 253 (2015).

While *Bryce* compares CAD to *qualified* immunity, public policy would be ill-served to allow *blanket* immunity from tort law for religious organizations; it certainly was not what the original authors of the First Amendment intended.[4] Courts are recognizing that the right of priests to abuse the children of members of a religious organizations is not defensible under the First Amendment. As Professor Marci Hamilton, leading church/state scholar and Chair in Public Law at the Benjamin N. Cardozo School of Law, Yeshiva University, has argued:

---

[4] "What, then, does the Establishment Clause protect that other constitutional provisions do not? Simply put, the Establishment Clause's 'wall of separation between church and state' is what keeps religion out of government." Sophia Chua-Rubenfeld, Frank J. Costa, Jr., The Reverse-Entanglement Principle: Why Religious Arbitration of Federal Rights Is Unconstitutional, 128 Yale L.J. 2087, 2107 (2019) (quoting Thomas Jefferson--internal citation omitted).

> To say that religious liberty must encompass the right to harm others is to turn the First Amendment on its head…society should not have to pretend that religious organizations do not engage in socially dangerous behaviors, and, therefore, suffer the harmful consequences of their unchecked behaviors.[5]

### B. Leave shall be Freely Granted Absent Abuse or Undue Prejudice.

Though in the trial court's discretion, leave to amend shall be freely granted when:

> (Internal citations omitted) In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Polin v. Dun & Bradstreet, Inc., 511 F.2d 875, 877 (10th Cir. 1975)

### C. Grounds for Amendment: Omitted facts & New Cause of Action

### Based on the Same Set of Facts.

During oral argument there was a discussion wherein Plaintiff's counsel argued that she could plead additional facts indicating Defendant's lack of a sincere belief in the statements at issue, characterized as facts by Plaintiff and initially as beliefs by COP. Then the Court asked: "If I were to allow you to amend, how much time you would need—30 days?" The undersigned responded with "45 days." Wherefore, Plaintiff brings this motion within that time period, and as allowed by the Court in its subsequent Order.

Additionally, the new cause of action for violation of the *Utah Charitable Solicitations Act* (p. 10), is based upon the same set of facts alleged in the Complaint's other causes of action. See: The Wilderness Soc'y v. Kane Cty., Utah, 470 F. Supp. 2d 1300, 1308–09 (D. Utah 2006).

---

[5] Marci A. Hamilton, Marci A. Hamilton, Marci A. Hamilton, The Waterloo for the So-Called Church Autonomy Theory: Widespread Clergy Abuse and Institutional Cover-Up, 29 Cardozo L. Rev. 225, 237 (2007).

## III. CHANGES IN THE REVISED [PROPOSED] AMENDED COMPLAINT IDENTIFIED.

### A. Sincerity.

Plaintiff submits in the revised [proposed] Amended Complaint a more concise statement of facts (balancing the requirement that fraud must be pleaded with specificity), which includes additional facts addressing an element of Plaintiff's prima facie case for fraud that Defendant did not believe the statements it was making, and, lacked "sincerity of belief" in those statements, a requisite element of Defendant's First Amendment affirmative defense.[6]

### B. Duty of Full Disclosure.

Plaintiff has also withdrawn her claim for breach of fiduciary duty, only to the extent that such a duty is broader than a duty of full disclosure, and replaced it in the revised [proposed] Amended Complaint with a claim for breach of the duty of full disclosure. At oral argument, the Court pointed out that the finding of a duty of disclosure had been limited to commercial transactions in Utah.

Plaintiff's second cause of action is one for fraud in the inducement to contract based upon Plaintiff's and other similarly situated former Mormons' agreement to pay 10% of their income in consideration for temple access, or to join the LDS Church. Certainly, material omissions casting serious doubt on the claimed source of the Church's scripture, had they been disclosed, would affect the decision of a reasonable person to pay of a full tithe. Thus, in that context, the transaction between Plaintiff, the members of the putative Class and COP is a

---

[6] Recently, the Tenth Circuit upheld a dismissal where plaintiff failed to offer "grounds for the requested amendment" or "how Plaintiffs would amend their complaint to provide necessary, but omitted, factual background." Vincent v. Utah Plastic Surgery Soc., 621 F. App'x 546, 551 (10th Cir. 2015).

commercial transaction. There is the requisite consideration. The transaction is in fact a *quid pro quo*. Plaintiff's Fourth Cause of Action for Fraudulent Concealment also requires such a duty.

C. **Violation of the *Utah Charitable Solicitations Act.***

Plaintiff also adds a cause of action for violation of the *Utah Charitable Solicitations Act*, which requires the Church (who, though not required to register, must comply with the Act) in "connection" with any solicitation, to disclose "material facts necessary to make statements made, in the context of the circumstances under which they are made, not misleading." Utah Code Ann. § 13-22-13. Connection means in relation to.

This Court has recognized that "…the First Amendment does not protect fraud, including fraudulent statements in charitable solicitations." United States v. Corps. for Character, L.C., 116 F. Supp. 3d 1258, 1266–68 (D. Utah 2015). The Tenth Circuit has likewise found that fraud may lie in the context of a narrowly drawn charitable solicitations statute where prior content approval is not required. "A narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what message residents will hear, may serve these important interests without running afoul of the First Amendment." Espinosa v. Rusk, 634 F.2d 477, 481–82 (10th Cir. 1980), aff'd, 456 U.S. 951, 102 S. Ct. 2025, 72 L. Ed. 2d 477 (1982).

The correlated versions of material information provided to Mormons do not include the material facts necessary in order to allow these members to decide to donate. Additionally, lies were told by COP's agents with respect to its use and/or intended us of tithing principal.

