David J. Jordan (1751)
david.jordan@stoel.com
Wesley F. Harward (15623)
wesley.harward@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone:  801.328.3131

*Attorneys for Defendant Corporation of the*
  *President of The Church of Jesus Christ of*
  *Latter-day Saints*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>          Defendant. | **MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Case No. 2:19-cv-00554-RJS<br><br>The Honorable Robert J. Shelby |

Corporation of the President of The Church of Jesus Christ of Latter-day Saints (the "Church") moves to dismiss Plaintiff Laura A. Gaddy's "Amended Class Action Complaint" (the "Amended Complaint") (Docket 37) with prejudice (the "Motion") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 3

SUMMARY OF RELEVANT ALLEGATIONS ................................................. 5

    A.    The Church's Teachings About Joseph Smith's First Vision, the
         Book of Mormon, and the Book of Abraham. ..................................... 5

    B.    New Allegations About the Church's Teachings on Polygamy,
         Tithing, and the Geographic Location of Places Described in
         the Book of Mormon. ....................................................................... 8

    C.    Ms. Gaddy's Beliefs. ........................................................................ 9

LEGAL STANDARD ......................................................................................... 9

ARGUMENT .................................................................................................... 10

I.     THE FIRST AMENDMENT BARS COURTS FROM INQUIRING
      INTO DISPUTES GROUNDED IN RELIGIOUS BELIEF AND
      CHURCH ADMINISTRATION. ................................................................... 10

II.    THE FIRST AMENDMENT REQUIRES DISMISSAL OF EVERY
      ONE OF MS. GADDY'S CLAIMS. ............................................................. 11

    A.    Ms. Gaddy's claims based on allegations regarding Joseph
         Smith's First Vision, the Book of Mormon, and the Book of
         Abraham must be dismissed. .............................................................. 12

    B.    Ms. Gaddy's new allegations are equally rooted in religious
         belief and must be dismissed. ............................................................. 13

    C.    Ms. Gaddy's remaining claims should be dismissed. ......................... 18

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................7, 8

*Bryce v. Episcopal Church in the Diocese of Colo.*,
   289 F.3d 648 (10th Cir. 2002) ..........................................................8

*Peterson v. Shanks*,
   149 F.3d 1140 (10th Cir. 1998) ........................................................8

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l
   Presbyterian Church*,
   393 U.S. 440 (1969) ..........................................................9, 12, 13, 15

*Serbian E. Orthodox Diocese for U.S.A. & Can. v. Milivojevich*,
   426 U.S. 696 (1976) ...........................................................................9

*Stone v. Salt Lake City*,
   356 P.2d 631 (Utah 1960) ................................................................13

**Statutes**

Utah Code § 13-22-3, -4 ........................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................7

**Constitutional Provisions**

U.S. Const. amend. I ..............................................................................8

**Other Authorities**

Black's Law Dictionary, *tithe* (11th ed. 2019) ......................................14

2

## INTRODUCTION

Ms. Gaddy once again attempts to use this Court as a forum for airing her *religious* grievances with the Church.  The Amended Complaint is little more than a hodgepodge of criticisms of the Church and its teachings.  Ms. Gaddy criticizes everything from the Church's leadership structure, teachings, and scriptural interpretation to its art, films, and even children's toys.  She cites to and quotes disaffected former Church members and anti-Mormons.  She is, of course, entitled to her religious beliefs.  But she is not entitled to use this Court to spread those beliefs or to force the Church to defend its religious teachings.

This Court's Memorandum Decision and Order Granting Defendant's Motion to Dismiss (the "Order") (Docket 33) was clear.  Courts may not "adjudicate fraud claims implicating religious facts."  Order at 13.  This Court specifically held that it "can no more determine whether Joseph Smith saw God and Jesus Christ or translated with God's help gold plates or ancient Egyptian documents, than it can opine on whether Jesus Christ walked on water or Muhammed communed with the archangel Gabriel.  The First Amendment prohibits these kinds of inquiries in courts of law."  *Id.* at 12.

