Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main St., #1375
Salt Lake City, Utah 84111
Phone: 1.888.234.3706

*Attorney for Laura A. Gaddy and the Class.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole.<br><br>*Defendant* | OPPOSITION TO MOTION TO DISMISS<br><br>AMENDED COMPLAINT<br><br>(Oral Argument Requested)<br><br>(DEMAND FOR JURY TRIAL)<br><br>2:19-cv-00554-RJS--DBP<br><br>Presiding Judge: Robert J. Shelby<br><br>Magistrate Judge: Dustin B. Pead |

**TABLE OF CONTENTS**

**I.   The Amended Complaint Challenges Defendant's Deceptive Recruitment and Indoctrination Practices, Conduct, not Belief.** ........................................................................**5**

**II   Absent a Recognized Exception, Defendant's Conduct is Subject to Neutral Laws of General Applicability. Only Those Who have Consented are Bound by Church Governance. Fraud in the Inducement Vitiates such Consent.** ...........................................**7**

   A.   Church Autonomy Cases are Extremely Limited Exceptions to Smith's Rule. ......................... 8

   B.   Where no Consent is Given, one is not subject to Internal Church Governance. ...................... 9

   C.   Actions Subject to Autonomy must be Morally Sound, Free from Fraud and Effected with Consent. ........................................................................................................ 10

**III Assuming, Arguendo, that *Yoder* Applies to the Case at Bar, i.e., that Fraud laws Unduly Burden COP's Free Exercise, a Neutral Law Enacted for a Compelling State**

**Interest may yet be Upheld where it is the Least Restrictive Means of Accomplishing that Interest.** ........................................................................................................**12**

**IV.  Yoder Requires Balancing. Protecting the Public from Fraud is a Compelling State Interest. Compliance with Fraud Laws is a Minimal Burden.** ...................................**13**

    A.   Fraud Laws Protect a Compelling State Interest. ....................................................... 13

    B.   Any Imposition on Religious Exercise by Compliance with Fraud Laws is Minimal. ........... 15

**V  The First Amendment is an Affirmative Defense, not a Bar. The AC places Sincerity at Issue. Thus, Dismissal on the Pleadings is Inappropriate.** ...........................**16**

    A.   Per the Free Exercise Clause, COP must Demonstrate that a Sincerely Held Religious Belief is Substantially Burdened by Neutral Fraud Laws. Otherwise, its Defense Fails, and the Case can be Tried as any Other.................................................................................................... 16

    B.   Here, the Free Exercise Sincerity Threshold cannot be Determined on the Face of the Complaint; it is a question of Fact for the Jury who can Assess Credibility. .................................. 18

**VI  Even Assuming a Church's Defense is Analogous to Qualified Immunity, 12(B)(6) Dismissal is Inappropriate where Material Fact Issues Exist.**.........................................**20**

**VII  Determining Material Omissions does not Require Adjudication of Truth. A Jury need only Determine Whether a Reasonable Person would want to Know the Omitted Facts Prior to Acting. All AC claims but the First Cause of Action (Common Law Fraud) are Supportable under a Material Omissions Theory.**...........................................**21**

    A.   Second Cause of Action: Breach of Duty of Full Disclosure. ......................................... 22

    B.   Third Cause of Action: Fraud in the Inducement to Enter a Contract ..................................... 22

    C.   Fourth Cause of Action: Fraudulent Concealment........................................................ 23

    D.   Fifth Cause of Action: Violation of Utah Charitable Solicitations Act. ................................. 24

    E.   Sixth Cause of Action: RICO. Material Omissions are Sufficient Predicate Acts.................. 25

**VIII CONCLUSION** .......................................................................................................**26**

Page(s)

## TABLE OF AUTHORITIES

Archdiocese of Washington v. Washington Metro. Area Transit Auth.,
   281 F. Supp. 3d 88 (D.D.C. 2017) ........................................................................ 15
Axson-Flynn v. Johnson,
   356 F.3d 1277 (10th Cir. 2004) ............................................................................ 12
Big Squid, Inc. v. Domo, Inc.,
   2019 WL 3555509 (D. Utah Aug. 5, 2019) ......................................................... 18
Bistline v. Parker,
   918 F.3d 849 (10th Cir. 2019) .............................................................................. 18
Bradford v. Moench,
   670 F. Supp. 920 (D. Utah 1987) ......................................................................... 25

Bryce v. Episcopal Church in the Diocese of Colorado,
  289 F.3d 648 (10th Cir. 2002) ........................................................................ 11, 20
Burwell v. Hobby Lobby Stores, Inc.,
  573 U.S. 682, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) .................................... 17
Cantwell v. State of Connecticut,
  310 U.S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940) ....................................... 6, 19
Doe v. First Presbyterian Church U.S.A. of Tulsa,
  2017 OK 106, 421 P.3d 284 ................................................................................. 10
Employment Div., Dep't of Human Res. of Oregon v. Smith,
  494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) ..................................... 8
Espinosa v. Rusk,
  634 F.2d 477 (10th Cir. 1980).............................................................................. 24
Gonzalez v. Roman Catholic Archbishop of Manila,
  280 U.S. 1, 50 S. Ct. 5, 74 L. Ed. 131 (1929) ..................................................... 11
Grace United Methodist Church v. City Of Cheyenne,
  451 F.3d 643 (10th Cir. 2006)................................................................................ 8
Hartman v. Moore,
  547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006) ................................... 20
Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.,
  565 U.S. 171, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012) ............................ 8, 9, 16
Jeffs v. Stubbs,
  970 P.2d 1234 (Utah 1998) ............................................................................ 13, 14
Jensen v. IHC Hosps., Inc.,
  944 P.2d 327 (Utah 1997) .................................................................................... 23
Jones v. Wolf,
  443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979) ....................................... 11
McDougal v. Weed,
  945 P.2d 175 (Utah Ct. App. 1997) ..................................................................... 22
Medina v. Cram,
  252 F.3d 1124 (10th Cir. 2001).............................................................. 21, 22, 23
Miller v. Shell Oil Co.,
  345 F.2d 891 (10th Cir. 1965).............................................................................. 18
Mitchell v. Christensen,
  2001 UT 80, 31 P.3d 572 ...................................................................................... 21
Molko v. Holy Spirit Assn.,
  46 Cal. 3d 1092, 762 P.2d 46 (1988), as modified on denial of reh'g............................ 6, 14
Mosier v. Maynard,
  937 F.2d 1521 (10th Cir. 1991)............................................................................ 18
Motion to Dismiss (ECF,
  23 p. 19 .................................................................................................................. 10
Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,
  575 U.S. 175, 135 S. Ct. 1318, 191 L. Ed. 2d 253 (2015) .............................. 5, 11
Order of St. Benedict of New Jersey v. Steinhauser,
  234 U.S. 640, 34 S. Ct. 932, 58 L. Ed. 1512 (1914) .............................................. 9

Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,
   393 U.S. 440, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969) ............................ 10, 11
Reynolds v. United States,
   98 U.S. 145, 25 L. Ed. 244 (1878) ....................................................... 8
Schneider v. State of New Jersey, Town of Irvington,
   308 U.S. 147, 60 S. Ct. 146, 84 L. Ed. 155 (1939) ............................. 24
Snyder v. Murray City Corp.,
   124 F.3d 1349 (10th Cir. 1997) ......................................................... 16
Stone v. Salt Lake City,
   11 Utah 2d 196, 356 P.2d 631 (1960) ............................................... 25
United States v. Allen,
   554 F.2d 398 (10th Cir. 1977) ........................................................... 25
United States v. Alvarez,
   567 U.S. 709, 132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012) ............... 12, 20
United States v. Ballard,
   322 U.S. 78, 64 S. Ct. 882, 88 L. Ed. 1148 (1944) .......................... 6, 19
United States v. Corps. for Character, L.C.,
   116 F. Supp. 3d 1258 (D. Utah 2015) ............................................... 24
United States v. Hardman,
   297 F.3d 1116 (10th Cir. 2002) ...................................................... 8, 16
United States v. Meyers,
   95 F.3d 1475 (10th Cir. 1996) ........................................................ 16, 17
United States v. Quaintance,
   608 F.3d 717 (10th Cir. 2010) ........................................................... 17
United States v. Rasheed,
   663 F.2d 843 (9th Cir. 1981) ......................................................... 19, 20
United States v. Seeger,
   380 U.S. 163, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965) ...................... 19
Warner v. City of Boca Raton,
   64 F. Supp. 2d 1272 (S.D. Fla. 1999) ............................................... 12
Watson v. Jones,
   80 U.S. 679, 20 L. Ed. 666 (1871) .................................................... 10
Wisconsin v. Yoder,
   406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) ...................... 12
Yazd v. Woodside Homes Corp.,
   2006 UT 47, 143 P.3d 283 .................................................................. 21
Yellowbear v. Lampert,
   741 F.3d 48 (10th Cir. 2014) ............................................................... 5

Statutes

18 U.S.C.A. § 1341 ....................................................................... 20, 26
U.C.A. § 13-22-4(2) ............................................................................ 25
Utah Code Ann. § 13-22-13 ............................................................... 24

Rules

Fed. R. Civ. P. 12(b) ............................................................................................. 18

Other Authorities

37 Am. Jur. 2d Fraud and Deceit § 145 ................................................................. 23
DUCivR 7-1(a)(3)(A) ............................................................................................ 26

## I.    The Amended Complaint Challenges Defendant's Deceptive Recruitment and Indoctrination Practices, Conduct, not Belief.

COP frames the case as a dispute over belief (mtn. p. 11. [Note: p. refs. are to ECF stamp nos.]).[1] It is not. Plaintiff and the putative class have resigned from the Church. At their core, all the Amended Complaint's (AC) claims are based on fraudulent misrepresentations of material fact, though in a religious context, through correlated

---

[1] Plaintiff argued the distinction between fact and belief in her Opposition to Motion to Dismiss the [original] Complaint (ECF #23). She does not waive that argument but incorporates all arguments therein this Opposition for all purposes. Justice Gorsuch identified the difference between religious fact and belief. "…Faith means belief in something concerning which doubt is still theoretically possible." William James, *The Will to Believe* 90 (1897)." Yellowbear v. Lampert, 741 F.3d 48, 54 (10th Cir. 2014). In a securities fraud case, SCOTUS detailed the inappropriate conflation of facts and opinions: "A fact is "a thing done or existing" or "[a]n actual happening." An opinion is "a belief[,] a view," or a "sentiment which the mind forms of persons or things."  (Internal citations omitted). Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 183, 135 S. Ct. 1318, 1325, 191 L. Ed. 2d 253 (2015). Joseph Smith's polygamy is a good example of the difference. Plaintiffs were taught that their founding prophet had but one wife. (AC ¶86, 115, 134). But as recently admitted, he had 40 (AC ¶140). Polygamy *aka* Celestial Marriage is a doctrine of the Church. The fact that Smith engaged in it with scores of women is a fact, known to COP for more than a century, yet hidden from its members & those whom it proselytized. Smith's lecherous "polygamy" is just one of several key facts about LDS origins that if disclosed, could have significantly altered Plaintiffs' actions with re: COP's church. COP hiding the seer stone is another example of "a thing done or existing" or "[a]n actual happening." Id. at 183.

instructional and missionary rhetoric (AC ¶1-2). These deceptive recruiting practices necessarily result in Plaintiffs' adopting a body of beliefs based upon calculated misinformation and in turn, no consent to remain in, or join, the Church (AC ¶4, 161).

