David J. Jordan (1751)
david.jordan@stoel.com
Wesley F. Harward (15623)
wesley.harward@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: 801.328.3131

*Attorneys for Defendant Corporation of the
President of The Church of Jesus Christ of
Latter-day Saints*

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br>     v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>              Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Case No. 2:19-cv-00554-RJS<br><br>The Honorable Robert J. Shelby |

Corporation of the President of The Church of Jesus Christ of Latter-day Saints (the "Church") submits this Reply Memorandum in Support of its Motion to Dismiss Amended Complaint.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................1

    I.    THE FIRST AMENDMENT BARS MS. GADDY'S CLAIMS.........2

    II.    THE LEGAL FRAMEWORK IN THE COURT'S ORDER—NOT THE FRAMEWORK ADVANCED IN THE OPPOSITION—IS CORRECT............................................................4

    III.    MS. GADDY'S "SINCERITY" ALLEGATIONS DO NOT SAVE HER CLAIMS ...........................................................................6

CONCLUSION.......................................................................................................9

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bryce v. Episcopal Church in the Diocese of Colo.*,
   289 F.3d 648 (10th Cir. 2002) ..................................................................................2

*Potter v. Murray City*,
   585 F. Supp. 1126 (D. Utah 1984)............................................................................5

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l
   Presbyterian Church*,
   393 U.S. 440 (1969).................................................................................................3

**Rules**

FRCP 12(b) ...........................................................................................................................4

**Constitutional Provisions**

First Amendment.........................................................................................passim

107681724.3 0056812-00016

# INTRODUCTION

This Court's Memorandum Decision and Order Granting Defendant's Motion to Dismiss (the "Order") (Docket 33) was clear and correct. The Court "can no more determine whether Joseph Smith saw God and Jesus Christ or translated with God's help gold plates or ancient Egyptian documents, than it can opine on whether Jesus Christ walked on water or Muhammed communed with the archangel Gabriel. The First Amendment prohibits these kinds of inquiries in courts of law." Order at 12.

Ms. Gaddy's Opposition does not and cannot alter the basic fact that her claims are all based on the Church's *religious* teachings. She concedes, as she must, that all her causes of action are still based on her allegations that the Church's teachings regarding Joseph Smith's First Vision, the Book of Mormon, and the Book of Abraham are false. But those teachings are every bit as "rooted in religious belief" now as they were when the Court dismissed Ms. Gaddy's original complaint. *Id.* at 9-10 (citation omitted). Her claims remain barred by the First Amendment and should be dismissed with prejudice.

# ARGUMENT

Ms. Gaddy's Opposition ignores entirely the central holding of the Court's Order—that the First Amendment prohibits the Court from adjudicating the truth

1

or falsity of religious beliefs. Tellingly, she makes no attempt to argue that her claims are based on anything other than her allegations that the Church's teachings about Joseph Smith, the Book or Mormon, and the Book of Abraham are false. Instead, she argues that the legal framework previously applied by the Court was incorrect and that dismissal is inappropriate in light of the "sincerity" allegations she raises. The Church first addresses its First Amendment defense and then addresses Ms. Gaddy's arguments about the legal framework and her "sincerity" allegations.

## I.   THE FIRST AMENDMENT BARS MS. GADDY'S CLAIMS.

This Court's Order was correct and is just as applicable to the Amended Complaint as it was to the original. Courts may not "adjudicate fraud claims implicating religious facts." *Id.* at 13. "In what has become known as the church autonomy doctrine, courts have recognized 'the fundamental right of churches to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Id.* at 9 (emphasis omitted) (quoting *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 655 (10th Cir. 2002)). Briefly summarized, the church autonomy doctrine prohibits courts from "engag[ing] in the forbidden process of interpreting and weighing church

doctrine." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969).

