Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111
Telephone: 1.888.234.3706

*Attorney for Laura A. Gaddy and the Class*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>*Defendant* | **MOTION REQUESTING JUDICIAL NOTICE BE TAKEN**<br><br>**(**Request for Oral Argument)<br><br>(DEMAND FOR JURY TRIAL)<br><br>*Oral Argument on Motion to Dismiss Currently Set for: Dec. 10, 2020*<br><br>**2:19-cv-00554-RJS—DBP**<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

## MOTION REQUESTING JUDICIAL NOTICE

Plaintiff(s) request that pursuant to Fed. R. Evid. 201, the Court take judicial notice of the following adjudicative facts which are readily ascertainable and not subject to dispute. All the facts requested to be noticed are either contained within Defendant's official newsroom report, or in the online version of the *Joseph Smith Papers*, also published by Defendant.[1]

---

[1] The publisher of the [Joseph Smith Papers] project's print and web publications is [T]he Church Historian's Press, an imprint of the Church History Department of [T]he Church of Jesus Christ of Latter-day Saints."
https://www.josephsmithpapers.org/articles/about-the-project  Accessed Nov. 15, 2020.

The facts requested to be noticed are:

1. On August 4, 2015, Defendant published a "never before seen" photo of an opaque brown stone, which it claimed was used by Joseph Smith to translate the *Book of Mormon*.[2] Attached is an accurate photo of the brown stone. (See Exhibit 1 filed herewith—photo of the stone; Exhibit 2 filed herewith, p. 5 for "never before" language; and, Exhibit 3, p.4 ¶ 2, filed herewith, for outright admission that the brown stone was used, without the qualification "likely.")

2. *Eyewitnesses claimed that when Smith used the stone, he placed it in a hat to exclude exterior light.*[3] (Note: footnote 10 within this quotation contains a long list of eyewitnesses who attest to Smith using the stone to dictate the *Book of Mormon.)*

3. The brown stone has been in Defendant's custody since the Mormon pioneers crossed the plains in the mid-19th Century.[4] (See Exhibit 3, p.4 ¶ 2.)

---

[2] The official LDS newsroom report from August 4, 2015 does not currently include a photo of the brown seer stone. However, it is believed that it did so on the date of the initial announcement, that is August 4, 2015. Other sources published the photo of the stone in their reporting, many indicating that it was the first ever publication of the stone. https://www.churchofjesuschrist.org/search?lang=eng&query=seer%20stone%20August%204%2C%202015&facet=newsroomHQ&hidefacets=true&highlight=true&page=1

[3] https://www.josephsmithpapers.org/topic/seer-stone Accessed Nov. 16, 2020, see also Exhibit 1.

Exhibit 2 is the article as it now appears in Defendant's archives. See also Exhibit 3, p.4 ¶ 2: https://newsroom.churchofjesuschrist.org/2015-year-in-review/article/church-history-department-releases-book-of-mormon-printer-s-manuscript-in-new-book accessed Nov. 16, 2020.

[4] *Id.*

## POINTS AND AUTHORITIES IN SUPPORT OF REQUEST

1. <u>Historical Documentation is Undisputed.</u>

The following excerpts are Defendant's own, taken either from a new release on its website, or from the *Joseph Smith Papers* Project, which is published by the Church History Department.

    a. From Defendant's news archives:

An accompanying article on the history of the Book of Mormon translation will appear in the October 2015 issue of the Church's Ensign magazine and is now available online. Both the introduction to the new volume and the magazine article discuss the instruments Joseph Smith used to translate, and both include never-before-seen photographs of a seer stone Joseph Smith likely used in the translation of the Book of Mormon.
The stone he used in the translation was often referred to as a chocolate-colored stone with an oval shape. The stone was passed from Joseph Smith to scribe Oliver Cowdery and then from Cowdery's widow, Elizabeth Whitmer Cowdery, to Phineas Young. Young then passed it on to his brother, Brigham Young, the second president of the Church. After President Young died, one of his wives, Zina D. H. Young, donated it to the Church. In addition to this seer stone, historical records indicate that Joseph Smith owned other seer stones during his lifetime.[5]

    b. From the *Joseph Smith Papers* Project:

The following language is excerpted from the *Joseph Smith Papers* Project: "In addition to the photographs and transcripts of the manuscript, this volume also includes…never-before-seen photographs of a seer stone Joseph Smith likely used in the translation of the Book of Mormon." [6] (Exhibit No. 2, p. 5).

---

[5] https://newsroom.churchofjesuschrist.org/article/church-history-department-releases-book-of-mormon-printer-s-manuscript-in-new-book  See also Exhibit no. 3, p. 4.
[6] https://www.josephsmithpapers.org/articles/news-2015 See also Exhibit no 2, p. 5.

## 2. The Request does not Require the Court to Determine the Truth of whether Smith Translated or Simply Dictated using the Stone.

