Kay Burningham (#4201)
kay@kayburningham.com

299 South Main St. Suite #1375
Salt Lake City, Utah  84111
Phone: 1.888.234.3706

*Attorney for Laura A. Gaddy and for the Class*

# THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>*Defendant* | **REPLY TO RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT AMENDED COMPLAINT WITH AN ADDITIONAL EXHIBIT**<br><br>(Oral Argument Requested. DEMAND FOR JURY TRIAL)<br><br>Case: **2:19-cv-00554-RJS-DBP**<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

In Reply to Defendant's Response to Plaintiff's Motion to Supplement the Amended Complaint (AC) with an Additional Exhibit, Plaintiff requests that the Court grant her motion as moved and Exhibit 15 as drafted and allow supplementation of the AC as submitted. In Response to the Motion to Supplement, Defendant wrote:

> The Church does not oppose the "supplementation" of Ms. Gaddy's Amended Complaint as requested—provided, however, that Ms. Gaddy does not attempt to use this "supplemental exhibit" as an excuse to file yet more briefing on the Church's Motion to Dismiss Amended Complaint or to argue that the Church's Motion should be refiled. Ms. Gaddy's supplemental exhibit has no bearing on the Church's Motion to Dismiss Amended Complaint. It does not cure the constitutional defects with Ms. Gaddy's claims. Thus, no additional briefing is required.

Def's Response to Mtn for Leave to Supp. p.3 (ECF #62)

Plaintiff disagrees that "[the exhibit] has no bearing on the Church's Motion to Dismiss [the] Amended Complaint. It does not cure the constitutional defects with Ms. Gaddy's claims."  Ms. Gaddy does not concede that there are constitutional defects with her claim, as purported by COP.  Evidence that COP had historically referred to the printing plates as woodcuts,[1] that the "Church History Museum" had "deaccessioned" the metal plate used for Facsimile no. 3 at an "unknown time" and that it had only been "acquired by the Church History Department in 2009,"[2] is evidence that COP did not want others to view the source of facsimile no. 3 pictorial in the *Book of Abraham.* This in turn could be interpreted as supplemental relevant evidence from which to reasonably infer the probability that COP had a lack of "sincere religious belief" in what Joseph Smith claimed the figures to be, as now admitted in COP's *Book of Abraham* essay on the subject. [3]  Lack of sincerity has been asserted in the original complaint by reason of its definitionally inherent presence (insincerity) in fraud, and the Amended Complaint in which specific facts demonstrating lack of sincerity are alleged for purposes of clarity.

The exhibit in question is evidence of concealment of the actual plate used to make the pictorial. As indicated in the closeup of figure no. 6, who Smith described as ""Olimlah, a slave belonging to the prince," (see AC Ex. 14 and proposed Ex.15 filed with this motion, p. 2).  The "deaccessioned" plate shows chisel marks near figure six's

---

[1] Motion to for Leave to Supplement AC with Exhibit (ECF #57 ) p. 5, n. 5.
[2] See proposed Ex. No. 15, page 6, yellow highlighted language in the *Joseph Smith Papers*, Vol. 4, adjacent to the photo of the deaccessioned metal plate.
[3] Amended Complaint (AC), footnote 48, p. 40. See also AC ¶51 and Ex.14 thereto (mistakenly referenced as 13B in AC n.15, p. 16, Facsimile no. 3, which has been identified by professional Egyptologists as the *Breathing Permit of Hôr*, a funerary document written for the Theban priest Hôr, who appears as figure no. 5, described by Smith as a waiter in AC Ex. 14). See also p. 3 of proposed Ex. No. 15, language from the recent COP essay on the *Book of Abraham*, admitting *"None of the characters on the papyrus fragments mentioned Abraham's name or any of the events recorded in the book of Abraham. Mormon and non-Mormon Egyptologists agree that the characters on the fragments do not match the translation given in the book of Abraham…* none of the figures depict Abraham…"

(slave/Anubis) mouth, where professional Egyptologists agree the jackal-headed Egyptian God Anubis' snout should be. It also indicates that the person who made the metal plate from the papyrus (unlike Facsimile no.1, there remains no extant papyrus for Facsimile no. 3; however, in the language immediately adjacent to each figure described as human by Smith, in both Facsimiles one and three, Egyptologists identify Anubis, god of the underworld and embalming) inadvertently failed to remove Anubis' left ear, which incongruously appears as a spike atop "the slave's," head.

Evidence that professional Egyptologists have vehemently disagreed with Smiths' "translation" of the papyrus, is not an adjudication of the truth or falsity of that "translation." However, having realized the content of the Egyptologists' interpretation by at least the late 19th Century, such evidence should be admissible to prove that COP knew that Smith's interpretation of the figures and their actions appearing in the facsimiles as Abraham and his experiences, were not sincerely believed. Specifically and historically, COP did not accurately describe the plates (woodcuts as opposed to metal plates) and, telltale signs of snout removal, and spiked ear preservation remain, indicating that the plate was taken directly from the original papyrus that depicted Anubis.

Perhaps out of fear that someone would see what can clearly be seen in close-up, COP deaccessioned the printing plate so that no historian would find and comment on it. Since at least the mid-20th Century, during the lifetimes of Laura Gaddy and most all Plaintiffs who seek to be part of the class, it was not until the publication of the *Joseph Smith Papers*, Volume 4 on October 29, 2018, that anyone outside defendant's immediate circle could have discovered the actual plates used for the Facsimile no. 3 pictorial. And later, only when an individual took the step of examining Figure 6 up close, would s/he find the snout removal chisel marks that could then tie in with the leftover spiked ear of Anubis.

The church has had the original papyrus for printing plate No. One since 1967. See papyrus, Facsimile no 1 as it appears in the *Book of Abraham* and corresponding printing plate No. One.



Original papyrus from which COP now admits that *Book of Abraham* facsimile No. One was created, found in 1966 and obtained by COP in 1967.



Facsimile No. One as it appears in the LDS *Book of Abraham*, canonized in 1880.



Printing plate for Facsimile No. One in the *Book of Abraham*.
https://www.josephsmithpapers.org/paper-summary/facsimile-printing-plates-circa-23-february-16-may-1842/1 [last accessed Dec. 6, 2020]. *Facsimile Printing Plate No. 1,* Nauvoo, *IL, ca. 23 Feb.–16 May 1842; CHL. From the Joseph Smith papers, Vol. 4.*

Wherefore, Plaintiff Requests that the Motion be granted and that Exhibit 15, as drafted, be deemed part of the Amended Complaint as the exhibit next in order, without regard to COP's suggested conditions for limitations on relevant arguments.

Respectfully,

Dated: December 7, 2020                 Kay Burningham, Attorney at Law

/s/ *Kay Burningham*

Attorney for Laura A. Gaddy and the Class