Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111
Telephone: 1.888.234.3706

*Attorney for Laura A. Gaddy and the Class*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>*Defendant* | **REPLY to RESPONSE to "MOTION REQUESTING JUDICIAL NOTICE BE TAKEN"**<br><br>**(**Request for Oral Argument)<br><br>(DEMAND FOR JURY TRIAL)<br><br>*Oral Argument on Motion to Dismiss January 5, 2021, 1:30 p.m.*<br><br>**2:19-cv-00554-RJS—DBP**<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

I.

<u>The Facts Requested to be Judicially Noticed are Easily Distinguished from the Facts Requested to be Noticed in Cases Cited by Defendant.</u>

Defendant's objections are not well-founded. Generally, COP objects that the facts requested to be noticed do not meet the required standard. (Response, p.4.) However, the entire footnote in *Tal v. Hogan* is helpful to Plaintiff's position. That note reads in pertinent part:

> …facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary

> judgment. See *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n. 1 (10th Cir.2004) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)). This allows the court to "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg ex rel. Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir.2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir.2001). However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002).

Tal v. Hogan, 453 F.3d 1244, 1265 (10th Cir. 2006). [Note: The ostensible hearsay qualification referenced above will be addressed *infra*., in the context of Plaintiff's request for judicial notice number two.]

Defendant then proceeds to attack the use of internet sites in general in conjunction with judicial notice (Response, p.5):

> Although courts have taken judicial notice of public records available on the Internet, 'many courts are reluctant to take judicial notice of other kinds of facts found on the Internet'—particularly if a party to the case maintains the cited websites. *See, e.g., Stewart v. Stoller*, No. 2:07-cv-552- DB-EJF, 2014 U.S. Dist. LEXIS 39516, at *3-4 (D. Utah Mar. 25, 2014); *Koenig v. USA Hockey, Inc.*, No. 2:09-cv-1097, 2010 U.S. Dist. LEXIS 122809, at *8 (S.D. Ohio June 14, 2010).

However, the cases cited by Defendant do not stand for the proposition claimed above. The *Stewart* case involved a request for judicial notice of *the Matrix* film profits as listed on the Internet Movie Database (IMDB) website to establish damages. Finding issues of net v. gross recovery, actual damages under copyright law, deductible expenses and double profits, the Court denied her request and held an evidentiary hearing on the damages issue. Stewart v. Stoller, No. 2:07-CV-552-DB-EJF, 2014 WL 4851861, at *2 (D. Utah Sept. 29, 2014).

In *Koenig*, the Court refused to take judicial notice of a site *maintained by defendant, the same party requesting judicial notice*. That is a much different situation than notice of admissions in a site maintained by the opposing party:

> Similar concern has been expressed about information from a website that is created by one of the parties to the case. See, e.g., Scanlon v. Texas A & M University, 343 F.3d 533, 536 (5th Cir.2003) (holding that the court should not take judicial notice of a "defendant-created report" [where defendant had requested the judicial notice] appearing on the Internet).

Koenig v. USA Hockey, Inc., No. 2:09-CV-1097, 2010 WL 4783042, at *2 (S.D. Ohio June 14, 2010)

II

The Objections are More Specifically Addressed Below in Order of the Facts Requested to Be Judicially Noticed, as Set Forth In the Motion (ECF #59, Mtn, p.1).

Those facts are:

1. **On August 4, 2015, Defendant published a "never before seen" photo of an opaque brown stone, which it claimed was used by Joseph Smith to translate the *Book of Mormon*. Attached is an accurate photo of the brown stone.**

Defendant's only response to this request is that the First Amendment prevents inquiry into the truth of the subject matter. Judicial notice of the fact that COP first published a photo of the stone on August 4, 2015 has nothing to do with whether the stone was in fact used to create the *Book of Mormon*. However, it does go directly to the credibility of Defendant, that is, whether the corporate Defendant (speaking as one, through a consciously created correlation department), sincerely believed its representations that Smith translated directly, while looking at gold plates (as depicted

in numerous paintings commissioned by COP, used in all missionary and instructional manuals since Correlation was created in about 1960 (Mtn p.4 citation to Exhibits 5, 7, 10 & 12 to the Amended Complaint for examples of the depictions. See Amended Complaint, paragraphs 73 & 74 for representations that Smith studied the gold plates and then translated directly from the writing on those plates.) And, despite having the stone in its custody for over 100 years (see request for judicial notice no. 3 below), had never before published a photograph of the brown stone.

