Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111
Phone: 1.888.234.3706

*Attorney for Laura A. Gaddy and the Class*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>*Defendant* | **PLAINTIFF'S MOTION FOR LEAVE TO FILE THE PROPOSED SECOND AMENDED COMPLAINT**<br><br>(Request for Oral Argument)<br><br>(DEMAND FOR JURY TRIAL)<br><br>**2:19-cv-00554-RJS--DBP**<br><br>Presiding Judge: Robert J. Shelby<br><br>Magistrate Judge: Dustin B. Pead |

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

For expedience, Plaintiff abandons her prior motion (ECF #80) and seeks leave to file the proposed Second Amended Complaint ("2AC") per Fed. R. Civ. P. 15(a)(2).

## POINTS AND AUTHORITIES

1. <u>If Justice Requires, Leave to File the 2AC should be Granted.</u>

    Leave to amend should be granted where justice requires and to provide plaintiffs the maximum opportunity for each claim to be decided on the merits. Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006).

1

Though within the trial Court's discretion:

> …a court may refuse to grant leave to amend only where it finds evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment. Minter, 451 F.3d at 1204.

The points and authorities below demonstrate that justice requires leave be granted.

2. <u>The Motion for Leave to File the Proposed 2AC is Brought in Good Faith and is Based in Part on Newly Discovered Evidence.</u>

This Motion is based in part upon material facts which could have only reasonably been discovered after the filing of the Amended Complaint ("AC") [ECF #37, May 18, 2020].

    a. *COP only Recently Demonstrated Smith's Stone in a Hat Process.*

In May 2020, President Russel L. Nelson demonstrated how Smith used a stone (he conflates "Urim and Thummim" with "seer stone") in a hat to create the *Book of Mormon.* 2AC ¶138, pp.42-45 .[1] He admits that witnesses describe this as the way it was done.

This demonstration, along with the admission that the Church has possessed the brown stone since at least 1901 (2AC ¶166), can reasonably be interpreted to mean that Defendant has been in possession of evidence that would lead one to believe that Smith used the brown stone to create the *Book of Mormon* for over a century. Yet it has intentionally concealed that evidence and instead, used artwork showing Smith directly

---

[1] Language accompanying the 2015 brown stone first-ever-seen photo was that it was "likely used" to translate the *Book of Mormon*.

2

translating from gold plates, thereby manipulating the conclusions that would otherwise follow had LDS members known about the brown stone and the eyewitness accounts.

    *b. Plaintiff only Recently Discovered the Significance of COP's Concealment of the Metal Plate used to Print Book of Abraham Facsimile #3.*

  Motion to Supplement [ECF #57] argued key *Book of Abraham* facsimile no. 3 evidence disclosed by COP in late Oct. 2018, the significance of which was only noted by scholars and others in a discussion in summer 2020, after the AC was filed. COP disclosed that a metal plate, not a woodcut, was used to print the facsimile. This is significant for the origin of the spike on figure 6 as an inadvertent failure by the metallurgist to remove Anubis' ear, as opposed to a stray woodcut sliver or ink error. ECF #57 is hereby incorporated by reference.

  Since ECF #57 was filed after the MTD, the Court allowed it only if the AC survives the MTD. [ECF #78, p. 21, lines 4-7 ]. The 2AC alleges the recently disclosed metal printing plate as more evidence of COP's longstanding intent to deceive.

  3. <u>The Motion has been Brought Quickly; Just One AC has been Filed.</u>

  Although the Tenth Circuit has found that "untimeliness alone is a sufficient reason to deny leave to amend." (Citing Frank v. U.S. W., Inc., 3 F.3d 1357, 1365–66 (10th Cir. 1993), reasons for the delay should be a focus. Braun v. Medtronic Sofamor Danek, Inc., No. 2:10-CV-1283, 2013 WL 1842290, at *4–5 (D. Utah May 1, 2013) (unpublished).

4. <u>COP has the Burden to Prove Undue Prejudice.</u>

"The burden is on the non-moving party under Fed. R. Civ. P. 15(a)(2) to provide a reason why justice does not require amendment." nCAP Licensing, LLC v. Apple Inc., No. 2:17-CV-905, 2019 WL 8137713, at *3 (D. Utah June 7, 2019); See also United States v. Badger, No. 2:10-CV-00935, 2013 WL 1309165, at *2 (D. Utah Mar. 31, 2013) (unpublished).

5. <u>Allowing the Proposed 2AC would not be Futile.</u>

 *a. Claims based on tithing misrepresentations are easily severable.*

Claims based on misrepresentations about tithing are pleaded in the alternative and could easily be severed if the Court remains unpersuaded by all 2AC allegations.

 *b. The 2AC has just two common law fraud claims. Both are well pleaded.*

The fact misrepresented in the 2AC First Cause of Action, Fraud in the Inducement, is COP's state of mind as presented in its correlated materials; it is not pleaded merely as an element of common law fraud. 2AC ¶¶314-351.

