David J. Jordan (1751)
david.jordan@stoel.com
Wesley F. Harward (15623)
wesley.harward@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone:  801.328.3131

*Attorneys for Defendant Corporation of the
President of The Church of Jesus Christ of
Latter-day Saints*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>        Defendant. | **OPPOSITION TO PLAINTIFF'S "MOTION FOR LEAVE TO FILE THE PROPOSED SECOND AMENDED COMPLAINT"**<br><br>Case No. 2:19-cv-00554-RJS<br><br>The Honorable Robert J. Shelby<br>The Honorable Dustin B. Pead |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................3

    A. Ms. Gaddy Failed to Cure—or Even Attempt to Cure—Deficiencies in Previously Allowed Amendments. ..............................3

    B. Ms. Gaddy's Proposed Second Amended Complaint Is Futile............8

        1. The Second Amended Complaint Remains Rooted in Ms. Gaddy's Allegations That the Church's Religious Teachings Are False..................................................................8

        2. Ms. Gaddy's "Alternative" Tithing Claims Fail........................9

III. CONCLUSION....................................................................................................11

i

110452057.4 0056812-00016

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Frank v. U.S. W., Inc.*,
  3 F.3d 1357 (10th Cir. 1993) ...................................................................................3

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*,
  393 U.S. 440 (1969) ..................................................................................................4

*Stone v. Salt Lake City*,
  356 P.2d 631 (Utah 1960) ......................................................................................11

*United States v. Ballard*,
  322 U.S. 78 (1944) ...................................................................................6, 7, 9, 12

**Rules**

Fed. R. Civ. P. 15(a)(2) ....................................................................................................3

**Constitutional Provisions**

First Amendment ......................................................................................................2, 11

Defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints (the "Church") submits this Opposition to Plaintiff's "Motion for Leave to File the Proposed Second Amended Complaint" (the "Motion for Leave") (Docket No. 85).

## I.   INTRODUCTION

Ms. Gaddy's proposed "Second Amended Complaint" epitomizes the familiar saying, "the more things change, the more they stay the same." The Second Amended Complaint now consists of over 400 paragraphs, consuming 135 pages, excluding exhibits. The fundamental allegations—and constitutional defects—however, are exactly the same as those asserted in all the prior iterations[1]

---

[1] Ms. Gaddy styles the proposed complaint as a "Second Amended Complaint," but that is incorrect. It is not, in fact, the second complaint filed in this case. Ms. Gaddy filed her original complaint on August 5, 2019. The Church moved to dismiss that complaint. On March 30, 2020, Ms. Gaddy filed a motion for leave to file an amended complaint—prior to the Court's ruling on the Church's original Motion to Dismiss. Ms. Gaddy attached a proposed amended complaint to that motion. (Docket No. 32.) After the Court's decision, Ms. Gaddy filed a "revised" motion for leave to amend that attached yet another version of a proposed complaint. (Docket No. 34.) That complaint was filed. (Docket No. 37.) Ms. Gaddy then amended that amended complaint to add an additional exhibit. (Docket No. 57.) Ms. Gaddy now seeks permission to file this latest complaint—again before allowing the Court to rule on the Church's Motion to Dismiss currently under advisement. (Docket No. 85.) And Ms. Gaddy has already filed an "Errata" to make additional changes to this proposed complaint. (Docket No. 90.) Thus, in total, Ms. Gaddy has submitted no fewer than *six* proposed draft complaints in this case.

1

of complaints. Once again, Ms. Gaddy alleges that the Church's teachings about Joseph Smith's First Vision, the Book of Mormon, and the Book of Abraham are false.

This Court's Memorandum Decision and Order Granting Defendant's Motion to Dismiss (the "Order") (Docket No. 33) was clear. Courts may not "adjudicate fraud claims implicating religious facts." (Order at 13.) This Court specifically held that it "can no more determine whether Joseph Smith saw God and Jesus Christ or translated with God's help gold plates or ancient Egyptian documents, than it can opine on whether Jesus Christ walked on water or Muhammed communed with the archangel Gabriel. The First Amendment prohibits these kinds of inquiries in courts of law." (*Id.* at 12.)

