Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111
Phone: 1.888.234.3706

*Attorney for Laura A. Gaddy and the Class*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole.<br><br>*Defendant* | **REPLY to OPPOSITION to MOTION FOR LEAVE to FILE THE PROPOSED SECOND AMENDED COMPLAINT**<br><br>(Request for Oral Argument)<br><br>(DEMAND FOR JURY TRIAL)<br><br>**2:19-cv-00554-RJS--DBP**<br><br>Presiding Judge: Robert J. Shelby<br><br>Magistrate Judge: Dustin B. Pead |

## TABLE OF CONTENTS

I.   COP Wrongly Applies Yoder's Catchphrase. ........................................3

2.   Ecclesiastical Deference (CAD) Applies Only to Intrachurch Disputes. ..................................................................................................4

1

3. The CAD Exemption for Fraud Survives. ..................................................5

4. Bryce Suggests the CAD Protects only Sincerely Held Beliefs. ..........7

5. Supreme Court CAD Decisions are Limited to Intrachurch Disputes over Property or Ministerial Appointments. ..............................................9

6. The Proposed 2AC Would Not Be Futile. ...............................................13

7. 2AC Tithing Claims Differ from Stone. ..................................................14

8. Conclusion ..................................................................................................14

TABLE OF AUTHORITIES

Page(s)

**Cases**

Axson-Flynn v. Johnson,
   356 F.3d 1277 (10th Cir. 2004) ...............................................................9
Bryce v. Episcopal Church in the Diocese of Colorado,
   289 F.3d 648 (10th Cir. 2002) .......................................................5, 6, 7
Gen. Council on Fin. & Admin. of United Methodist Church v. Superior Ct. of California, San Diego Cty.,
   439 U.S. 1355, 99 S. Ct. 35, 58 L. Ed. 2d 63 (1978) ...............................4
Jensen v. IHC Hosps., Inc., 944 P.2d 327 (Utah 1997), on reh'g (Aug. 22, 1997)...........................................................................................................12
Jones v. Wolf,
   443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979)........................6, 9
Malicki v. Doe,
   814 So. 2d 347 (Fla. 2002)....................................................................7, 8
Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,
   575 U.S. 175, 135 S. Ct. 1318, 191 L. Ed. 2d 253 (2015)......................13
Oregon v. Smith,
   494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).........................9
Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,
   393 U.S. 440, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969) ......................10, 11

Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich,
 426 U.S. 696, 706, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976)......................6
Stone v. Salt Lake City,
 11 Utah 2d 196, 356 P.2d 631 (1960) ...................................................14
United States v. Ballard,
 322 U.S. 78, 64 S. Ct. 882, 88 L. Ed. 1148 (1944) ................................14
Wisconsin v. Yoder,
 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) .............................3
Yazd v. Woodside Homes Corp.,
 2006 UT 47, 143 P.3d 283 ....................................................................12

**Other Authorities**

37 Am. Jur. 2d Fraud and Deceit § 145 ....................................................12

Andrew Soukup, Reformulating Church Autonomy: How Employment Division v. Smith Provides A Framework for Fixing the Neutral Principles Approach, 82 Notre Dame L. Rev. 1679 (2007).................................. 10, 13

## I. COP Wrongly Applies Yoder's Catchphrase.

Def. would have the Court believe that citing the phrase, "rooted in religious belief" (ECF #91, pps 2,11 & 13 "Opp."), is all that is needed to prevail in its First Amendment ("1st Am.") defense. But Wisconsin v. Yoder, 406 U.S. 205, 92 S. Ct. 1526, 1533, 32 L. Ed. 2d 15 (1972) involved conduct—*exercise and* required a balancing of interests. The Amish lifestyle limiting school attendance through 8th grade in was found to be "rooted in religious belief" and upon balance, to outweigh the state's compulsory education law to attend until age 16.

COP has yet to identify what religious exercise/conduct is compromised by compliance with laws identified in the Second Amended Complaint ("2AC"). Instead, it asserts a *carte balance* right to ignore the laws because the subject of the fraud claims is religious, claiming the church autonomy doctrine ("CAD") as a defense.

2. <u>Ecclesiastical Deference (CAD) Applies Only to Intrachurch Disputes.</u>

   As Justice Rehnquist, writing as circuit justice, explains:

   > There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. This Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes. Thus, *Serbian Eastern Orthodox Diocese* and the other cases cited by applicant are not in point. Those cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. (Citation omitted.) Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud, breach of contract, and statutory violations are alleged.

