# EXHIBIT B

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| J. Remigio | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER GRANTING [32] MOTION FOR SUMMARY JUDGMENT.

Before the Court is a motion for summary judgment filed by the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints ("Defendant"). Dkt. 32. Plaintiff James Huntsman opposes the motion. Dkt. 36. For the below reasons, Defendant's motion is GRANTED.

## I.    Factual and Procedural Background.[1]

Defendant is the legal entity behind the Church of Jesus Christ of Latter-day Saints, a Christian religion with its worldwide headquarters in Salt Lake City, Utah. Members of Defendant's church pay tithing—*i.e.*, a tenth of their annual increase or income—to Defendant.

Plaintiff was born into a family of devout members of Defendant's church. Plaintiff spent most of his childhood in Utah, and his father and maternal grandfather were in leadership positions at Defendant's church. As a child, Plaintiff learned about tithing from his parents and from Church meetings that he attended. Plaintiff paid tithing for twenty-two years of his adult life, from 1993 to 2015.

---

[1] The facts in this section are largely undisputed and sourced from Plaintiff's complaint and the parties' briefs and supporting materials. However, the section is provided for background purposes only. Nothing in this section should be construed as a factual finding.

Initials of Preparer   jre

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

In 1991, the President of Defendant's church, Gordon B. Hinckley, explained that Defendant would set aside a portion of the tithing funds paid to the Church as a rainy day fund: "In the financial operations of the Church, we have observed two fixed principles: One, the Church will live within its means. It will not spend more than it receives. Two, a fixed percentage of income will be set aside to build reserves against what might be called a possible 'rainy day.'"

Hinckley reiterated this principle in 1995: "Not only are we determined to live within the means of the Church, but each year we put into the reserves of the Church a portion of our annual budget. . . . Should there come a time of economic distress, we would hope to have the means to weather the storm."

In 1997, Defendant incorporated Ensign Peak Advisors, Inc. ("EPA") to be the Defendant's primary investment vehicle for the Defendant's reserve tithing funds. The reserve tithing funds would be invested in stocks, bonds, and securities. Defendant provided EPA with an initial grant of ▉▉▉ of reserve tithing funds in late 1997. By 2003, EPA's net assets had grown to over ▉▉▉. In 2003 alone, the investments of the reserve tithing funds generated more than ▉▉▉ in earnings.

The instant dispute stems from the earnings on those investments. In 2003, Defendant began the process of purchasing and redeveloping a shopping mall and other commercial buildings in downtown Salt Lake City. The entire project is referred to hereinafter as the City Creek project. Defendant's representatives made five statements regarding the use of tithing funds for the City Creek project:

(1) During the church's April 2003 General Conference (a semi-annual event consisting of worship services and messages from church leaders broadcast to members worldwide), Hinckley announced the City Creek project and stated as follows: "We have felt it imperative to do something to revitalize this area. But I wish to give the entire Church the assurance that tithing funds have not and will not be used to acquire this property. Nor will they be used in developing it for commercial purposes. Funds for this have come and will come from those commercial entities owned by the Church. These resources, together with the earnings of invested reserve funds, will accommodate this program."

Initials of Preparer : jre

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

(2) The second statement about the funding of City Creek was made by Presiding Bishop H. David Burton at an October 8, 2003 press conference, as reported in the *Ensign* magazine: "None of this money comes from the tithing of our faithful members. That is not how we use tithing funds."

(3) The third statement appeared in the *Ensign* magazine, but the statement is not attributed to any particular person: "The Church first announced three years ago it was planning to redevelop the downtown area to energize the economy of the city that houses its headquarters and to bolster the area near Temple Square. No tithing funds will be used in the redevelopment."

(4) The fourth statement appeared in the Deseret News newspaper on March 27, 2007, but the statement is not attributed to any particular person: "Money for the project is not coming from LDS Church members' tithing donations. City Creek Center is being developed by Property Reserve, Inc., the Church's real-estate development arm, and its money comes from other real-estate ventures."

