Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111
Phone: 1.888.234.3706

*Attorney for Plaintiffs Laura A. Gaddy,
Lyle D. Small and Leanne R. Harris*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, **LYLE D. SMALL, LEANNE R. HARRIS,** individually and on behalf of all others similarlysituated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**[The] CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole and DOES 1-50<br><br>*Defendant* | **PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE OVERLENGTH MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>(DEMAND FOR JURY TRIAL)<br><br>**2:19-cv-00554-RJS-DBP**<br><br>Chief Judge: Robert J. Shelby<br><br>Chief Magistrate Judge: Dustin B. |

### MOTION FOR LEAVE TO FILE OVERLENGTH MEMORANDUM

Pursuant to DUCivR 7-1(e), which requires good cause for filing an overlength memorandum, Plaintiffs respectfully request leave to exceed the word count limit to file an overlength memorandum in opposition to Defendant's *Motion to Dismiss (MTD) the Second Amended Complaint (2AC), or in the Alternative, Motion To Strike (MTS)*, Dkt. 111. Per local rules, the limit for a responsive pleading to a 12(b)(6) motion is 6,500 words. This request is for up to 9,500 words, about 46% more than allowed. The Opposition is currently due December 10, 2021.

**MEMORAMDUM IN SUPPORT OF MOTION**

  A. <u>Good Cause Exists for an Overlength Memorandum</u>

Application of First Amendment Establishment law in the State of Utah has changed since filing the [First] Amended Complaint (FAC), the responsive MTD and the subsequent briefing. As of June, 2021, the Utah Supreme Court acknowledged displacement of the previous Lemon test standard used in Establishment Clause analysis based on recent United States Supreme Court cases. Utah remanded an intentional infliction of emotional distress (IIED) claim in the context of a church disciplinary proceeding that could arguably be decided on neutral principles of law and instructed the district court to "look to our history, tradition, and precedent to identify core Establishment Clause principles that may be applied to the facts of [a] case." Williams v. Kingdom Hall of Jehovah's Witnesses, 2021 UT 18, ¶ 28, 491 P.3d 852, 859.

This change in the law was not addressed in Defendant's Motion to Dismiss or Strike, but Williams substantially alters the law to be applied with respect to the Establishment Clause (acknowledged by Defendant along with the Free Exercise Clause as a basis of its argument that the Church Autonomy Doctrine (CAD) bars adjudication of most of Plaintiffs' claims) and therefore, the rationale behind some of the Court's Rulings in its Order of July 28, 2021 (Dkt.100).

### B. The MTD/MTS Raise Numerous Issues of Law to be Applied to the Alternatively Pleaded 2AC Claims.

In its Order dismissing all but Plaintiff LAURA GADDY'S RICO claim based upon affirmative representations that no tithing was used to build City Creek Mall, the Court distinguished between religious (described therein as conduct "rooted in religious belief") and secular conduct, declining to adjudicate the former, but allowing the latter to proceed. (Dkt. 100 at 27). The 2AC alleges tithing use misrepresentations as an alternative basis of liability in most of the causes of action (notably in the failure to disclose claims, 2AC causes of action numbers 2-5 and Civil RICO, Claim no. 6).

Additionally, Plaintiffs include as a new basis for their claims a video of LDS President Russell M. Nelson demonstrating that the stone in the hat method, with the gold plates "usually covered," was the process used to create the Book of Mormon. Defendant disclosed that video sometime in May 2020, but the [F]AC was filed May 18, 2020, after the Court's Order dismissing the original Complaint, but prior to Plaintiffs' awareness or maybe even release of the video. Important artifacts and documents have also been included in the 2AC that had been concealed by Defendant for over a century but were just recently disclosed.

### C. Changes in the Law, Newly Discovered Facts, and other Factors can be Addressed in Opposition to a MTD an Amended Complaint, even where not raised in the MTD.

When Plaintiff LAURA GADDY asked for permission to file an overlength memorandum in opposition to Defendant's Motion to Dismiss the [First} Amended

3

Complaint (FAC), Defense Counsel objected in part because some of the issues where not raised by his Motion (Dkt. 43, at 3). However, a motion to reconsider a final judgment can be based on a change in the law, new evidence and need to correct clear error. Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). *A Fortiori,* those defending against a 12(B)(6) motion in response to an amended complaint should be able to argue new controlling law and newly discovered facts as well as how new claims pleaded in the amended complaint may avoid the rule in the prior order of dismissal, regardless of whether the subsequent MTD addressed those Issues.

      Though Defendant did not address the change in the controlling law, or the newly discovered facts pleaded in the 2AC, or changes in newly pleaded claims, it is respectfully argued that that fact does not preclude Plaintiffs from raising those important issues which will most assuredly change the analysis that the Court makes compared with its prior order because it will be analyzing a different complaint, with some new facts and applying, at least in some respects, an important difference in the controlling law with respect to the Establishment Clause of the First Amendment.

