David J. Jordan (1751)
david.jordan@stoel.com
Wesley F. Harward (15623)
wesley.harward@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone:  801.328.3131

*Attorneys for Defendant Corporation of the President
  of The Church of Jesus Christ of
  Latter-day Saints*

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>      Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>Case No. 2:19-cv-00554-RJS<br><br>The Honorable Robert J. Shelby |

   Corporation of the President of The Church of Jesus Christ of Latter-day Saints (the "Church") submits this Reply Memorandum in Support of its Motion to Dismiss Second Amended Complaint, or, in the Alternative, to Strike (the "Motion").  (Docket 111.)

113664254.6 0056812-00016

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.    EACH OF PLAINTIFFS' CLAIMS FAIL ................................................................ 2

        A.    Plaintiffs' claims based on the Church's religious teachings must be dismissed ................................................................................................ 2

        B.    Plaintiffs' tithing-based claims fail ................................................................ 3

            1.    Plaintiffs' "Fraud in the Inducement to Enter into an Oral Contract" claim fails ........................................................................ 3

            2.    Plaintiffs' "Fraudulent Non-Disclosure" and "Fraudulent Concealment" claims fail ..................................................................... 5

            3.    Plaintiffs' "Constructive Fraud Based on Breach of Promises of Future Performance" claim fails ................................. 7

            4.    Plaintiffs' "Violations of the Utah Charitable Solicitations Act" claim fails ..................................................................................... 8

            5.    Plaintiffs' "Civil Rico" claim fails ..................................................... 8

            6.    Plaintiffs' "Intentional (Reckless) Infliction of Emotional Distress" claim fails ....................................................................... 10

    II.    IN THE ALTERNATIVE, ALL NON "PURELY SECULAR" ALLEGATIONS SHOULD BE STRICKEN ..................................................... 10

CONCLUSION ..................................................................................................................... 11

113664254.6 0056812-00016

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Gerwe v. Gerwe,*
  2018 UT App 75, 424 P.3d 1113 ................................................................................................9

*Jensen v. Cannon,*
  2020 UT App 124, 473 P.3d 637 ............................................................................................5, 6

*Koch v. Koch Indus., Inc.,*
  203 F.3d 1202 (10th Cir. 2000) ..................................................................................................5

*Peterson v. Shanks,*
  149 F.3d 1140 (10th Cir. 1998) ................................................................................................11

*Stone v. Salt Lake City,*
  356 P.2d 631 (Utah 1960) ..........................................................................................................6

*Tal v. Hogan,*
  453 F.3d 1244 (10th Cir. 2006) ..................................................................................................8

## INTRODUCTION

Plaintiffs continue to play a game of First Amendment Whac-A-Mole. Each time the Court rejects a particular claim or legal theory on First Amendment grounds, it reappears in the next version of the Complaint. In each iteration of the Complaint, Plaintiffs' allegations regarding tithing and Church finances become more inextricably intertwined with their challenges to core Church doctrines and teachings. In reality, Plaintiffs' tithing-fraud claims are just another vehicle for yet another attack on the Church's religion. Plaintiffs have proven themselves incapable of pleading a justiciable secular claim. The Church respectfully urges that it is time for this game to end.

The vast majority of Plaintiffs' opposition memorandum (the "Opposition") is devoted to rearguing the same First Amendment issues the Court has already ruled upon—twice. Plaintiffs cite the same cases and make the same arguments, now for the third time. But First Amendment jurisprudence has not changed. As this Court has recognized, it cannot "adjudicate fraud claims implicating religious facts." First Order at 13. "Where a plaintiff brings fraud claims against a church based on religious issues of faith or doctrine, the First Amendment applies as a defense." Second Order at 21.

