Kay Burningham (#4201)
kay@kayburningham.com
Kay Burningham, Attorney at Law
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111
Phone: 1.888.234.3706

*Attorney for Laura A. Gaddy,*
*Lyle D. Small and Leanne R. Harris, Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY, LYLE D. SMALL and LEANNE R. HARRIS,** each individually and each on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**[The] CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole. and DOES 105, inclusive.<br><br>*Defendant[* | MOTION for LEAVE to FILE [Proposed] THIRD AMENDED COMPLAINT<br><br>(DEMAND FOR JURY TRIAL)<br><br>Request for Oral Argument<br><br>**2:19-cv-00554-RJS--DBP**<br><br>Presiding Judge: Robert J. Shelby<br><br>Presiding Magistrate Judge:<br><br>Dustin B. Pead |

**MOTION FOR LEAVE TO FILE THE PROPOSED THIRD AMENDED COMPLAINT**

Plaintiffs seek leave to file the attached proposed Third Amended Complaint ("3AC") under Fed. R. Civ. P. 15(a)(2) which corrects issues brought up in Defendant's Motion to Dismiss the Second Amended Complaint ("2AC"). They also seek to add a heretofore unpleaded, yet corroborated fact that places the sincerity of the entire LDS hierarchy at

1

issue, beyond the material items concealed in their vault or archives, giving further plausibility to the allegation that LDS leaders do not believe the material facts that they teach to their members.

In addition to Laura Gaddy, two more named plaintiffs were added in the Motion for Leave to File the 2AC (DKT 105). That Motion explained: "The additional named plaintiffs in the proposed 2AC have only recently discovered the alleged fraud, have claims similar to Ms. Gaddy's and are residents of Colorado and California." (Dkt 105 p. 2)  No objection to adding those parties plaintiff was made in the Motion to Dismiss the 2AC. Allegations by Mr. Small and Ms. Harris are found in ¶¶335-341 and ¶¶ 342-335 respectively, in both the 2AC and 3AC.

Finally, with regard to Doe Defendants:

> 102. It has come to our attention that Defendant COP has recently merged with the entity formerly known as CPB (Corporation of the Presiding Bishopric) who prior to the merger, changed its name to the Church of Jesus-Christ of Latter-day Saints. It has also come to our attention that there are dozens of entities created by Defendant whose names have no apparent affiliation with Defendant, and which entities act on its behalf. Therefore Plaintiffs have added Doe Defendants.

From ¶102 in both the 2AC and 3AC.

The above paragraph has not changed in the  proposed 3AC.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

1. <u>The PROPOSED 3AC CORRECTS ISSUES in COP'S MOTION to DISMISS.</u>

Defense counsel identified three issues in its Motion to Dismiss the 2AC (Dkt 111) and Reply memoranda (Dkt 121) which Plaintiffs now correct in the proposed 3AC.

A. The Basis of the Allegations made upon Information and Belief are Added.

The first is the requirement to provide a basis for allegations made "upon information and belief." Defendant cites Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236–37 (10th Cir. 2000)) interpreting Fed. R. Civ. P. 9 requiring that fraud must be pleaded with specificity for the proposition that pleading fraud must include the consequences of the fraudulent statement., Id. at 1296.

Although he 2AC pleaded with specificity as to time, place, contents of the false representation, and the identity of the party making the false statements, the proposed 3AC now adds and the consequences thereof. *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991), to the extent that they are known. Id.

Allegations made "upon information and belief" must set forth the basis of that information and belief. Id. at 1297 (Dkt 111, MTD 2AC p. 14). Allegations in the 3AC made "upon information and belief" are now bolstered by the bases for those allegations. Most of the foundation for the "upon information and belief" allegations is found not only in IRS Whistleblower, David A. Nielsen's Declaration that is attached to the 2AC (and proposed 3AC) as Exhibit "5," but from additional information raised in the *Whistleblower Report* ("*WBR*") published by his brother Lars Neilsen. Lars attests to the source of the information therein as directly from his brother David and with his permission (*WBR*, p. 4. A complete copy of the *WBR* is attached as Exhibit "8" to the proposed 3AC).

Most of the new bases for the allegations "upon information and belief" are those related to the handling and use of tithing donations as found in the *WBR* and its

3

attachments. The additional language highlights the annual forty million dollars donated by the church for humanitarian aid as a tiny percentage, 0.57%, of the average annual seven billion dollars in tithing receipts ($40 X 10^6/7 X 10^9=.0057 X 100=0.57%).