The *Utah Charitable Solicitations Act* is a neutral law of general applicability. It would not cause entanglement because it is only after the law is violated that an action for fraud or for

failure to disclose material information can be brought. There is no prescreening, or preemptive winnowing by state officials of those subject to the Act, or of the content of their solicitations.

### D. Material Omissions do Not Require Adjudication of Truth or Falsity

In its Order, the Court incorrectly stated the law as to material omissions in the context of a fraudulent concealment claim: "However, the Utah Supreme Court has clarified that the party's silence that renders it liable for fraudulent concealment "must amount to fraud[.]" McDougal v. Weed, 945 P.2d 175, 179 (Utah Ct. App. 1997)." (Order Granting Motion to Dismiss, ECF, #33, note 73). This quotation from *McDougal* is incomplete. Immediately following what is cited by the Court is this statement: "Making use of a device that misleads, some trick or contrivance that is intended to exclude suspicion and prevent inquiry, may also amount to fraudulent concealment." Jensen v. IHC Hosps., Inc., 944 P.2d 327, 333 (Utah 1997), on reh'g (Aug. 22, 1997), on reh'g (Aug. 22, 1997), on reh'g (Aug. 22, 1997) (citations omitted), *reh'g granted on other grounds,* 324 Utah Adv. Rep. 20 (Utah 1997). McDougal, 945 P.2d at 179. This is exactly what COP has done to its members and potential members throughout at least half a century.

The material omissions aspect of fraud does not require adjudication of the truth or falsity of the statements made by COP through its agents; neither is there a necessary "standard of care" to be determined. In order to violate both the Act and to impose a duty of full disclosure, the standard is whether a reasonable person would consider the omitted information important to its decision with respect to the other party.[7] The reasonableness standard [as is the sincerity issue] is

---

[7] The Utah Supreme Court ("SCOUT") has held that a developer-builder may owe his buyer a duty to disclose information known to him concerning real property "…when that information is material to the condition of the property purchased[.]" Yazd v. Woodside Homes Corp., 2006 UT 47, 143 P.3d 283, 289. The Court identified that certain equitable factors should be considered in order to determine whether a duty to disclose arises, all of which are present in the case at bar. Id. at 56; see also Mitchell v. Christensen, 2001 UT 80, 31 P.3d 572 (finding duty to disclose where nothing in buyer's inspection would have put buyer on notice of a defective pool).

12

inevitably fact dependent, and should be reserved for the jury where material facts are disputed. Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001).

### E. Material Omissions Satisfy the Predicate Acts of Fraud under RICO.

The predicate acts of mail and wire fraud do not require a fiduciary duty in order to disclose material facts; omissions of material fact as part of a scheme to take plaintiff's property is sufficient. United States v. Allen, 554 F.2d 398, 410–11 (10th Cir. 1977); See also Bradford v. Moench, 670 F. Supp. 920, 925–926 (D. Utah 1987) holding "[t]o the degree plaintiffs' RICO claims are based on mail fraud, 18 U.S.C. § 1341, concealment may be a basis for a "scheme to defraud," and support such a claim."[8]  Thus, as to the predicate act element, a RICO claim is supportable on the facts alleged in the revised [proposed] Amended Complaint.

### F. Relevance of the Newly Discovered Fraudulent Statements re: Tithing Use.

Finally, the revised [proposed] Amended Complaint also includes factual allegations that COP's use of tithing is not what it represents, which information was only recently disclosed by the IRS Whistleblower Complaint in late 2019, after filing the GADDY Original Complaint.

Allegations that part of COP's scheme to defraud include how the 10% of Plaintiff's and the potential Class's income, paid as tithing, would be used are included as part of their claims and as evidence that Defendant's key leaders do not believe what they teach—their motive is financial. Representations that tithing had not been and would not be used for profit-making businesses were made to Plaintiff and the Class, all of whom have relied on Church

---

[8] The federal wire fraud statute is essentially identical to the mail fraud statute; case law interpreting one is often applied to the other.

representations that their donations would be used for that which is indicated on the tithing slips.[9]

Furthermore, such misrepresentations support a RICO claim with mail and wire fraud predicate acts, since reliance is not a requirement.[10] These allegations also support Plaintiff's allegations of COP's general pattern and practice of lying to its members/potential members about material facts and that COP's agents don't believe their own rhetoric as set forth in the propaganda that they disseminate.

---

[9] See below comparison of tithing slips before and after 2012, the year City Creek Mall opened. The disclaiming language is set forth in the fine print at the bottom of the slips, now giving COP sole discretion on donated funds.
[10] "Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim…" Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 655–57, 128 S. Ct. 2131, 2142–44, 170 L. Ed. 2d 1012 (2008).

## IV.     CONCLUSION

This case is in the early pleading stage.  Indeed, according to Fed. R. Civ. P. 7(a), and relevant case law thereunder, no responsive pleading has been filed. It is highly doubtful that Defendant could show any undue prejudice by allowing the attached revised [proposed] Amended Complaint to be filed.

Wherefore, it is respectfully requested that the Court grant Plaintiff's Motion and order the attached revised [proposed] Amended Complaint filed *nunc pro tunc*, with relation back to the filing date of Plaintiff's Original Complaint, that is, August 5, 2019.

Respectfully Submitted,

Dated: the 28th of April 2020               by: /s/ *Kay Burningham*

Kay Burningham
kay@kayburningham.com
299 S. Main St., Suite #1375
Salt Lake City, Utah 84111

*Attorney for Laura A. Gaddy and the Class*