Ms. Gaddy's Amended Complaint simply disregards the Court's ruling. She once again bases her claims on the following teachings she attributes to the Church:[1]

1. Joseph Smith's "account of a vision he experienced in 1820 . . . detailed the appearance of two separate personages, God the Father and His Son, Jesus Christ."  Am. Compl. ¶ 133.

2. "Joseph Smith Jr. translated writing inscribed on gold plates by ancient American immigrants of Hebrew origin and that transcription became the Book of Mormon manuscript."  Am. Compl. ¶ 130.

3. "The Hebrew prophet Abraham wrote the inscriptions on the 1967 recovered papyrus . . . which is the source of the Book of Abraham. The facsimiles contained within the Book of Abraham depict the Hebrew prophet Abraham and/or events in his life."  Am. Compl. ¶ 131.

Her claims based on these allegations must be dismissed—again.

---

[1] Ms. Gaddy has not accurately characterized aspects of the Church's teachings in her Amended Complaint.  But, for purposes of this Motion, those mischaracterizations are immaterial.

It is unclear from the Amended Complaint exactly how the other criticisms Ms. Gaddy levels at the Church are, if at all, related to her claims. It appears, however, that in addition to her allegations about Joseph Smith's First Vision, the Book of Mormon, and the Book of Abraham, Ms. Gaddy now asserts claims related to the Church's teachings about polygamy, tithing, and the location of places described in the Book of Mormon. But those claims are just as ecclesiastically based as the ones raised in her original complaint. They are, therefore, barred by the First Amendment.

The holding of the Court's Order is as applicable to the Amended Complaint as it was to the original complaint. Accordingly, Ms. Gaddy's Amended Complaint should be dismissed with prejudice.

## SUMMARY OF RELEVANT ALLEGATIONS

A. **The Church's Teachings About Joseph Smith's First Vision, the Book of Mormon, and the Book of Abraham.[2]**

The Church of Jesus Christ of Latter-day Saints is a Christian faith founded by Joseph Smith in 1830. Am. Compl. ¶ 43; Compl. ¶ 50. According to Church

---

[2] This entire subsection is taken verbatim from the "Summary of Relevant Allegations" included in the Church's original Motion to Dismiss (Docket 6). To further illustrate that the basis of Ms. Gaddy's claims remain unchanged, this section includes references to both the Amended Complaint and the original complaint.

scripture, in the spring of 1820, Joseph Smith entered a grove of trees near his home to pray and seek spiritual guidance.  Am. Compl. ¶ 47; Compl. ¶ 64; *see also Joseph Smith—History* 1:1-20.  Both God and Jesus Christ appeared in a pillar of light in response to Joseph Smith's prayer.  Am. Compl. ¶¶ 80, 82, 84; Compl. ¶¶ 64, 183; *see also Joseph Smith—History* 1:1-20.  This event is known in the Church as the "First Vision."  It was at that time that Joseph Smith received a prophetic calling to restore Jesus Christ's full gospel to the earth.  Am. Compl. ¶ 82; Compl. ¶ 64; *see also Joseph Smith—History* 1:1-20.

A few years later, the prophet Joseph Smith was visited by an angel who informed him of a book of scripture, written on gold plates, that contained the teachings of ancient prophets who lived in the Americas.  Am. Compl. ¶ 49; Compl. ¶¶ 77-79; *see also Joseph Smith—History* 1:27-65.  Eventually, the angel entrusted Joseph Smith with the plates and he translated them into English by the power of God.  Am. Compl. ¶ 49; Compl. ¶ 79; *see also Joseph Smith—History* 1:27-67.  The result of this work is the Book of Mormon.  Am. Compl. ¶ 49; Compl. ¶ 79; *see also Joseph Smith—History* 1:27-65.  The Book of Mormon is part of the Church's canonical scripture.