Apart from this Court's Order (ECF #33), no binding authority holds that religious facts are exempt from fraud claims and that only secular facts can so serve. Binding precedent merely holds that religious beliefs and doctrine cannot be adjudicated; determining the truth of those matters is beyond the ken of a secular court. United States v. Ballard, 322 U.S. 78, 84, 64 S. Ct. 882, 885, 88 L. Ed. 1148 (1944).

Deceptive recruiting and indoctrination practices are designed to foster belief but are not beliefs. All AC fraud claims implicate religiously motivated conduct promulgated in order to foster belief in the doctrine of the LDS Church. "The challenge here, as we have stated, is not to the Church's teachings…That practice is not itself *belief*—it is *conduct* "subject to regulation for the protection of society." (Cantwell v. State of Connecticut, 310 U.S. 296, 304, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940))" Molko v. Holy Spirit Assn., *en banc* 46 Cal. 3d 1092, 1115-1117, 762 P.2d 46, 58-60 (1988), as modified on denial of reh'g (Dec. 1, 1988).

For example, COP has secreted the seer stone, now admittedly used by Joseph Smith to create the *Book of Mormon,* hidden from its members and the public since the 19th Century, until August 2015 (AC ¶164, 219).  It has known all professional Egyptologists dispute Smith's translation of the papyrus and figures on its facsimiles (AC ¶50 & Ex 13B).

Nevertheless, COP's correlated material and all artwork intentionally misrepresent that Smith translated the *Book of Mormon* from gold plates (AC ¶60, 80-88, Ex12), and that

the *Book of Abraham* facsimiles are correctly translated (AC ¶87) when COP knew these

representations were false. COP has now acknowledged the seer stone method of

"translation" (AC ¶136 & n. 47) and, that the facsimile figures were not what Smith claimed

(AC ¶137 & n. 48).

 COP's official historian lamented that Benson, et. al. would not allow "real" history

(AC ¶142 "l"). LDS agent-scholar Bushman recently admitted that "The dominate narrative

is not true." (AC ¶142 "r").  Pres. Fielding Smith denied founder Smith used a seer stone

(AC ¶142 "g"). He also appears to have removed the accurate account of Smith's first vision

(AC ¶55).

 Prior to widespread internet use, insular Mormons had no access to an accurate

picture of LDS origins. Even now, those whose beliefs have been built upon the lies and

omissions and told not to rely on the internet for answers, do not question LDS leaders (AC

¶222 & n. 80).  After accurate facts about LDS origins populated the internet, COP could no

longer hide what they knew to be true. Only then did it take steps to admits the facts it had

previously labeled anti-Mormon lies (AC ¶165).

**II** **Absent a Recognized Exception, Defendant's Conduct is Subject to Neutral**
  **Laws of General Applicability. Only Those Who have Consented are Bound by**
  **Church Governance. Fraud in the Inducement Vitiates such Consent.**

As BYU law professor Frederick M. Gedicks wrote: "As I and others have argued,

the position that religious belief and practice are unique and especially valuable activities

thereby entitled to unique and special protection from burdensome government action is no

longer tenable."[2]

> While the First Amendment provides absolute protection to religious thoughts and beliefs, the free exercise clause does not prohibit Congress and local governments from validly regulating religious conduct. Reynolds v. United States, 98 U.S. 145, 164, 25 L. Ed. 244 (1878). Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice. Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 879, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) (free exercise clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)" (internal quotation omitted)). Thus, a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge. United States v. Hardman, 297 F.3d 1116, 1126 (10th Cir. 2002). On the other hand, if a law that burdens a religious practice is not neutral or generally applicable, it is subject to strict scrutiny, and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling governmental interest…A law is neutral so long as its object is something other than the infringement or restriction of religious practices. (Citations omitted).

Grace United Methodist Church v. City Of Cheyenne, 451 F.3d 643, 649–50 (10th Cir. 2006)

> A.  Church Autonomy Cases are Extremely Limited Exceptions to Smith's Rule.

"Today we hold only that the ministerial exception bars [an employment

discrimination] suit. We express no view on whether the exception bars other types of

suits…There will be time enough to address the applicability of the exception to other

circumstances if and when they arise." Hosanna-Tabor Evangelical Lutheran Church & Sch.

v. E.E.O.C., 565 U.S. 171, 196, 132 S. Ct. 694, 710, 181 L. Ed. 2d 650 (2012). The decision

did not expressly balance interests but upheld a discrete area of internal church governance

---

[2] *A Two-Track Theory of The Establishment Clause.* Boston College Law Review. Vol 43, Issue 5 (2002) p. 1073.

[choice of clergy] insulated from suit. Going forward, if an expansion of autonomy rights is recognized, e.g., as where a church's internal conduct jeopardizes the public, as in the case of proselyting with admitted fraudulently religious facts, balancing will certainly have to occur.

Defendant asks the Court to apply a greatly expanded church autonomy doctrine (CAD) *in vacuo*, that is, without seating it in the context of established First Amendment jurisprudence (mtn. *passim*). However, a broad "church autonomy doctrine" beyond choice of clergy and intra-church property disputes has not been recognized by the United States Supreme Court. The word "autonomy" is absent in the majority opinion of Hosanna-Tabor Evangelical Lutheran Church and School, 565 U.S. 171. In a Westlaw search of all Supreme Court majority opinions, there is no reference to such a phrase, *per se*. Of course, the phrase has been used extensively by authors affiliated with religious organizations and in circuit opinions, but not by the U.S. Supreme Court.

Where religious facts are misrepresented in order to recruit or maintain members, there is no threshold consent to act or subject oneself to church authority. Thus, the matter is not one which is "strictly ecclesiastical."