The Opposition concedes that the claims Ms. Gaddy asserts in the Amended Complaint are still based upon her allegations regarding the Church's teachings about Joseph Smith's First Vision, the origin of the Book of Mormon, and the Book of Abraham. Opp. at 7-8. Indeed, she describes these as the "key facts" the Church teaches about its "origins." *Id.*

These are the *exact* same allegations the Court already ruled were non-justiciable under the First Amendment. Indeed, this Court specifically held that it "can no more determine whether Joseph Smith saw God and Jesus Christ or translated with God's help gold plates or ancient Egyptian documents, than it can opine on whether Jesus Christ walked on water or Muhammed communed with the archangel Gabriel. The First Amendment prohibits these kinds of inquiries in courts of law." Order at 12.

Ms. Gaddy's acknowledgement that her claims are still based on these same allegations ought to be dispositive. Just as with the original complaint, these fraud claims depend on Ms. Gaddy's proving that the Church's teachings are *false*. But neither this Court nor a jury can opine on the truth or falsity of the Church's religious teachings. Thus, Ms. Gaddy's claims must again be dismissed.

3

## II. THE LEGAL FRAMEWORK IN THE COURT'S ORDER—NOT THE FRAMEWORK ADVANCED IN THE OPPOSITION—IS CORRECT.

The first section of the Opposition is an ill-fated attempt to frame this case as a challenge to the Church's "conduct" rather than its "beliefs." Ms. Gaddy then advances a misdirected argument about the framework for legal disputes involving religious conduct. She then launches into a discussion about strict scrutiny, least restrictive means, burden, and government interest. *See* Opp. at 10-27. This entire argument is, in fact, nothing more than an attempt to have the Court reconsider its prior ruling. The Court should decline that invitation because the framework in the Order was correct.

Ms. Gaddy's original "Opposition to Defendant's FRCP 12(b) Motion" also devoted an entire section to this same position—and cited many of the same cases. The Court properly considered and rejected that argument. It explained:

> Gaddy asserts the Church's proselytizing constitutes conduct that falls outside the First Amendment's protection. But the Supreme Court has repeatedly confirmed that the free exercise of religion encompasses not only the freedom to believe, but also the right to profess those beliefs through proselytizing. Put another way, the Church is no more liable for preaching and teaching its beliefs than it is for espousing them.

Order at 15-16 (footnote omitted). The Court also cited *McDaniel* as "noting that the free exercise clause 'unquestionably encompasses the right to preach,

4

proselyt[iz]e, and perform other similar religious functions.'" *Id.* at 15 n.89 (citation omitted).

The Court's Order is correct. A Church's right to preach its religious teachings is absolutely protected. It is not "conduct" that may be regulated by the state. Indeed, Ms. Gaddy has cited no case where the court considered the *preaching* of religious beliefs to be "conduct" subject to judicial or state scrutiny.[1] Thus, the framework advocated by Ms. Gaddy for the regulation of religious conduct is inapplicable.[2]

Simply put, the defense asserted by the Church does not depend on a burden analysis and a weighing of government interests. Rather, as the Court correctly

---

[1] Ms. Gaddy's "burden" arguments are also inconsistent with her own pleadings. Ms. Gaddy alleges that the Church's teachings about the First Vision, the Book of Mormon, and the Book of Abraham form the "very foundation of the Church" and the "keystone of the religion." Am. Compl. ¶ 145. She then argues that holding the Church liable for these teachings would pose only a "minimal" burden. Opp. at 34. There is nothing "minimal" about the burden placed on free exercise by the government telling a church that it must change its teachings about the "very foundation of the Church" and the "keystone of the religion."

[2] Ms. Gaddy filed a "Notice of Supplemental Authority in Support of [Amended] Opposition to Motion to Dismiss Amended Complaint." (Docket 51). Ms. Gaddy quoted a discussion in *Potter v. Murray City* relating to the broadening definition of religion in the twentieth century. 585 F. Supp. 1126, 1139-40 (D. Utah 1984). It is unclear how that discussion is relevant to the case at bar. That the Church qualifies as a religion cannot seriously be contested.

5

held, it depends on whether the claims are based on allegations of "purely secular" facts or allegations of fact "rooted in religious belief." Ms. Gaddy's allegations are unquestionably the latter. They remain barred by the First Amendment.