The facts to be noticed do not require the Court to adjudicate whether Smith translated or merely dictated the *Book of Mormon*. They merely ask the Court to: 1) Notice that it was approximately 5 years ago that Defendant first admitted that a brown stone was used in the creation of *the Book of Mormon*; and 2) Notice the fact that the stone was placed in Smith's hat while he was using it; and 3) Notice that Defendant has had custody and control of the stone for more than a century and a half.

One of the representations about its origins that Plaintiff claims Defendant did not sincerely believe at the time it made them is that the *Book of Mormon* was translated from gold plates (as depicted in numerous photographs, artwork, and in Defendant's correlated instructional and missionary manuals. See Exhibits 5, 7, 10 & 12 to the Amended Complaint for examples of the depictions. See Amended Complaint, paragraphs 73 & 74 for representations that Smith studied the gold plates and then translated directly from the writing on those plates.)

Here are the examples:

In the context of a correlated primary lesson, "73…[Tell the children that] first Joseph spent a lot of time becoming familiar with the plates and the language in which they were written…"[7]

---

[7] Amended Complaint (ECF#37) ¶ 73.

In the context of a gospel art kit: "74…When the Prophet Joseph Smith received the golden plates from the angel Moroni, he studied the strange language written on them…As Joseph read out loud from the plates, Oliver wrote down the words…"[8]

Prior to August of 2015, Defendant had never published an account with accompanying artwork depicting Smith "translating" the *Book of Mormon* while looking at a brown stone buried in his hat. And, while that distinction may not have made a difference to some, it certainly made a difference to those who have resigned from the LDS Church (as indicated in the *LDS Personal Faith Crisis Report,* ECF #23).

"Translate" is defined as: "to change words into a different language."[9]  It connotes some predisposed knowledge of the source language; here, Smith that language to be reformed Egyptian. And, as indicated in the language taken from the correlated material as set forth in ¶¶ 73 and 74 of the Amended Complaint, study. But what has been admitted over the last several years is that Smith placed the brown stone in his hat and dictated words he claimed appeared on the stone, without looking at the gold plates. This description of the translation process contradicts the artwork promulgated, posted, republished, and hung in LDS chapels, temple visitors' centers, and in correlated instructional and missionary manuals for 60 or more years.

Defendant took the photograph of the stone (Ex. 1); it is the first ever published. Though it does not appear in subsequent versions of its August 4, 2015 press release, there is no dispute that it is Defendant's photo, first published in August of 2015.

---

[8] Amended Complaint (ECF #37) ¶ 74.
[9] https://dictionary.cambridge.org/us/dictionary/english/translate

3. Fed. R. Evid. 201 and supporting Case Law Support the Notice Requested.

**Rule 201. Judicial Notice of Adjudicative Facts**
**(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
**(1)** is generally known within the trial court's territorial jurisdiction; or
**(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
**(c) Taking Notice.** The court:
**(1)** may take judicial notice on its own; or
**(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.
**(d) Timing.** The court may take judicial notice at any stage of the proceeding.
**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

Fed. R. Evid. 201

> A court may take judicial notice of a fact that is not subject to reasonable dispute because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This rule allows courts to "take judicial notice of ... facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted). If a party requests that a court take judicial notice of a fact and supplies the court with the necessary information to do so, the court must take judicial notice of the fact. Fed. R. Evid. 201(c).

United States ex rel. Brooks v. Stevens-Henager Coll., Inc., 359 F. Supp. 3d 1088, 1102 (D. Utah 2019).

> Federal Rule of Evidence 201 provides that a court may take judicial notice on its own; or "must take judicial notice if a party requests it and the court is supplied with the necessary information."[16] Necessary information is supplied to the Court if documents presented to the Court for judicial notice "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[17]

Burrows v. LoanLeaders of Am. Corp., No. 2:14-CV-544 DN, 2014 WL 5824675, at *3 (D. Utah Nov. 10, 2014)

## CONCLUSION

Fed. R. Evid. 201(d) allows judicial notice at any stage. Since the pending 12(b)(6) motion is a dispositive one, Plaintiff believes her request is reasonable at this stage. She has provided the Court with the necessary evidence pursuant to Fed. R. Evid. 201(b)(2). Fed. R. Evid. 201 (e) also requires that she be heard on the matter.

Wherefore, considering Defendant's request for a continuance of the currently scheduled hearing on its Motion to Dismiss, Plaintiff requests that the Court allow her to be heard on her Request for Judicial Notice prior to hearing argument on Defendant's 12(b)(6) motion.  A proposed Order will be filed and submitted herewith.

Respectfully submitted,

DATED this 17th day of November 2020.	Kay Burningham, Attorney at Law

/s/   *Kay Burningham*

Kay Burningham

*Attorney for Laura A. Gaddy and the Class*