    To be clear, though the memorandum of "Points and Authorities in support of Request" (Mtn Ps and As, p.4) language differs slightly from the "Motion Requesting Judicial Notice" (Mtn p. 2), where the facts requested to be noticed are set forth, Plaintiff asks only that the fact that *a photo of the brown stone had never been seen prior to August 4, 2020* be judicially noticed. She does not ask to have the Court judicially notice that the first time COP admitted the Stone was used to create the *Book of Mormon* was in August of 2015.

> Ms. Gaddy also asks the Court to notice that "it was approximately 5 years ago that Defendant first admitted that a brown stone was used in the creation of *the Book of Mormon*." Motion at 4. This simply is not true. *See, e.g.*, *A Peaceful Heart*, FRIEND (Sept. 1974) (Response, pp.5-6)

    To determine if and when COP admitted its use in the *Book of Mormon* creation in a manner that would apprise a lay Mormon of the information, amidst the several hundred publications over the past 50-60 years would be a question of fact for the jury. Attached as Exhibit One to this Reply is a true, correct, and complete copy of the one-page FRIEND article cited by Defendant. It is set forth

within the hard copy of the September 1974 issue, published more than a decade before LAURA GADDY was born. (See last page of Exhibit One.)

**2. Eyewitnesses claimed that when Smith used the stone, he placed it in a hat to exclude exterior light.** FN two (Mtn. p.2) in the Motion for Judicial Notice reads: "See also Exhibit 1." Language from p. 3 of Exhibit one (ECF #59-1) reads: *"Eyewitnesses reported that he also translated using a dark brown seer stone placed in a hat to exclude exterior light and that he used a seer stone for many of his early revelations."*

Assuming arguendo the facts requested to be noticed are hearsay, if there is an exception to the hearsay rule of evidence, judicial notice is proper in the context of a 12(b)(6) motion.  See United States v. Iverson, 818 F.3d 1015, 1021 (10th Cir. 2016), where over Defendant's objection, the trial court judicially noticed information from the FDIC website, conceding it was hearsay but allowing it by citing Fed.R.Evid. 803(8), the public records exception to the hearsay rule.

With respect to the part of the quotation *infra.,* that hearsay in a judicially noticed fact is not allowed, a closer analysis of the case law is necessary. COP writes (Mtn. p.4) "However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002). Tal, 453 F.3d at 1265.

In context, the 11th Circuit case cited within Tal, 453 F.3d 1244 involved an SEC action where the district court judicially noticed a drug study and its conclusions as found in a public FDA file, the drug's package insert, and the Physicians' Desk Reference (PDR). "The district court specifically stated it was not accepting the facts

asserted though the conclusions therein were favorable to defendant pharmaceutical company's position.

> The package insert for Niaspan was not referred to in the complaint, but the district court reasoned that its contents could be judicially noticed because "it is a matter of public record (part of the FDA public file), is included in every package of Niaspan, and also listed in the Physician's Desk Reference." The district court specifically stated it was not accepting the facts asserted in the insert as true, *and appears only to have used it to show the bare existence of a clinical study which stated that Niaspan could increase HDL cholesterol by 32%. We find no error in this.* [Emphasis added]

[Oxford Asset Management, Ltd.](), 297 F.3d at 1188

Similarly, in request for judicial notice no. 2, Plaintiff asks the Court to notice the "bare existence of eyewitnesses" who claim to have seen Smith dictate from the seer stone in his hat. This fact has been acknowledged by COP (Exhibit One to Mtn, ECF # 59-1, p. 3). This request falls short of asking the Court or anyone else to determine the truth of whether Smith did in fact dictate the *Book of Mormon* transcript from a stone placed in his hat.