COP's duty to disclose material information is alleged on several grounds recognized under Utah law. 2AC ¶¶355 However, no duty is required for the 2AC Second Cause of Action of Fraudulent Concealment where a scheme "intended to exclude suspicion and prevent inquiry" is alleged under Jensen, *infra*. 2AC ¶¶356,

The RICO and *Utah Charitable Solicitations Act* claims remain essentially as pleaded in the AC but are now based on additional material information that COP has disclosed since the AC was filed.

> c. *Smith makes the specific distinction that proselytizing is more than professing one's beliefs. It is conduct subject to valid general laws.*

Plaintiff has always argued that COP's behavior is *conduct* subject to regulation under valid fraud laws. But neither the undersigned nor defense counsel has previously brought the following important specific language to the Court's attention:

> But the "exercise of religion" often involves not only belief and ==profession== but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, ==proselytizing==, abstaining from certain foods or certain modes of transportation." [Emphasis Added.]

Emp. Div., Dep't of Hum. Res. of Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 877, 110 S. Ct. 1595, 1599, 108 L. Ed. 2d 876 (1990)

Writing for the majority, Justice Scalia distinguished Establishment clause cases challenging laws targeting religion, from Free Exercise clause cases, which limit conduct to boundaries imposed by generally applicable and valid neutral laws.

He identified Respondent's argument as one seeking:

> …to carry the meaning of "prohibiting the free exercise [of religion]" one large step further…They assert, in other words, that "prohibiting the free exercise [of religion]" includes requiring any individual to observe a generally applicable law that requires (or forbids) the performance of an act that his religious belief forbids (or requires). As a textual matter, we do not think the words must be given that meaning.

494 U.S. 872, 878, 110 S. Ct. 1595, 1599, 108 L. Ed. 2d 876 (1990).

The Court has never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that government is free to regulate. Allowing exceptions to every state law or regulation affecting religion "would

open the prospect of constitutionally required exemptions from civic obligations of almost every conceivable kind." 494 U.S. at 888; 110 S.Ct. at 1605.

The Supreme Court previously wrote: "However, the right to the free exercise of religion unquestionably encompasses the right to preach, proselyte, and perform other similar religious functions, or, in other words, to be a minister of the type McDaniel was found to be." (Citations omitted) McDaniel v. Paty, 435 U.S. 618, 626, 98 S. Ct. 1322, 1327, 55 L. Ed. 2d 593 (1978). However, whether that right, which includes the conduct of proselytizing and preaching [or teaching those who joined the church in reliance upon the misrepresentations and therefore without consent] is subject to valid general laws was not addressed. It was addressed in Smith, twelve years later.

The McDaniel comment was dicta, an observation unnecessary to the rationale of its holding and written in the context of First Amendment Establishment Clause analysis. Despite COP's claim [ECF #26, p.1], GADDY is a Free Exercise case; the issue is *conduct* that can and should be regulated under valid general laws. It does not analyze a law targeting religion and is therefore not an Establishment Clause case as those cases have been historically decided under First Amendment jurisprudence.

Smith's distinguishment of *professing* from *proselytizing* was part of a rationale necessary for its rule that a one's religious *beliefs* do not excuse him from compliance with an otherwise valid law prohibiting *conduct* that the government is free to regulate.[2]

---

[2] The Court's Order did not distinguish *profess* from *proselytize* as Smith did in its Free Exercise analysis. Instead, it relied on dicta in McDaniel v. Paty, an Establishment case involving a law targeting religion. [ECF # 33, p. 8].

Additionally, such an application of the law would be tantamount to violation of the Equal Protection Clause. And "…would be introducing a new element into criminal law." Reynolds v. United States, 98 U.S. 145, 166, 25 L. Ed. 244 (1878).

This is just what COP is attempting to lead the Court to do: apply the First Amendment as a defense to valid neutral laws without justification as to why it should be applied. If that was the law, then moving to dismiss under 12(b)(1) would be proper. However, it is COP's burden to show that they are exempt from compliance with the valid general laws alleged in the 2AC. This, they have not and cannot do.

    d. *Litigation of COP's Sincerity is Proper under Ballard. Despite his Poetic Prose, Justice Jackson's Dissent was that of a Lone Wolf*.

Three justices supported Justice Douglas' majority opinion that the truth or falsity of religious beliefs cannot be adjudicated.

Chief Justice Stone, joined by three of the remaining justices, dissented:

> "…submitted to the jury [was] the single issue whether petitioners honestly believed that they had occurred, with the instruction that if the jury did not so find, then it should return a verdict of guilty. On this issue the jury, on ample evidence that respondents were without belief in the statements which they had made to their victims, found a verdict of guilty. *The state of one's mind is a fact as capable of fraudulent misrepresentation as is one's physical condition or the state of his bodily health.* (Citations omitted.) …*Certainly [,] none of respondents' constitutional rights are violated if they are prosecuted for the fraudulent procurement of money by false representations as to their beliefs, religious or otherwise.* [Emphasis added.]