Ms. Gaddy's Motion for Leave should be denied because her proposed Second Amended Complaint suffers from all the same defects as all the prior versions—her claims are based on her allegations that the Church's *religious* teachings are false. In fact, the proposed Second Amended Complaint includes many *additional* pages of allegations about those teachings. Thus, the proposed Second Amended Complaint proposes to *further* inject the Court into adjudicating these religious matters. Accordingly, Ms. Gaddy's Motion for Leave should be denied.

## II.     ARGUMENT

Rule 15 of the Federal Rules of Civil Procedure provides that, except when an amendment is pleaded as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  The rule provides that courts are to "freely give leave when justice so requires." *Id.*  The Tenth Circuit has explained that refusing to give leave is justified "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Ms. Gaddy's Motion should be denied due to her failure to cure prior deficiencies and on futility grounds.  Each argument is addressed in turn.

### A.     Ms. Gaddy Failed to Cure—or Even Attempt to Cure—Deficiencies in Previously Allowed Amendments.

Ms. Gaddy has not cured the deficiencies in her previously allowed complaints.  Indeed, Ms. Gaddy's Amended Complaint, the proposed Second Amended Complaint, and her current Motion for Leave are striking in how completely they disregard the Court's Order and the statements made by the Court at the January 5, 2021 hearing (the "Hearing").  Her latest complaint, like its predecessors, is better described as a personal manifesto against the Church than as a legal pleading.

3

The precedential origins and history of the church autonomy doctrine are set forth both in the Church's original motion to dismiss and this Court's Order and will not be repeated here.  (Docket No. 6 & Docket No. 33.)  Briefly summarized, the church autonomy doctrine prohibits courts from "engag[ing] in the forbidden process of interpreting and weighing church doctrine." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969).  "In short, . . . courts may not inject themselves into resolving ecclesiastically based disputes."  (Order at 8.)

This Court ruled that it was prohibited from opining on "whether Joseph Smith saw God and Jesus Christ or translated with God's help gold plates or ancient Egyptian documents."  (Order at 12.)  Despite this clear ruling, Ms. Gaddy has not even attempted to excise these allegations from *any* of her complaints.  Indeed, the premise of the Church's Motion to Dismiss Amended Complaint was exactly that—Ms. Gaddy's Amended Complaint suffered from the same defects as her original complaint.  For the sake of brevity, the Church will not repeat its arguments or analysis about those allegations here.  It is enough to note that the motion explained that Ms. Gaddy "again allege[d] that the Church's *religious* teachings about Joseph Smith, the Book of Abraham, and the Book of Mormon are false."  (Docket No. 38 at 12.)

One striking feature of the Motion for Leave is that Ms. Gaddy does not even attempt to argue that her proposed Second Amended Complaint cures any of the defects identified by the Court's Order or during the Hearing.  Indeed, the only references to the Order in Ms. Gaddy's Motion for Leave are found in two footnotes criticizing the Order.[2]

Ms. Gaddy's Motion for Leave similarly ignores or argues with the statements made by the Court at the Hearing.  The Court shared what it described as its "preliminary thoughts" based on its review of the parties' submissions.  The Court stated it was "disinclined to revisit [its] prior rulings" and that it would not "revisit the conclusions [it] previously drew in the memorandum decision and order" it previously issued.  (Hearing Tr. at 6.)  The Court expressly considered argument about whether the allegations concern "conduct" that could be regulated and whether Ms. Gaddy's "sincerity" allegations changed the constitutional

---

[2] In footnote 2, Ms. Gaddy criticizes the Court's Order for "not distinguish[ing] *profess* from *proselytize*."  (Docket No. 85 at 6.)  This is part of her argument—asserted and rejected in the original motion to dismiss—that preaching belief constitutes "conduct" that can be regulated.  (*See* Order at 15.)  In footnote 3, Ms. Gaddy criticizes the Court's Order as "incompletely quot[ing] Utah law."  (Docket No. 85 at 8.)  This is the exact same argument she raised in response to the Church's Motion to Dismiss Amended Complaint.  (*See* Docket No. 47 at 28 ("The Court incorrectly stated the law as to material omissions in the context of a fraudulent concealment claim: [sic] (Order, ECF, #33, note 73).  The quotation is incomplete.").)