   <u>Gen. Council on Fin. & Admin. of United Methodist Church v. Superior Ct. of California, San Diego Cty.</u>, 439 U.S. 1355, 1372–73, 99 S. Ct. 35, 38, 58 L. Ed. 2d 63 (1978)

Other than a general handbook applicable to local leaders and moral disciplinary councils, unlike other Christian churches including Catholic, COJCOLDS has no canon law.[1] Instead, COP governs its members by fiat.

The case at bar is analogous to *Guinn,* distinguished in Bryce.

> In *Guinn,* the church leaders threatened to broadcast to the congregation plaintiff's sexual relations outside of marriage unless she repented. Id. at 768. In a failed attempt to prevent this disciplinary action, Guinn withdrew her membership in the church and hired an attorney who advised the church not to mention her name in church. Id. at 768–69. Guinn brought suit for invasion of privacy and intentional infliction of emotional distress. The Oklahoma Supreme Court rejected the church's First Amendment defense, finding that Guinn had effectively withdrawn from the church and was no longer subject to internal church discipline.

Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 658 (10th Cir. 2002)

### 3. The CAD Exemption for Fraud Survives.

Assuming the Court characterizes GADDY as an intrachurch dispute, since Correlation's decision to conceal and obfuscate is allegedly fraudulent, the CAD does not apply.

---

[1] https://en.wikipedia.org/wiki/Canon_law  [Last visited 04/30/2021]

5

The lower reversed a hierarchical church's removal of a bishop as arbitrary. Noting that the parties agreed the sole limitation to ecclesiastical deference "…occurs when the decision of the church tribunal is claimed to have resulted from fraud, collusion or arbitrariness," it allowed civil review. (Citation omitted.) <u>Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich</u>, 426 U.S. 696, 715 n.9, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976). The Supreme Court struck arbitrariness as an exemption but did not specifically address fraud or collusion.

Three years later the Court impliedly affirmed the fraud and collusion exemptions, even in ecclesiastical matters noting, "There is no suggestion …that the decision of the [church] commission was the product of "fraud" or "collusion."" <u>Jones v. Wolf</u>, 443 U.S. 595, 609, n.8, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979).

Later, Bryce cites Gonzalez, acknowledging the fraud and collusion exemptions to ecclesiastical deference. <u>Bryce</u>, 289 F.3d at 655.

GADDY is not an internal dispute over faith, doctrine, or polity. Having resigned from the Church, plaintiffs are external third parties. The church they spent most their lives committed to was not the church characterized by Def. in its traditional correlated narrative.

6

Even if characterized as an internal dispute, 1st Am. jurisprudence has historically exempted claims of fraud from ecclesiastical deference. No binding CAD case concerns 1st Am. protection for fraud-based conduct. If a church, by and through its agents, knows as COP does, that what it promulgates has scant relation to what is hidden in its vault or archives, that is fraud of the sort that the 2AC addresses.[2]

4. <u>Bryce Suggests the CAD Protects only Sincerely Held Beliefs.</u>

Importantly, Bryce impliedly recognizes the CAD defense only protects conduct rooted in *sincerely held* religious beliefs:

> Similarly, the Florida Supreme Court recently held that the First Amendment does not protect a church from a negligent hiring claim if the church's actions were not motivated by sincerely held religious beliefs or practices.
> <u>Malicki v. Doe</u>, 814 So. 2d 347 (Fla. 2002).[3]

<u>Bryce</u>, 289 F.3d at 657

---

[2] "Fraud" here is used in the broadest sense of the term. 2AC laws pleaded in the 2nd, 3rd & 4th  C/As do not require adjudication of the truth or falsity of LDS doctrine. (2AC ¶¶ 352-413)

[3] "These courts conclude that there is no impermissible interpretation of religious doctrine because the courts are applying a neutral principle of generally applicable tort law. This is especially so where the religious institution does not allege that the **conduct** was undertaken in furtherance of a sincerely held religious belief. ...it has been asserted that a contrary holding actually places a church or its clergy in a preferred position of being immune from tort liability solely because of religion, which in itself would have the impermissible effect of recognizing a religion in violation of the Establishment Clause." (Citations omitted) <u>Malicki</u>, 814 So. 2d at 358–59.