(5) The fifth statement appeared in the Salt Lake Tribune newspaper on October 5, 2012, and is attributed to Keith B. McMullin, the head of a Church-affiliated commercial entity known as Deseret Management Corporation: "McMullin said not one penny of tithing goes to the Church's for-profit endeavors. Specifically, the Church has said no tithing went towards City Creek Center."

Plaintiff alleges that these statements were false and that he relied on these statements in continuing to pay tithing to Defendant.[2] On March 22, 2021, Plaintiff filed a complaint alleging fraud on the basis of the above statements. Defendant filed an answer on May 5, 2021. Defendant filed the instant motion for summary judgment on August 9, 2021.

---

[2] Plaintiff also alleges that Defendant committed fraud by transferring tithing funds to Beneficial Life Insurance Company ("Beneficial"). However, as discussed below, Plaintiff identifies no specific misrepresentations by Defendant related to the transfer of tithing funds to Beneficial. *See infra* at 11–12.

|  | : |
|---|---|
|  | Initials of Preparer |
|  | jre |

**CIVIL MINUTES - GENERAL**    Page 3 of 12

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

## II. Applicable Law.

### A. Summary Judgment Standard.

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### B. Plaintiff's Claim.

Plaintiff brings a single claim for fraud. Compl. ¶¶ 31–42. The elements of fraud are (a) a misrepresentation by the defendant (*i.e.*, a false representation, concealment, or nondisclosure); (b) the defendant's knowledge of falsity; (c) the defendant's intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance by the plaintiff; and (e) resulting damage. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (Cal. 2003).

| | : |
|---|---|
| | Initials of Preparer |
| | jre |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

**III. Analysis.**

Defendant moves for summary judgment on three grounds: (1) the First Amendment bars Plaintiff's claim; (2) no reasonable juror could find that Plaintiff justifiably relied on any alleged misrepresentation; and (3) no reasonable juror could find a misrepresentation. The Court will address each ground.

**A. The First Amendment Does Not Bar Plaintiff's Claims.**

"In keeping with the First Amendment proscription against the establishment of religion or prohibiting the free exercise thereof, civil courts have long taken care not to intermeddle in internal ecclesiastical disputes." *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328, 330 (4th Cir. 1997) (quotations omitted). This doctrine is known as the "church autonomy doctrine," which "protects the fundamental right of churches to decide for themselves matters of church government, faith, and doctrine." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 656 (10th Cir. 2002).

"The church autonomy doctrine is not without limits, however, and does not apply to purely secular decisions, even when made by churches. Before the church autonomy doctrine is implicated, a threshold inquiry is whether the alleged misconduct is 'rooted in religious belief.'" *Id.* at 657 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972)). Specifically, the question before the Court is "whether the dispute between [Plaintiff] and [Defendant] is an ecclesiastical one about 'discipline, faith, internal organization, or ecclesiastical rule, custom or law,' or whether it is a case in which [the Court] should hold religious organizations liable in civil courts for 'purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization.'" *Bell*, 126 F.3d at 331.

The Court concludes that the instant case presents a purely secular dispute. To resolve the dispute, no analysis of church policy or doctrines is necessary. Nor must a court or jury determine whether those policies or doctrines allow Defendant to spend tithing funds on the City Creek project. Rather, Defendant has already stated it would *not* spend tithing funds on the City Creek project. The only question is whether that assertion was true or not. That question can be resolved on the basis of accounting records and witness testimony, the scope of which need not include the meaning of "tithing funds" or the purposes towards which religious doctrine allows Defendant to spend tithing funds.

Initials of Preparer  jre

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

Indeed, the cases Defendant relies on reveal why the instant case is distinct. For example, in *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, resolving the plaintiff's claims would have "risk[ed] entanglement in a fundamentally religious endeavor—defining and applying the requirements of church membership." 387 F. Supp. 3d 71, 80 (D.D.C. 2019). Similarly, in *Wolter v. Delgatto*, the plaintiff's claims were not based on a specific representation about how a particular project would be funded. *See* 2006 WL 664214, at \*2 (Tex. App. Mar. 16, 2006). Rather, the issue was whether the church's decision to fund a particular project was consistent with a constitution that governed the church. *See id.* Resolving that issue would have required a court or jury to "parse the Presbyterian Book of Order into secular and ecclesiastical components [and delve] into a religious controversy." *Id.* As noted above, no such analysis is required to resolve Plaintiff's claims here.