    D.  <u>The following List Itemizes Issues that Plaintiffs' Anticipate the need to Address in their Opposition to the Motion to Dismiss or Strike.</u>

    This case involves an alleged deceitful scheme of affirmative misrepresentations and concealment over a period of two hundred years extending from 1820, the date claimed as the First Vision, the key event and reason for the alleged restoration of the Gospel of Jesus Christ by LDS founder Joseph Smith, Jr..

The issues identified below cannot be adequately addressed for the Court with a limit of 6,500 words unless the arguments are severely truncated and fraught with abbreviations. Therefore, Plaintiffs respectfully request that the Court allow a word limit of up to 9,500 words, with the exclusions from the word count limit defined in DUCivR 7-1(b)(3)(A).

1.     In its Motion, Defendant argues as an alternative to its MTD that "all 'purely secular' allegations should be stricken." Docket 111, MTD 2AC at 27. What is the definition of, and where is the line to be drawn between what is religious and what is secular? What does that mean in relation to the facts alleged in the 2AC? For example, is founder Joseph Smith's legal history (see, e.g., 2AC ¶36) secular or religious?

2.     LDS President Nelson recently admitted that the Book of Mormon was "translated" by the stone in the hat method, "plates usually covered." (2AC ¶162) Plaintiffs' first opportunity to include that admission was in the 2AC; the video demonstration was first published by Defendant in May, 2020, no specific date on its website.[1] Does that admission change the analysis used by the Court in deciding the subject MTD? (See Order p. 23) For example, How does the rationale in the Court's Second Order of July 28, 2021, dkt 100 (page 23) regarding material omissions based on disclosure of partial truth apply where President Nelson has now admitted the stone in the hat method of "translation"?

---

[1] The video demonstration was first published by Defendant in May, 2020, no specific date on its website.[1] ([F]AC filed 05.18.2020, dkt. 37.) A current view of the website shows no date of publication at all. However, the date with the month and the year is in the url: https://www.churchofjesuschrist.org/media/video/2020-05-0290-the-book-of-mormon-is-tangible-evidence-of-the-restoration?lang=eng

3.     Do the facts alleged in the 2AC constitute a "dispute over faith and doctrine" such that the "the Court's Order that "First Amendment's Religion Clauses bar secular courts from injecting themselves into disputes concerning church faith and doctrine," especially in light of Williams' Id., directive to consider history? (MTD 2AC at 4.)

4.     Is Defendant's practice of concealing important items from its members motivated by a sincerely held religious belief or practice as Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 657 (10th Cir. 2002) discussed? Is concealment a secular or religious activity?

5.     What does conduct "rooted in religion" mean? (MTD 2AC at 5) Is that the standard for dismissal of the conduct alleged in the 2AC?

6.     Do the "decades of precedent from the United States Supreme Court" (MTD AC at 6) include a fraud exemption to the CAD defense that applies to the conduct alleged in the 2AC, i.e., the decision(s) and conduct by Defendant's Correlation Dept. to conceal/not disclose material items from Plaintiffs?

7.     Keeping in mind the argument that courts may not "adjudicate fraud claims implicating religious facts." Dkt. 111 MTD 2AC at 6, citing the Court's First Order at 13, can Plaintiffs' fraud claims based on the conduct of concealing stones, artifacts, primary manuscripts, documents, etc., be dismissed with the same rationale, or can and should that conduct be adjudicated based on neutral principles of law under Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990)? Although the ministerial exception has been held to survive Emp. Div. Id. does the CAD even apply in this case, and if so, does it survive Emp. Div. on the 2AC facts?

6

8.     Does the CAD referenced in the MTD 2AC at 11-12, quoting the Court's First Order, dkt no.33 at 8, wherein it wrote: "In short, . . . courts may not inject themselves into resolving ecclesiastically based disputes." apply to each of the seven claims raised in the 2AC where they are alternatively pleaded based on misrepresentations and failure to disclose Smith's legal history and/or Defendant's use of tithing?

9.     Defendant argues, citing the Court's first Order at p. 12, that with regard to the truth of religious facts:

> Plaintiffs have blatantly ignored both this Court's First Order and Second Order. This Court held that it "can no more determine whether Joseph Smith saw God and Jesus Christ or translated with God's help gold plates or ancient Egyptian documents, than it can opine on whether Jesus Christ walked on water or Muhammed communed with the archangel Gabriel. The First Amendment prohibits these kinds of inquiries in courts of law.

MTD 2AC at 10.

Do the 2AC allegations that LDS leaders misrepresented their states of mind by pretending to believe in the correlated religious facts which they characterized as "pur[e]...doctrine" a misrepresentation of fact in and of itself, that is, does the way that the first cause of action is now pleaded in the 2AC change the Court's prior ruling on sincerity?