The only *new* question the Court need answer is whether Plaintiffs have properly pleaded any justiciable claims related the Church's use of tithing funds. The answer is "no" for at least two reasons. First, most of Plaintiffs' tithing-based allegations and claims implicate "religious facts" just as much as the rest of the Complaint. Consider, for example, paragraph 10 of the Second Amended Complaint. Plaintiffs allege that the Church taught that tithing is essential to one's "eternal salvation" and "forever families" as well as "safety from apocalyptic burning of

1

the Second Coming of Jesus Christ." 2AC ¶ 10.  Similarly, according to Plaintiffs' allegations, members pay tithing to qualify "to be baptized," to "serv[e] a full-time mission," and "for temple access and participation."  *Id.*  Thus, according to Plaintiffs' own pleading, Church members donate tithes for deeply religious reasons that are inextricable from the Church's doctrines and teachings.

Second, whatever remains (if anything) would also fail because Plaintiffs have not (and cannot) adequately plead the required elements, primarily falsity.  Accordingly, the entire Second Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   EACH OF PLAINTIFFS' CLAIMS FAIL

As explained in the Motion, Plaintiffs again allege various fraud-based claims against the Church.  And each asserts several theories of liability.  Those claims and theories fall into two categories.  First, claims and theories previously dismissed—those based on religious facts that the Court previously held were barred by the First Amendment.  And second, theories related to the Church's use of tithing.  Each category is addressed in turn.

### A.   Plaintiffs' claims based on the Church's religious teachings must be dismissed.

The first 23 pages of the Opposition are devoted to arguing (again) that the Court's prior orders are incorrect.  The Court has repeatedly rejected those arguments after exhaustive briefing by both parties in prior motions.  The Church will not repeat those arguments here.  Suffice it to say, the holdings of the Court's prior orders are correct.  The "First Amendment bars" inquiry into "the Church's teachings concerning," among other things, "the First Vision, translations of

2

the Book of Mormon and Book of Abraham, locations of events described in the Book of Mormon, and the Church's history with polygamy."[1]  Second Order at 23.  All claims and legal theories about the First Vision, the Book of Mormon, the Book of Abraham, seer stones, polygamy, Joseph Smith's prophetic mission, and teachings about Church doctrine and history fail and should be dismissed again.

      **B.**      **Plaintiffs' tithing-based claims fail.**

Plaintiffs' Opposition did little to clarify the relationship between the tithing-based allegations and the remainder of the 555 paragraphs of allegations.  Nevertheless, the Church will attempt to address each theory in turn.

           **1.**      **Plaintiffs' "Fraud in the Inducement to Enter into an Oral Contract" claim fails.**

Plaintiffs' Opposition devotes only two sentences to their first tithing claim.  Opp. at 24.  Plaintiffs argue that they "did in fact allege City Creek statements were false" and that "[t]ithing, even if limited to interest on tithing, was the original source of the reserve funds."  *Id.*

Tellingly, Plaintiffs ignore most of the Church's argument rebutting this claim.  Specifically, most of the alleged statements on which this cause of action is based are entirely religious in nature.  *See* Motion at 8-9.  Plaintiffs quote various Church leaders and manuals about the Church using tithing "for the Lord's work."  *Id.*  Those general tithing allegations fail under the First Amendment as set forth in the Motion.

Regardless, both rejoinders offered by Plaintiffs in the Opposition are wrong.  First,

Plaintiffs have not properly plead falsity. The two paragraphs cited in the Opposition, paragraphs 381 and 382, reveal that point. Paragraph 381 makes allegations regarding what Church leaders knew about Church finances and states "upon information and belief" that tithing was used by the Church "for commercial purposes, including but not limited to the development of the City Creek shopping mall in Salt Lake City." 2AC ¶ 381. And paragraph 382 relates only to state of mind—not actual falsity.

There is no specific allegation of falsity. Plaintiffs make conclusory allegations about the falsity of some "representations" but do not plead how any statement was false. Indeed, the primary statement at issue was from President Hinckley in 2003 when he said that tithing would not be used for the City Creek project and "***funds for this have come and will come from those commercial entities owned by the Church***" as well as "**earnings of invested reserve funds**." Plaintiffs have not plead any *facts* (as distinguished from conclusory statements) that President Hinckley's statement was false. They have not alleged that tithing donations were used for the City Creek development. Instead, they now argue about whether the definition of "tithing" (an inherently religious concept) should include investment returns earned on tithing donations. This is the same argument that was properly rejected in the *Huntsman* case.