Further analysis is made by comparing the one to two billion dollars deposited annually in the EPA hedge fund to the seven billion dollars in average annual tithing receipts. That percentage appears to be 14.2%-28.7% (1-2 billion/7 billion), that according to the *WBR* has been deposited since 1997 and ultimately used for commercial endeavors but no humanitarian aid or ecclesiastical expenses whatsoever, all in alleged violation of IRS regulations for 501(3)(c) religious corporations.

B. The Fourth Cause of Action for Constructive Fraud has been Reworded

In their reply memorandum (DKT 121) Defendant claims that Plaintiffs Fourth Cause of Action is not a separate cause of action, but only an element of fraud. Defense counsel also cites Jensen v. Cannon, 2020 UT App 124, ¶ 19, 473 P.3d 637, 643 as supporting a claim for fraud based on just two elements: "Constructive fraud requires two elements: (I) a confidential relationship between the parties; and (ii) a failure to disclose material facts." Id.[1]

---

[1] Jensen, 2020 UT App 124 also discusses Utah's decision not to recognize a fraudulent concealment claim separate from a failure to disclose claim, contrary to the Restatement (Second) of Torts § 550 (1977) (discussing requirements of concealment versus nondisclosure). Noting that other jurisdictions separate the two based on intent and duty. "And while intent is not a listed element of fraudulent nondisclosure claims, our supreme court has nevertheless emphasized that "fraudulent nondisclosure is an intentional tort" and that "intent is the hallmark" of intentional torts." Jensen v. Cannon, 2020 UT App 124, ¶¶ 20-21, 473 P.3d 637, 643.
.

Assuming *arguendo* that Defendant is correct, that the 2AC claim is not a stand-alone cause of action, the constructive fraud claim has been slightly modified to comport with Blodgett v. Martsch, 590 P.2d 298, 302 (Utah 1978) that was cited in Plaintiffs' Motion for Leave to File the 2AC (Dkt 195 p. 12), and Jensen, 473 P.3d at 643 cases, while incorporating the fraud based on the breach of a future promise to perform, i.e. that the Brethren or president of the church will never lead its members astray.

C. <u>An Affirmative Misrepresentation Based on the Post 2012 Tithing Form Claim that all Donations are Spent to Further "the Overall Mission of the Church." is Added.</u>

In the 2AC on file, written below the tithing forms (see ¶88 in both the 2AC and proposed 3AC) is the language of the disclaimer which reads: "Though reasonable efforts will be made globally to use donations as designated, [sic] all donations become the Church's property *and will be used at the church's sole discretion to further the church's overall mission.*" [Emphasis Added]. Although the above language was typed out and identified in a footnote in the 2AC (see FN 31), the 3AC adds two statements made by Defendant defining "overall mission." (See 3AC ¶88 redlined insertions underneath the tithing forms.) Those definitions did not reference investment of tithing principal or the use of ROI of tithing for extensive commercial development. These two statements have now been alleged as affirmative misrepresentations in the first cause of action as well as material facts that Defendant failed to disclose under the causes of action involving a duty to disclose or concealment.

D. <u>Finally, New Factual Allegations Support the Prior Claim that the Brethren and GAs Do Not Believe What They Teach about the LDS Restoration and Key LDS History. Facts that Support Allegations of Insincerity made on Information and Belief are Added.</u>

Since the [F]AC, Plaintiff[s] have argued that the leaders of the COJCOLDS do not believe much of the key correlated information about LDS history which they teach. This information is based not only on the fact that they have stones, artifacts, primary manuscripts, documents and other information in their archives that substantially contradict the orthodox narrative, but is now alleged on information that former CES employee, historian, and author Grant H. Palmer obtained from an LDS General Authority. Mr. Palmer engaged in three discussions with a member of the First Quorum of the Seventy in late 2012 and early 2013 at the Seventy's request and held at his home. Mr. Palmer wrote about the meetings in early 2013 (See Exhibit no. ( to the 3AC). Plaintiffs' counsel corroborated Mr. Palmer's claims at dinner with he and the editor of MormonThink in the fall of 2013. Unfortunately, Mr. Palmer passed away in 2017.

This allegation is contained in proposed 3AC ¶206 and Exhibit no. 9. In summary, according to the unnamed long-time member of the First Quorum of the Seventy, most all newly appointed LDS seventies are true believers, and it takes them about 2-3 years to realize that the Smith's restoration claims and key LDS history claims, including but not limited to those identified in this lawsuit, promulgated by the church for the last 50-60 years are fraudulent.