The Book of Abraham is also part of the Church's canonical scripture.  As the name suggests, the Book of Abraham contains teachings of the Old Testament

prophet Abraham.  Am. Compl. ¶ 50; Compl. ¶ 93; *see also Introductory Note* to t*he Pearl of Great Price*.  It originated with Egyptian papyri that Joseph Smith translated beginning in 1835.  Am. Compl. ¶¶ 50, 82, 88; Compl. ¶¶ 92-95; *see also Introductory Note to the Pearl of Great Price*.

Since its founding, the Church has preached the gospel of Jesus Christ.  The worldwide Church is led by the First Presidency, consisting of the President of the Church and his two counselors.  Am. Compl. ¶ 19; Compl. ¶ 15.  The Church is also led by the Quorum of the Twelve Apostles.  Am. Compl. ¶ 19; Compl. ¶ 16.  Local Church congregations are led by volunteer lay leaders who donate their time and efforts to serve their faith.  Am. Compl. ¶¶ 20-21, 27; Compl. ¶¶ 18-21.  The Church also engages in widespread missionary efforts throughout the world.  Am. Compl. ¶ 27; Compl. ¶ 125.  Thousands of missionaries, many of whom are young men and women, spread the gospel through sharing a message of faith in Jesus Christ and giving service.  Am. Compl. ¶ 27; Compl. ¶ 125.  These missionaries teach the doctrines foundational to the Church, including Joseph Smith's prophetic calling and the Book of Mormon.  Am. Compl. ¶ 70; Compl. ¶¶ 125-30.

**B.     New Allegations About the Church's Teachings on Polygamy, Tithing, and the Geographic Location of Places Described in the Book of Mormon.**

Ms. Gaddy alleges that the Church falsely taught her—based on pageants (i.e., theatrical productions) that the "Hill Cumorah" (a location described in the Book of Mormon) was in upstate New York, but in reality the Church "has no opinion on the location of any of the places in the Book of Mormon."  Am. Compl. ¶¶ 69, 132, 138.

She also alleges that President Gordon B. Hinckley (the Church's highest ecclesiastical leader at the time) stated the following in reference to polygamy: "I condemn it yes, as a practice, because I think it is not doctrinal."[3]  Am. Compl. ¶ 75.  She alleges that this is false because the Doctrine and Covenants (another book of the Church's scripture) permits polygamy.  *Id.*

Ms. Gaddy's Amended Complaint also includes scattered paragraphs complaining about the Church's collection and use of tithing, including its investments, which she views as improper.  She alleges, for example, that members

---

[3] Ms. Gaddy's quotation is grossly misleading and omits key aspects of President Hinckley's statements.  He was responding to questions about individuals currently practicing polygamy.  He was not denying that Church members used to practice polygamy.  Indeed, he explained that the Church abandoned the practice "118 years ago" as directed by one of President Hinckley's predecessors.

of the Church pay tithing "to join the Church" and "for the right to participate in temple ceremonies which promise intact families that are to last throughout eternity" *Id.* ¶ 4. She also alleges that Church members contribute tithing because they believe the Church's teachings regarding, among other things, Joseph Smith and the Book of Mormon. *Id.* Ms. Gaddy alleges that but for the Church's teachings about Joseph Smith and the Book of Mormon, members would not pay tithing. *Id.* ¶¶ 4, 176.

## C.    Ms. Gaddy's Beliefs.

Ms. Gaddy is a former member of the Church. Am. Compl. ¶ 100. In 2018, Ms. Gaddy lost her faith in the Church's teachings and resigned her membership. Am. Compl. ¶¶ 114-17. Ms. Gaddy now believes that Joseph Smith did not see God and Jesus Christ in 1820, that the Book of Mormon was not translated from gold plates, and that the Book of Abraham is untrue. Am. Compl. ¶¶ 114-17.