    B.  <u>Where no Consent is Given, one is not subject to Internal Church Governance.</u>

The Supreme Court has long acknowledged that only where church membership is voluntary, is one subject to church governance. Order of St. Benedict of New Jersey v. Steinhauser, 234 U.S. 640, 648–51, 34 S. Ct. 932, 935, 58 L. Ed. 1512 (1914). Otherwise, there is no consent.

Cases applying the ministerial exception upheld in *Hosanna-Tabor* do not extend that exception to the GADDY facts. Unlike clergy selection and intrachurch property disputes,

this case does not involve a *strictly* ecclesiastical decision for which there is an internal

adjudicature. Indeed, the issue arises prior to and in the absence of any discussion between its

leaders and members because it is the very promulgation of intentional misrepresentations

used for induction into the organization that is at issue. Thus, as recently found in the context

of a contract dispute  where plaintiff agreed to baptism, but not to join the church:

"[The] ecclesiastical jurisdiction is limited: those who "unite themselves to such a body, do

so with the implied consent to this government... (Citing Watson v. Jones, 80 U.S. 679, 729,

20 L. Ed. 666 (1871).)" Doe v. First Presbyterian Church U.S.A. of Tulsa, 2017 OK 106, ¶

16, 421 P.3d 284, 289. [3]  There is no consent to be governed by a church's decisions where

threshold questions surround a person's admission to that church. *Doe,* Id. at ¶17-23. Here,

Plaintiffs were induced to join by fraud. Fraud in the inducement vitiates a contract. It is *void*

*ab initio.* (AC ¶167-182). Consent was never obtained.

        C.    Actions Subject to Autonomy must be Morally Sound, Free from Fraud and Effected with Consent.

'In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine **which does not violate the laws of morality and property, and which does not infringe personal rights,** is conceded to all.' (Citing Watson, 80 U.S. 679)

Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 446, 89 S. Ct. 601, 604–05, 21 L. Ed. 2d 658 (1969). [Emphasis Added].

Justice Brandeis defined the civil court role:

'**In the absence of fraud,** collusion, or arbitrariness, the decisions of the proper church tribunals on matters **purely ecclesiastical**, although affecting civil rights, are accepted in litigation before the secular courts as conclusive, **because the parties in**

---

[3] Opposition to Motion to Dismiss (ECF 23 p. 19-22) has an in-depth discussion of this case and is incorporated herein by reference.

**interest made them so by contract or otherwise**.' (Citing Gonzalez v. Roman Catholic Archbishop of Manila, 280 U.S. 1, 16, 50 S. Ct. 5, 74 L. Ed. 131 (1929).

Presbyterian Church, 393 U.S. at 447. [Emphasis added.]

Notwithstanding dicta in Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 655 (10th Cir. 2002) purporting to allow churches an almost *carte blanche* immunity from tort actions where ecclesiastical activity is concerned, no binding authority has held that deceptive recruitment and/or instruction practices which misrepresent known material facts about an church's origins is a protected exercise. Autonomy has been limited to the choice of ministers (as in Bryce, 289 F.3d 648, where the issue involved discussion of plaintiff's qualifications as a minister, and any alleged sexual harassment was likely a result of negligent, as opposed to intentional conduct, including a derivative claim by her partner), and intrachurch real property disputes. Even *Bryce* excepts fraud. Id. at 655.

From Gonzalez, 280 U.S. 1, onward, the Supreme Court continues to suggest there is no protection from judicial scrutiny for cases alleging fraud. Jones v. Wolf, 443 U.S. 595, 609, 99 S. Ct. 3020, 3028, 61 L. Ed. 2d 775 (1979) n. 8 (1979). Regardless of whether the statements and omissions are characterized as fact, belief, or doctrine, Defendant cannot have it both ways: it cannot avail itself of the protection of the First Amendment by arguing that its statements are those of belief or doctrine if the substance of those statements are not sincerely believed. For, as the Supreme Court recently held, every statement, even of opinion [belief], is evidence of at least one fact—the state of mind of the person who makes the statement. Omnicare, Inc., 575 U.S. at 184.

**III** **Assuming, Arguendo, that *Yoder* Applies to the Case at Bar, i.e., that Fraud laws**
**Unduly Burden COP's Free Exercise, a Neutral Law Enacted for a Compelling State**
**Interest may yet be Upheld where it is the Least Restrictive Means of Accomplishing**
**that Interest.**

Defendant argues that virtually any utterance "rooted in religious belief" is protected under church autonomy. While a facially neutral law may nonetheless unduly burden free exercise of religion when applied, Wisconsin v. Yoder, 406 U.S. 205, 220, 92 S. Ct. 1526, 1536, 32 L. Ed. 2d 15 (1972), Yoder's catch phrase, oft cited by religious organization advocates, has proven an unworkable standard and its rule is restricted to claims involving hybrid rights.[4]

Yet Defendant does not raise a companion free speech challenge. It cannot—the First Amendment does not protect knowing falsehoods that harm others; it never has. United States v. Alvarez, 567 U.S. 709, 734, 132 S. Ct. 2537, 2554, 183 L. Ed. 2d 574 (2012).

COP claims a defense based on both the Free Exercise and Establishment clauses, but at its core, it is one of Free Exercise. This is not a case where a state actor would need to evaluate or determine content *prior to* its proselytizing. Holding COP liable for fraudulent recruitment and indoctrination practices will not chill instruction and proselytizing, but merely force those acts to become representative of what its leaders have known for over a century, established material facts about LDS origins. Nor is it a law targeting religion. COP's claim to Establishment protection is weak. Rather, exempting intentional

---

[4] Axson-Flynn v. Johnson, 356 F.3d 1277, 1301 (10th Cir. 2004).

misrepresentations of material *religious* facts, but not *secular* facts, seems to violate *Plaintiffs'* rights under the Establishment Clause.[5]

In the context of a land lease dispute between UEP (fundamentalist Mormon governing body) and its members, SCOUT clarified the exception to Yoder that a law that burdens free exercise is nonetheless constitutional if it furthers a compelling state interest and is the least restrictive means of accomplishing that interest. The Court then identified access to the Courts as one such interest Jeffs v. Stubbs, 970 P.2d 1234, 1249–50 (Utah 1998).