### III. MS. GADDY'S "SINCERITY" ALLEGATIONS DO NOT SAVE HER CLAIMS.

The only argument Ms. Gaddy raises that was not squarely addressed by the Court's Order is that her "sincerity" allegations prevent dismissal. Ms. Gaddy is incorrect. Her "sincerity" allegations do not transform her unconstitutional claims into justiciable causes of action.

As Ms. Gaddy correctly notes, sincerity relates to "the second element of her prima facie case for common law fraud" (i.e. that any false statements were knowingly made). Opp. at 22. Ms. Gaddy then cites to a number of cases where sincerity of a religious belief was adjudicated.[3] *Id.* And Ms. Gaddy argues that dismissal is inappropriate where there is a factual dispute about sincerity. *Id.* But even assuming that this Court could permissibly conduct the "sincerity" analysis suggested by Ms. Gaddy—and, as discussed below, it cannot—that still would not save her claims.

---

[3] As described above, the cases cited by Ms. Gaddy all relate to the legal framework for determining the constitutionality of restrictions on religious conduct—not religious teachings.

6

The *first* element of her claims—the falsity of the Church's teachings—remains non-justiciable. It is insufficient for Ms. Gaddy to claim that that *some* element of her claims could be adjudicated. To prevent dismissal, she must show that this Court is constitutionally permitted to adjudicate *all* the elements of her claims. And, as this Court held, "[e]ven accepting as true Gaddy's well-pleaded factual allegations, the court may not assess the veracity of the Church's religious beliefs. Accordingly, Gaddy's fraud claims fail to state a claim for which relief may be granted." Order at 16.

Ms. Gaddy's invitation for this Court to adjudicate the "sincerity" of the Church's teachings is also constitutionally invalid. Ms. Gaddy makes conclusory allegations that the Church's teachings were insincere. *See* Opp. at 23. She appears to argue that the Church's teachings are not true and therefore they cannot be sincere. But this is circular logic and is nothing more than a repackaged version of her "fact vs. belief" argument already rejected by the Court. She cannot circumvent the First Amendment by arguing that she can "prove" the religious teachings must have been insincere because she can "prove" they are false.

Once again, if adopted, Ms. Gaddy's paradigm would permit a similar lawsuit against *every* religious organization. A plaintiff could, for example, sue the Catholic church alleging that the church's teaching that Jesus Christ was

7

resurrected three days after he died was fraudulent. And that same plaintiff, under Ms. Gaddy's theory, could avoid the First Amendment by alleging that the church's teaching was insincere. As "evidence" of that insincerity, the plaintiff could point to medical experts' opinions that resurrection of the dead is impossible. Ultimately, a court (or a jury) would then have to determine whether Jesus Christ was resurrected to conclude whether the Catholic church sincerely believed its teachings. Similar suits could be brought against Islamic mosques based on teachings about the miraculous experiences of Mohammad and against Jewish synagogues regarding teachings about Moses parting the Red Sea. As this Court noted, such a framework is simply "unworkable." Order at 12.

In short, this Court was correct that "Gaddy's fraud claims plainly concern the basic religious facts upon which the Church was founded. The nature of the First Vision and the origin of some of the Church's scripture are simply not proper subjects for judicial scrutiny." *Id.* at 13-14. And, just as with her prior fact vs. belief argument, "if all a plaintiff had to do to get around the First Amendment was to challenge . . . [the sincerity of] a church's religious beliefs, the Religion Clauses would offer little protection against de facto referenda on churches' faith and doctrines." *Id.* at 14.

## CONCLUSION

Each of Ms. Gaddy's claims is barred by the First Amendment. Accordingly, the Church's Motion should be granted, and the Amended Complaint should be dismissed with prejudice.

DATED: August 18, 2020

                                      STOEL RIVES LLP

                                      */s/ Wesley F. Harward*
                                      David J. Jordan
                                      Wesley F. Harward

                                      *Attorneys for Defendant Corporation of*
                                        *the President of The Church of Jesus*
                                        *Christ of Latter-day Saints*