3. **The brown stone has been in Defendant's custody since the Mormon pioneers crossed the plains in the mid-19th Century.** The footnote references Exhibit one (ECF #59-1) to the Motion which includes this language from a COP owned website. The entire paragraph quoted in the motion is inaccurately paraphrased by defense counsel (Response p. 6). Complete, it reads:

> …The stone he used in the translation was often referred to as a chocolate-colored stone with an oval shape. The stone was passed from Joseph Smith to scribe Oliver Cowdery and then from Cowdery's widow, Elizabeth Whitmer Cowdery, to Phineas Young. Young then passed it on to his brother, Brigham Young, the second president of the Church. *After President Young died, one of his wives, Zina D. H. Young, donated it to the Church. In addition to this seer stone, historical records indicate that Joseph Smith owned other seer stones during his lifetime.*5

[Emphasis added.]

Therefore, it is a fact, completely and properly capable of judicial notice that the stone was donated sometime between Brigham's death and Zina's death. Judicial notice of the death dates for Brigham Young and Zina D.H. Young, matters of public record which are easily confirmed, is no different than COP's sunset example. (Response p. 4). Brigham died August 29, 1877. [1] Zina came to the Utah Territory with the Mormon Pioneer exodus west in September 1848 and died on August 28, 1901 in Salt Lake City. [2]

3.   **As Amended.** Though the request as worded is likely what occurred since Zina arrived in Utah in 1848, amending the request to: **"The brown stone has been in Defendant's custody since before the death of Zina D.H. Young, one of Brigham Young's wives, on August 28, 1901"**, is respectfully requested.

Early 20th Century LDS leaders admit the stone has been in COP custody:

///

///

///

///

///

///

---

[1] https://history.churchofjesuschrist.org/article/pioneer-story-brigham-young-an-american-moses?lang=eng (viewed December 15, 2020)

[2] https://history.churchofjesuschrist.org/article/relief-society-general-president-zina-d-h-young?lang=eng (viewed Dec. 15, 2020);



    The above is a screen shot from Mormon President Joseph Fielding Smith's

*Doctrines of Salvation*, [3] edited by Mormon Apostle, Bruce R. McConkie.[4]

    FN 225 in the above screenshot refers to a statement by official LDS historian

and Apostle, B. H. Roberts who wrote: "The writer knows however, that it [the stone]

was in the possession of the president of the church for possession of it by him was a

matter of conversation between President Joseph F. Smith and himself; and the writer

has reasons for knowing that it is now in possession of the church---this year of 1930." [5]

---

[3] *DOCTRINES OF SALVATION SERMONS & WRITINGS OF JOSEPH FIELDING SMITH,* Vol. 1-3, Compiled by Elder Bruce R. McConkie (c) 1954-56.
[4] https://archive.org/stream/JFSDoctrinesOfSalvation/JFSDoctrinesofSalvationv1-3#page/n587/mode/1up (Screen shot taken December 15, 2020).
[5] B. H. Roberts, *A Comprehensive History of the Church*, vol. 6, pp. 230-231. Publisher: Deseret Book Company © 1930. Location 4021-4022 in Kindle.

WHEREFORE, since binding authority does note universally preclude internet sites as valid authority for judicial notice, since the facts to be noticed are not hearsay in that they are not offered to prove the truth of the matter asserted but only for the purpose of demonstrating that there is abundant information that demonstrates that it is an issue of fact as to whether Defendant had a "sincere religious belief" in the representations it made as alleged in the Amended Complaint, Plaintiff requests that the following facts (as amended in no. 3) be judicially noticed in conjunction with the Court's ruling on Defendant's Motion to Dismiss the Amended Complaint:

1. **On August 4, 2015, Defendant published a "never before seen" photo of an opaque brown stone, which it claimed was used by Joseph Smith to translate the *Book of Mormon*. Attached is an accurate photo of the brown stone.**
2. **Eyewitnesses claimed that when Smith used the stone, he placed it in a hat to exclude exterior light; and**
3. **The brown stone has been in Defendant's custody since before the death of Zina D.H. Young, one of Brigham Young's wives, on August 28, 1901.**

Respectfully submitted,

DATED this 15th day of December 2020.   Kay Burningham, Attorney at Law

/s/   *Kay Burningham*
_____
Kay Burningham

*Attorney for Laura A. Gaddy and the Class*