United States v. Ballard, 322 U.S. 78, 89–90, 64 S. Ct. 882, 888, 88 L. Ed. 1148 (1944)

It is much cleaner to draw the line where the majority holds, if not where Chief Justice Stone suggests, thereby allowing plaintiffs to challenge defendants who do not

7

sincerely believe what they teach—here, to challenge a corporation that does not believe its correlated material.

Sincerity challenges are common in RFRA claims against the penal system, conscientious objectors before the draft board, and other contexts. Justice Stone recognized state of mind as a fact capable of fraudulent misrepresentation. *Id*., 322 U.S. 78, 90, 64 S. Ct. 882, 888. That premise was recently repeated:

> Every such statement [of belief] explicitly affirms one fact: that the speaker actually holds the stated belief. A statement of opinion [belief] thus qualifies as an "untrue statement of ... fact" if that fact is untrue— i.e., if the opinion expressed was not sincerely held.

Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 176, 135 S. Ct. 1318, 1321, 191 L. Ed. 2d 253 (2015).

> e. *Arguably, COP owes a duty to disclose material Information to its members. But a duty is not required under Jensen and the 2AC statutory claims; COP's deceptive scheme is enough for fraudulent concealment.*

In the Court's Order dismissing the original complaint it denied the inartfully labeled "breach of an equitably imposed fiduciary duty" claim. [ECF #l33, pps 18-20.] However, the 2AC alleges sufficient factual bases for COP's duty to arise even under Utah law. 2AC ¶355 But fraudulent concealment can lie without a duty: "Making use of a device that misleads, some trick or contrivance that is intended to exclude suspicion and prevent inquiry, may also amount to fraudulent concealment." Jensen v. IHC Hosps., Inc., 944 P.2d 327, 333 (Utah 1997), on reh'g (Aug. 22, 1997). 2AC ¶356.[3]

---

[3] The Court's Order incompletely quoted Utah law [ECF #33, p.12 n.73]. A full citation references Jensen, Id., McDougal v. Weed, 945 P.2d 175, 179 (Utah Ct. App. 1997)

Nor is a duty required under RICO where a deceptive scheme is shown, or, under the *Utah Charitable Solicitations Act* where the reasonable person standard for disclosure applies.

f. *A Religious Organization can be a Proper RICO Defendant.*

No case law that holds a religious organization is not a proper RICO defendant. As of 2019, state attorneys general are considering RICO claims against the Catholic Church, which has also been a defendant in Civil RICO claims.[4]

RICO's legislative intent:

> In spite of its name and origin, RICO is not limited to "mobsters" or members of "organized crime" as those terms are popularly understood. Rather, it covers those activities which Congress felt characterized the conduct of organized crime, no matter who actually engages in them.

May 18, 2016. *Congressional Research Service* 7-5700 www.crs.gov 96-950.[5]

g. *Though not binding on this Court, the Jeffs analysis is persuasive. If applied here, it defeats COP arguments against application of 2AC laws.*

Below is an example of the analysis of whether Defendants' behavior is consistent with a sincerely held religious belief. Defendants, FLDS bishops, were indicted for violation of the food stamp statute (SNAP), which prohibits re-selling of food bought with stamps. SNAP benefits could only be used by the household to buy eligible food for that household. Violations could occur through the use, transfer, acquisition, alteration, or possession of SNAP benefits for anything contrary to the statute.

---

[4] https://apnews.com/article/a9a988465ae944bd8dbd5094ebd562ad
[5] https://fas.org/sgp/crs/misc/96-950.pdf

The court found that the law of consecration was an FLDS doctrine. And that, "Defendants' religious beliefs would require the consecration of food obtained using SNAP benefits, if they received it." United States v. Jeffs, No. 2:16-CR-82 TS, 2016 WL 6745951, at *4 (D. Utah Nov. 15, 2016) (unpublished). But also, that: "[A]n adherent's belief would not be 'sincere' if he acts in a manner inconsistent with that belief… Similarly, a belief may not be sincere if it is "motivated by commercial or secular motives rather than sincere religious conviction." *Id* at *4. The court found defendants lived extravagantly, different from their followers and inconsistent with a claimed belief in the law of consecration. Id. at *5.

Respectfully, the Jeffs analysis should be applied to the facts in this case. COP teaches its followers the principles of honesty, including full disclosure, and free agency. It specifically denies "Lying for the Lord" as a sincerely held religious belief. 2AC ¶203 COP cannot justify a First Amendment defense. Compliance with all the laws pleaded in the 2AC would not substantially burden its sincerely held religious beliefs.

Respectfully submitted,

DATED: March 17, 2021       Kay Burningham, Attorney at Law

/s/ Kay Burningham
Kay Burningham

kay@kayburningham.com
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111

*Attorney for Laura A. Gaddy and the Class*