5

analysis.  (*Id.* at 8-10.)  The Court also indicated that it was "very persuaded by Justice Jackson's dissent" in *United States v. Ballard*, 322 U.S. 78 (1944).  (*Id.* at 8.)

Ms. Gaddy apparently hopes that by filing the Motion for Leave she can persuade the Court *not* to issue the ruling contemplated by the Court's statements.  Indeed, Ms. Gaddy previously requested that the Court defer ruling on the Motion to Dismiss Amended Complaint until *after* the briefing on the instant motion is complete.  As noted by the Church, this is an improper attempt to submit additional briefing on the subject matter of the Motion to Dismiss Amended Complaint that has been briefed and argued and is currently under advisement.  (*See* Docket No. 82.)

It is readily apparent that the arguments presented by the Motion for Leave are squarely aimed at the Court's statements in the Hearing.  For example, Ms. Gaddy includes a section entitled "*Litigation of [the Church's] Sincerity is Proper Under Ballard.  Despite His Poetic Prose, Justice Jackson's Dissent was*

*that of a Lone Wolf.*" (Docket No. 85 at 7.) The following table demonstrates that all of Ms. Gaddy's substantive[3] arguments have already been extensively briefed.[4]

| **Ms. Gaddy's Argument** | **Location in Motion for Leave (Docket No. 85)** | **Location in Opposition to Motion to Dismiss Original Complaint (Docket No. 23)** | **Location in Opposition to Motion to Dismiss Amended Complaint (Docket No. 47)** |
|---|---|---|---|
| The Existence of a Duty to Disclose | Pages 4, 8-9 | Pages 23-25 | Pages 28-29 |
| The Utah Charitable Solicitations Act | Page 4 | N/A | Pages 30-32 |
| Whether "Preaching" Is "Conduct" Subject to Regulation | Pages 5-7 | Pages 15-16 | Pages 16-21 |
| The Proper Application of *Ballard* | Pages 7-8 | Pages 16-17 | Pages 7, 23-25 |
| The Adjudication of "Sincerity" | Pages 7-8 | Pages 16-17 | Pages 7, 21-26 |

---

[3] The only new cases or arguments in the Motion for Leave relate to the procedural standard governing a motion for leave to amend.

[4] As noted in a previous brief, Ms. Gaddy has filed no less than 17 submissions—totaling tens of thousands of words—on these exact issues. (*See* Docket No. 82 at 4-6 (detailing the prior filings).)

7

In short, the Motion for Leave and the proposed Second Amended Complaint are nothing more than a rehashing of arguments previously raised. Ms. Gaddy has not attempted to cure any of the prior defects in her complaints. Thus, her Motion for Leave should be denied.

**B.    Ms. Gaddy's Proposed Second Amended Complaint Is Futile.**

> **1.    The Second Amended Complaint Remains Rooted in Ms. Gaddy's Allegations That the Church's Religious Teachings Are False.**

Because Ms. Gaddy's proposed Second Amended Complaint suffers from all the same defects as her prior complaints, her proposed amendment is futile and should be denied. At its heart, the proposed Second Amended Complaint again alleges that the Church's teachings about the Book of Mormon, the Book of Abraham, and Joseph Smith's First Vision are false. (*See* Proposed Second Am. Compl. ¶¶ 24-68 ([Docket No. 85-1)](#).) Rather than excising the allegations based on religious facts, the proposed Second Amended Complaint contains many *more pages* of allegations on those topics. For example, Ms. Gaddy now makes allegations about a devotional service presented by the Church's President, Russell M. Nelson. (*See* Proposed Second Am. Compl. ¶¶ 137-39.[5]) Similarly, Ms. Gaddy

---

[5] This is the same video that counsel for Ms. Gaddy presented at the Hearing.

includes allegations about the Church's teachings about the "preexistence," the filial relationship between Jesus Christ and Lucifer, a "war in heaven," and the "doctrine of 'free agency.'" (*Id.* ¶ 320.)