In <u>Malicki</u>, 814 So. 2d 347, St. David Catholic Church did not claim their priest's sexual assault, nor its failure to control that priest, was governed by sincerely held religious beliefs or practices. Likewise, the Free Exercise Clause is not implicated in GADDY because the **conduct** sought to be regulated: obfuscation, and concealment of information about material LDS history, is not rooted in sincere religious belief. 814 So. 2d at 360–61. Rather, it violates those beliefs.

COP's deceptive practice of obfuscating and concealing material information from plaintiffs, is only protected if it has a sincere religious belief in such *conduct*. Using one example, the issue is not whether Smith used a stone or not, but whether those about to commit to the Church should have been told that according to all eyewitnesses, the brown stone Smith used for treasure hunting was also used to create key scripture, and whether correlated depictions of Smith translating directly from gold plates, while COP concealed custody of the stone, was deceptive (2AC ¶¶130-141).

As alleged, COP disavows "Lying for the Lord" and requires disclosure in accordance with its sincerely held religious principles of honesty and free agency (2AC ¶¶ 319- 336). It has alleged no sincere religious belief at stake by compliance with 2AC fraud laws.

5. <u>Supreme Court CAD Decisions are Limited to Intrachurch Disputes over Property or Ministerial Appointments.</u>

Smith holds that one's religious beliefs do not excuse him from compliance with an otherwise valid law prohibiting conduct that government is free to regulate. <u>Emp. Div., Dep't of Hum. Res. of Emp. Div., Dep't of Hum. Res. of Oregon v. Smith</u>, 494 U.S. 872, 878–79, 110 S. Ct. 1595, 1600, 108 L. Ed. 2d 876 (1990).[4] The CAD has survived Smith, but only in cases limited to Intrachurch disputes re: property or ministers.[5] Apart from the forgoing two exceptions, the CAD does not save a religious entity from Smith.

---

[4] COP avoids meaningful reference to Smith, and the distinction between "profess" and "proselytize" referenced therein (Opp, p. 5, FN 2), yet is seeks to overturn that decision. Kirton & McConkie (two of whom appeared at the Jan. 5th hearing in this case), recently filed an amicus brief asking to have the U. S. Supreme Court reconsider Smith. See SHARONELL FULTON et. al., v. CITY OF PHILADELPHIA, PA, et. al. In the Supreme Court of the United States, Case No: 19-123, Brief for the Petitioner as amici curiae of the COJCOLDS, et al. pp 3-15, filed June 3, 2020.

[5] There are two exemptions to the rational basis standard in Smith; neither of them apply here. <u>Axson-Flynn v. Johnson</u>, 356 F.3d 1277, 1294–95 (10th Cir. 2004)

Civil review of a church's internal affairs is proper if the claim is based on neutral principles of law. Jones, 443 U.S. at 605.

> After *Jones,* courts need not extend absolute deference to religious organizations as a constitutional matter … In light of demonstrated judicial incompetence to make such decisions on a case-by-case basis, the historical attitude toward religious groups evident at the time of the Founding, and the First Amendment principles announced in *Smith,* courts should simply presume they can properly apply neutral principles of law. It makes no difference whether the common law or statutory provisions provide the applicable neutral principle. …. religious institutions cannot escape liability for their actions as a constitutional matter insofar as government entities can regulate their conduct by neutral principles of law…[6]

Def. construes CAD broadly but does so incorrectly, especially as applied to the case at bar. It writes:

> Briefly summarized, the [CAD] prohibits courts from "engag[ing] in the forbidden process of interpreting and weighing church doctrine." Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 451, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969). "In short, . . . courts may not inject themselves into resolving ecclesiastically based disputes.

[ECF #91, "Opp" p. 4, ¶1)

However, COP manipulates the quotation. Presbyterian Church held

---

[6] Andrew Soukup, Reformulating Church Autonomy: How Employment Division v. Smith Provides A Framework for Fixing the Neutral Principles Approach, 82 Notre Dame L. Rev. 1679, 1725 (2007).

.

that civil courts do not have the authority to determine property rights based on their interpretation of aspects of church doctrine. The word "inject," used once, is not used for the proposition that Def. leads the Court to believe it is. Writing about the marginal civil review contemplated in Gonzalez, the Court notes it was the Archbishop's task to interpret church law to determine the validity of Gonzales' chaplaincy.