Accordingly, the First Amendment does not bar Plaintiff's claims. *See Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 2021 WL 3194983, at \*14 (D. Utah July 28, 2021) (finding no First Amendment bar to claim regarding use of tithing funds for City Creek project because "[t]he inquiry required to adjudicate this claim does not implicate religious principles of the Church or the truth of the Church's beliefs concerning the doctrine of tithing. This claim further does not require the court to determine whether the Church or its members were acting in accord with what they perceived to be the commandments of their faith.").

**B.     No Reasonable Juror Could Find that Defendant Made a Misrepresentation.**

   *1.    The City Creek Project*

Plaintiff argues that a genuine issue of material fact exists on the issue of whether Defendant made a material misrepresentation. Specifically, Plaintiff argues that the evidence is in dispute about whether Defendant used tithing funds to pay for the City Creek project.

The Court concludes that no reasonable juror could find Defendant made a misrepresentation. To begin, Plaintiff does not properly consider the full statement made by Hinckley. Specifically, Hinckley did not just state that tithing funds would not be used. Rather, he also explained that earnings from invested reserve tithing funds *would* be used:

|  | : _____ |
|---|---|
|  | Initials of Preparer |
|  | jre |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

> We have felt it imperative to do something to revitalize this area. But I wish to give the entire Church the assurance that tithing funds have not and will not be used to acquire this property. Nor will they be used in developing it for commercial purposes. Funds for this have come and will come from those commercial entities owned by the Church. These resources, *together with the earnings of invested reserve funds*, will accommodate this program.

Rytting Decl., Ex. 4 (emphasis added). As discussed above, the earnings of invested reserve funds were the earnings of invested tithing funds. *See supra* at 2. Indeed, the above statement was made after Hinckley had explained, during General Conferences in 1991 and 1995, that Defendant would set aside tithing funds as a "reserve" for a rainy day. *See* Rytting Decl. ¶¶ 6–7, Exs. 1, 2. And Plaintiff testified that he read the publications containing Hinckley's addresses at the General Conferences. *See* Richmond Decl. ¶ 2, Ex. A at 30:7-16; 78:7-12; 122:12-17.

Accordingly, the question for this Court is as follows: could a reasonable juror conclude that Hinckley made a false statement when he said that tithing funds would not be used on the City Creek project but earnings of invested tithing funds *would* be used?

A reasonable juror could not reach that conclusion. A financial statement for EPA shows that, in 1997, EPA was granted ▮▮▮ in reserve tithing funds. Rytting Decl., Ex. 3. By 2003, EPA's assets had grown to ▮▮▮. *Id.*, Ex. 5. In 2003 alone, EPA's earnings on invested reserve tithing funds amounted to ▮▮▮. *Id.*

On January 1, 2004, EPA withdrew ▮▮▮ from the "EP-ALL" fund (*i.e.*, the fund holding Defendant's reserve tithing funds and the earnings of the invested reserve tithing funds). *See id.* ¶¶ 13–14, Ex. 6. The ▮▮▮ was allocated to the "EP-SDR" fund (*i.e.*, a fund for the City Creek project) and was sourced from earnings on Defendant's invested reserve tithing funds. *Id.* This is confirmed by the fact, in 2003 alone, EPA's earnings on invested reserve tithing funds amounted to ▮▮▮. *Id.*

The ▮▮▮ in the EP-SDR fund was itself invested and generated earnings, and the assets in that fund were used between 2007 and 2012 on the City Creek project. *Id.* ¶¶ 15–23, Exs. 7, 8. EPA also allocated ▮▮▮ and ▮▮▮ to the City Creek project in 2007 and 2009, respectively.

|  | : _____ |
|---|---|
|  | Initials of Preparer |
|  | jre |

**CIVIL MINUTES - GENERAL**  Page 7 of 12

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

*Id.* ¶ 24, Exs. 9, 10.   Those grants came from earnings on Defendant's invested reserve tithing funds. *Id.*

Based on the foregoing, no reasonable juror could conclude that Hinckley's statement was false. This is because a reasonable juror could only conclude that Defendant used "the earnings of invested reserve funds" to fund the City Creek project—*i.e.*, Defendant did exactly what Hinckley said Defendant would do.