10.    Does the Court's Second Order that the First Amendment bars" inquiry into "the Church's teachings concerning," among other things, "the First Vision, translations of the Book of Mormon and Book of Abraham, locations of events described in the Book of Mormon, and the Church's history with polygamy.," (MTD at ppps12-13, citing the Court's Second Order at 23), prevent a claim for failure to disclose Smith's adultery?

11.     In light of the abrogation of Franco in Williams, 2021 UT 18, and given the facts pleaded in the 2AC, is a limited fiduciary duty (See Yazd v. Woodside Homes Corp., 2006 UT 47, ¶¶ 16-17, 143 P.3d 283, 286–87) properly found by the Court for purposes of the causes of action for intentional concealment, failure to disclose, and RICO (concealment/failure to disclose in wire and mail fraud)? Where Defendant's organization is admittedly engaged in extensive commercial activity, is it unreasonable to hold it to the Yazd, 2006 UT 47 standards?

12.     If the Court finds a limited duty to disclose based on the new 2AC allegations (as opposed to a duty to disclose based on a previous representation of a partial or misleading truth. (See 2nd Order, Dkt 100 pps. 22-23), does that limited fiduciary duty apply to any of the alternative facts and/or items which Plaintiffs have alleged that Defendant hid from its members, i.e., the allegedly concealed items, (2AC), Smith's legal history (2AC), or the tithing use claims? (2AC).

13.     Does Utah recognize a breach of future promise ("Constructive Fraud Based on Breach of Promises of Future Performance."( 2AC ¶¶ 451-62.)? (See MTD 2AC at 23.)

14.     Defendant's claim that the activity alleged in the 2AC doesn't meet the elements of a RICO claim. (MTD 2AC pps 24-25) Plaintiffs must rebut that claim.

15.     Does the holding in Stone (MTD 2AC p. 25) apply to 2AC allegations of a failure to disclose commercial tithing use under Utah law which requires disclosure of all material facts required to make the representations not misleading?

16.     Is the phrase "earnings on invested reserve funds" enough to disclose that tithing is the original source of those reserve funds such that it can be decided on a 12(b)(6) motion or is this a question of fact for the jury? Likewise, are two speeches at

priesthood meetings in the early and mid-nineties sufficient disclosure and can that issue be decided on a MTD? (MTD, p. 17, n 4)

17.     Plaintiffs must rebut the claim by the defense in the MTD at 23 that the *Utah Charitable Solicitations Act* does not allow a private right of action.

18.     Acknowledging the Court's prior Order that a claim for fraudulent concealment is indistinct from a common law claim for failure to disclose material facts in the context of a prior partial disclosure where that failure would make the prior disclosure misleading (dkt. 100, at 13, n. 80 ), do the allegations of Defendant's multiple statements wherein no mention is made of tithing being used for commercial purposes, but only for ecclesiastical purposed (together with the admission from an EPA employee to keep such use secret from its members (2AC  ¶404 column 6, last row taken from Declaration of David Nielsen, Exhibit no. 5, ¶10), but only ecclesiastical purposes, make the statements allegedly misleading so that a claim for fraudulent concealment based on omissions of how tithing was being used should be allowed?

19.     Given Defendants' argument in the MTD at pps 14-15 under Fed. R. Civ. P. 9 and allegations made upon ""information and belief, Plaintiffs will likely file a Motion to Supplement demonstrating the basis of their tithing allegations along with a Motion for an Order shortening time so that the basis of those allegations upon "information and belief" can be determined. Those arguments will be made in the Motion to Supplement, but also need to be briefly referenced in the Opposition to the MTD because it will affect many claims in the 2AC, especially the RICO claim requiring more than one instance alleging a fraudulent scheme under the mail and wire fraud statutes.

20.    Can Plaintiffs' IIED claim proceed? (MTD p. 28)

21.    Can Defendant claim the First Amendment as a defense to fraud if its claim that the LDS Church is the restored gospel of Jesus Christ is a pretense for an organization whose primary goal from the time of its founding has been commercial gain?

## CONCLUSION

Due to the expansive period of conduct, the depth of the historic jurisprudence and the myriad of issues that need to be addressed, Plaintiffs request that the Court grant them leave to file an overlength memorandum of no more than 9,500 words, including footnotes and excluding the caption and other matter as indicated in the local rules, in Opposition to the Motion to Dismiss or in the Alternative, Strike portions of the 2AC.

A proposed order is filed herewith.

DATED this 1st day of December, 2021.    Kay Burningham, Attorney at Law

/s/ Kay Burningham
Kay Burningham

*Attorney for Laura A. Gaddy, Lyle D. Small and Leanne R. Harris*