The *Huntsman* court recognized that this argument "conflates tithing funds with earnings on invested tithing funds." Ex. B at 8. The court noted that President "Hinckley expressly stated that earnings on invested tithings *would* be used to pay for the City Creek project." *Id.* Accordingly, "the distinction in [President] Hinckley's statement renders his statement true." The court rejected Huntsman's argument as

> unavailing for two reasons. First, for purposes of this case, tithing funds

4

> and earnings on invested tithing funds are not two sides of the same coin because [President] Hinckley expressly distinguished between the two. Second, because Plaintiff's argument effectively asks this Court to define the term "tithing funds," the First Amendment bars Plaintiff's argument. Specifically, determining whether the term "tithing funds" encompasses earnings on invested tithing funds would require an analysis of Church doctrines and teachings. Such an inquiry would entangle this Court or a jury in an interpretation of "ecclesiastical rule, custom or law."

*Id.* at 10 n.4 (citations omitted).[2]

Second, Plaintiffs' allegations fail to meet Rule 9's requirement because they are plead "upon information and belief." Under Rule 9, allegations of fraud may be based "on information and belief" only "'when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (citation omitted). Plaintiffs have no allegations establishing any factual basis for the (nonexistent) allegation that tithing donations were used in the City Creek project. Accordingly, this claim fails.

### 2. Plaintiffs' "Fraudulent Non-Disclosure" and "Fraudulent Concealment" claims fail.

Plaintiffs' Opposition does nothing to save their second and third causes of action.[3] Once again, most of the argument relates to the Church's religious teachings—not secular financial

---

[2] As the court noted, any effort by a court to define the term "tithing funds" as used by the Church would violate the First Amendment. Indeed, the term "tithing" as used by the Church is not a mere synonym with "donation." In other words, not all donations to the Church constitute tithing. "Tithing" is a particular type of donation that is defined in scripture and expounded upon by Church leaders. *See, e.g.*, 2AC ¶ 10 (identifying "tithing" as one of a list of other donation types to the Church).

[3] Puzzlingly, Plaintiffs continue to maintain that "Fraudulent Non-Disclosure" and "Fraudulent Concealment" are distinct causes of action. Plaintiffs call the *Jensen* case

(continued . . .)

matters that might be the subject of fraud.  Opp. at 24-30.  Regardless, Plaintiffs have not pleaded the elements of a fraudulent concealment claim.  First, Plaintiffs have not pleaded facts demonstrating a legal duty to disclose how the Church deploys its funds.  This Court rejected Plaintiffs' duty argument in the Second Order.  Plaintiffs still offer no case law to support the contention that a church has a duty to publicly disclose the use of its funds.  Instead, Plaintiffs write—without citation—"Utah requires disclosure of all material facts in order to make the representations not misleading." *Id*. at 27.  With respect to religion and associated religious donations, that assertion is legally baseless.

Second, Plaintiffs have not and cannot plead that the Church has not disclosed that it invests a portion of its funds for future use.  The very statement by President Hinkley referenced in the Complaint discusses "earnings on invested reserve funds."  And, of course, the *Stone* case notes that it is "obvious" that not all funds would "be disbursed immediately and directly" for the "'benefit of religion, for works of charity and for public worship.'" *Stone v. Salt Lake City*, 356 P.2d 631, 633-34 (Utah 1960) (citation omitted).