6

Additionally, a 2AC allegation made upon information and belief that Dr. Richard Bushman had been trying for decades to convince the Brethren to write a scholarly comprehensive history of the church (¶269) has been supplemented to provide the primary source documentation. Bushman wrote a letter to Hugh B. Brown in 1964 recommending the comprehensive history. Dr. Bushman's request was sent to Harold B. Lee (then head of Correlation) who denied Bushman's request to Brown. The new allegations with supporting facts are also located in ¶ 269 of the proposed 3AC.

In its prior order of July 28, 2021 (Dkt 100) the Court wrote on p. 21 that:

Falsity of a statement remains an essential element of a fraud claim. 121 And whether or not Church leadership believes any representations made, the First Amendment prohibits the next step, which requires the court to examine the truth or falsity of the First Vision, the translation of the Book of Mormon, the Book of Abraham, or Gaddy's new doctrinal challenges. 122

In the 2AC, Plaintiffs pleaded Defendant's correlated rhetoric has been, since the Correlation Department was created, written, spoken and otherwise promulgated by the Brethren in a manner that represents that the Brethren believe their correlated rhetoric and artwork. Correlated materials are touted by the Church as "pure doctrine," the only choice that can be used by teachers in the church. This is akin to the leaders' statements that they believe in their correlated representations. This is a statement of fact as to Defendant's leaders' collective states of mind (first element of fraud). These representations as to states of mind are false because they did not, and do not, believe (second element of fraud). The proposed 3AC adds additional facts to support the allegation that they do not believe their own correlated rhetoric in the form of Grant Palmer's discussion with the member of the First Quorum of the Seventy and Dr.

7

Richard Bushman's early attempts to advocate for a scholarly comprehensive history of the church in his letter to Hugh B. Brown and his suggestion of a such a venture with Leonard Arrington as editor.

E. <u>Plaintiffs have Compared the Percent of Annual Tithing Receipts Used To Fund EPA Annually Since 1997 with the Percent of Tithing Used for Humanitarian Aid.</u>

The 2AC references a statement by Dallin Oaks that 1.3 million had been donated for humanitarian aid from 1985 through 2010 (2AC ¶9 and ¶139). The 3AC adds in that the amount was slightly revised to include another five years. Oaks said in 2016 that the Church had donated forty million in humanitarian aid from 1985 through 2015 (1.3 billion over 30 years). Given the fact that COP has directed that $1-2 billion a year since 1997 (as attested in 2AC Exhibit "5," Declaration of IRS Whistleblower David A. Nielsen, Exhibit "A" thereto). This amount is 14.2-28.7% of the average of $7 billion in annual tithing receipts that had been deposited into the EPA hedge fund. In comparison, just 0.57% ($40 million) of the annual $7 billion average in tithing receipts is used for humanitarian aid ($40 X $10^6$/7 X $10^9$=.0057 X 100=0.57%).[2] (¶9 & ¶139.)

2.  <u>THE ALLEGATIONS ADDED TO THE PROPOSED 3AC ARE NOT FUTILE. SHOULD THE COURT ALLOW FILING OF THE 3AC, JUSTICE WOULD BE SERVED.</u>

The new allegations are primarily supplemental supporting factual bases, to pending 2AC claims. Often an amended complaint will be filed in response to issues raised in a pending motion to dismiss. The additional allegations in the 3AC are not

---

[2] 2AC figures re humanitarian aid are based on a prior statement by Oaks that 1.2 billion over 25 years was spent on humanitarian aid (2AC ¶9 & ¶293). That amount was calculated as 5.3% of the annual deposit in the EPA fund (1-2 billion), not a percentage of the $7 billion average annual tithing receipts.

futile in that they provide a more robust version of the 2AC claims and add facts upon which those claims are based.

    None of the factors identified in Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) are present here such that denial of the Motion for Leave to file the Proposed 3AC is required. And, although it is within the Court's discretion to deny this motion, it is also within the Court's discretion to grant the Motion to file the 3AC and "transfer" Defendant's Motion to Dismiss the 2AC to the 3AC, and allow Defendant to file a supplemental or new Motion to Dismiss, should it so desire.

    Wherefore, the Court is respectfully requested to grant leave to file the proposed 3AC.

                                        Respectfully,

DATED: January 27, 2022.    Kay Burningham, Attorney at Law

                                        /s/ Kay Burningham
                                        Kay Burningham

*Attorney for Laura A. Gaddy, Lyle D. Small and Leanne R. Harris*