## LEGAL STANDARD

The Church moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "[O]nly a complaint that states a

*plausible* claim for relief survives a motion to dismiss." *Id.* at 679 (emphasis added).  And a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citation omitted).  Ms. Gaddy's Amended Complaint against the Church must be dismissed.

## ARGUMENT

### I.   THE FIRST AMENDMENT BARS COURTS FROM INQUIRING INTO DISPUTES GROUNDED IN RELIGIOUS BELIEF AND CHURCH ADMINISTRATION.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I.  The United States Supreme Court has long held that "the truth or falsity of religious beliefs are beyond the scope of judicial review."  Order at 8.  "In what has become known as the church autonomy doctrine, courts have recognized 'the fundamental right of churches to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Id.* at 9 (emphasis omitted) (quoting *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 655 (10th Cir. 2002)).

The precedential origins and history of the church autonomy doctrine are set forth both in the Church's original motion to dismiss and this Court's Order and

10

will not be repeated here.  (Dockets 6 & 33.)  Briefly summarized, the church

autonomy doctrine prohibits courts from "engag[ing] in the forbidden process of

interpreting and weighing church doctrine."  *Presbyterian Church in U.S. v. Mary*

*Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969).  The

principle of church autonomy is not narrowly limited to questions of religious

doctrine.  It "applies with equal force to church disputes over church polity and

church administration."  *Serbian E. Orthodox Diocese for U.S.A. & Can. v.*

*Milivojevich*, 426 U.S. 696, 710 (1976).  "In short, . . . courts may not inject

themselves into resolving ecclesiastically based disputes."  Order at 8.

## II.    THE FIRST AMENDMENT REQUIRES DISMISSAL OF EVERY ONE OF MS. GADDY'S CLAIMS.

Ms. Gaddy again asserts various fraud-based claims against the Church.  She

includes a laundry list of allegedly "false statements" about the Church's "key

history" as the basis of her claims.  She alleges that the Church "has engaged and

continues to engage in a deceptive scheme to distort and omit material facts about

[its] key history."  Am. Compl. ¶ 2.  Those allegations fall into two categories.

First, allegations that formed the basis of the fraud claims Ms. Gaddy asserted in

her original complaint—Joseph Smith's First Vision, the Book of Mormon, and the

Book of Abraham.  Second, fraud claims based on new allegations about other

Church teachings.  The Church addresses each category in turn.  The Church will then address Ms. Gaddy's remaining claims.

**A.     Ms. Gaddy's claims based on allegations regarding Joseph Smith's First Vision, the Book of Mormon, and the Book of Abraham must be dismissed.**

Ms. Gaddy's Amended Complaint largely repeats the same basic allegations she raised in her original complaint.  She once again alleges that the Church's *religious* teachings about Joseph Smith, the Book of Abraham, and the Book of Mormon are false.  Am. Compl. ¶¶ 68-91, 129-35.  Indeed, much of Ms. Gaddy's Amended Complaint is devoted to listing examples of *how* the Church has taught its doctrine regarding the First Vision, the Book of Mormon, and the Book of Abraham.  Ms. Gaddy refers to Church pageants, films, missionary materials, art kits, and public statements to show that the Church *really does* teach that God and Jesus Christ appeared to Joseph Smith, that the Book of Mormon was translated by the power of God, and that the Book of Abraham is true scripture.

In reasserting these allegations, Ms. Gaddy blatantly ignores this Court's prior ruling.  This Court held that it "can no more determine whether Joseph Smith saw God and Jesus Christ or translated with God's help gold plates or ancient Egyptian documents, than it can opine on whether Jesus Christ walked on water or

Muhammed communed with the archangel Gabriel.  The First Amendment prohibits these kinds of inquiries in courts of law."  Order at 12.

Just as with the original complaint, these fraud claims depend on Ms. Gaddy's proving that the Church's teachings are *false*.  And the key element of a fraud claim is, unsurprisingly, falsity.  *See Id.* at 16.  But neither this Court, nor a jury, can opine on the truth or falsity of the Church's religious teachings.  Thus Ms. Gaddy's fraud claims related to the First Vision, the Book of Mormon, and the Book of Abraham fail and must (again) be dismissed.