## IV.  Yoder Requires Balancing. Protecting the Public from Fraud is a Compelling State Interest. Compliance with Fraud Laws is a Minimal Burden.

### A.  Fraud Laws Protect a Compelling State Interest.

One induced to act based on intentional misrepresentations is acting without consent. S/he risks losing property and, in cases of religious fraud, the opportunity to choose one's beliefs which in turn govern one's life choices, based on reliable information.

Affinity fraud among Mormons is a huge problem. A 2018 a survey shows that Utah, a state whose residents are about 60% LDS, has the highest rate of Ponzi schemes by almost 2/3 above Florida, the next highest. "Utah has the highest rate of Ponzi schemes per capita in the country by far, at 1.35 Ponzi schemes per 100,000 people. And the next highest state (Florida) is nearly *two thirds lower*…"[6]

---

[5] See, e.g., Warner v. City of Boca Raton, 64 F. Supp. 2d 1272, n.11, 1287 (S.D. Fla. 1999), aff'd, 420 F.3d 1308 (11th Cir. 2005).

[6]  Pugsley, *Finally It's Confirmed: Utah Has More Ponzi Schemes Per Capita Than Any State in the Country. By Far*. April 29, https://rqn.com/blog/utahsecuritiesfraud/finally-its-confirmed-utah-has-more-ponzi-schemes-per-capita-than-any-state-in-the-country-by-far/#.XgKY1kdKi71 (Viewed July 4, 2020).



According to Attorney Mark Pugsley, "…people in Utah are simply too trusting, particularly when the person soliciting an investment is in their ward or shares their religious affiliation."[7] In Gaddy, COP agents have invited that trust (AC ¶56). Government recognized the enormous problem and in 2010 the local SEC office began sponsoring annual fraud seminars.[8]

Paraphrasing the California Supreme Court, it is one thing when a person knowingly and voluntarily joins a church, yet quite another when one joins without his knowledge or consent re: the origins upon which that church is based. Even if liability for fraud is burdensome, it is not substantial. Tort liability for fraudulent recruiting practices impairs COP's ability to convert nonbelievers, or retain children who have grown up in the religion, "…because some potential members who would have been recruited by deception [or children who attain majority] will choose not to associate with the Church."

Molko, 46 Cal. 3d at 1117.

---

[7] Id.
[8] https://archives.fbi.gov/archives/saltlakecity/press-releases/2010/slc060310.htm (Viewed July 4, 2020).

Compliance with fraud laws would not substantially burden COP. It need only avoid internal systemic deceit by refraining from intentional and systematic concealment of material facts about LDS origins which are known to it but have been kept from its members.

B. Any Imposition on Religious Exercise by Compliance with Fraud Laws is Minimal.

A substantial burden on free exercise must be shown before the burden of proof shifts to demonstrate that the law is the least restrictive means of accomplishing its compelling interest. In the context of a law denying religious advertisements on the side of a bus:

> '[T]he First Amendment is implicated when a law or regulation imposes a substantial, as opposed to inconsequential, burden on a litigant's religious practice.' …when a restriction merely prohibits one of a multitude of methods of spreading the gospel, and it does not "force[ ] [parties] to engage in conduct that their religion forbids" or prevents "them from engaging in conduct their religion requires," those parties are not "substantially burdened." (Internal citations omitted).

Archdiocese of Washington v. Washington Metro. Area Transit Auth., 281 F. Supp. 3d 88, 114–15 (D.D.C. 2017), aff'd, 897 F.3d 314 (D.C. Cir. 2018).

As in 281 F. Supp. 3d 88, COP "does not cite to any binding Supreme Court or [Tenth] Circuit precedent that would call for the invalidation of [or exemption from] a law when plaintiffs [here, Defendant] [is] not compelled, under the threat of either punishment or the denial of a benefit, to act." 281 F. Supp. 3d at 114–15.

Fraud laws do not compel COP to do anything. Indeed, they merely discourage it from intentionally promulgating religious facts that it knows to be false and omitting those facts which a reasonable person would want to know before joining or remaining in the Church.

Tenth Circuit cases find neutral laws of general applicability rarely substantially compromise those who raise Free Exercise claims. For example, with re: a "Church of

Marijuana," the right to free exercise of religion does not relieve the obligation to comply with a valid and neutral law of general applicability on the ground that law proscribes (or prescribes) conduct that his religion prescribes (or proscribes). Even if such a neutral law substantially burdens religious practice, it does not have to be justified by a "compelling government interest," seemingly abandoning Yoder's standard. United States v. Meyers, 95 F.3d 1475, 1482 (10th Cir. 1996).

See also Hardman, 297 F.3d at 1130 where in consolidated cases re: applicability of federal statutes precluding possession of dead eagle parts/feathers without permit the Court acknowledged a compelling interest in protecting bald eagles, and that the statute would have a substantial burden on plaintiffs' free exercise of religion. It remanded to the trial court to determine "the least restrictive means of furthering [the] compelling governmental interest," justifying the burden.

## V.    The First Amendment is an Affirmative Defense, not a Bar. The AC places Sincerity at Issue. Thus, Dismissal on the Pleadings is Inappropriate.

COP characterizes the First Amendment as a bar to the AC claims, but "...the [ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar. Hosanna-Tabor Evangelical Lutheran Church and School, 565 U.S. at 195.