As this Court previously held, "[t]he nature of the First Vision and the origin of some of the Church's scripture are simply not proper subjects for judicial scrutiny." (Order at 13-14.) Ms. Gaddy's claims "go to the heart of several of the Church's foundational beliefs . . . [—t]hese are the types of claims *Ballard* forecloses." (*Id.* at 15.)

### 2. Ms. Gaddy's "Alternative" Tithing Claims Fail.

Ms. Gaddy's Motion for Leave contains only two sentences about her "tithing" claims. Ms. Gaddy writes: "*Claims based on tithing misrepresentations are easily severable.* Claims based on misrepresentations about tithing are pleaded in the alternative and could easily be severed if the Court remains unpersuaded by all 2AC allegations." (Docket No. 85 at 4.) It is unclear what Ms. Gaddy means by "could easily be severed." This appears to imply that Ms. Gaddy contemplates yet another amendment where only her tithing-based claims survive. That is not the way the proposed Second Amended Complaint is pled. There is no indication as to which allegations or causes of action would survive. Regardless, her "tithing" based claims also fail.

9

Ms. Gaddy's tithing claims are rooted in religious questions. Any adjudication of a "fraud" claim would require the Court to opine on at least the following *religious* questions: What does the Church and its scriptures teach about tithing? What donations constitute tithing? What is the correct disposition of tithing based on the teachings of the Church, its leaders, and scriptures? Has the Church's use of tithing been consistent with its teachings? Why do members of the Church pay tithing?

Ms. Gaddy's own allegations reveal the religious nature of her tithing claims. On the element of reliance, Ms. Gaddy alleges that she (and others) made tithing donations to the Church because they "reasonably relied on the representations to formulate an opinion that [Joseph] Smith was a prophet and founder of [Church] theology, the restored gospel of Jesus Christ." (Proposed Second Am. Compl. ¶ 343.) And Ms. Gaddy alleges that she and others paid tithing so they "could acquire and maintain temple recommends and/or be baptized." (*Id.* ¶ 337.)

Similarly, Ms. Gaddy alleges that the Church teaches that tithing and other donations are used to accomplish the "the four-fold mission of the Church: to teach the gospel to the world, to strengthen the membership of the Church: to perform saving ordinances for the dead, and to care for the poor and needy." (*Id.* ¶ 254.)

Ms. Gaddy's fraud claim is based on her allegations that the Church has used donations for "commercial" purposes. But as the Utah Supreme Court has explained:

> [I]t is obvious that all of the funds the Church collects would not be disbursed immediately and directly for such purposes. It is but common sense and common knowledge that there is need for the exercise of management of such funds for the ultimate accomplishment of the purposes stated. How this is to be done to best serve those objectives is for those in charge of the management of the Church to decide. It may well entail the keeping of collected funds in savings accounts, bonds, real estate or any type of investment which, in the judgment of those in charge, best suits that purpose.

*Stone v. Salt Lake City*, 356 P.2d 631, 633-34 (Utah 1960). The Court should reject Ms. Gaddy's invitation to adjudicate whether the Church's investment of tithing funds is for so-called "commercial" purposes or ultimately serves the Church's ecclesiastical mission.

### III.   CONCLUSION

It is clear that Ms. Gaddy wants to put the Church's teachings about the Book of Mormon, the Book of Abraham, and Joseph Smith's First Vision on trial. Ms. Gaddy, through her counsel, has repeatedly indicated her intention to appeal this Court's Order that such a trial would violate the First Amendment to the Tenth Circuit. The time has come for Ms. Gaddy's wish to be granted. Her continual

11

attempts to replead and reframe that trial should be stopped and the Motion for Leave should be denied.[6]

Word Count: 2483

DATED: April 14, 2021.

                            STOEL RIVES LLP

                            */s/ David J. Jordan*
                            David J. Jordan
                            Wesley F. Harward

                            *Attorneys for Defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints*

---

[6] Ms. Gaddy's continuing misuse of the legal system to prosecute her personal campaign against the Church runs afoul of *Ballard's* admonition that "[m]en may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs." *United States v. Ballard*, 322 U.S. 78, 86 (1944).

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2021, I filed copy of the foregoing document with the Court's CM/ECF filing system, which caused a copy of the same to be served electronically on counsel of record.

/s/ Rachel L.H. DiFrancesco