The accurate quotation is:

> Thus, the civil courts could adjudicate the rights under the will without interpreting or weighing church doctrine but simply by engaging in the narrowest kind of review of a specific church decision—i.e., whether that decision resulted from fraud, collusion, or arbitrariness. Such review does not inject the civil courts into substantive ecclesiastical matters.

Presbyterian Church in U.S., 393 U.S. at 450–51

Likewise, the Court can adjudicate Plaintiffs' rights under the 2AC fraud laws without interpreting LDS doctrine, but simply engaging in a narrow review of specific decisions, e.g., Correlation's decision to hide the brown stone and portray Smith translating directly from gold plates, and whether that conduct was fraudulent, activity which is admittedly not a sincere LDS belief. (2AC ¶51, 203 & 321).

Fraud involves a misrepresentation of fact (2AC 1st cause of action ("C/A") alleges the First Presidency's misrepresentation of their collective

states of mind through correlated rhetoric, inapposite to archived contents ¶¶ 314-351), as opposed to prohibited inquiries into faith and doctrine. Plaintiffs were induced by this fraud to enter into a contract with Def. whereby they paid 10% of their income based on what they reasonably believed their leaders believed about the character of the man who created LDS scripture and the process that he used.

And, given COP's invitation to trust, ongoing bilateral contract to tithe for temple access, and other Yazd factors,[7] whether it assumed a duty of disclosure of those items including information it had hidden from its members, current and prospective, over the lifetimes of GADDY and proposed class members.

> Fraudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or otherwise act to conceal material facts known to him.
> 37 Am. Jur. 2d Fraud and Deceit § 145. Such a duty or obligation may arise from a relationship of trust between the parties, an inequality of knowledge or power between the parties, or other attendant circumstances indicating reliance. Id. … Making use of a device that misleads, some trick or contrivance that is intended to exclude suspicion and prevent inquiry, may also amount to fraudulent concealment. Id. It is this aspect of fraudulent concealment that is at issue in the instant case.

---

[7] Yazd v. Woodside Homes Corp., 2006 UT 47, ¶ 16, 143 P.3d 283, 286

Jensen v. IHC Hosps., Inc., 944 P.2d 327, 333 (Utah 1997), on reh'g (Aug. 22, 1997), on reh'g (Aug. 22, 1997)

COP's characterization of the 2AC as one seeking to adjudicate religious doctrine (a body of belief) is absolutely wrong. Instead, Plaintiff and those like her ask the Court to adjudicate religiously motivated conduct—"religious reasons for acting in a certain way." This, the courts can absolutely do. [8]

### 6. The Proposed 2AC Would Not Be Futile.

The First C/A can be litigated using neutral principles of law. State of mind is recognized as a fact capable of adjudication. (2AC ¶¶ 314-351). Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 184, 135 S. Ct. 1318, 1326, 191 L. Ed. 2d 253 (2015)

Fraudulent concealment of stones, primary manuscripts, artifacts, documents, and information material to those who are considering commitment to the Church can also be decided on neutral principles (2AC, 2nd C/A ¶¶ 352-373). No adjudication of doctrine is required.

---

[8] Soukup, Id. at 1711.

### 7. 2AC Tithing Claims Differ from Stone.

The 2AC alternatively alleges that COP failed to disclose that tithing principal would be used for commercial purposes, in violation of both Utah statutory (2AC, 3rd C/A ¶¶ 374-382) and case law establishing a duty to disclose (2AC. 2nd C/A ¶¶ 352-373). These claims avoid Stone v. Salt Lake City, 11 Utah 2d 196, 204, 356 P.2d 631, 636 (1960), which did not include allegations of fraud or failure to disclose. Such claims are justiciable by a civil court for the reasons set forth above.

### 8. Conclusion

Churches must obey Smith's rule unless United States v. Ballard, 322 U.S. 78, 81–82, 64 S. Ct. 882, 884, 88 L. Ed. 1148 (1944), or the CAD applies. 2AC claims do not require adjudication of faith or doctrine. Fraud remains an exemption to the CAD. Correlation engaged in fraud to promulgate a narrative divorced from its archival contents. Neutral principles of law can be used to review that conduct. Filing the proposed 2AC would not be futile and is respectfully requested.

DATED: May 3, 2021          Kay Burningham, Attorney at Law

/s/ Kay Burningham
Kay Burningham

*Attorney for Laura A. Gaddy and the Class*