Plaintiff argues that the Neilsen declaration creates a genuine issue of material fact.   Neilsen was a Senior Portfolio Manager at EPA from 2010 to 2019.   *See* Neilsen Decl. ¶ 2.   Neilsen states that "EPA's senior leadership and other EPA employees referred to and revered all funds of EPA as 'tithing' money, regardless of whether they were referring to principal or earnings on that principal."   *Id.* ¶ 6. Neilsen asserts that EPA directed approximately $1.4 billion in tithing funds to pay for the commercial development of the City Creek Mall.   *Id.* ¶ 8.

There are two reasons that Neilsen's testimony, accepted as true, does not create a genuine issue of material fact.   First, Neilsen conflates tithing funds with earnings on invested tithing funds. Specifically, he states that "EPA's senior leadership and other EPA employees referred to and revered all funds of EPA as 'tithing' money, regardless of whether they were referring to principal or earnings on that principal."   *Id.* ¶ 6.   It is on the basis of this statement that he then asserts that EPA directed approximately $1.4 billion in tithing funds to pay for the commercial development of the City Creek Mall.   *Id.* ¶ 8.

However, Hinckley expressly stated that earnings on invested tithings *would* be used to pay for the City Creek project—both the acquisition of property and the development of that property.   *See* Rytting Decl., Ex. 4 ("Funds for this have come and will come from those commercial entities owned by the Church.   These resources, together with *the earnings of invested reserve funds*, will accommodate this program.") (emphasis added).   And, as discussed above, that is exactly what happened. Accordingly, regardless of the nomenclature used by EPA employees, the distinction in Hinckley's statement renders his statement true.

| | : _____ |
|---|---|
| | Initials of Preparer |
| | jre |

**CIVIL MINUTES - GENERAL**   Page 8 of 12

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

Second, Neilsen was not employed by EPA when the funds that were used to develop the City Creek project were allocated for that purpose. As discussed above, EPA allocated ▮▮▮▮ towards the City Creek project on January 1, 2004, and ▮▮▮▮ and ▮▮▮▮ to the City Creek project in 2007 and 2009, respectively. *See supra* at 7–8. However, Neilsen did not begin working at EPA until 2010. *See* Neilsen Decl. ¶ 2. Accordingly, at the time EPA allocated funds for the City Creek project, Neilsen was not working at EPA.

Other than the Neilsen declaration, Plaintiff offers no evidence that creates a genuine issue of material fact. Plaintiff does not argue that earnings on invested tithing funds were not actually used (*i.e.*, that the principal (the tithing funds) was used instead of the earnings). For example, Plaintiff does not identify any specific flaws in the accounting or calculations provided by Defendant's declarant.[3] Instead, Plaintiff simply argues that there is no distinction between tithing funds and earnings on

---

[3] Instead of challenging Rytting's calculations or analysis, Plaintiff argues that Rytting's declaration and its underlying documents are inadmissible. Specifically, Plaintiff, argues that Rytting lacks personal knowledge and that the documents attached to his declaration lack authenticity.

This argument is unpersuasive. Since the 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure, evidence need not be admissible in the *form* presented to a court on summary judgment. Rather, it is the *content* of the evidence that must be admissible. *See* Fed. R. Civ. P. 56, Advisory Committee Notes on 2010 Amendment (explaining that evidence must be "admissible as presented *or* [proponent must] explain the admissible form that is anticipated") (emphasis added); *see also Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) ("Rule 56 was amended in 2010 to eliminate the unequivocal requirement that evidence submitted at summary judgment must be authenticated"); *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 923 (D. Nev. 2019) (noting that Rule 56 since 2010 amendments "mandate[s] only that the *substance* of the proffered evidence would be admissible at trial").