Third, determining "materiality"—*i.e.*, importance—in this religious context would violate the First Amendment.  This Court could not opine on what information should be considered "material" to a Church member in deciding whether to obey Church teachings such as tithing.  Plaintiffs' opposition provides many examples of the entanglement that would result in considering what information is "material" to a decision to obey Church teachings.  As one

---

"confusing."  But there is nothing "confusing" about it.  The Utah Court of Appeals clearly stated: "Utah, however, does not draw a distinction between the torts of fraudulent nondisclosure and fraudulent concealment." *Jensen v. Cannon*, 2020 UT App 124, ¶ 21, 473 P.3d 637.

example, Plaintiffs urge this Court to consider the Church's practice of calling "lawyers and business men, and those trained in organizational behavior" as Church leaders, as well as the "lack of a professionally trained clergy" or an "internal dispute system." Opp. at 29 (citing 2AC ¶¶ 132, 257, 113-14). But any "consideration" by the Court about the propriety of calling former lawyers or businesspeople to the ministry and whether that information should be "material" to members of the Church would violate the First Amendment. And, at the highest level, the only truly "material" question is whether tithing is a commandment from God. If it is, then nothing else matters. But, of course, this Court may not opine on whether tithing is a God-given commandment. Accordingly, Plaintiffs' fraudulent concealment claim should be dismissed.

### 3. Plaintiffs' "Constructive Fraud Based on Breach of Promises of Future Performance" claim fails.

The Church previously noted that Plaintiffs' claim entitled "Constructive Fraud Based on Breach of Promises of Future Performance" does not exist under Utah law. Motion at 18. Plaintiffs' Opposition cites to a single Utah Model Jury Instruction entitled "Promises and Statements of Future Performances." Opp. at 31. But that jury instruction is not a cause of action. Rather, it is an instruction for one element of a general fraud claim. As such, this is not an independent cause of action and it should be dismissed for the same reasons as the other fraud-based claims.[4]

---

[4] It is also unclear what "promises . . . of future performance" Plaintiffs allege the Church made. As is true in most religions, the promises of future blessings generally relate to the afterlife. *See, e.g.*, 2AC ¶ 10 (discussing Church teachings of "eternal salvation" and "forever families" as blessings for worthy living). It is unclear how Plaintiffs—all of whom are alive— could base any claim on the failure to receive those future blessings. At a minimum, such claims have a ripeness problem.

### 4. Plaintiffs' "Violations of the *Utah Charitable Solicitations Act*" claim fails.

Plaintiffs finally concede they have no authority for the contention that the Utah Charitable Solicitations Act provides a private right of action. *Id*. No such cause of action exists, and this claim should be dismissed.

### 5. Plaintiffs' "Civil Rico" claim fails.

Plaintiffs' RICO claim fails. First, and most importantly, the RICO claim is based on the same defective "fraud" claims that have been discussed above. Without any cognizable predicate acts (*i.e.*, racketeering activity), there can be no RICO claim, and it should be dismissed. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (defining the element "racketeering activity" as "'any act which is indictable' under federal law and specifically includes mail fraud, wire fraud and racketeering" (citation omitted)).

The RICO claim also fails for other reasons. The Complaint specifically references paragraphs 140 to 290 as setting forth the predicate acts. 2AC ¶ 481. Now, Plaintiffs contend that the reference should really be paragraphs 1 to 480—in other words, all the prior allegations.[5] This does nothing to clarify the theory. In simple terms, Plaintiffs' theory is that the Church has used interstate communications to teach false religious doctrine, including teachings about Joseph Smith, the Book of Mormon, the Book of Abraham, and Church history. As the Court has held, the First Amendment renders such claims non-justiciable.

The only remaining allegations are a few scattered references to tithing. Specifically,

---

[5] Plaintiffs make some references to (yet another) proposed amendment to the Complaint. But as those allegations are not actually in the Complaint, they are irrelevant to this Motion.

113664254.6 0056812-00016

Plaintiffs reference three statements in their Opposition. Opp. at 32. Those statements relate to the City Creek project. But, as described above, those allegations fail. Plaintiffs have not and cannot plead facts demonstrating that President Hinckley's statement was false. And all the other subsequent statements were simply reiterations of President Hinckley's.[6] There can be no RICO (or fraud) claim when Plaintiffs have not and cannot plead falsity.