**B.    Ms. Gaddy's new allegations are equally rooted in religious belief and must be dismissed.**

Ms. Gaddy's Amended Complaint is sprinkled with new allegations about "false statements" beyond those related to the First Vision, the translation of the Book of Mormon, and the Book of Abraham.  These include allegations about Church leaders' statements concerning polygamy, the geographic location of places described in the Book of Mormon, and the Church's teachings and practices regarding tithing.  To the extent Ms. Gaddy bases her claims on these allegations, they must be dismissed.[4]  They are just as "ecclesiastically based" as her

---

[4] The Amended Complaint does not make clear whether or how the causes of action asserted are based on these allegations as distinct from the allegations regarding Joseph Smith, the Book of Mormon, and the Book of Abraham.

allegations regarding Joseph Smith, the Book of Mormon, and the Book of Abraham. *Id.* at 8.  They are inextricably intertwined with her allegations about the falsity of the Church's other doctrines and teachings.  These claims are therefore barred by the First Amendment.

The United States Supreme Court case *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* is instructive.  In that case, a dispute arose between two local churches and the general church concerning control of certain properties. 393 U.S. at 442.  At that time, "Georgia law implie[d] a trust of local church property for the benefit of the general church on the sole condition that the general church adhere to its tenets of faith and practice existing at the time of affiliation by the local churches." *Id.* at 443.  Thus, the issue for the jury was whether the "actions of the general church 'amount[ed] to a fundamental or substantial abandonment of the original tenets and doctrines of the (general church).'" *Id.* at 443-44.

The Supreme Court unanimously held that this "departure-from-doctrine" test violated the First Amendment.  It explained "the departure-from-doctrine element . . . requires the civil court to determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of

those doctrines to the religion.  Plainly, the First Amendment forbids civil courts from playing such a role."  *Id.* at 450.

 That is exactly the forbidden role Ms. Gaddy asks this Court to play.  She wants this Court (or a jury) to determine whether President Hinckley's statements about polygamy, the Church's practices regarding the use of tithing,[5] and Church leaders' statements about the Hill Cumorah are consistent with the Church's scripture and official teachings.  To accomplish this, the Court would need to review the Church's scriptures, statements from Church leaders, and other publications from the Church to determine the "orthodox" teachings about polygamy, the Hill Cumorah, and the proper use of tithing.  It would then need to opine on whether the Church's practices are consistent with its religious teachings.

---

[5] To the extent Ms. Gaddy seeks to find fault with the fact that the Church invests a portion of its donations in for-profit enterprises rather than using them immediately for religious and charitable purposes, the Utah Supreme Court has already addressed that issue.  It explained: "[I]t  is obvious that all of the funds the Church collects would not be disbursed immediately and directly for such purposes.  It is but common sense and common knowledge that there is need for the exercise of management of such funds for the ultimate accomplishment of the purposes stated.  How this is to be done to best serve those objectives is for those in charge of the management of the Church to decide.  It may well entail the keeping of collected funds in savings accounts, bonds, real estate or any type of investment which, in the judgment of those in charge, best suits that purpose." *Stone v. Salt Lake City*, 356 P.2d 631, 633-34 (Utah 1960)

There is simply no way to do this that is consistent with the First Amendment because each inquiry is inherently *religious*.

Take tithing, for example. Tithing is rooted in the Bible. The prophet Malachi declared: "Bring ye all the tithes into the storehouse, that there may be meat in mine house, and prove me now herewith, saith the Lord of hosts, if I will not open the windows of heaven, and pour you out a blessing, that there shall not be room enough to receive it." *Malachi* 3:10, *The Bible* (King James). Jesus Christ reiterated that promise in words recorded in the Book of Mormon. *See 3 Nephi* 24:10, *Book of Mormon*; *see also* Black's Law Dictionary, *tithe* (11th ed. 2019) (defining "tithe" as "[a] tenth of one's income, esp. in reference to a religious or charitable gift").