### A.    Per the Free Exercise Clause, COP must Demonstrate that a Sincerely Held Religious Belief is Substantially Burdened by Neutral Fraud Laws. Otherwise, its Defense Fails, and the Case can be Tried as any Other.

Defendant must show that the exercise at issue is a "religious belief," that is "sincerely held," as a threshold to a Free Exercise defense. Snyder v. Murray City Corp., 124

F.3d 1349, 1352 (10th Cir. 1997), opinion vacated in part on reh'g en banc, 159 F.3d 1227 (10th Cir. 1998). Snyder challenged the law as a burden to his free exercise rights; there, sincerity of belief was part of his *prima facie* case. In GADDY, it is the second element of her prima facie case for common law fraud –Defendant *knew its statements were false*. (AC ¶135). But in order to avail itself of First Amendment protection, Defendant must also show it sincerely believed what it preached (its correlated rhetoric) and then identify how that belief would be substantially burdened by compliance with AC fraud laws.

Sincerity is a question of fact which concerns LDS leaders' credibility; their states of mind are at issue (AC ¶2-3, 141). They are those who have crafted and/or ratified correlated materials (AC ¶24-25, 36, 180).

Sincerity of belief must be established *before* the protections of the RFRA [and *a fortiori* the First Amendment], can be invoked. Justice Gorsuch's majority opinion found no issue with the trial court's 3-day evidentiary hearing. He references factors in Meyers, 95 F.3d at 1482, to determine whether the beliefs were religious and if so, sincerely held. United States v. Quaintance, 608 F.3d 717, 720 (10th Cir. 2010).

COP's corporate status is no bar to a determination of sincerity. Though the sincerity of defendant's religious beliefs was not disputed, the Supreme Court wrote that determining sincerity is important because "a corporation's pretextual assertion of a religious belief in order to obtain an exemption under RFRA for financial reasons would fail." (Citing Quaintance, 608 F.3d 717) Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 717, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014).

B.    Here, the Free Exercise Sincerity Threshold cannot be Determined on the Face of the Complaint; it is a question of Fact for the Jury who can Assess Credibility.

In the context of an intellectual property right dispute, this Court has noted: "[I]t is only proper to dismiss a complaint based on an affirmative defense when the complaint itself admits all the elements of the affirmative defense. Citing Bistline v. Parker, 918 F.3d 849, 876 (10th Cir. 2019). Big Squid, Inc. v. Domo, Inc., No. 2:19-CV-193, 2019 WL 3555509, at *15 (D. Utah Aug. 5, 2019).

The AC alleges that COP, by and through the Brethren and others in charge of Correlation, did not, and do not, sincerely believe the truth of the statements they made, and continue to make (AC ¶169, 180, 200, 208, 219). When an affirmative defense raised in a Fed. R. Civ. P. 12(b) motion appears plainly of the face of the complaint, a motion may be dismissed on the pleadings. If that defense is based upon matters outside the complaint, factual issues prevent dismissal on the pleadings. Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965).

Whether COP's deceitful conduct involves a sincerely held religious belief is just such an issue. By ignoring the sincerity factors in the AC, COP asks the Court to determine that COP's sincerity is either irrelevant or can be established as a matter of law. This would be a gross expansion of church autonomy. COP must establish by a preponderance of the evidence that the actions at issue, not just proselytizing, but deceptive recruitment conduct, is a sincerely held religious belief. Mosier v. Maynard, 937 F.2d 1521, 1526 (10th Cir. 1991).

In 1944 the U.S. Supreme Court addressed the conviction of defendant leaders of the "I AM" Church based upon their lack of "good faith" in the representations they made.  The

sole jury issue was whether the Ballards believed their representations. Ballard, 322 U.S. at 84. The phrase "good faith" is used 13 times in the opinion. Ballard only forbade litigation of the truth of religious doctrine or beliefs but allowed the sincerity issue.[9]

Almost 40 years later, the Ninth Circuit decided a case on all fours with *Ballard*. Noting that the nature of the Church and its teachings were not at issue, the issue before the Court was whether its leaders made knowingly false misrepresentations in order to induce others to donate and whether they sincerely believed what they preached to others:

> If they made assertions with knowledge of the falsity of those assertions, then they could not have been acting pursuant to sincere religious belief. It, therefore, is not a question of whether the "Dare to be Rich" tenet is true or false. The focus is on the intent of Rasheed and Phillips in carrying out the program. It is this distinction that is critical in our First Amendment analysis. Thus, the Court has held that although the validity of religious beliefs cannot be questioned, the sincerity of the person claiming to hold such beliefs can be examined. United States v. Seeger, 380 U.S. 163, 185, 85 S. Ct. 850, 863, 13 L. Ed. 2d 733 (1965). The First Amendment does not protect fraudulent activity performed in the name of religion. Cantwell, 310 U.S. at 306.

United States v. Rasheed, 663 F.2d 843, 847–48 (9th Cir. 1981).

Even if its statements are characterized as beliefs, a representation of something that is not sincerely believed may be the basis of a fraud claim as shown in *Ballard* and Rasheed, 663 F.2d 843 The Ballard defendants represented they were agents of St. Germaine. In Rasheed, 663 F.2d 843, that God would quadruple your investment.  Furthermore, material omissions, even of religious fact, are something that a secular court can easily litigate. Such does not require inquiry into the truth of those religious facts, but only whether a reasonable

---

[9] In dissent, Chief Justice Stone posited a hypothetical where the fact of the Ballards' presence in San Francisco on a particular day could undoubtedly be adjudicated, thus separating fact from belief, even though in a religious context. Ballard, 322 U.S. at 89, while Justice Jackson's dissent criticized sincerity adjudication.

person would want to know of their existence prior to joining or remaining in a church as an adult.