The Court is persuaded that the contents of the Rytting declaration and its underlying documents would be admissible at trial. Plaintiff argues that Rytting offers no facts to support his assertion that he is "familiar with Church policies and practices relating to the management of funds and, in particular, with respect to the financing of the City Creek project." Rytting Decl. ¶ 1. To the contrary, Rytting explains he is a "Director within the Finance and Records Department of the Church," and has "worked in similar or related positions for over fifteen years." *Id.* Under these circumstances, the Court is persuaded that the contents of the Rytting declaration and its underlying documents would be admissible at trial, and the Court can consider those materials on summary judgment. *See Dinkins*, 362 F. Supp. 3d at 923. And, although the Court makes that finding on the basis of the Rytting declaration alone, the declaration from Roger Clarke bolsters the Court's conclusion. Clarke was the President of EPA from its founding in 1997 until May 2020, and he attests that all of documents attached to the Rytting declaration are true and correct copies of EPA records. *See* Clarke Decl. ¶¶ 2–12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

invested tithing funds. *See* Opp. at 9–11.

However, Hinckley's statement is what creates a distinction between the two. Specifically, Hinckley distinguished between tithing funds and the earnings on invested reserve tithing funds.[4] Hinckley's statement forms the basis for the fraud claim, and no reasonable juror could ignore the distinction within his statement.

Finally, to the extent that Plaintiff argues a genuine issue of material fact exists because there is no mention of earnings on invested tithing funds in the other four statements described above, *see supra* at 3, the Court rejects that argument. None of the four statements are inconsistent with Hinckley's statement. Moreover, Plaintiff specifically states that he read Hinckley's statement in mid-2003. Richmond Decl. ¶ 2, Ex. A at 79:13-16. He also stated that he relied on that statement when he donated tithing funds to Defendant. Huntsman Decl. ¶ 3. Hinckley's statement was Defendant's first statement regarding the City Creek project.

In other words, when the later four statements were made, Plaintiff was aware of Hinckley's statement that earnings on invested reserve tithing funds *would* be used to fund the City Creek project. Under those circumstances, no reasonable juror could conclude that it was justifiable for Plaintiff to rely on the other four statements as an assertion that Defendant would *not* use earnings on invested tithing funds. *Cf. Gonzalez v. EJ Mortg., Inc.*, 2010 WL 1996609, at *2 (S.D. Cal. May 17, 2010) ("Plaintiff cannot plead reasonable reliance on income figures written by Defendants because he knew or should have known his actual income."); *Wireless Warehouse, Inc. v. Boost Mobile, LLC*, 2011 WL 92984, at *5 (C.D. Cal. Jan. 11, 2011), *aff'd*, 479 F. App'x 58 (9th Cir. 2012) (finding plaintiff could not establish

---

[4] Plaintiff argues that tithing funds and earnings on invested tithing funds are "two sides of the same financial coin." Opp. at 10. This argument is unavailing for two reasons. First, for the purposes of this case, tithing funds and earnings on invested tithing funds are not two sides of the same coin because Hinckley expressly distinguished the two. Second, because Plaintiff's argument effectively asks this Court to define the term "tithing funds," the First Amendment bars Plaintiff's argument. Specifically, determining whether the term "tithing funds" encompasses earnings on invested tithing funds would require an analysis of Church doctrines and teachings. Such an inquiry would entangle this Court or a jury in an interpretation of "ecclesiastical rule, custom or law." *Bell*, 126 F.3d at 331. The First Amendment bars such an inquiry. *See id.*; *see also Ambellu*, 387 F. Supp. 3d at 80 (finding First Amendment barred claim risking "entanglement in a fundamentally religious endeavor—defining and applying the requirements of church membership.").

|  | : |
|---|---|
| | Initials of Preparer |
| | jre |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10, 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

reasonable reliance upon later oral promise where plaintiff was aware of conflicting written agreement).