Plaintiffs also reference a number of allegedly "material omissions" regarding the Church's use of funds. *Id*. at 34. But that claim fails for the same reasons as the earlier fraudulent concealment causes of action.[7] The Church had no duty to disclose how it would use its funds. And the Court cannot possibly determine what facts are "material" to a member in deciding whether to obey a commandment of God to pay tithing. Accordingly, the "material omissions" allegations fail.[8]

---

[6] The allegation in paragraph 258 (one of the alleged statements regarding tithing) exemplifies the problematic nature of the claim. First, it is plead "upon information and belief." A plaintiff cannot possibly base a fraud claim on a statement when the plaintiff does not even know whether that allegedly false statement was made. Here, Plaintiffs have not (and cannot) plead they reasonably relied upon a statement they never heard nor are certain was ever made. *See Gerwe v. Gerwe*, 2018 UT App 75, ¶ 8, 424 P.3d 1113 (listing reasonable reliance as an element of a fraud claim). Regardless, the alleged statement does not ever purport to be a direct quote. The news article cited does not put the statement in quotation marks and it appears to be nothing more than the journalist's own characterization.

[7] The Church disputes the accuracy and characterization of the alleged transactions at issue. But those disputes are immaterial because even if the allegations were true (and they are not), they would still not give rise to a claim.

[8] Plaintiffs' final argument that "whether 'earnings on invested reserve funds' . . . is a jury question" is also wrong. Once again, that is the exact argument presented in the *Huntsman* case and was correctly rejected by the court. *See* Ex. B at 8-11.

### 6. Plaintiffs' "Intentional (Reckless) Infliction of Emotional Distress" claim fails.

Plaintiffs' final cause of action is for "Intentional (Reckless) Infliction of Emotional Distress." 2AC ¶¶ 536-43. It appears that this claim relates only to the alleged failure to "disclose material facts about [Church] history" and does not relate to any use of tithing funds. As this Court has already ruled, this claim is barred by the First Amendment.

## II. IN THE ALTERNATIVE, ALL NON "PURELY SECULAR" ALLEGATIONS SHOULD BE STRICKEN

The Opposition advances only two arguments challenging the Church's alternative motion to strike. First, Plaintiffs again contend that their religious-based claims can be adjudicated. They are wrong, as this Court has previously held. Thus, this argument does not actually address the Motion to Strike. Second, Plaintiffs cite to the standard from Wright and Miller on striking allegations. According to that standard, the moving party must show "that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration [] and that their presence in the pleading throughout the preceding would be prejudicial to the moving party." Opp. at 38.

The Church does not dispute that statement as a generally applicable guideline. Indeed, the Church easily meets that standard here. The religious-based allegations must be, as a matter of law, unrelated to any remaining claims, or the claims must be barred by the First Amendment. And prejudice clearly exists if the adjudication of specific allegations would violate a party's First Amendment rights.

Accordingly, if the Court determines that some portion of Plaintiffs' claims is "purely secular" and is not otherwise dismissed, the Court should strike all other allegations from the

10

Second Amended Complaint.[9]  Plaintiffs should then refile a new version of the Complaint with only the operative allegations and remaining theories of liability.  In so doing, Plaintiffs should excise the immaterial allegations without altering the remaining allegations and legal theories.  *See Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (refusing to construct a legal theory that had not been pleaded).  The Church would then respond to that Complaint.

## CONCLUSION

Each of Plaintiffs' claims is barred by the First Amendment or fails to state a claim.  Accordingly, the Church's Motion should be granted, and the Second Amended Complaint should be dismissed with prejudice.  In the alternative, all immaterial allegations in the Second Amended Complaint should be stricken.

Word Count: 3097

DATED:  January 7, 2022

STOEL RIVES LLP

*/s/ David J. Jordan*
David J. Jordan
Wesley F. Harward

*Attorneys for Defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints*

---

[9] Alternatively, the Court could dismiss the entire Second Amended Complaint without prejudice and allow Plaintiffs to file a new complaint consistent with the Court's order.  The Church is concerned, however, that such an approach would only result in yet another complaint with additional allegations rooted in religion.