Tithing is commanded in a revelation recorded in another book of the Church's scripture, the Doctrine and Covenants. *See Doctrine and Covenants* 119:4 ("And after that, those who have thus been tithed shall pay one-tenth of all their interest annually; and this shall be a standing law unto them forever, for my holy priesthood, saith the Lord."). The disposition of tithing is similarly governed by the Doctrine and Covenants and is to occur by inspiration from God. *See Doctrine and Covenants* 120:1 ("[I]t shall be disposed of by a council, composed

of the First Presidency of my Church, and of the bishop and his council, and by my high council; and by mine own voice unto them, saith the Lord.").

The Church's teachings about tithing (and its proper uses) are not limited to its canonized scripture. Leaders of the Church have, for many years, taught the principle of tithing from the pulpit, including in the Church's semi-annual worldwide conferences. *See* Am. Compl. ¶ 79. The Church has also taught about tithing in countless other publications, each of which would be implicated by Ms. Gaddy's claims. Examination of these teachings would impermissibly entangle this Court in an ecclesiastical dispute—the proper use of the Lord's tithing funds. This process of "interpreting and weighing" the Church's teachings is "forbidden" by the First Amendment. *Presbyterian Church*, 393 U.S. at 451.

In addition, Ms. Gaddy's claims would also require the Court or a jury to determine which of the Church's teachings on tithing were "material" and on what statements Ms. Gaddy relied when making donations. Her own allegations demonstrate that these inquiries are hopelessly entangled with religious questions.

She alleges, for example, that the Church teaches that paying tithing is necessary to receive the blessings of temples—including eternal families. Am. Compl. ¶ 4. And she alleges that people pay tithing because of their belief in the Church's teachings about Joseph Smith and the Book of Mormon. *Id*. In short,

Ms. Gaddy's own allegations reveal that tithing itself (and the reasons people donate tithing) is inherently "rooted in religious belief."  Order at 13.

The same is true for Ms. Gaddy's claims about polygamy and the Hill Cumorah.  Each is just as rooted in the Church's religious teachings as the First Vision, the Book of Mormon, and the Book of Abraham.  All of Ms. Gaddy's fraud claims based on these allegations are, therefore, barred by the First Amendment and should be dismissed.

## C.    Ms. Gaddy's remaining claims should be dismissed.

In addition to her fraud claims, Ms. Gaddy asserts claims for "Breach of the Duty of Full Disclosure,"[6] "Violation of the Utah Charitable Solicitations Act,"[7] "Civil RICO," and "Intentional (Reckless) Infliction of Emotional Distress."  But, as the Court held in its Order, these claims are derivative of and depend upon her

---

[6] Ms. Gaddy has renamed her former breach of fiduciary duty claim as one for "Breach of the Duty of Full Disclosure."  But this change in name does not rescue the claim.  This Court's Order expressly addressed and rejected that theory. *See* Order at 18-20.

[7] Ms. Gaddy's claim for "Violation of the Utah Charitable Solicitations Act" also fails because that statute does not create a private cause of action.  Rather, enforcement is left to the Utah Attorney General's Office and the Division of Consumer Protection.  *See* Utah Code § 13-22-3, -4.

fraud allegations.  Order at 16-19 (discussing the interrelatedness of Ms. Gaddy's

claims).  As her fraud claims fail, her remaining claims must be dismissed.

## CONCLUSION

Each of Ms. Gaddy's claims is barred by the First Amendment.

Accordingly, the Church's Motion should be granted, and the Amended Complaint

should be dismissed with prejudice.

DATED:  June 1, 2020

STOEL RIVES LLP


*/s/ Wesley F. Harward*
David J. Jordan
Wesley F. Harward

*Attorneys for Defendant Corporation of
the President of The Church of Jesus
Christ of Latter-day Saints*