The mail fraud statute under which Rasheed and Phillips were convicted is the very statute Plaintiffs' claim COP violates as alleged in the AC RICO cause of action (AC ¶93). 18 U.S.C.A. § 1341  Rasheed, 663 F.2d 843 In both Ballard, and Rasheed, a jury found church leaders did not believe what they taught, and so it convicted them of fraud.

Nowhere does COP address the newly pleaded sincerity facts. To ignore sincerity would allow a church to commit fraud on the public as a matter of law, regardless of whether its official [correlated] beliefs are sincerely held. If Defendant does not sincerely believe what is preached or taught, that satisfies both an element of common law fraud and is justification for no First Amendment protection as to those statements and that practice. While lies are protected under the First Amendment, those that rise to the level of fraud are not. Alvarez, 567 U.S. at 723.

**VI.    Even Assuming a Church's Defense is Analogous to Qualified Immunity, 12(B)(6) Dismissal is Inappropriate where Material Fact Issues Exist.**

The Court compared COP's defense to one of qualified immunity (ECF Order, p. 7)[10] The Tenth Circuit reasoned only that *if* a church's actions are covered by the CAD, it is similar to qualified immunity. Bryce, 289 F.3d at 654. Assuming, arguendo, that is so, qualified immunity as a basis for a 12(b)(6) dismissal is inappropriate where material facts are in dispute. Here, the AC places the sincerity of LDS leaders in dispute; thus, material

---

[10] Hartman v. Moore, 547 U.S. 250, 250, 126 S. Ct. 1695, 1697, 164 L. Ed. 2d 441 (2006).

fact issues preclude dismissal on the pleadings. Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001).

Nevertheless, taking a cue from the Court's language re: qualified immunity (Order p.7), the AC alleges facts re: COP/LDS leaders' lack of sincere religious belief in their misrepresentations. Additionally, if COP claims its right to proselytize and teach is unduly compromised it must identify how.

**VII    Determining Material Omissions does not Require Adjudication of Truth. A Jury need only Determine Whether a Reasonable Person would want to Know the Omitted Facts Prior to Acting. All AC claims but the First Cause of Action (Common Law Fraud) are Supportable under a Material Omissions Theory.**

Allegations of intentional material omissions are sufficient to state a claim for all but the first cause of action in the AC. Utah law requires disclosure where a partial statement gives a misleading or false impression. Fraud and Deceit, AmJur 2d, § 209. [11] At all relevant times COP made numerous partial representations omitting material facts. E.g., it made partial disclosures in correlated versions of the first vision (AC ¶48, 80, 139). It failed to disclose that Egyptologists opine that Smith's papyrus from which he claimed to translate the *Book of Abraham* is an ordinary Egyptian funerary text (AC ¶50). Never did it depict a seer stone as the source of the *Book of Mormon* (AC ¶60).

The Court incorrectly stated the law as to material omissions in the context of a fraudulent concealment claim: (Order, ECF, #33, note 73). The quotation is incomplete.

---

[11] The Utah Supreme Court found a duty of disclosure in: Yazd v. Woodside Homes Corp., 2006 UT 47, 143 P.3d 283, 289 & Mitchell v. Christensen, 2001 UT 80, 31 P.3d 572.

Immediately following what is cited by the Court is this statement: "Making use of a device that misleads, some trick or contrivance that is intended to exclude suspicion and prevent inquiry, may also amount to fraudulent concealment." McDougal v. Weed, 945 P.2d 175, 179 (Utah Ct. App. 1997). This is exactly what COP has done for over half a century.

Determining fraudulent material omissions does not require adjudication of the truth or falsity of COP's correlated rhetoric; neither is there a necessary "standard of care" to be determined. The standard is whether a reasonable person would consider the omitted information important to a decision to act with respect to the other party. Where material facts are disputed, what is reasonable is fact dependent and for the jury to decide. Medina, 252 F.3d at 1131.

A.  Second Cause of Action: Breach of Duty of Full Disclosure.
See discussion under subpart "C.", *Infra*.

B.  Third Cause of Action: Fraud in the Inducement to Enter a Contract
Plaintiffs' second cause of action for fraud in the inducement to contract is based upon members' agreement to pay 10% of their income in consideration for temple access, or to join the Church. Prior to being baptized one must declare s/he pays a full tithe. Prior to temple admission, and for continuing access to the temple, one must declare s/he pays a full tithe (AC ¶169-76). Mormonism stands alone among other Judeo-Christian churches in *quid pro quo* financial requirements. Certainly, material omissions casting serious doubt on the claimed source of the Church's scripture, had they been disclosed, would affect reasonable persons' decision to pay of a full tithe.

C.  Fourth Cause of Action: Fraudulent Concealment.

Plaintiffs claim for Fraudulent Concealment likewise involves a duty to disclose. Material

omissions, even in the context of a non-fiduciary relationship, are sufficient for a claim of

fraudulent concealment:

> Fraudulent concealment requires that one with a legal duty or obligation to
> communicate certain facts remain silent or otherwise act to conceal material facts
> known to him. 37 Am. Jur. 2d Fraud and Deceit § 145. **Such a duty or obligation may
> arise from a relationship of trust between the parties, an inequality of knowledge
> or power between the parties, or other attendant circumstances indicating
> reliance. Id.** The party's silence must amount to fraud, i.e., silence under the
> circumstances must amount to an affirmation that a state of things exists which does not
> exist, and the uninformed party must be deprived to the same extent as if a positive
> assertion had been made. Id. Such "[c]oncealment or nondisclosure becomes fraudulent
> only when there is an existing fact or condition ... which the party charged is under a
> duty to disclose." Id. **Making use of a device that misleads, some trick or
> contrivance that is intended to exclude suspicion and prevent inquiry, may also
> amount to fraudulent concealment. Id.** It is this aspect of fraudulent concealment that
> is at issue in the instant case. [Emphases added].[12]

Jensen v. IHC Hosps., Inc., 944 P.2d 327, 333 (Utah 1997), on reh'g (Aug. 22, 1997), on
reh'g (Aug. 22, 1997).