Ultimately, this is not a case about whether Defendant used tithing funds in any manner, directly or indirectly, to pay for the City Creek project. Rather, the question is more specific: did Hinckley make a false statement when he said that tithing funds would not be used on the City Creek project, but earnings from invested tithing funds *would* be used on that project? As discussed above, no reasonable juror could find that the statement was false.

Accordingly, there is no genuine issue of material fact as to whether Defendant misrepresented the source of funding for the City Creek project, and Defendant is entitled to summary judgment.[5]

### 2. *Beneficial Life Insurance.*

Plaintiff also challenges Defendant's alleged transfer of $600 million to Beneficial Life Insurance Company. However, Plaintiff's fraud claim regarding this transfer fails for two independent reasons.

---

[5] Defendant also argues that no reasonable juror could find that Plaintiff justifiably relied on any of the five statements. The Court disagrees.

Plaintiff states that his "practice was to read the complete conference sessions – and especially any remarks by the president of the Church – when they were printed in the Ensign Special Edition, approximately two months after each conference." Huntsman Decl. ¶ 3; *see also* Richmond Decl. ¶ 2, Ex. A, 79:7-12. Plaintiff attests that he "read and/or heard each of [the alleged misrepresentations] shortly after they were published." Huntsman Decl. ¶ 3. Plaintiff also stated that he had specifically read Hinckley's statement in mid-2003. Richmond Decl. ¶ 2, Ex. A at 79:13-16. Finally, Plaintiff stated that he relied on those statements when he donated tithing funds to Defendant. Huntsman Decl. ¶ 3.

This evidence is sufficient to raise a genuine issue of material fact as to justifiable reliance. Defendant's arguments to the contrary—*i.e.*, that Plaintiff's stated reliance is not credible because of his family background and service in church leadership, and because Plaintiff made tithing contributions for a full decade before the first alleged misrepresentation occurred, and continued making tithing contributions until 2015, *see* Mot. at 18–19—are credibility attacks that the Court cannot resolve at this stage, *see Anderson*, 477 U.S. at 255 ("Credibility determinations . . . are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment.").

Initials of Preparer  jre

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-02504 | Date | September 10 2021 |
|---|---|---|---|
| Title | *James Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints* | | |

First, Plaintiff does not identify a specific misrepresentation by Defendant. Indeed, Plaintiff expressly states as follows in his declaration: "I do not recall any specific statement by the Church denying that tithing funds were being used to bail out Beneficial Life Insurance . . . ." ¶ 4. Absent a specific misrepresentation, Plaintiff's claim fails.[6] *See Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73–74 (Cal. Ct. App. 1990) (affirming dismissal of fraud claim against church where plaintiffs failed to allege "the how, when, where, to whom, and by what means the representations were tendered") (quotations and citations omitted).

Second, to the extent Plaintiff relies on "Sunday school manuals" or "the Church's teachings" to support the claim regarding Beneficial, the First Amendment prohibits Plaintiff's claim. Resolving Plaintiff's claim on those grounds would require a court or jury to determine whether church teachings and doctrines prohibited the alleged transfer of tithing funds to Beneficial. In other words, unlike the simple tracing of funds required to resolve the City Creek claim, the Beneficial claim would require a court or jury to "intermeddle in internal ecclesiastical disputes." *Bell*, 126 F.3d at 330. The First Amendment prohibits such entanglement. *See id.*

Because Plaintiff cannot identify a statement regarding Beneficial, there is no genuine issue of material fact as to whether Defendant misrepresented the source of funding for the Beneficial transfer. Moreover, the claim as framed by Plaintiff is barred by the First Amendment. Accordingly, Defendant is entitled to summary judgment.

**IV. Conclusion.**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

---

[6] Plaintiff alleges that Defendant's tithing form "indicate[s] unequivocally that my donations to [Defendant] would be used solely for non-commercial purposes." Huntsman Decl. ¶ 4, Ex. B. The tithing form contains no such assertion. Indeed, it makes no assertions at all about how tithing funds will be used, nor does it reference Beneficial Life Insurance company or "non-commercial purposes."

Initials of Preparer : jre