The word "fiduciary" is not used in the *Jensen* opinion, which recognizes a claim for

fraudulent concealment *apart* from a fiduciary duty, where inequality of knowledge or power

and/or reliance is present. Here, as there, Defendant concealed key facts it should have

disclosed. (AC ¶164, 185). COP has superior knowledge re: LDS origins (AC ¶61). COP

invited reliance by promising "never to lead [its members] astray," (AC ¶28). This is not a

"strictly ecclesiastical matter"; omitted facts about Mormon origins surely and demonstrably

affected a decision to join or remain in the LDS Church as demonstrated in the LDS Faith

---

[12] (*Cf.* Order, ECF #33, n. 73).

Crisis Report (AC ¶145-46, 221-23) and thus, involve a compelling interest in protecting the public against fraud.

    D.  <u>Fifth Cause of Action: Violation of Utah Charitable Solicitations Act.</u>

The *Utah Charitable Solicitations Act* requires a church (who, though not required to register, must comply with the Act) in connection with any solicitation, to disclose "material facts necessary to make statements made, in the context of the circumstances under which they are made, not misleading." Utah Code Ann. § 13-22-13. It is a neutral law of general applicability. State officials do not screen content. Only *after* the Act is violated can an action can be brought.

In a solicitation context, conceding that fraudulent appeals may [at times] be made in the name of charity and religion," frauds may [can still] be denounced as offenses and punished by law." Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 164, 60 S. Ct. 146, 152, 84 L. Ed. 155 (1939). "…the First Amendment does not protect fraud, including fraudulent statements in charitable solicitations." United States v. Corps. for Character, L.C., 116 F. Supp. 3d 1258, 1266 (D. Utah 2015). Fraud may lie in a narrowly drawn charitable solicitations statute Espinosa v. Rusk, 634 F.2d 477, 481–82 (10th Cir. 1980), <u>aff'd,</u> 456 U.S. 951, 102 S. Ct. 2025, 72 L. Ed. 2d 477 (1982).

Correlated information omits material facts necessary for members to donate. COP argues tithing is a commandment of God (mtn pps. 17-18). But this begs the question—in order to determine if one is in fact donating to God, one needs to know the material facts of LDS origins that were intentionally concealed. If the scriptures upon which they based their

faith were fabricated by a 19th century charlatan, surely facts strongly suggesting that conclusion are material (AC, ¶142 b & c, Ex 13A & 13B).

Contrary to COP's claim (mtn. p.19, n 7), a private right of action *can* be brought under the Act: "Nothing in this section precludes any person damaged as a result of a charitable solicitation from maintaining a civil action for damages or injunctive relief. U.C.A. § 13-22-4(2).

Stone v. Salt Lake City, 11 Utah 2d 196, 356 P.2d 631 (1960) (Mtn. p. 16-17, n 5) is distinguishable. In Stone, plaintiff did not allege fraud. Id. at 204.  Additionally, there was no invited directive, unlike the specific lines for donative intent in COP-created tithing slips, on how the donation was to be used. (AC ¶6) Id. at 200.

Additionally, outright lies were told by COP's agents with respect to its use of tithing. (AC ¶4-6, 79). COP spent billions on its business affiliates, City Creek and Beneficial Life. (AC ¶5, 142 "s"). Fraud laws applied to misrepresentations in how it used or will use tithing places a minimal burden on its exercise.

E.   Sixth Cause of Action: RICO. Material Omissions are Sufficient Predicate Acts.

COP challenges the AC RICO claim on no basis other than the First Amendment (mtn. p. 19). But if COP does not sincerely believe its material representations, either standing alone or absent full disclosure, the First Amendment defense fails.

Predicate acts of mail and wire fraud do not require a fiduciary duty in order to disclose material facts; omissions as part of a scheme to take property are enough. United States v. Allen, 554 F.2d 398, 410–11 (10th Cir. 1977); See also Bradford v. Moench, 670 F. Supp. 920, 925–926 (D. Utah 1987) holding "[t]o the degree plaintiffs' RICO claims are

based on mail fraud, 18 U.S.C.A. § 1341, concealment may be a basis for a "scheme to defraud," and support such a claim."[13] Thus, omissions support the AC RICO claim (AC ¶199-205).

The AC also includes factual allegations that COP's use of tithing is not what it represented. (AC ¶4-6, 79) Allegations that COP devised a scheme or artifice to defraud as to how Plaintiffs' tithing would be used are included as part of the RICO claim. Representations that tithing had not been and would not be used for profit-making businesses were made to Plaintiffs (AC ¶4-6, 79). They relied on representations that their donations would be used for what is indicated on the tithing slip (AC ¶6).

## VIII <u>CONCLUSION</u>

COP must comply with neutral fraud laws. Compliance does not affect beliefs or doctrine. Any free exercise burden would be minimal. The law has not excepted compliance where lies about established facts known only to COP but hidden, are used to recruit or indoctrinate. COP invited unquestioning trust. Plaintiffs should not be bound by COP's internal machinations when their membership was obtained without consent.

Plaintiffs request the motion be denied with prejudice.[14]

Respectfully,

DATED: July 14, 2020                          Kay Burningham, Attorney at Law

/s/_Kay Burningham
Kay Burningham

*Attorney for Laura A. Gaddy and the Class*

---

[13] Federal wire & mail fraud statutes are essentially identical; case law interpreting one is applied to the other.

[14] I certify the Opposition length is less than 6,500 words. DUCivR 7-1(a)(3)(A).