APPEAL,CLOSED,OPEN_MJ

Email All Attys

Email All Attys and Secondary Emails

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: <u>2:19−cv−00554−RJS</u>

| | |
|---|---|
| Gaddy v. Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The | Date Filed: 08/05/2019 |
| Assigned to: Judge Robert J. Shelby | Date Terminated: 03/28/2023 |
| Cause: 18:1962 Racketeering (RICO) Act | Jury Demand: Plaintiff |
| | Nature of Suit: 470 Racketeer/Corrupt Organization |
| | Jurisdiction: Federal Question |

**<u>Plaintiff</u>**

**Laura A. Gaddy**
*individually and on behalf of all others similarly situated*

represented by **Kay Burningham**
KAY BURNINGHAM ATTORNEY AT LAW
299 S MAIN ST STE 1375
SALT LAKE CITY, UT 84111
(888)234–3706
Email: kay@kayburningham.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Lyle D. Small**

represented by **Kay Burningham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Leanne R. Harris**

represented by **Kay Burningham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The**
*a Utah corporation sole*

represented by **David J. Jordan**
FOLEY & LARDNER LLP
95 S STATE ST STE 2500
SALT LAKE CITY, UT 84111
801–401–8919
Email: djordan@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley F. Harward**
FOLEY & LARDNER LLP
95 S STATE ST STE 2500
SALT LAKE CITY, UT 84111
801−401−8900
Fax: 385−799−7576
Email: wharward@foley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1−50**

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/05/2019 | 1 | | Case has been indexed and assigned to Magistrate Judge Evelyn J. Furse. Plaintiff Laura A. Gaddy is directed to E−File the Complaint  and cover sheet (found under Complaints and Other Initiating Documents) and pay the filing fee of $ 400.00 by the end of the business day. NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system. Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance. (tlh) (Entered: 08/05/2019) |
| 08/05/2019 | 2 | | COMPLAINT *Proposed Class Action Complaint* against All Defendants (Filing fee $ 400, receipt number 1088−3340914) filed by Laura A. Gaddy. (Attachments: # 1 Civil Cover Sheet 2:19−cv−00554−EJF, # 2 Appendix Schedule of Attachments, # 3 Exhibit A. LDS Org Chart, # 4 Exhibit B. First Vision, # 5 Exhibit C. HIll Cumorah Photo, # 6 Exhibit D. Smith translating multiple pics, # 7 Exhibit E. 4 PIcs of Smith translating 2019, # 8 Exhibit F. Smith with plates on LDS.org 2019, # 9 Exhibit G. Book of Abraham Preface, # 10 Exhibit H. Book of Abraham Fax 3 Comparison, # 11 Exhibit I. Cowdrey and Smith with Plates, # 12 Exhibit J. Fist Vision and Smith at desk, # 13 Exhibit K. First Vision 2007 SS manual, # 14 Exhibit L. Film Screen Shots, # 15 Exhibit M. Gold Plates Toy, # 16 Exhibit N. Steven Snow Transcript) Assigned to Magistrate Judge Evelyn J. Furse (Burningham, Kay) (Entered: 08/05/2019) |
| 08/06/2019 | 3 | | **\*\*RESTRICTED DOCUMENT\*\***Summons Issued Electronically as to Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The. Instructions to Counsel: 1. Click on the document number. 2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF. 3. Print the issued summons for service. (tlh) (Entered: 08/06/2019) |
| 08/07/2019 | 4 | | ORDER TO PROPOSE SCHEDULE – Plaintiff must propose a schedule to defendant in the form of a draft Attorney Planning Meeting Report within the earlier of fourteen(14) days after any defendant has appeared or twenty−eight (28) days after any defendant has been served with the complaint. See order |

| | | | |
|---|---|---|---|
| | | | for additional instructions. Signed by Magistrate Judge Evelyn J. Furse on 8/7/2019. (nl) (Entered: 08/07/2019) |
| 08/07/2019 | 5 | | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by Laura A. Gaddy as to Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The served on 8/6/2019, answer due 8/27/2019. (Burningham, Kay) (Entered: 08/07/2019) |
| 08/27/2019 | 6 | | MOTION to Dismiss and Memorandum in Support *Pursuant to Rule 12(b)(1) or, Alternatively, 12(b)(6)* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The. Attorney Wesley F. Harward added to party Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The(pty:dft)(Harward, Wesley) (Entered: 08/27/2019) |
| 08/28/2019 | 7 | | NOTICE of Appearance by David J. Jordan on behalf of Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The (Jordan, David) (Entered: 08/28/2019) |
| 08/29/2019 | 8 | | NOTICE – This case is assigned to a magistrate judge. To consent or request reassignment, use  the form on this link or use the included form for non−efilers and send it to consents@utd.uscourts.gov within 15 days or mail to the court with *Attention: Consent Clerk* on the envelope. Notice e−mailed or mailed to Defendant Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The, Plaintiff Laura A. Gaddy. Form due by 9/13/2019. (nl) (Entered: 08/29/2019) |
| 09/05/2019 | 9 | | RECEIVED Consent/Reassignment Form from Plaintiff Laura A. Gaddy. (nl) (Entered: 09/06/2019) |
| 09/06/2019 | 10 | | RECEIVED Consent/Reassignment Form from Defendant Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The. (nl) (Entered: 09/06/2019) |
| 09/06/2019 | 11 | | All Consent/Reassignment Forms have now been received. After review of all forms, Case Reassigned to District Judge per request of one or more party(s). Case randomly assigned to Judge Robert J. Shelby. Magistrate Judge Evelyn J. Furse no longer assigned to the case. (nl) (Entered: 09/06/2019) |
| 09/09/2019 | 12 | | MOTION for Extension of Time to File Response to 6 Motion to Dismiss and Memorandum in Support *Pursuant to Rule 12(b)(1) or, Alternatively, 12(b)(6)* filed by Plaintiff Laura A. Gaddy. (dla) (Entered: 09/09/2019) |
| 09/09/2019 | 13 | | CLERKS ORDER granting 12 Motion for Extension of Time to File Response to 6 Defendant's 12(b) Motion: Plaintiff shall have up to and including **October 8, 2019** within which to file her opposition. Signed by Anne Morgan, Chief Deputy Clerk. (dla) (Entered: 09/09/2019) |
| 09/17/2019 | 14 | | Plaintiff's MOTION for Initial Scheduling Conference and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit Proposed APMR, # 2 Exhibit Proposed Joint Mtn for Scheduling Conf., # 3 Exhibit Email from Atty Jordan)(Burningham, Kay) (Entered: 09/17/2019) |
| 09/20/2019 | 15 | | ORDER REFERRING CASE to Magistrate Judge Dustin B. Pead under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial |

| | | | |
|---|---|---|---|
| | | | matters. No attached document. Signed by Judge Robert J. Shelby on 9/20/2019. (mjm) (Entered: 09/20/2019) |
| 09/23/2019 | 16 | | RESPONSE to Motion re 14 Plaintiff's MOTION for Initial Scheduling Conference and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 09/23/2019) |
| 09/23/2019 | 17 | | MOTION to Stay *Discovery and Scheduling – Short Form* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Attachments: # 1 Text of Proposed Order) Motions referred to Dustin B. Pead.(Jordan, David) (Entered: 09/23/2019) |
| 09/24/2019 | 18 | | Plaintiff's RESPONSE to Motion re 17 MOTION to Stay *Discovery and Scheduling – Short Form* filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 09/24/2019) |
| 09/25/2019 | 19 | | NOTICE of Stipulated Proposed Order by Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The re 17 MOTION to Stay *Discovery and Scheduling – Short Form Joint* (Attachments: # 1 Exhibit Exhibit A – Proposed Order) (Harward, Wesley) (Entered: 09/25/2019) |
| 09/26/2019 | 20 | | ORDER granting 17 Motion to Stay Discovery and Scheduling and denying 14 Without Prejudice Motion for Scheduling Conference: Once the Court renders a decision on the pending motion to dismiss, and any appeals pertaining to that decision are resolved, the parties are ORDERED to contact the Court within fourteen (14) days to set up a scheduling conference. Signed by Magistrate Judge Dustin B. Pead on 9/25/19. (dla) (Entered: 09/26/2019) |
| 10/03/2019 | 21 | | Ex Parte (Not Sealed) MOTION for Leave to File Leave to File Over–length Memo in Opp. to Def's 12(b) Mtn. to Dismiss filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Text of Proposed Order) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 10/03/2019) |
| 10/04/2019 | 22 | | ORDER granting 21 Motion for Leave to File Overlength Memorandum. IT IS HEREBY ORDERED: that Plaintiff is granted leave to file an overlength memorandum in opposition to Defendant's 12(b) Motion. The Opposition shall be no more than 8,000 words, verified. Signed by Magistrate Judge Dustin B. Pead on 10/4/2019. (jwt) (Entered: 10/04/2019) |
| 10/08/2019 | 23 | | Plaintiff's MEMORANDUM in Opposition re 6 MOTION to Dismiss and Memorandum in Support *Pursuant to Rule 12(b)(1) or, Alternatively, 12(b)(6)* filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit FAITH CRISIS COVER SHEET ONLY)(Burningham, Kay) (Entered: 10/08/2019) |
| 10/15/2019 | 24 | | MOTION for Extension of Time to File Response/Reply as to 23 Memorandum in Opposition to Motion, and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. Motions referred to Dustin B. Pead.(Jordan, David) (Entered: 10/15/2019) |
| 10/16/2019 | 25 | | ORDER granting 24 Unopposed Motion for Extension of Time to File Overlength Reply Brief: The time for which Defendant may file its reply memorandum in support of its 6 motion to dismiss is extended through **November 5, 2019.** The reply memorandum is not to exceed 4,000 words. |

| | | |
|---|---|---|
| | | Signed by Magistrate Judge Dustin B. Pead on 10/16/19. (dla) (Entered: 10/16/2019) |
| 11/05/2019 | 26 | REPLY to Response to Motion re 6 MOTION to Dismiss and Memorandum in Support *Pursuant to Rule 12(b)(1) or, Alternatively, 12(b)(6)* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 11/05/2019) |
| 11/13/2019 | 27 | REQUEST to Submit for Decision re 6 MOTION to Dismiss and Memorandum in Support *Pursuant to Rule 12(b)(1) or, Alternatively, 12(b)(6),* 26 Reply Memorandum/Reply to Response to Motion, 23 Memorandum in Opposition to Motion, *Proposed Class Action Complaint* filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 11/13/2019) |
| 11/26/2019 | 28 | **NOTICE OF HEARING ON MOTION** re: 6 MOTION to Dismiss and Memorandum in Support *Pursuant to Rule 12(b)(1) or, Alternatively, 12(b)(6)* : (Notice generated by Mary Jane McNamee) Motion Hearing set for 2/13/2020 at 01:30 PM in Rm 3.100 before Judge Robert J. Shelby. (mjm) (Entered: 11/26/2019) |
| 02/06/2020 | 29 | NOTICE OF FILING of Notice of Supplemental Authority *in support of Opposition to 12(b) Motion* filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 02/06/2020) |
| 02/10/2020 | 30 | NOTICE OF FILING of Amendment to Plaintiff's Notice of Supplemental Authority in Support of Opposition to Defendant's Motion to Dismiss re 29 Notice of Filing *of Amendment to Notice of Supplemental Authority* filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 02/10/2020) |
| 02/13/2020 | 31 | Minute Entry for proceedings held before Judge Robert J. Shelby: Motion Hearing held on 2/13/2020 re 6 MOTION to Dismiss and Memorandum in Support *Pursuant to Rule 12(b)(1) or, Alternatively, 12(b)(6)* filed by Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. The court hears oral argument and takes the matter under advisement. Attorney for Plaintiff: Kay Burningham, Park Romney, Attorney for Defendant: David Jordan, Wesley Harward. Court Reporter: Kelly Summerville.(mjm) (Entered: 02/13/2020) |
| 03/30/2020 | 32 | Plaintiff's MOTION for Leave to File Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Proposed Amended Complaint, # 2 Exhibit Ex. 1 to A/C, # 3 Exhibit Ex.2 to A/C, # 4 Exhibit Ex. 3 to A/C, # 5 Exhibit Ex. 4 to A/C, # 6 Exhibit Ex. 5 to A/C, # 7 Exhibit Ex. 6 to A/C, # 8 Exhibit Ex. 7 to A/C, # 9 Exhibit Ex. 8 to A/C, # 10 Exhibit Ex.9 to A/C, # 11 Exhibit Ex. 10 to A/C, # 12 Exhibit Ex. 11 to A/C, # 13 Exhibit Ex. 12 to A/C, # 14 Exhibit Ex. 13A to A/C, # 15 Exhibit Ex. 13B to A/C) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 03/30/2020) |
| 03/31/2020 | 33 | MEMORANDUM DECISION AND ORDER granting 6 Motion to Dismiss without prejudice and denying without prejudice as premature 32 Motion for Leave to File Amended Complaint. Gaddy may file within forty–five (45) days a motion for leave to amend her Complaint. Signed by Judge Robert J. Shelby on 3/31/2020. (jds) (Entered: 03/31/2020) |
| 04/28/2020 | 34 | |

| | | | |
|---|---|---|---|
| | | | Plaintiff's MOTION for Leave to File Amended Complaint and Memorandum in Support *REVISED* filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Supplement Revised Amended Complaint, # 2 Exhibit M.C.E. Diagram, # 3 Exhibit Historian Snow Audio, # 4 Exhibit Hill Cumorah, # 5 Exhibit Joseph Smith Translating, # 6 Exhibit Preach My Gospel, # 7 Exhibit First Vision by Parson, # 8 Exhibit First Vision from SS Manual, # 9 Exhibit First Vision Orthodox, # 10 Exhibit Stills from Smith Film, # 11 Exhibit Smith and Plates Remain, # 12 Exhibit Gold Plate Toy, # 13 Exhibit Montage of Smith and Plates, # 14 Exhibit Preface to Book of Abraham, # 15 Exhibit B. of A. Facsimile No. 3) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 04/28/2020) |
| 05/12/2020 | 35 | | NOTICE of Non–Opposition by Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The re 34 Plaintiff's MOTION for Leave to File Amended Complaint and Memorandum in Support *REVISED* (Jordan, David) (Entered: 05/12/2020) |
| 05/13/2020 | 36 | | DOCKET TEXT ORDER granting 34 Motion for Leave to File on account of Defendant's 35 Notice of Non–Opposition and under Federal Rule 15(a)(2) that provides "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave" Plaintiff's Motion for Leave to File is GRANTED. Signed by Magistrate Judge Dustin B. Pead on 5/13/20. No attached document. (mjw) (Entered: 05/13/2020) |
| 05/18/2020 | 37 | | AMENDED COMPLAINT against All Defendants with Jury Demand. filed by Laura A. Gaddy. (Attachments: # 1 Exhibit LDS ORG CHART, # 2 Exhibit AUDIO TRANSCRIPT OF S. SNOW, # 3 Exhibit HILL CUMORAH PIC, # 4 Exhibit SMITH TRANSLATING PLATES, # 5 Exhibit PREACH MY GOSPEL, # 6 Exhibit FIRST VISION by Del Parson, # 7 Exhibit FIRST VISION from SS Manual, # 8 Exhibit SMITH'S 1ST VISION Orthodox Version, # 9 Exhibit STILLS FROM FILM JS Prophet of the Restoration, # 10 Exhibit SMITH TRANSLATING from Plates 2019, # 11 Exhibit GOLD PLATES TOY, # 12 Exhibit MONTAGE of Smith Translating from Plates, # 13 Exhibit PREFACE to BOOK of ABRAHAM, # 14 Exhibit FACSIMILE NO. 3 From Book of Abraham) (Burningham, Kay) (Entered: 05/18/2020) |
| 06/01/2020 | 38 | | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Harward, Wesley) (Entered: 06/01/2020) |
| 06/15/2020 | 39 | | Stipulated MOTION for Extension of Time to File Response/Reply *to Motion to Dismiss Amended Complaint* filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Text of Proposed Order) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 06/15/2020) |
| 06/16/2020 | 40 | | ORDER granting 39 Stipulated MOTION for Extension of Time to File Response/Reply *to Motion to Dismiss Amended Complaint.* Plaintiff shall have up to and including 7/14/2020 within which to file her Opposition to the Motion to Dismiss Amended Complaint. Signed by Magistrate Judge Dustin B. Pead on 6/16/2020. (lnp) (Entered: 06/16/2020) |
| 07/06/2020 | 41 | | Ex Parte (Not Sealed) MOTION for Leave to File Excess Pages *in support of Opposition to 12(b)(1)Motion* filed by Plaintiff Laura A. Gaddy. |

| | | | |
|---|---|---|---|
| | | | (Attachments: # 1 Exhibit Email Thread, # 2 Text of Proposed Order) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 07/06/2020) |
| 07/07/2020 | 42 | | ERRATA to 41 Ex Parte (Not Sealed) MOTION for Leave to File Excess Pages *in support of Opposition to 12(b)(1)Motion* filed by Plaintiff Laura A. Gaddy . (Burningham, Kay) (Entered: 07/07/2020) |
| 07/08/2020 | 43 | | RESPONSE to Motion re 41 Ex Parte (Not Sealed) MOTION for Leave to File Excess Pages *in support of Opposition to 12(b)(1)Motion [Opposition to Motion for Leave to File Overlength Memorandum]* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 07/08/2020) |
| 07/09/2020 | 44 | | Motions No Longer Referred: 41 Ex Parte (Not Sealed) MOTION for Leave to File Excess Pages *in support of Opposition to 12(b)(1)Motion*. This motion pertains to the 38 Motion to Dismiss, that is pending before the Chief District Judge. (mjw) (Entered: 07/09/2020) |
| 07/14/2020 | 45 | | Plaintiff's MEMORANDUM in Opposition re 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]* filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 07/14/2020) |
| 07/14/2020 | 46 | | ORDER granting 41 Plaintiff's Motion to File Overlength Memorandum. Signed by Judge Robert J. Shelby on 7/14/20. (dla) (Entered: 07/14/2020) |
| 07/21/2020 | 47 | | Amended MEMORANDUM in Opposition re 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]* filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 07/21/2020) |
| 07/27/2020 | 48 | | ERRATA to 47 Memorandum in Opposition to Motion filed by Plaintiff Laura A. Gaddy . (Burningham, Kay) (Entered: 07/27/2020) |
| 07/27/2020 | 49 | | MOTION for Extension of Time to File Overlength Reply Brief *[Unopposed]* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Attachments: # 1 Exhibit A – Text of [Proposed] Order Granting Unopposed Motion for Extension of Time to File Overlength Reply Brief) Motions referred to Dustin B. Pead.(Jordan, David) (Entered: 07/27/2020) |
| 07/28/2020 | 50 | | ORDER granting 49 Unopposed Motion for Extension of Time to file overlength Reply Brief: The time for which Defendant may file its reply memorandum in support of its motion to dismiss is extended through **August 18, 2020.** Signed by Magistrate Judge Dustin B. Pead on 7/28/20. (dla) (Entered: 07/28/2020) |
| 08/14/2020 | 51 | | NOTICE of SUPPLEMENTAL AUTHORITY by Laura A. Gaddy re 47 Memorandum in Opposition to Motion *to Dismiss Amended Complaint* (Burningham, Kay) (Entered: 08/14/2020) |
| 08/18/2020 | 52 | | REPLY to Response to Motion re 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Harward, Wesley) (Entered: 08/18/2020) |

| 08/24/2020 | 53 | | REQUEST for Oral Argument re 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]* filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Text of Proposed Order)(Burningham, Kay) Modified on 9/8/2020 changed to Motion For Hearing(jwt). (Entered: 08/24/2020) |
|---|---|---|---|
| 08/24/2020 | 54 | | REQUEST to Submit for Decision re 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]*, 45 Memorandum in Opposition to Motion, 53 Request for Oral Argument, 52 Reply Memorandum/Reply to Response to Motion, filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 08/24/2020) |
| 09/08/2020 | 55 | | RESPONSE to Motion re 53 EX PARTE MOTION/REQUEST for Oral Argument *on Motion to Dismiss Amended Complaint* filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 09/08/2020) |
| 10/30/2020 | 56 | | **ZOOM NOTICE OF HEARING ON MOTION** re: 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]* : (Notice generated by Mary Jane McNamee) ZOOM Video Motion Hearing set for 12/10/2020 at 02:30 PM in Rm 3.100 before Judge Robert J. Shelby. ZOOM Instruction will be emailed to counsel. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (mjm) (Entered: 10/30/2020) |
| 11/10/2020 | 57 | | Plaintiff's MOTION for Leave to File Additional Exhibit to Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit Proposed Ex. #15 to AC, # 2 Affidavit Declaration of Counsel in Support of Motion to Supplement AC, # 3 Exhibit Email requesting continuance, # 4 Exhibit Email re Notice of Ritner Interview, # 5 Exhibit Receipt for purchase of JSP Vol. 4, # 6 Text of Proposed Order Proposed Scheduling Order) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 11/10/2020) |
| 11/11/2020 | 58 | | Motions No Longer Referred: 57 Plaintiff's MOTION for Leave to File Additional Exhibit to Amended Complaint and Memorandum in Support . This motion will be considered by the District Judge. (mjw) (Entered: 11/11/2020) |
| 11/17/2020 | 59 | | Plaintiff's MOTION Judicial Notice re 56 Notice of Hearing on Motion,,, and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit Seer Stone Photo. Eyewitnesses., # 2 Exhibit JSP Never Before See Photo of Seer Stone, # 3 Exhibit LDS Newsroom Report of Stone, # 4 Text of Proposed Order Order Granting Judicial Notice) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 11/17/2020) |
| 11/18/2020 | 60 | | Motions No Longer Referred: 59 Plaintiff's MOTION Judicial Notice re 56 Notice of Hearing on Motion,,, and Memorandum in Support (chambers) (Entered: 11/18/2020) |

| 11/23/2020 | 61 | **AMENDED NOTICE OF ZOOM HEARING ON MOTION** re: 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]*, 57 Plaintiff's MOTION for Leave to File Additional Exhibit to Amended Complaint and Memorandum in Support , 59 Plaintiff's MOTION Judicial Notice re: 56 Notice of Hearing on Motion : (Notice generated by Mary Jane McNamee)ZOOM Video Motion Hearing RESET for 1/5/2021 at 01:30 PM before Judge Robert J. Shelby. ZOOM Instructions will be emailed to counsel. Instruction will be emailed to counsel. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (mjm) (Entered: 11/23/2020) |
|---|---|---|
| 11/23/2020 | 62 | RESPONSE to Motion re 57 Plaintiff's MOTION for Leave to File Additional Exhibit to Amended Complaint and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 11/23/2020) |
| 12/01/2020 | 63 | RESPONSE to Motion re 59 Plaintiff's MOTION Judicial Notice re 56 Notice of Hearing on Motion,,, and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 12/01/2020) |
| 12/07/2020 | 64 | Plaintiff's REPLY to Response to Motion re 57 Plaintiff's MOTION for Leave to File Additional Exhibit to Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 12/07/2020) |
| 12/07/2020 | 65 | REQUEST to Submit for Decision re 57 Plaintiff's MOTION for Leave to File Additional Exhibit to Amended Complaint and Memorandum in Support , 64 Reply Memorandum/Reply to Response to Motion, 62 Response to Motion, filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 12/07/2020) |
| 12/15/2020 | 66 | Plaintiff's REPLY to Response to Motion re 59 Plaintiff's MOTION Judicial Notice re 56 Notice of Hearing on Motion,,, and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit FRIEND 09/1974 Article)(Burningham, Kay) (Entered: 12/15/2020) |
| 12/18/2020 | 67 | REQUEST to Submit for Decision re 61 Notice of Hearing on Motion,,,, 63 Response to Motion, 59 Plaintiff's MOTION Judicial Notice re 56 Notice of Hearing on Motion,,, and Memorandum in Support , 66 Reply Memorandum/Reply to Response to Motion, filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 12/18/2020) |
| 12/21/2020 | 68 | NOTICE of SUPPLEMENTAL AUTHORITY by Laura A. Gaddy re 47 Memorandum in Opposition to Motion, 38 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]*, 56 Notice of Hearing on Motion,,, (Burningham, Kay) (Entered: 12/21/2020) |
| 12/28/2020 | 69 | NOTICE of SUPPLEMENTAL AUTHORITY by Laura A. Gaddy re 47 Memorandum in Opposition to Motion *to Dismiss Amended Complaint* |

| | | | |
|---|---|---|---|
| | | | (Burningham, Kay) (Entered: 12/28/2020) |
| 12/31/2020 | <u>70</u> | | NOTICE of SUPPLEMENTAL AUTHORITY by Laura A. Gaddy re <u>47</u> Memorandum in Opposition to Motion *to Dismiss Amended Complaint* (Burningham, Kay) (Entered: 12/31/2020) |
| 01/05/2021 | 71 | | Minute Order. Proceedings held before Judge Robert J. Shelby: ZOOM Motion Hearing held on 1/5/2021 re: docket entry <u>57</u> Plaintiff's MOTION for Leave to File Additional Exhibit to Amended Complaint and Memorandum in Support filed by Laura A. Gaddy, docket entry <u>38</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *[Motion to Dismiss Amended Complaint]* filed by Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, docket entry <u>53</u> EX PARTE MOTION/REQUEST for Oral Argument filed by Laura A. Gaddy, docket entry <u>59</u> Plaintiff's MOTION Judicial Notice re: 56 Notice of Hearing on Motion and Memorandum in Support filed by Laura A. Gaddy. The court hears oral argument and rules as follows: Taking under advisement docket entry <u>38</u> Motion to Dismiss for Failure to State a Claim, GRANTING IN PART docket entry <u>53</u> Motion for Hearing, GRANTING docket entry <u>57</u> Motion for Leave to File and DENYING docket entry <u>59</u> Motion Requesting Judicial Notice Be Taken. Written Order to follow oral order: No. Attorney for Plaintiff: Kay Burningham; Attorney for Defendant Wesley Harward, David Jordan. Court Reporter: Kelly Hicken.(mjm) (Entered: 01/07/2021) |
| 01/13/2021 | <u>72</u> | | NOTICE of Filing of Exhibits used in Zoom Hearing on MTD AC by Laura A. Gaddy re <u>47</u> Memorandum in Opposition to Motion, 56 Notice of Hearing on Motion,,, *to Dismiss Amended Complaint* (Attachments: # <u>1</u> Exhibit AC EX. 12 Montage COP Images of Smith Translating directly from Gold Plates, # <u>2</u> Exhibit Urimm and Thummim Described by COP Agent, # <u>3</u> Exhibit COP Photo of Brown Stone used by Smith to create Book of Mormon, # <u>4</u> Exhibit Am Jur 2nd Section 209 UT MUJI CV1807 Duty to Speak the Whole Truth, # <u>5</u> Exhibit Omnicare 575 U.S. 175, State of Mind as Fact, # <u>6</u> Exhibit UT Elements of Fraud––Order Changed, # <u>7</u> Exhibit 10th Circ. Mail & Wire Fraud Jury Instructions, # <u>8</u> Exhibit COP teachings re Honesty, # <u>9</u> Exhibit COP teachings re: Free Agency, # <u>10</u> Exhibit Stills from 2020 Pres. Nelson VIdeo Demonstration on Book of Mormon Creation, # <u>11</u> Exhibit COP TITHING FORMS) (Burningham, Kay) (Entered: 01/13/2021) |
| 01/26/2021 | <u>73</u> | | ~~**RESTRICTED DOCUMENT**~~ NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Zoom Video Motion Hearing held on 1/5/21 before Judge Robert J. Shelby. Court Reporter/Transcriber Kelly Brown Hicken, RPR, RMR, Telephone number (801) 521–7238.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact <u>personal data identifiers</u> from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | |
|---|---|---|---|
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/16/2021. Redacted Transcript Deadline set for 2/26/2021. Release of Transcript Restriction set for 4/26/2021. (dla) Modified to remove restricted text on 4/26/2021 (jl). (Entered: 01/26/2021) |
| 02/02/2021 | 75 | | **\*\*RESTRICTED DOCUMENT\*\*** NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion to Dismiss Hearing held on 2/13/20 before Judge Robert J. Shelby. Court Reporter/Transcriber Kelly Sommerville, RPR, FCRR, Telephone number (801) 856–7939.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/23/2021. Redacted Transcript Deadline set for 3/5/2021. Release of Transcript Restriction set for 5/3/2021. (dla) Modified to remove restricted text on 5/3/2021 (jl). (Entered: 02/02/2021) |
| 02/04/2021 | 78 | | **\*\*RESTRICTED DOCUMENT\*\*** NOTICE OF FILING OF OFFICIAL CORRECTED TRANSCRIPT of Zoom Video Motion Hearing held on 1/5/21 before Judge Robert J. Shelby. Court Reporter/Transcriber Kelly Brown Hicken, RPR, RMR, Telephone number (801) 521–7238.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/25/2021. Redacted Transcript Deadline set for 3/8/2021. Release of Transcript Restriction set for 5/5/2021. (dla) Modified to remove restricted text on 5/5/2021 (jl). (Entered: 02/04/2021) |
| 02/17/2021 | 79 | | NOTICE of Intent to FIle Mtn for Leave to File 2nd Amended Complaint by Laura A. Gaddy (Burningham, Kay) (Entered: 02/17/2021) |

| 02/17/2021 | 80 | | Plaintiff's MOTION for Leave to File "Motion for Leave to File Second Amended Complaint and Overlength Memo in Support Thereof" and Memorandum in Support filed by Plaintiff Laura A. Gaddy. Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 02/17/2021) |
|---|---|---|---|
| 02/22/2021 | 81 | | Motions No Longer Referred: 80 Plaintiff's MOTION for Leave to File "Motion for Leave to File Second Amended Complaint and Overlength Memo in Support Thereof" and Memorandum in Support (chambers) (Entered: 02/22/2021) |
| 03/03/2021 | 82 | | RESPONSE to Motion re 80 Plaintiff's MOTION for Leave to File "Motion for Leave to File Second Amended Complaint and Overlength Memo in Support Thereof" and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 03/03/2021) |
| 03/08/2021 | 83 | | REPLY to Response to Motion re 80 Plaintiff's MOTION for Leave to File "Motion for Leave to File Second Amended Complaint and Overlength Memo in Support Thereof" and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 03/08/2021) |
| 03/08/2021 | 84 | | REQUEST to Submit for Decision re 83 Reply Memorandum/Reply to Response to Motion, 80 Plaintiff's MOTION for Leave to File "Motion for Leave to File Second Amended Complaint and Overlength Memo in Support Thereof" and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 03/08/2021) |
| 03/17/2021 | 85 | | Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit Proposed 2AC, # 2 Exhibit Ex. 1 to 2AC, LDSPFCR, # 3 Exhibit Ex. 2 to 2AC, NYT 1912, # 4 Exhibit Ex. 3 to 2AC, Smith's Egyptian Alphabet & Grammar, # 5 Exhibit Ex. 4 to 2AC 1826 Docket –– Guilty, # 6 Exhibit Ex. 5 to 2AC "Use Proper Sources") Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 03/17/2021) |
| 03/24/2021 | 86 | | ORDER denyiing 80 Motion for Leave to File Second Amended Complaint and Overlength Memo in Support Thereof as Moot. Signed by Judge Robert J. Shelby on 3/24/21. (dla) (Entered: 03/24/2021) |
| 03/25/2021 | 87 | | Joint MOTION for Extension of Time to File Response/Reply as to 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Attachments: # 1 Exhibit A – Text of Proposed Order) Motions referred to Dustin B. Pead.(Jordan, David) (Entered: 03/25/2021) |
| 03/25/2021 | 88 | | ORDER granting 87 Joint Motion for Extension of Briefing Schedule re Plaintiff's Motion for Leave to File Second Amended Complaint. Signed by Magistrate Judge Dustin B. Pead on 3/25/21. (dla) (Entered: 03/25/2021) |
| 03/26/2021 | 89 | | Motions No Longer Referred: 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support (dla) (Entered: 03/26/2021) |
| 03/31/2021 | 90 | | |

| | | | |
|---|---|---|---|
| | | | ERRATA to 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy . (Burningham, Kay) (Entered: 03/31/2021) |
| 04/14/2021 | 91 | | MEMORANDUM in Opposition re 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Harward, Wesley) (Entered: 04/14/2021) |
| 05/03/2021 | 92 | | Plaintiff's REPLY to Response to Motion re 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 05/03/2021) |
| 05/06/2021 | 93 | | REQUEST to Submit for Decision re 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 05/06/2021) |
| 05/06/2021 | 94 | | NOTICE of Service of Notice to Preserve ESI by Laura A. Gaddy re 2 Complaint,,, (Attachments: # 1 Affidavit Declaration of Process Server, # 2 Exhibit Return of Service, # 3 Exhibit Notice to Preserve Evidence) (Burningham, Kay) (Entered: 05/06/2021) |
| 05/28/2021 | 95 | | MOTION to Amend/Correct 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit Proposed Amendment) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 05/28/2021) |
| 06/09/2021 | 96 | | NOTICE of SUPPLEMENTAL AUTHORITY by Laura A. Gaddy (Attachments: # 1 Supplement Williams v. Kingdom Hall) (Burningham, Kay) (Entered: 06/09/2021) |
| 06/11/2021 | 97 | | NOTICE of Non–Opposition to "Motion to Amend Prayer for Relief in [Proposed] Second Amended Complaint" by Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The re 95 MOTION to Amend/Correct 85 Plaintiff's MOTION for Leave to File Second Amended Complaint and Memorandum in Support and Memorandum in Support (Jordan, David) (Entered: 06/11/2021) |
| 06/14/2021 | 98 | | DOCKET TEXT ORDER granting 95 Motion to Amend/Correct per 97 Notice of Non–Opposition. Plaintiff is granted leave to amend the proposed Second Amended Complaint. Plaintiff's Motion for Leave to File Second Amended Complaint remains pending. Signed by Magistrate Judge Dustin B. Pead on 6/14/21. No attached document. (mjw) (Entered: 06/14/2021) |
| 06/21/2021 | 99 | | NOTICE of SUPPLEMENTAL AUTHORITY by Laura A. Gaddy (Burningham, Kay) (Entered: 06/21/2021) |
| 07/28/2021 | 100 | | MEMORANDUM DECISION AND ORDER granting in part and denying in part 38 Defendant's Motion to Dismiss. Signed by Judge Robert J. Shelby on 7/28/21. (dla) (Entered: 07/28/2021) |
| 08/03/2021 | 101 | | Ex Parte (Not Sealed) MOTION for Leave to File Excess Pages and Memorandum in Support *of Mtn. for Leave to File 2AC* filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Williams v. Kingdom Hall, # 3 Exhibit Fulton v. City of |

| | | | |
|---|---|---|---|
| | | | Philadelphia) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 08/03/2021) |
| 08/04/2021 | 102 | | ORDER granting 101 Plaintiff's *Ex Parte* (Not Sealed) Motion for Leave to File Overlength Memorandum. Signed by Magistrate Judge Dustin B. Pead on 8/4/21. (dla) (Entered: 08/04/2021) |
| 08/23/2021 | 103 | | Plaintiff's MOTION for Extension of Time to File Motion for Leave to File Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Exhibit Email re Non Opposition, # 2 Text of Proposed Order Proposed Order) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 08/23/2021) |
| 08/24/2021 | 104 | | ORDER granting 103 Plaintiff's Unopposed Motion for Extension of Time to File a Second Amended Complaint: The deadline for Plaintiff to file a motion for leave to amend her Amended Complaint is now **September 27, 2021.** Signed by Judge Robert J. Shelby on 8/24/21. (dla) (Entered: 08/24/2021) |
| 09/27/2021 | 105 | | MOTION for Extension of Time to Amend 100 Order on Motion for Leave to File, Order on Motion to Dismiss for Failure to State a Claim, Memorandum Decision and Memorandum in Support *of Mtn. for Leave to File 2AC*, MOTION to Enforce Judgment and Memorandum in Support *Motion* filed by Plaintiff Laura A. Gaddy. (Attachments: # 1 Supplement Proposed 2AC, # 2 Exhibit No. 1 LDSPFCR, # 3 Exhibit No. 2 1826 Judge Neely Docket, # 4 Exhibit No. 3 1812 Book of Abraham Fraud, # 5 Exhibit No. 4. JS Egyptian Grammar and Alphabet, # 6 Exhibit No. 5 Declaration of David Nielsen, # 7 Exhibit No. 6 2010 Use Proper Sources, # 8 Exhibit No. 7 Table of Direct Gold Plate Translation) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 09/27/2021) |
| 10/05/2021 | 106 | | MOTION to Amend/Correct 105 MOTION for Extension of Time to Amend 100 Order on Motion for Leave to File, Order on Motion to Dismiss for Failure to State a Claim, Memorandum Decision and Memorandum in Support *of Mtn. for Leave to File 2AC* MOTION to Enforce Judgment and Memorandum in Support *Motion* and Memorandum in Support filed by Plaintiff Laura A. Gaddy. Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 10/05/2021) |
| 10/12/2021 | 107 | | RESPONSE to Motion re 105 MOTION for Extension of Time to Amend 100 Order on Motion for Leave to File, Order on Motion to Dismiss for Failure to State a Claim, Memorandum Decision and Memorandum in Support *of Mtn. for Leave to File 2AC* MOTION to Enforce Judgment and Memorandum in Support *Motion*, 106 MOTION to Amend/Correct 105 MOTION for Extension of Time to Amend 100 Order on Motion for Leave to File, Order on Motion to Dismiss for Failure to State a Claim, Memorandum Decision and Memorandum in Support *of Mtn. for Leave to File 2A filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter−Day Saints, The. (Jordan, David) (Entered: 10/12/2021)* |
| 10/13/2021 | 108 | | Motions No Longer Referred: 105 MOTION for Extension of Time to Amend 100 Order on Motion for Leave to File, Order on Motion to Dismiss for Failure to State a Claim, Memorandum Decision and Memorandum in Support *of Mtn. for Leave to File 2AC* MOTION to Enforce Judgment and Memorandum in Support *Motion*, 106 MOTION to Amend/Correct 105 |

| | | | |
|---|---|---|---|
| | | | MOTION for Extension of Time to Amend <u>100</u> Order on Motion for Leave to File, Order on Motion to Dismiss for Failure to State a Claim, Memorandum Decision and Memorandum in Support *of Mtn. for Leave to File 2A (mjm)* *(Entered: 10/13/2021)* |
| 10/15/2021 | <u>109</u> | | ORDER granting <u>105</u> <u>106</u> Motion for Leave to File Second Amended Complaint and Motion to Amend: Gaddy is directed to file the Second Amended Complaint within seven (7) days. Additionally, the court directs Gaddy to make all changes referenced in her Motion to Amend and any other necessary edits so that the Second Amended Complaint contains all operative allegations in this case.The LDS Church shall have twenty–one (21) days from the date the Second AmendedComplaint is filed to file an Answer or responsive pleading. Signed by Judge Robert J. Shelby on 10/15/21. (dla) Modified by editing docket text, editing docket entry relationships on 10/15/2021 (dla). (Entered: 10/15/2021) |
| 10/22/2021 | <u>110</u> | | AMENDED COMPLAINT *Second* against All Plaintiffs with Jury Demand. *New Plaintiffs: Lyle D. Small, Leanne R. Harris. New Defendants: DOES 1–50.* filed by Laura A. Gaddy. (Attachments: # <u>1</u> Exhibit LDS Personal Faith Crisis, # <u>2</u> Exhibit 1826 Judge Neely Docket, # <u>3</u> Exhibit 1912 NYT Book of Abraham Fraud, # <u>4</u> Exhibit JS 1835 Egyptian Grammar and Alphabet, # <u>5</u> Exhibit Declaration of David A. Nielsen, # <u>6</u> Exhibit 2010 Deseret News "Use Proper Sources", # <u>7</u> Exhibit Decades Table of Direct Gold Plates Translation Art) (Burningham, Kay) (Entered: 10/22/2021) |
| 11/12/2021 | <u>111</u> | | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C)(Jordan, David) (Entered: 11/12/2021) |
| 12/01/2021 | <u>112</u> | | MOTION for Leave to File Overlength Memo in Opposition to Motion to Dismiss Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Attachments: # <u>1</u> Text of Proposed Order Proposed Order) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 12/01/2021) |
| 12/01/2021 | <u>113</u> | | MEMORANDUM in Opposition re <u>112</u> MOTION for Leave to File Overlength Memo in Opposition to Motion to Dismiss Second Amended Complaint and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 12/01/2021) |
| 12/02/2021 | 114 | | Motions No Longer Referred: <u>112</u> MOTION for Leave to File Overlength Memo in Opposition to Motion to Dismiss Second Amended Complaint and Memorandum in Support (mjm) (Entered: 12/02/2021) |
| 12/02/2021 | <u>115</u> | | REPLY to Response to Motion re <u>112</u> MOTION for Leave to File Overlength Memo in Opposition to Motion to Dismiss Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 12/02/2021) |
| 12/03/2021 | <u>116</u> | | REQUEST to Submit for Decision re <u>112</u> MOTION for Leave to File Overlength Memo in Opposition to Motion to Dismiss Second Amended Complaint and Memorandum in Support filed by Plaintiff Laura A. Gaddy. (Burningham, Kay) (Entered: 12/03/2021) |

| | | | |
|---|---|---|---|
| 12/03/2021 | 117 | | ORDER granting 112 Plaintiff's Motion to File Overlength Memorandum. Signed by Judge Robert J. Shelby on 12/3/21. (dla) (Entered: 12/03/2021) |
| 12/10/2021 | 118 | | RESPONSE to Motion re 111 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Attachments: # 1 Exhibit 1959 Expenditure Disclosure for 1958)(Burningham, Kay) (Entered: 12/10/2021) |
| 12/14/2021 | 119 | | Stipulated MOTION for Extension of Time to File Response/Reply as to 111 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Attachments: # 1 Exhibit A – Text of Proposed Order) Motions referred to Dustin B. Pead.(Jordan, David) (Entered: 12/14/2021) |
| 12/15/2021 | 120 | | ORDER granting 119 Stipulated Motion for Extension of Time to File Reply Memorandum in Support of Motion to Dismiss the Second Amended Complaint, or in the Alternative, Motion to Strike: The time for which Defendant may file its response is extended through **January 7, 2022.** Signed by Magistrate Judge Dustin B. Pead on 12/15/21. (dla) (Entered: 12/15/2021) |
| 01/07/2022 | 121 | | REPLY to Response to Motion re 111 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 01/07/2022) |
| 01/28/2022 | 122 | | MOTION for Leave to File Proposed Third Amended Complaint and Memorandum in Support filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Attachments: # 1 Supplement Proposed 3AC, # 2 Exhibit 3AC Ex. 1 LDSPFCR, # 3 Exhibit 3AC Ex. 2 1826 Neeley Docket, # 4 Exhibit 3AC Ex. 3 NYT 1912 B of A Fraud, # 5 Exhibit 3AC Ex. 4 JS Egyptian Grammar and Alphabet, # 6 Exhibit 3AC Ex. 5 Dec. of David A. Nielsen, # 7 Exhibit 3AC Ex. 6 Use Proper Sources, # 8 Exhibit 3AC Ex. 7 Table of Gold Plate Translation Art, # 9 Exhibit 3AC Ex. 8 Whistleblower Report, # 10 Exhibit 3AC Ex. 9 Grant Palmer, Three Mtgs with A GA, # 11 Exhibit 3AC Ex. 10 What is Tithing Used For?) Motions referred to Dustin B. Pead.(Burningham, Kay) (Entered: 01/28/2022) |
| 02/10/2022 | 123 | | Stipulated MOTION for Extension of Time to File Response/Reply as to 122 MOTION for Leave to File Proposed Third Amended Complaint and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Attachments: # 1 Exhibit A – Text of Proposed Order) Motions referred to Dustin B. Pead.(Harward, Wesley) (Entered: 02/10/2022) |
| 02/10/2022 | 124 | | Motions No Longer Referred: 123 Stipulated MOTION for Extension of Time to File Response/Reply as to 122 MOTION for Leave to File Proposed Third Amended Complaint and Memorandum in Support (mjm) (Entered: 02/10/2022) |
| 02/11/2022 | 125 | | ORDER granting 123 Motion for Extension of Time to File Response/Reply as to 122 MOTION for Leave to File Proposed Third Amended Complaint: Response due by 2/25/2022. Signed by Judge Robert J. Shelby on 2/10/22 (alt) (Entered: 02/11/2022) |

| 02/25/2022 | 126 | | Defendant's AFFIDAVIT/DECLARATION in Opposition re 122 MOTION for Leave to File Proposed Third Amended Complaint filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Harward, Wesley) (Entered: 02/25/2022) |
|---|---|---|---|
| 03/08/2022 | 127 | | NOTICE of Change of Address by David J. Jordan *and Wesley F. Harward* (Jordan, David) (Entered: 03/08/2022) |
| 03/14/2022 | 128 | | REPLY to Response to Motion re 122 MOTION for Leave to File Proposed Third Amended Complaint filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Burningham, Kay) (Entered: 03/14/2022) |
| 03/16/2022 | 129 | | REQUEST to Submit for Decision re 122 MOTION for Leave to File Proposed Third Amended Complaint filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Burningham, Kay) (Entered: 03/16/2022) |
| 03/16/2022 | 130 | | REQUEST to Submit for Decision re 111 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Burningham, Kay) (Entered: 03/16/2022) |
| 04/18/2022 | 131 | | Motions No Longer Referred: 122 MOTION for Leave to File Proposed Third Amended Complaint (mjw) (Entered: 04/18/2022) |
| 03/17/2023 | 132 | | REQUEST for Oral Argument re 111 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *(Second Amended Complaint)* filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Attachments: # 1 Exhibit SEC Order of Feb 21 2023)(Burningham, Kay) (Entered: 03/17/2023) |
| 03/28/2023 | 133 | | MEMORANDUM DECISION and Order: The Church's 111 Motion to Dismiss Plaintiffs' Second Amended Complaint is GRANTED. Plaintiffs' 122 Motion for Leave to File the Third Amended Complaint and Request for Oral Argument are DENIED. The Second Amended Complaint is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to close the case. Signed by Judge Robert J. Shelby on 03/28/2023. (jl) (Entered: 03/28/2023) |
| 03/28/2023 | 134 | | JUDGMENT. Judgment is hereby entered in favor of Defendants. Case Closed. Magistrate Judge Dustin B. Pead no longer assigned to case. Signed by Judge Robert J. Shelby on 03/28/2023. (jl) (Entered: 03/28/2023) |
| 04/25/2023 | 135 | | MOTION to Vacate and Memorandum in Support filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Attachments: # 1 Affidavit Redacted Declaration of KB, # 2 Exhibit Proposed Revised 3AC, # 3 Affidavit Declaration of David A. Nielsen)(Burningham, Kay) (Entered: 04/25/2023) |
| 04/25/2023 | 136 | | MOTION to Seal Document 135 MOTION to Vacate and Memorandum in Support and Memorandum in Support filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Attachments: # 1 Affidavit Redacted Declaration of KB, # 2 Affidavit Highlighted Dec. of KB, # 3 Text of Proposed Order)(Burningham, Kay) (Entered: 04/25/2023) |
| 04/26/2023 | 137 | | ERRATA to 135 MOTION to Vacate and Memorandum in Support filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small *Errata to Dkt 135−2*. (Burningham, Kay) (Entered: 04/26/2023) |

| 04/26/2023 | 138 | | ORDER granting 136 Motion to Seal Document re 135 MOTION to Vacate. Signed by Judge Robert J. Shelby on 04/26/2023. (jl) (Entered: 04/26/2023) |
| 05/09/2023 | 139 | | MEMORANDUM in Opposition re 135 MOTION to Vacate and Memorandum in Support filed by Defendant Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, The. (Jordan, David) (Entered: 05/09/2023) |
| 05/22/2023 | 140 | | REPLY to Response to Motion re 135 MOTION to Vacate and Memorandum in Support filed by Plaintiffs Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. (Burningham, Kay) (Entered: 05/22/2023) |
| 07/26/2023 | 141 | | MEMORANDUM DECISION and Order denying 135 Motion to Vacate. Signed by Judge Robert J. Shelby on 07/25/2023. (jl) (Entered: 07/26/2023) |
| 08/23/2023 | 142 | | NOTICE OF APPEAL as to 133 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion for Leave to File,, Memorandum Decision, 141 Order on Motion to Vacate, Memorandum Decision filed by Laura A. Gaddy, Leanne R. Harris, Lyle D. Small. Appeals to the USCA for the 10th Circuit. Filing fee $ 505, receipt number AUTDC–4785873. (Burningham, Kay) (Entered: 08/23/2023) |

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, LYLE D. SMALL, and LEANNE R. HARRIS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, and DOES 1-50,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>Case No. 2:19-cv-00554-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

This case stems from the history, founding, and teachings of the Church of Jesus Christ of Latter-Day Saints, commonly known as the Mormon Church. Plaintiffs Laura Gaddy, Lyle D. Small, and Leanne R. Harris were members of that religion for most of their lives. They bring this putative class action lawsuit against the Church's religious corporation, Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints (the Church). Asserting numerous fraud-related claims, Plaintiffs generally allege the Church has intentionally misrepresented its founding to induce the faith of its members, even as its leaders hold no sincere religious belief in the versions of events they promote.

In two prior Orders, the court dismissed all or part of the first two complaints brought by Gaddy. Specifically, in the first prior Order (First Order), the court dismissed Gaddy's original Complaint primarily because litigating her claims would have required a legally impermissible inquiry into the truth of the Church's religious teachings and doctrines.[1] In the subsequent Order

---

[1] *See* Dkt. 33 (Memorandum Decision and Order Granting Motion to Dismiss) at 20. All citations to the docket refer to the page numbers in ECF.

(Second Order), the court granted in part and denied in part the Church's Motion to Dismiss

Gaddy's Amended Complaint.[2]  Again, the court found that litigating most of Gaddy's claims

would require an impermissible inquiry into the truth of the Church's doctrine.[3]  However, the

court did not dismiss Gaddy's revised civil Racketeer Influenced and Corrupt Organizations Act

(RICO) claim to the extent it was based on the Church's statements concerning the use of tithing

funds to construct a mall in downtown Salt Lake City.[4]

Rather than proceed to discovery on the surviving claim, Gaddy, along with new

Plaintiffs Small and Harris, filed a Second Amended Complaint asserting seven claims against

the Church, many of which were asserted and previously dismissed in the court's two prior

Orders.[5]  Now before the court is the Church's Motion to Dismiss Plaintiffs' Second Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[6]  For the reasons explained

below, the Church's Motion is GRANTED.

### BACKGROUND AND PROCEDURAL HISTORY[7]

The court first provides a brief factual background concerning the named Plaintiffs before

turning to the lengthy procedural history of this case.[8]

---

[2] Dkt. 100 (Memorandum Decision and Order Granting in Part and Denying in Part Motion to Dismiss).

[3] *Id.* at 14–25.

[4] *Id.* at 25–29.

[5] *See* Dkt. 110 (Second Amended Complaint).

[6] Dkt. 111 (Motion to Dismiss Second Amended Complaint).  The Motion also moves in the alternative to strike allegations from the Second Amended Complaint that are non-secular in nature.  *See id.*  Because the court ultimately grants the Motion to Dismiss, it does not go on to consider the alternative requested relief.

[7] Because this case is before the court on a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the Amended Complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[8] Because the court concludes that the First and Second Orders decide the outcome of most of Plaintiffs' repleaded claims, the court will recount, in some detail, allegations in previous complaints, arguments in previous motions to dismiss, and the court's prior rulings.

2

## I.       Plaintiffs

Laura Gaddy was raised in the Church and remained a member for most of her adult life.[9] In early 2018, she found online material concerning the Church's founding, history, and doctrine that she believed conflicted with the Church's own teachings.[10] Unable to reconcile what she discovered with her continued participation in the Church, Gaddy ultimately relinquished her membership.[11] Gaddy is now in counseling to help manage the emotional distress she experiences from her lost faith in the Church.[12]

Lyle Small was also a dedicated member of the Mormon Church for most of his life. He completed a two-year mission to Finland and paid tithing from age eight until his early fifties.[13] In 2019, he resigned from the Church after reading independent sources concerning Church history.[14]

Leanne Harris was also a lifelong member of the Church.[15] Personal tragedies in her life, including the untimely deaths of her son and oldest sister, led her to "double down" on her commitment to the Church.[16] Harris also discovered alleged misrepresentations concerning Church history, doctrine, and tithing payments in 2019, revelations she pleads "almost destroyed her."[17] She alleges she would not have donated tithing or dedicated herself to the Church had she been aware of the misrepresentations she discovered.[18]

---

[9] *See* Dkt. 110 ¶¶ 302–324.

[10] *Id.* ¶¶ 325–27.

[11] *Id.* ¶ 329.

[12] *Id.* ¶ 330.

[13] *Id.* ¶¶ 335–37.

[14] *Id.* ¶¶ 338–39.

[15] *Id.* ¶¶ 342–43.

[16] *Id.* ¶ 343.

[17] *Id.* ¶ 344–45.

[18] *Id.* ¶ 345.

## II.   Gaddy's Original Complaint

On August 5, 2019, Gaddy—then proceeding as the sole-named Plaintiff—filed this

putative class action lawsuit against the Church.[19]  Her original Complaint centered on the theory

that the Church intentionally misrepresents its history and founding to induce membership.[20]

Gaddy compared the Church's "false official narrative" of several foundational events with what

she alleged are the "historically accurate" accounts.[21]  Gaddy primarily focused on three of the

Church's core teachings, alleging each was deliberately misrepresented: (1) a spiritual event

when the founding prophet Joseph Smith saw God and Jesus Christ (known as the First Vision);

(2) the origins of one of the Church's foundational books of scripture, the Book of Mormon; and

(3) the translation of another canonical text known as the Book of Abraham.[22]

Based on these alleged misrepresentations, Gaddy brought six causes of action on behalf

of herself and others similarly situated: (1) common law fraud, (2) fraudulent inducement, (3)

fraudulent concealment, (4) civil RICO (18 U.S.C. § 1962(c)), (5) intentional infliction of

emotional distress, and (6) breach of fiduciary duty.[23]  Gaddy's original civil RICO claim rested

on her theory that the Church had engaged in both mail and wire fraud by communicating these

false teachings.[24]  Gaddy's intentional infliction of emotional distress claim was also based on

the Church's alleged doctrinal misrepresentations.  To support this claim, Gaddy alleged the

Church's pattern of "knowingly and repeatedly misrepresenting foundational facts of its

organization" was outrageous and intolerable.[25]  Finally, Gaddy brought a claim for breach of

---

[19] Dkt. 2 (Original Complaint).

[20] *See id.* ¶ 2.

[21] *See, e.g.*, *id.* ¶¶ 64–75.

[22] *See id.* ¶¶ 64–75 (First Vision), 76–91 (Book of Mormon), 92–101 (Book of Abraham).

[23] *See id.* ¶¶ 183–248.

[24] *See id.* ¶¶ 175–77.

[25] *Id.* ¶ 242.

fiduciary duty.  She alleged a fiduciary relationship arose between Church leaders and its

members for "all matters spiritual," because of the "extraordinary influence" the Church

exercised over its members.[26]  Gaddy maintained the Church breached that duty by failing to

"fully disclose the truth" concerning the Church's historical foundation.[27]

### III.    The Church's Motion to Dismiss Gaddy's Original Complaint

On August 27, 2019, the Church moved to dismiss Gaddy's original Complaint.[28]  The

Church argued the Free Exercise and Establishment Clauses of the First Amendment (the

Religion Clauses) barred Gaddy's claims because each necessarily implicated the Church's

fundamental religious doctrines and teachings.[29]  The Church argued Gaddy's three fraud-based

claims—common law fraud, fraudulent inducement, and fraudulent concealment—should be

dismissed because adjudicating the claims would require the court to make an impermissible

inquiry into the truth or falsity of the Church's religious beliefs.[30]  Because Gaddy's remaining

claims for civil RICO, intentional infliction of emotional distress, and breach of fiduciary duty

were also dependent on an inquiry into the truth or falsity of the Church's teachings, the Church

argued those claims should similarly be dismissed.[31]

Gaddy opposed the motion, arguing the Religion Clauses did not apply to the claims in

her Complaint.[32]  Gaddy contended her fraud-based claims survived the motion for three

---

[26] *Id.* ¶¶ 206, 208–10.

[27] *Id.* ¶¶ 218–19.

[28] Dkt. 6 (Motion to Dismiss Original Complaint).

[29] *See id.* at 12.

[30] *Id.* at 19 ("Ms. Gaddy's fraud claims would require an adjudication of whether the Church's teachings about Joseph Smith and its canonical scriptures are true.").

[31] *Id.* at 21–22, 25.

[32] *See* Dkt. 23 (Opposition to Motion to Dismiss) at 10.

reasons.  First, she disagreed that her claims challenged the Church's religious beliefs.[33]  Instead,

she insisted her claims challenged only the facts underlying the Church's beliefs about its

founding, not the religious beliefs themselves.[34]  Gaddy asked the court to distinguish between

facts and beliefs, arguing, "[f]acts are susceptible to proof.  Beliefs are not; if proven, beliefs

become facts."[35]  Second, Gaddy argued her fraud-based claims survived because the Church's

proselytizing constituted conduct rather than belief.[36]  Third, Gaddy cursorily argued that even if

the court could not determine the truth or falsity of the Church's beliefs, it may nevertheless

assess whether those beliefs are sincerely held.[37]

## IV.     First Order Granting the Church's First Motion to Dismiss

On March 31, 2020, in the First Order, the court granted the Church's motion and

dismissed Gaddy's original Complaint without prejudice, concluding the Religion Clauses barred

each of Gaddy's claims.[38]  The Religion Clauses provide in part, "Congress shall make no law

respecting an establishment of religion, or prohibiting the free exercise thereof[.]"[39]  The court

acknowledged "[t]he free exercise of religion means, first and foremost, the right to believe and

profess whatever religious doctrine one desires."[40]  To effectuate these rights, "courts have long

held that the truth or falsity of religious beliefs are beyond the scope of judicial review."[41]  The

court's ruling relied upon "the fundamental right of churches to 'decide for themselves, free from

---

[33] *See id.* at 6–7.

[34] *Id.*

[35] *Id.* at 9.

[36] *Id.* at 15–16.

[37] *Id.* at 16–17.

[38] Dkt. 33.

[39] U.S. Const. amend. I.

[40] Dkt. 33 at 8 (citing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)).

[41] *Id.* (citing *United States v. Ballard*, 322 U.S. 78, 86–87 (1944); *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F. Supp. 1125, 1142 (D. Mass. 1982)).

state interference, matters of church government *as well as those of faith and doctrine*.'"[42]  This

is known as the church autonomy doctrine.

But the court also recognized in the First Order that the church autonomy doctrine "is not

without limits."[43]  Churches may not invoke the doctrine to shield purely secular decisions.[44]  To

determine whether the church autonomy doctrine applies in any given instance, courts must

decide whether the dispute presented "is an ecclesiastical one about discipline, faith, internal

organization, or ecclesiastical rule, custom or law, or whether it is a case in which we should

hold religious organizations liable in civil courts for purely secular disputes between third parties

and a particular defendant, albeit a religiously affiliated organization."[45]

Applying these principles to Gaddy's original Complaint, the court concluded the

Religion Clauses barred each of her claims.[46]  The court dismissed Gaddy's three fraud-based

claims because the falsity of religious beliefs was an essential element of each claim as

pleaded.[47]  Gaddy relied on three core religious teachings as the bases for her fraud-based

claims: the First Vision, and the translations of both the Book of Mormon and Book of

Abraham.[48]  The court concluded the First Amendment required dismissal of the fraud-based

claims because their adjudication would require an examination into the truth or falsity of these

core religious teachings.[49]

---

[42] *Id.* at 9 (citing *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 655 (10th Cir. 2002) (quoting *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952)) (emphasis in original)).

[43] *Id.* (quoting *Bryce*, 289 F.3d at 657).

[44] *Id.*

[45] *Id.* at 10 (citing *Bryce*, 289 F.3d at 657 (citations omitted)).

[46] *See id.* at 20.

[47] *Id.* at 11.

[48] *See id.*

[49] *Id.* at 11–12.

And each of Gaddy's arguments in opposition failed.  First, the court rejected Gaddy's proposed distinction between challenging religious facts and religious beliefs, concluding "if all a plaintiff had to do to get around the First Amendment was to challenge the facts underlying a church's religious beliefs, the Religion Clauses would offer little protection against de facto referenda on churches' faith and doctrines."[50]  Instead, the court relied on the distinction other courts use to determine whether it may adjudicate fraud claims against a church: whether the dispute is religious or secular.[51]  Because Gaddy based her claims on alleged misrepresentations implicating the Church's fundamental religious teachings, the court concluded the dispute was religious.[52]  The court also rejected Gaddy's argument that her claims challenged the Church's conduct, rather than its beliefs, recognizing "the Supreme Court has repeatedly confirmed that the free exercise of religion encompasses not only the freedom to believe, but also the right to profess those beliefs through proselytizing."[53]

The court also dismissed Gaddy's civil RICO and intentional infliction of emotional distress claims because, as pleaded, they necessarily implicated the veracity of the Church's teachings.[54]  Gaddy predicated her civil RICO claim on mail and wire fraud, relying on the Church's alleged misrepresentation of facts related to Joseph Smith's First Vision, the Book of Mormon, and the Book of Abraham.[55]  The court concluded the Church could be liable for these

---

[50] *Id.* at 14.

[51] *Id.* at 13.

[52] *Id.*

[53] *Id.* at 15 (citing *Smith*, 494 U.S. at 877 ("The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires."); *McDaniel v. Paty*, 435 U.S. 618, 626 (1978) (noting that the Free Exercise Clause "unquestionably encompasses the right to preach, proselyte, and perform other similar religious functions")).  The court declined to address Gaddy's argument concerning the sincerity of the Church's professed beliefs in its own teachings because, as Gaddy conceded at oral argument, the Complaint did not allege the Church's beliefs were insincerely held.  *Id.* at 16.

[54] *Id.* at 17–18.

[55] *See* Dkt. 2 ¶¶ 236–38.

predicate racketeering acts only if the statements communicated were false.[56]  Gaddy's

intentional infliction of emotional distress claim also relied on the alleged falsity of the Church's

teachings because her claim was based on the Church's alleged pattern of "knowingly and

repeatedly misrepresenting the foundational facts of the organization."[57]  For these reasons, the

court concluded these claims were barred by the First Amendment's Religion Clauses.[58]

Finally, the court dismissed Gaddy's claim for breach of fiduciary duty after concluding

Utah has not established a legally cognizable fiduciary duty arising from purely ecclesiastical

relationships.[59]  Even if Utah recognized such a relationship, the court reasoned it could not

define a standard of care that would apply to "a diversity of religions professing widely varying

beliefs" without violating the First Amendment's Establishment Clause.[60]

## V.        Gaddy's First Amended Complaint

Gaddy filed her Amended Complaint on May 18, 2020.[61]  Although more detailed than

her original Complaint, many of the claims, theories, and allegations in the Amended Complaint

were duplicative of her prior pleading.  Gaddy again brought claims against the Church for

common law fraud, fraudulent concealment, fraudulent inducement, civil RICO, and intentional

infliction of emotional distress.[62]  Those claims continued to rely primarily on alleged

misrepresentations concerning the First Vision, the Book of Mormon, and the Book of

Abraham.[63]

---

[56] Dkt. 33 at 17.

[57] *Id.* at 18.

[58] *Id.*

[59] *Id.* at 19.

[60] *Id.* at 20.

[61] Dkt. 37 (Amended Complaint).

[62] *See id.*

[63] *See, e.g.*, *id.* ¶¶ 130–31, 133.

But the Amended Complaint contained a handful of differences, including new factual allegations to support her common law fraud claim. Gaddy alleged the Church also misled members about its history with polygamy and about locations of certain events described in the Book of Mormon. Specifically, Gaddy alleged the Church historically taught members that certain events in the Book of Mormon happened on Hill Cumorah in upstate New York.[64] Recently, however, the Church has stated it does not take a position on the specific geographic locations of Book of Mormon events.[65] Gaddy also alleged the Church previously taught members the prophet Joseph Smith had only one wife,[66] but that Smith, in fact, had multiple wives.[67]

In addition to these new factual allegations, Gaddy's Amended Complaint included a theory of liability she previously argued in response to the Church's Motion to Dismiss but which she had not pleaded: Gaddy argued the Church should be held liable on her common law fraud claim because its own leaders do not sincerely believe the versions of the Church's history, founding, and doctrines the Church teaches its members.[68]

In addition to the new factual allegations and alternative theory of fraud liability, the Amended Complaint also advanced a new cause of action under the Utah Charitable Solicitations Act (UCSA).[69] Finally, the Amended Complaint included a new alternative theory of liability

---

[64] *Id.* ¶ 132.

[65] *Id.* ¶ 138.

[66] *Id.* ¶ 134.

[67] *Id.* ¶ 140.

[68] *See, e.g., id.* ¶¶ 2, 3, 141.

[69] *See id.* ¶¶ 150–66, 192–98. Gaddy also included a claim for "Breach of Duty of Disclosure" which was not included in her original Complaint. *See* Dkt. 2; Dkt. 37 ¶¶ 150–66. Gaddy argued the claim was distinguishable from her prior claim for breach of fiduciary duty. Dkt. 47 at 28. However, the court concluded that, as argued, this claim was indistinguishable from the repleaded fraudulent concealment claim, and the court did not separately address it. *See* Dkt. 100 at 13 n.80.

for Gaddy's civil RICO claim based on misrepresentations to members concerning the Church's

use of tithing.[70]  Gaddy pleaded, as an independent basis for RICO liability, that the Church

misleads its members by falsely assuring them tithing funds are used only for "Church expenses

and humanitarian aid."[71]  For example, at the Church's semi-annual General Conference in April

2003, Gaddy alleged the Church's Prophet, Gordon B. Hinckley, made the following statement

concerning the purchase and development of the for-profit commercial City Creek Mall in Salt

Lake City, Utah:

> I wish to give the entire Church the assurance that tithing funds have not and will
> not be used to acquire this property [City Creek Mall].  Nor will they be used in
> developing it for commercial purposes.[72]

Gaddy contended this representation was false, as "[s]everal billion dollars of [the principal

tithing] fund was used for affiliated profit-making business entity expenses, including but not

limited to the development of Salt Lake's City Creek Mall."[73]  Gaddy alleged "[t]his lie was

repeated at least twice over the years until City Creek [Mall] was opened."[74]

## VI.    The Church's Motion to Dismiss Gaddy's First Amended Complaint

In its Motion to Dismiss Gaddy's Amended Complaint,[75] the Church largely reiterated its

previous arguments offered for dismissal of Gaddy's original Complaint, maintaining the

Religion Clauses compelled dismissal of Gaddy's Amended Complaint for the reasons stated in

the court's First Order.[76]  The Church also argued Gaddy's new factual allegations, related to

locations of events in the Book of Mormon, its history with polygamy, and its use of tithing

---

[70] *See, e.g., id.* ¶¶ 2, 5, 6, 79, 200(C).

[71] *Id.* ¶ 6.

[72] *Id.* ¶ 79.

[73] *Id.* ¶ 5.

[74] *Id.* ¶ 79.

[75] Dkt. 38 (Motion to Dismiss Amended Complaint).

[76] *See id.* at 3–5.

funds, failed to save her claims because adjudicating fraud-based claims on these facts also required the court to determine the truth or falsity of the Church's religious teachings and beliefs.[77]  Finally, the Church argued Gaddy's new claims, including the new civil RICO theory based on tithing use and the claim under the Utah Charitable Solicitations Act, required the same impermissible inquiry into the truth or falsity of the Church's religious beliefs.[78]

Gaddy opposed the Motion,[79] relying primarily on an argument she previously made in support of her original Complaint—that the Church's proselytizing constitutes conduct, not belief.[80]  In a footnote, Gaddy also asserted she "[did] not waive" her previously argued distinction between religious facts and religious beliefs.[81]

Gaddy's opposition raised two new arguments why her re-pleaded claims survived the Church's Motion to Dismiss.  First, to save her common law fraud claim, Gaddy argued her new allegations concerning the insincerity of the Church's expressed religious beliefs presented a threshold question of fact that could not be disposed of at the pleading stage.[82]  Second, she argued her remaining repleaded claims survived because they relied on fraudulent omissions rather than misrepresentations.[83]  Gaddy maintained that because her claims were based on material omissions instead of affirmative misrepresentations, the court could adjudicate the claims without examining the truth or falsity of the statements.[84]

---

[77] *Id.* at 13–14.

[78] *Id.* at 18–19.

[79] *See* Dkt. 47 (Opposition to Church's Motion to Dismiss Amended Complaint).

[80] *Id.* at 6–20.

[81] *Id.* at 6 n.1.

[82] *See* Dkt. 47 at 21–22.

[83] *Id.* at 27.

[84] *Id.* at 28.

## VII.    Second Order Granting in Part and Denying in Part the Church's Motion to Dismiss the Amended Complaint

On July 28, 2021, in the Second Order, the court granted in part the Church's Motion to Dismiss the Amended Complaint.[85]  First, the court dismissed Gaddy's fraud-based claims to the extent they were based on theories of fraud already rejected in the First Order—that is, allegations concerning the First Vision, and the Books of Mormon and Abraham.  Next, the court considered whether Gaddy's five repleaded causes of action—(1) common law fraud, (2) fraudulent inducement, (3) fraudulent concealment, (4) civil RICO, and (5) intentional infliction of emotional distress—survived, to the extent they were supported by new sets of factual allegations or new arguments.  The court concluded neither the new facts nor her new arguments cleared the Religion Clauses bar recognized in the court's First Order.[86]  Finally, the court considered the new USCA cause of action and the new theory undergirding the re-pleaded civil RICO claim—the Church's use of tithing funds.  The court concluded the UCSA claim failed because it also required an impermissible inquiry into the truth or falsity of the Church's statements based on religious facts and teachings.[87]  But the new theory of civil RICO liability survived because it implicated secular, rather than religious, representations.[88]

As to Gaddy's new factual allegations concerning Hill Cumorah and Joseph's Smith's marriages, the court concluded they directly implicated the Church's core religious teachings. The court found that by adding facts concerning these issues, Gaddy attempted to accomplish indirectly what she could not do directly: attack the veracity of the Church's teachings about the

---

[85] *See* Dkt. 100.

[86] *See* Dkt. 100 at 11–12 ("Because a statement's falsity is an essential element of fraud claims, adjudicating these claims would require the court to do exactly what the Supreme Court has forbidden—evaluate the truth or falsity of the Church's religious beliefs." (citing *Ballard*, 322 U.S. at 86–87)).

[87] *Id.* at 24–25.

[88] *Id.* at 25–29.

Book of Mormon and its doctrines by challenging the accuracy of certain facts contained in the

text.  The court explained:

> [A] plaintiff may not, for example, challenge in a court of law religious beliefs
> that Noah built an ark, loaded it with his family and representative animals of the
> world, and was thereby saved from world-engulfing floods.  Neither may a
> plaintiff circumvent this restriction by merely attacking religious accounts
> concerning the locations where Noah built the ark or where the ark came to rest.
> If religious events themselves sit beyond judicial purview, religious beliefs
> concerning the details of those events must enjoy the same protection.  Religious
> beliefs concerning the details of events described in The Book of Mormon, the
> Church's foundational text, may not be severed from beliefs about the events
> themselves.  And whether described as the doctrine of polygamy, plural marriage,
> celestial marriage, or by another name, the Church's teachings concerning the
> issue and its practice are fundamentally religious in nature.  Adjudicating Gaddy's
> re-pled claims based on these two new sets of factual allegations would require
> the court to evaluate the truth or falsity of the Church's religious beliefs.[89]

The court concluded the Religion Clauses prohibited this examination, and dismissed the

claims based on these new factual theories.[90]

As to Gaddy's new argument, that her factual allegations presented a threshold question

of fact concerning the sincerity of the Church's professed beliefs in its own teachings,[91] the court

disagreed.  While a showing of sincerity of religious belief is a threshold issue for litigants and

prisoners under the First Amendment and the Religious Freedom Restoration Act (RFRA),[92] the

court noted the sincerity inquiry is necessary only in cases in which litigants seek a religious

accommodation or an exception to a rule or law of general application.[93]  The court found that

rationale inapplicable to Gaddy's Amended Complaint because the Church had not raised the

---

[89] *Id.* at 15.

[90] *Id.*

[91] *See* Dkt. 47 at 22–23.

[92] *See id.* at 22 (citing *United States v. Meyers*, 95 F.3d 1475, 1482–84 (10th Cir. 1996); *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997) *vacated in part on reh'g en banc*, 159 F.3d 1227 (10th Cir. 1998); *United States v. Quaintance*, 608 F.3d 717, 722–23 (10th Cir. 2010)).

[93] Dkt. 100 at 15–16.

First Amendment bar as part of an effort to obtain religious accommodation or special

exemption.[94]  Moreover, even if the court engaged in the threshold inquiry, the claims would still

fail because they required adjudication of the truth or falsity of certain statements concerning

religious beliefs.[95]

        The court also rejected Gaddy's new fraudulent omissions theory.  Gaddy argued her re-

pleaded claims should survive because liability could be based on the fraudulent omission of

material facts, which did not require a determination of the truth or falsity of the underlying

statements.[96]  The court found this argument ignored the analysis required to adjudicate a Utah

fraud claim based on omissions—it still would require an impermissible examination of religious

doctrines and teachings to determine whether they were false or misleading absent additional

disclosure.[97]

        The court next examined Gaddy's UCSA claim.[98]  Gaddy alleged the Church's

solicitation of tithing violated the UCSA because the Church had intentionally concealed or

omitted material facts about its history.[99]  The Church contended this new claim failed because

the UCSA does not provide a private cause of action,[100] and Gaddy's UCSA claim, as pleaded,

necessarily required an impermissible evaluation of the truth of the Church's statements based on

---

[94] *Id.* at 16.  The court also disagreed with Gaddy's argument that the reasoning in two criminal cases, in which defendants raised the First Amendment as a defense to fraud charges, required the court to engage in a threshold inquiry of sincerity before considering the church autonomy doctrine as a defense to civil fraud charges.  *See id.* at 17–19.

[95] *Id.* at 21.

[96] Dkt. 47 at 27–28.

[97] Dkt. 100 at 22–23.

[98] The Utah Charitable Solicitations Act prohibits "[i]n connection with any solicitation . . . making any untrue statement of a material fact or failing to state a material fact necessary to make statements made, in the context of the circumstances under which they are made, not misleading."  UTAH CODE ANN. § 13-22-13(3).

[99] Dkt. 47 at 30–31.

[100] Dkt. 38 at 18 n.7.

religious teachings and beliefs.[101]   Assuming without deciding the USCA created a private cause of action, the court agreed with the Church: Gaddy's UCSA claim would require evaluating the truth of the Church's religious teachings.[102]   The court noted the allegedly untrue or misleading facts Gaddy claimed the Church used to solicit tithing were related to Mormonism and the Church's key historical events.[103]   The court found those facts "directly implicate[d] the truth of the Church's teachings," and inquiry into their veracity was barred by the Religion Clauses.[104]

Finally, the court evaluated Gaddy's repleaded civil RICO claim, based on a new theory of liability using statements by Church leaders that tithing funds would not be used for commercial purposes.[105]   Gaddy alleged these statements were false because contrary to Church assurances, tithing funds were in fact used for commercial purposes, including for the development of the City Creek Mall in Salt Lake City, Utah.[106]   Gaddy further alleged the Church made those misstatements through mail and wire communications, implicating RICO.[107] The Church contended the Religion Clauses barred Gaddy's tithing theory because "[t]ithing is rooted in the Bible," and therefore an examination of these teachings would entangle the court in an ecclesiastical dispute concerning the "proper use of the Lord's tithing funds."[108]   The Church did not present any further argument concerning the viability of Gaddy's civil RICO claim.[109]

---

[101] *Id.* at 18–19.

[102] Dkt. 100 at 24–25.

[103] *Id.* at 25 (citing Dkt. 37 ¶ 196).

[104] *Id.*

[105] *Id.* (citing Dkt. 37 ¶¶ 5, 6, 79, 200(c)).

[106] *Id.*

[107] *Id.* (citing Dkt. 37 ¶ 200(c)).

[108] Dkt. 38 at 16.

[109] *See id.*

16

The court, noting again that the church autonomy doctrine only applies as a defense to alleged misconduct "rooted in religious belief" not "purely secular decisions, even when made by churches," found that the tithing theory was based on a secular dispute.[110]  The court explained that the Amended Complaint did not challenge the Church's tithing doctrine, teachings or beliefs related to it.  Rather, the Amended Complaint identified "specific factual statements allegedly made by the Church through its representatives concerning the Church's use of tithing funds and allege[d] those statements are false."[111]  Therefore, to adjudicate the claim, the court would not be required to examine the truth or falsity of the Church's teachings concerning tithing, but instead whether the statements about the use of funds were true or false.[112]

Because the Church had not raised any challenge to the civil RICO claim other than its Religion Clauses argument, the court found the civil RICO claim survived, to the extent it was based on the tithing theory.[113]

## VIII.   Gaddy's Second Amended Complaint

Rather than proceed to discovery on her surviving claim, Gaddy again moved to amend her Complaint.[114]  The Church filed a response consenting to Gaddy's request, pursuant to Federal Rule of Civil Procedure 15(a)(2).[115]  On October 22, 2021, Plaintiffs filed the Second Amended Complaint.[116]

The Second Amended Complaint duplicates many of the claims, theories, and allegations from the prior pleadings.  Gaddy (joined now by Small and Harris) again brings claims for

---

[110] Dkt. 100 at 27–28 (quoting *Bryce*, 289 F.3d at 657).

[111] *Id.* at 28 (citing Dkt. 37 ¶ 79).

[112] *Id.* at 28–29.

[113] *Id.* at 29.

[114] Dkt. 105 (Motion for Leave to File Second Amended Complaint).

[115] Dkt. 107 (Response to Motion for Leave to File).

[116] Dkt. 110.

fraudulent inducement, fraudulent concealment, violations of UCSA and civil RICO, and intentional infliction of emotional distress. The Second Amended Complaint also advances two new causes of action: fraudulent nondisclosure and "constructive fraud based on breach of promises of future performance."[117] All the claims rely on the same alleged misrepresentations concerning the First Vision, the Book of Mormon, the Book of Abraham, the Church's history with polygamy, the location of events in the Book of Mormon, and the Church's use of tithing funds.[118]

Notably, the Second Amended Complaint significantly expands from the first two Complaints, describing in almost encyclopedic detail—using tables, charts, artwork, and translation comparisons—the allegations concerning, among other things, the translation of the Book of Mormon,[119] Joseph Smith's polygamy,[120] and the Book of Abraham.[121] The Second Amended Complaint contains great detail about Church-commissioned artwork and films depicting the First Vision and the Translation of the Book of Mormon, including dozens of reproductions of such images.[122] Plaintiffs also expand their allegations concerning Joseph Smith's life, providing a chart of alleged crimes and civil frauds he committed,[123] and alleging the Church concealed this history.[124] Plaintiffs also provide more allegations concerning the

---

[117] Id. ¶¶ 399–423, 451–62.

[118] See generally id.

[119] See, e.g., id. ¶¶ 33, 66, 68, 149.

[120] See, e.g., id. ¶¶ 40, 41, 216.

[121] See, e.g., id. ¶¶ 37–39, 63, 73–78, 194–95.

[122] See, e.g., id. ¶¶ 151, 156, 164, 213, 226, 232, 248, 253.

[123] Id. ¶ 36.

[124] Id. ¶ 272.

Church's history and governance.[125]  In providing these more detailed allegations, the Second

Amended Complaint has ballooned to 554 paragraphs over 203 pages.[126]

Plaintiffs also expanded their allegations concerning the Church's misrepresentations on

tithing.  Plaintiffs first lay out allegations concerning the Church's finances as they relate to

tithing.  Plaintiffs allege the Church's annual tithing receipts were "recently estimated to be $6–8

billion," and that a $1–2 billion surplus of funds "not needed for ecclesiastical expenses" "is

invested and then used for commercial real estate and business development."[127]  They provide a

table detailing the Church's purported commercial and real estate investments, and allege the

money for these projects came from "interest (if not principal) on tithing donations."[128]  They

further allege that tithing "was not used only for the Lord's or Church purposes (reasonably

interpreted as religious)[129] but a substantial portion of tithes, especially when compared to

humanitarian aid of $1.3 billion from 1985–2010, was used for investment and commercial

development purposes, including but not limited to City Creek Mall[,] bailing out Beneficial Life

Ins. Co., and likely for" other projects.[130]  Plaintiffs then include Church statements concerning

tithing usage.  They expand the allegation concerning Church President Gordon B. Hinckley's

statement at the 2003 General Conference explaining the use of tithing funds on City Creek

Mall:

> We have felt it imperative to do something to revitalize this area.  But I wish to give
> the entire Church the assurance that tithing funds have not and will not be used to
> acquire this property.  Nor will they be used in developing it for commercial
> purposes.  Funds for this have come and will come from those commercial entities

---

[125] *Id.* ¶¶ 44–46, 49, 59.

[126] *See id.*

[127] *Id.* ¶ 9.

[128] *Id.* ¶ 8.

[129] These parentheses appear as brackets in the Second Amended Complaint.  *Id.* ¶ 293.  To avoid confusion, the
court has substituted parentheses.

[130] *Id.*  Paragraph 8 contains the table detailing the Church's alleged commercial and real estate investments.

owned by the Church.  These resources, together with the earnings of invested reserve funds, will accommodate this program.[131]

Plaintiffs allege a similar statement was printed in Church-owned *Ensign Magazine*: "[n]o tithing funds will be used in the redevelopment [of downtown Salt Lake City]."[132]  Plaintiffs further allege the Church-owned *Deseret News* printed a statement that "[m]oney for the project is not coming from [] Church members' tithing donations," but rather the money will come from the Church's "other real-estate ventures."[133]

Finally, Plaintiffs provide allegations linking tithing to the Church's religious beliefs and practices to illustrate the fraud and misrepresentation.  They allege "[t]he definition of invested reserve funds was unknown to [them]," and they "assumed that it meant interest on business profits" because "[they] had always been taught that tithing was used for religious purposes."[134] Concerning Church teachings, Plaintiffs allege: "[d]ecisions to be baptized, remain a member of the organization and importantly for most, to further commit to the Church by serving as a full time mission[ary], and/or qualifying and renewing qualification for temple access and participation, are all conditioned upon paying a full 10% of one's income as tithing."[135] Plaintiffs further allege the Church "extorted that tithing not only by promising eternal salvation, and 'forever families' but by characterizing payment of a full tithe as 'fire insurance' to ensure safety from apocalyptic burning at the Second Coming of Jesus Christ."[136]

---

[131] *Id.* ¶ 240.

[132] *Id.* ¶ 244.

[133] *Id.*

[134] *Id.* ¶ 237.

[135] *Id.* ¶ 10.

[136] *Id.*

## IX.     The Church's Motion to Dismiss Gaddy's Second Amended Complaint

On November 12, 2021, the Church filed the presently pending Motion to Dismiss

Plaintiffs' Second Amended Complaint.[137]  The Church argues, first, to the extent Plaintiffs'

claims are based on religious teachings and beliefs concerning Joseph Smith, the First Vision, the

Books of Mormon and Abraham, and Church History, the claims must be dismissed under the

church autonomy doctrine, as previously explained in the court's First and Second Orders.[138]

Second, the Church argues that each of Plaintiffs' claims, to the extent they are supported by a

theory concerning tithing, fail as a matter of law.[139]  Finally, the Church argues the Second

Amended Complaint should be dismissed with prejudice, as Plaintiffs have had multiple

opportunities to amend but continue to plead claims that are barred by the First Amendment.[140]

With permission of the court,[141] and over the objection of the Church,[142] Plaintiffs filed

an overlength Opposition Memorandum.[143]  In it, Plaintiffs again argue that the church

autonomy doctrine is "inapplicable" to the claims in the Second Amended Complaint.[144]

Plaintiffs argue that the church autonomy doctrine "must be set in the context of an 'internal

church dispute'" and the "conduct" at issue must be "rooted in religious belief."[145]  Plaintiffs

---

[137] Dkt. 111.

[138] *Id.* at 12–13.

[139] *Id.* at 13–26.

[140] *Id.* at 26.

[141] Dkt. 117 (Order Granting Motion to File Overlength Memorandum).

[142] Dkt. 113 (Memorandum in Opposition re: Motion for Leave to File Overlength Memorandum).

[143] Dkt. 118 (Opposition to Motion to Dismiss the Second Amended Complaint).

[144] *Id.* at 6–23.

[145] *Id.* at 6; *see also id.* at 7–9 (citing *Paul v. Watchwoter Bible & Tract Soc. of New York, Inc.*, 819 F.2d 875, 878 n.1 (9th Cir. 1987); *Guinn v. Church of Christ of Collinsville*, 75 P.2d 766, 773 (Okla. 1989); *Wollersheim v. Church of Scientology*, 212 Cal. App. 3d 872, 893–98 (Cal. Ct. App. 1989), *cert. granted, judgment vacated sub nom. Church of Scientology of California v. Wollersheim*, 499 U.S. 914 (1991)).

then provide an overview of "Relevant [church autonomy doctrine] Case Law,"[146] and argue the doctrine is inapplicable to the Second Amended Complaint because the alleged fraudulent acts are "not based on a voluntary internal church dispute," but rather on "[a]cts of concealment" that are not "interpretations of doctrine."[147]  Plaintiffs again recite extensive case law arising in tort or in the RFRA context—most from out of state or out of circuit—to argue that the court can evaluate the Second Amended Complaint using "neutral principles" gleaned from generally applicable laws without violating the Religion Clauses.[148]  Finally, Plaintiffs turn to a defense of the factual sufficiency of each claim in the Second Amended Complaint, focusing on the allegations concerning the Book of Mormon, Book of Abraham, Church history, and tithing.[149]

In its Reply Memorandum, the Church notes the Plaintiffs' church autonomy doctrine argument has already been ruled on twice.  The Church maintains Plaintiffs cite the same cases and arguments but seek a different outcome.[150]  The Church further argues the only new question is whether any of Plaintiffs' claims related to the tithing theory survive, and that because Plaintiffs fail to plead the required elements, those claims fail.[151]

## X.      Gaddy's Motion for Leave to File Proposed Third Amended Complaint

Before the court could rule on the Church's pending Motion to Dismiss the Second Amended Complaint, on January 28, 2022, Plaintiffs moved for leave to file a Third Amended Complaint.[152]  Plaintiffs argue the Proposed Third Amended Complaint corrects issues identified

---

[146] *Id.* at 9–13.

[147] *Id.* at 13–14.  Plaintiffs also return to *Ballard*, again arguing its holding does not bar their fraud claims.  *Id.* at 15–16.

[148] *Id.* at 16–23.

[149] *Id.* at 23–37.

[150] Dkt. 121 (Reply Memorandum in Support of Motion to Dismiss) at 1–2 (summarizing argument).

[151] *See id.*

[152] Dkt. 122 (Motion for Leave to File Proposed Third Amended Complaint).

by the Church's Motion to Dismiss the Second Amended Complaint.[153]  Specifically, the

Proposed Third Amended Complaint: (1) adds the basis for allegations made upon information

and belief, (2) rewords the fourth cause of action as a claim for constructive fraud, (3) adds an

"affirmative misrepresentation" from a 2012 tithing form, (4) adds new factual allegations

supporting the claim Church leaders "do not believe what they teach," and (5) adds new

allegations comparing the percent of annual tithing used for investment funds with the percent of

tithing used for humanitarian aid.[154]

On February 25, 2022, the Church filed its Opposition to the Motion for Leave to Amend,

arguing that it is within the court's discretion to deny a motion to amend where a plaintiff has

had multiple opportunities to plead and that amendment, in this case, would be futile.[155]  On

March 14, 2022, Plaintiffs filed a Reply Memorandum, arguing the amendments were in

response to continued discoveries concerning Church doctrine and tithing use, and that justice

requires granting leave to amend.[156]

The Motion to Dismiss the Second Amended Complaint and Motion for Leave to File a

Third Amended Complaint being fully briefed, the court resolves the issues based on the written

memoranda, finding oral argument unnecessary.[157]

## LEGAL STANDARDS

The Church moves to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil

Procedure 12(b)(6).[158]  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must

---

[153] *Id.* at 2.

[154] *Id.* at 3–8.

[155] Dkt. 126 (Opposition to Motion for Leave) at 3–10.

[156] Dkt. 128 (Reply in Support of Motion for Leave).

[157] *See* DUCivR 7-1(g).  Accordingly, Plaintiffs' Request for Oral Argument, Dkt. 132, is denied.

[158] Dkt. 111 at 10.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[159]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[160] In determining whether a complaint satisfies these criteria, the court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."[161]

When fraud is alleged, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard.  Under this standard, "a party must state with particularity the circumstances constituting [the] fraud or mistake."[162]  Thus, Rule 9(b) generally requires a plaintiff "to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof."[163]

Additionally, claims implicating church doctrines may be barred by the First Amendment's Religion Clauses.[164]  The Tenth Circuit analogizes such an argument to a government official's defense of qualified immunity.[165]  That is, if the Religion Clauses apply "to the statements and materials on which plaintiffs have based their claims, then the plaintiffs have no claim for which relief may be granted."[166]

---

[159] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[160] *Id.* (citing *Twombly*, 550 U.S. at 556).

[161] *Albers v. Bd. of Cnty. Com'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 699 (10th Cir. 2014).

[162] Fed. R. Civ. P. 9(b).

[163] *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1263 (D. Utah 2004) (citation omitted).

[164] *See generally* Dkt. 111.

[165] *See Bryce*, 289 F.3d at 654.

[166] *Id.*

Finally, Rule 15 states that leave to amend a complaint "should freely [be given] when justice so requires."[167]  Justice requires leave to amend "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief."[168]  "However, justice does not require leave to amend when amendment would be futile."[169]  An amendment is futile when the complaint, as amended, "would be subject to dismissal."[170]

## ANALYSIS

First, the court addresses the Church's Motion to Dismiss the Second Amended Complaint.  Second, the court turns to Plaintiffs' Motion for Leave to File Third Amended Complaint.

## I.     Motion to Dismiss the Second Amended Complaint

The court first assesses Plaintiffs' seven claims to the extent they are based on repeated theories concerning the First Vision, Book of Mormon translation, Book of Abraham, Joseph Smith's history and practice of polygamy, and Church history.  Next, the court assesses Plaintiffs' claims to the extent they are based on a theory of the Church's representations concerning the use of tithing funds.

### A.  Repeated Theories Concerning the Church's Religious History and Teachings

The Church again moves to dismiss Plaintiffs' claims "based on allegations regarding Joseph Smith's First Vision, the Book of Mormon, the Book of Abraham, and Church history."[171]  The Church notes that Plaintiffs have again alleged that the Church's religious

---

[167] Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

[168] *Foman*, 371 U.S. at 182.

[169] *Prisbry v. Barnes*, No. 2:17-cv-00723-DN-PMW, 2018 WL 1508559, at *3 (D. Utah Mar. 27, 2018) (citing *Castleglen, Inc. v. Resolution Tr. Corp.*, 984 F.2d 1571 (10th Cir. 1993)).

[170] *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Invs. Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

[171] Dkt. 111 at 12.

teachings concerning Joseph Smith, the Book of Abraham, and the Book of Mormon "are false," and that Plaintiffs have merely "continued to add more allegations about these topics."[172]  Citing the court's prior Orders, the Church argues that because the Religion Clauses prohibit inquiries into religious teaching, this includes challenges based on "the First Vision, translations of the Book of Mormon and Book of Abraham, locations of events described in the Book of Mormon, and the Church's history with polygamy."[173]  Accordingly, the repleaded claims, to the extent they are based on these theories, must be dismissed.[174]

As noted, Plaintiffs' Opposition Memorandum discusses the church autonomy doctrine and argues it is not applicable to the claims in the Second Amended Complaint because those claims require only the application of "neutral principles of law" to the Church's alleged "acts of concealment."[175]

The court has twice considered and rejected Plaintiffs' arguments that fraud-based claims directed towards the Church's alleged misrepresentations and omissions concerning the First Vision, Church History, translations of the Books of Mormon and Abraham, and locations of events in the Book of Mormon are not subject to the church autonomy doctrine.[176]  The court also previously rejected Plaintiffs' theory that they can avoid the church autonomy doctrine by arguing the sincerity of the Church's beliefs or basing their claims on a theory of fraudulent omissions.[177]  In their Opposition, Plaintiffs point to no newly decided case law or changes in

---

[172] *Id.*

[173] *Id.* (citing Dkt. 100 at 23).

[174] *Id.* (citing Dkt. 100 at 23).

[175] *See* Dkt. 118.

[176] *See* Dkt. 100 at 12 (incorporating First Order and rejecting repeated claims and arguments).

[177] *Id.* at 15–23.

circumstance that would require the court to revisit these conclusions.[178]  Accordingly, to the extent the Second Amended Complaint and the parties' arguments concerning the sufficiency of that pleading overlap with factual allegations, arguments, and legal issues previously addressed, the court relies on and incorporates its prior Orders.[179]  As such, the court grants the Church's Motion to Dismiss each claim to the extent Plaintiffs' theories arise from the Church's teachings and representations concerning the First Vision, translations of the Books of Mormon and Abraham, and Church history.[180]

The court will briefly address the Second Amended Complaint's expanded factual allegations concerning Joseph Smith's character, including his alleged history of lawsuits and prosecutions for fraud.  As to these allegations, the Church argues, "[i]n light of this Court's previous orders, Plaintiffs and their counsel know perfectly well that such claims are barred by the First Amendment[.]"[181]  Plaintiffs do not separately address these new allegations in their Opposition, instead focusing their argument on a general defense of the claims related to the Church's religious teachings and beliefs.[182]

The court concludes that allegations concerning Joseph Smith's alleged criminal history fail for the same reason the Amended Complaint's allegations concerning his practice of

---

[178] Moreover, nowhere in their extensive re-litigation of the church autonomy doctrine do Plaintiffs address a central point of the court's prior Orders—namely, that falsity is a necessary element of each fraud-based claim Plaintiffs plead.  To adjudicate those claims as Plaintiffs have pleaded them would require the court to determine whether the religious teachings, beliefs, and facts surrounding them that Plaintiffs allege are misrepresentations are, in fact, false.  For reasons this court has explained, that inquiry is barred by the Religion Clauses.  The court's prior Orders do not stand for the proposition that churches are generally immune from tort claims; rather, the court has been clear that the church autonomy doctrine "is not without limits."  *See, e.g.*, Dkt. 33 at 9.  But here, the claims fall well within those limits.

[179] *See* Dkt. 100 at 23 (adopting First Order).

[180] This disposition also applies to Plaintiffs' expanded allegations concerning the Church's commission of artwork depicting the First Vision and translation of the Book of Mormon, as those allegations are entwined with the Church's teachings about the events themselves.

[181] Dkt. 111 at 13 n.3.

[182] *See generally* Dkt. 118.

27

polygamy failed: religious teachings concerning details of religious events "may not be severed from beliefs about the events themselves."[183]  By pleading even more facts concerning Joseph Smith, Plaintiffs seek to have the court adjudicate the truth or falsity of the Church's beliefs and teachings concerning its founder by challenging the accuracy of facts surrounding those beliefs. But again, "[i]f religious events themselves sit beyond judicial purview, religious beliefs concerning the details of those events must enjoy the same protection."[184]  Accordingly, to the extent Plaintiffs' claims rely on the Church's alleged misrepresentations concerning the life of Joseph Smith, those claims fail for the reasons already explained in the court's prior Orders.

## B. Expanded Allegations Concerning Tithing

Next, the court turns to Plaintiffs' expanded theory of the Church's alleged misrepresentations concerning tithing funds.  While the Amended Complaint contained the tithing theory only in the civil RICO claim, Plaintiffs' Second Amended Complaint incorporates the tithing theory into six of Plaintiffs' seven claims: fraudulent inducement, fraudulent nondisclosure, fraudulent concealment, constructive fraud based on breach of promise of future performance, violation of the UCSA, and civil RICO.[185]  Plaintiffs do not include the tithing

---

[183] Dkt. 100 at 15.

[184] *Id.*

[185] *See, e.g.*, Dkt. 110 ¶¶ 385, 408, 428, 455, 470, 484.

theory in their seventh claim for intentional infliction of emotional distress,[186] and accordingly that claim is dismissed in its entirety for the reasons stated above.

The Church has raised specific arguments as to the why the remaining six claims, based on a tithing theory, fail as a matter of law.[187]  The court addresses the parties' arguments concerning each claim in turn.

### 1.  First Claim: Fraud in the Inducement to Enter an Oral Contract

The court first summarizes Plaintiffs' allegations and the Church's arguments in favor of dismissal before analyzing whether Plaintiffs' fraud in the inducement claim survives as it relates to tithing.

### a.  Plaintiffs' Allegations Concerning Tithing and the Church's Argument for Dismissal

Plaintiffs allege the Church used tithing for "the Lord's or Church purposes" and "humanitarian aid," as well as "investment and commercial purposes."[188]  As to City Creek Mall, Plaintiffs allege the Church made representations that "no tithing was used for City Creek Mall and that tithing is (only) used for Church (reasonably interpreted as religious) purposes and activities," but that in fact, when those representations were made, "[o]n information and belief. . . [the Church] was using tithing for commercial real estate deals and commercial investments

---

[186] *See id.* ¶¶ 536–543.  Plaintiffs allege in the Seventh Claim that "[b]ut for [the Church's] misrepresentations as to *all but its tithing use*, Plaintiffs would not have committed to the [Church], nor paid tithing."  *Id.* ¶ 539 (emphasis added).  In its Motion to Dismiss, the Church argues "[i]t is unclear whether this claim attempts to assert a theory of liability related to the Church's use of tithing funds," but that if such a theory is asserted, it is defective for the reasons the Church argues as to the other claims. Dkt. 111 at 25–26.  In opposition, Plaintiffs do not argue that they seek to incorporate the tithing theory into the intentional infliction of emotional distress claim but instead focus on the religious belief-based theories that the court has already dismissed.  Plaintiffs argue the Church's misrepresentations about its history have caused members to suffer from "existential crises, suicidal ideation, destruction of familial relationships, insomnia, anxiety, and depression."  Dkt. 118 at 36–37.  Based on Plaintiffs' pleading and argument in Opposition, the court concludes that they do not seek to include the tithing theory in the intentional infliction of emotional distress claim.

[187] Dkt. 111 at 13–25.

[188] *Id.* ¶ 293.

and other non-religious and non-charitable purposes."[189]  Plaintiffs did not understand then-President Hinckley's statement that "invested reserve funds" had been used for the City Creek Mall development in actuality meant tithing funds had been used.[190]  Similar representations that tithing was not used for commercial development "were false" because "upon information and belief," Church officials knew tithing "was used . . . for commercial purposes."[191]  But because the Church "required a full tithe in order to acquire and maintain temple recommends and/or be baptized and have ongoing access to an LDS[192] temple in order to ensure one's family is together in the afterlife and does not burn at the second coming of Christ," Plaintiffs relied on the Church's representations and were induced to enter an oral contract with the Church to  tithe.[193]  Plaintiffs were further induced by the Church's claim "tithing was used only for ecclesiastical purposes, meaning that it was used to . . . proclaim the gospel, perfect the saints, [] redeem the dead, and care for the poor and needy," not "for commercial endeavors to expand a business empire."[194]

In its Motion to Dismiss, the Church divides Plaintiffs' tithing allegations as to this claim into two categories: first, "general allegations about the Church's uses of tithing funds and whether those uses really are 'for the Lord's work,'"[195] and second, "specific allegations about the source of funds for the City Creek project."[196]

---

[189] Dkt. 110 ¶ 366.

[190] *Id.* ¶ 375.

[191] *Id.* ¶ 381.

[192] "LDS" is a shortened acronym referencing "Latter-Day Saints," a portion of the Church's full name.

[193] *Id.* ¶ 385.  Plaintiffs further allege their reliance was reasonable, and they paid up to 10% of their income as a tithe "in order to obtain and maintain a temple recommend, and/or be baptized."  *Id.* ¶ 393.

[194] *Id.* ¶ 390.

[195] Dkt. 111 at 15 (citing Dkt. 110 ¶ 233).

[196] *Id.*

30

First, as to the general allegations concerning tithing, the Church argues the allegations violate the First Amendment: "Plaintiffs ask this Court to determine whether the Church's use of tithing funds really is 'for the Lord's work' and 'to support other Church purposes as directed by the designated servants of the Lord,'"[197] an examination which would "impermissibly entangle this Court in an ecclesiastical dispute—the proper use of the Lord's tithing funds."[198]  The Church specifically argues that Plaintiffs cannot meet the falsity element under this theory because determining the truth or falsity of whether tithing is "for the Lord's work" would violate the First Amendment.[199]  Additionally, the Church argues the reliance element, as pleaded, would also require the court to enter impermissible First Amendment territory because Plaintiffs variously plead that (1) they relied on Church statements requiring tithing "as a condition of membership" in the Church and to obtain a "temple recommend;" (2) they relied on the Church's teachings concerning the Book of Mormon and Joseph Smith in deciding to pay tithing and be baptized; and (3) they paid tithing based on the Church's characterization of tithing as "fire insurance to ensure safety from apocalyptic burning at the Second Coming of Jesus Christ."[200] The Church argues that there "is no way to determine upon what an individual would 'reasonably rely' in deciding to donate tithing without addressing the Church's religious teachings."[201]

Second, as to the tithing allegations connected to the funding sources for the City Creek Mall, the Church argues "Plaintiffs have not and cannot plead that the Church's statements about

---

[197] *Id.* at 16 (citing Dkt. 110 ¶¶ 230, 233).

[198] *Id.*

[199] *Id.*  The Church additionally argues that the Utah Supreme Court previously rejected the religious-commercial distinction Plaintiffs argue for in *Stone v. Salt Lake City*, 356 P.2d 631 (Utah 1960).  Dkt.111 at 17.  Because the court concludes this claim fails for other reasons, it does not address the religious-commercial distinction argument.

[200] *Id.* at 18 (citing Dkt. 110 ¶ 10, 391).

[201] *Id.* at 19.

the source of funds for City Creek were false."[202]  The Church notes Hinckley stated that "tithing

was not used for the City Creek mall," but in the same statement clarified that "earnings of

invested reserve funds" were used for the mall.[203]  Because Plaintiffs pleaded the Church "has in

fact used at least interest (if not principal) on tithing donations to fund commercial ventures," the

Church argues they have not pleaded falsity because invested reserve funds refer to interest on

tithing, and Plaintiffs "do not actually plead that tithing principal was used."[204]  The Church

further argues that because a California district court recently rejected a similar claim in a

different case at summary judgment, it is impossible for Plaintiffs to plead falsity in good

faith.[205]

In opposition, Plaintiffs offer no substantive reply to any of these arguments.  They

devote only one page of their lengthy Opposition Memorandum to the fraudulent inducement

claim—mostly arguing about theories, already dismissed, concerning the Book of Mormon

translation.[206]  Indeed, Plaintiffs provide only a two-sentence response to the Church's seven-

page argument concerning why Plaintiffs' fraudulent inducement claim, based on the tithing

allegations, fails: "Finally, despite [the Church's] claim, Plaintiffs did in fact allege City Creek

statements were false.  Tithing, even if limited to interest on tithing, was the original source of

the reserve funds."[207]  Plaintiffs do not respond to Defendants' argument as to why the general

tithing allegations fail under the First Amendment.

---

[202] *Id.*

[203] *Id.* at 19.

[204] *Id.*

[205] *Id.* at 20.

[206] *See* Dkt. 118 at 23–24.

[207] *Id.* at 24 (citing Dkt. 110 ¶¶ 381–82).

### b. Analysis

The court agrees with the Church that Plaintiffs' fraud in the inducement claim fails, not for running into a First Amendment bar on the falsity or reliance elements,[208] but for a more fundamental failure to plead the claim with the specificity required under Rule 9(b). Plaintiffs fail to identify specific actions taken or oral contracts entered into on the basis of any particular misrepresentations.[209] Because the court concludes the Plaintiffs fail to plead fraud in the inducement on this more fundamental level, rather than separate the analysis into two categories as the Church does, the court evaluates Plaintiffs' allegations concerning tithing together.

To bring a fraudulent inducement claim under Utah law, a plaintiff must allege: "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that

---

[208] For reasons more fully articulated in the Second Order, *see* Dkt. 100 at 26–28, the court is skeptical of the Church's argument that the First Amendment bars Plaintiffs' fraud in the inducement claim to the extent it is based on allegations concerning tithing. The court does not understand Plaintiffs' allegations to be that the Church's teachings concerning tithing were false. Rather, the court understands the allegations to be that the Church stated tithing was not used for commercial or investment purposes while, in fact, using tithing funds for just that. Those allegations could be adjudicated without evaluating the truth or falsity of the Church's religious teachings concerning tithing. Similarly, the court does not think this claim founders on the reliance element. Whether a reasonable person would have relied on the Church's representations concerning the use of tithing funds—and specifically, that tithing was not used for commercial purposes—is an inquiry that can be made without implicating the underlying nature of tithing doctrine.

[209] In considering the Church's argument that the Second Amended Complaint fails to allege fraud with the specificity required by Rule 9(b), the court expands its analysis beyond the two elements (falsity and reliance) the Church identifies as deficient. While the court typically will not look beyond the party's arguments when adjudicating a motion to dismiss, this is the third time it has considered a version of this complaint on the merits. *See* Dkt. 33; Dkt. 100. The court must balance its obligations to both allow plaintiffs ample opportunity to plead claims and to shield defendants from undue prejudice caused by the need to defend against successive pleadings. The court is also conscious of its duty to construe and administer the federal rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Accordingly, the court takes a broader view of the Second Amended Complaint to determine whether any of the repleaded claims adequately state a claim under the governing standards.

33

party's injury and damage."[210]  Utah courts have recognized that a plaintiff's failure to establish

each necessary element of a fraud claim under the facts alleged in a complaint dooms the

claim.[211]

Under Federal Rule of Civil Procedure Rule 9(b), "a party must state with particularity

the circumstances constituting fraud."[212]  The Tenth Circuit has explained that Rule 9(b) requires

a complaint alleging fraud to "identify the time, place, content, and consequences of fraudulent

conduct," or more plainly, to "plead the who, what, when, where and how of the alleged

[fraud]."[213]  This accords with Rule 9(b)'s purpose "to afford defendant fair notice of plaintiff's

claims and the factual ground upon which they are based."[214]  In *George v. Urban Settlement

Services*, the Tenth Circuit found fraud allegations unsatisfactory when the plaintiff only

generally alleged that he "sometimes on specific dates, made phone calls . . . spoke with

unidentified . . . employees who made false representations to him via phone, and received letters

through the mail . . . containing false and misleading statements."[215]  However, allegations

identifying specific employees by name, specific dates when employees made false statements,

and specific actions taken in reliance on those misrepresentations were sufficient to state a claim

for fraud.[216]

Plaintiffs' claim for "fraud in the inducement to enter an oral contract" fails to identify

specific oral contracts that Plaintiffs entered into, on specific dates, with specific Church leaders,

---

[210] *Gerwe v. Gerwe*, 424 P.3d 1113, 1117 (Utah Ct. App. 2018).

[211] *See, e.g.*, *Franco v. The Church of Jesus Christ of Latter-Day Saints*, 21 P.3d 198, 208 (Utah 2001), *abrogated on other grounds by Williams v. Kingdom Hall of Jehovah's Witnesses*, 491 P.3d 852 (Utah 2021).

[212] Fed. R. Civ. P. 9(b).

[213] *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) (internal citations and quotations omitted).

[214] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236–37 (10th Cir. 2000) (internal citation and quotation omitted).

[215] 833 F.3d 1242, 1255–56 (10th Cir. 2016).

[216] *Id.* at 1256.

and in reliance on particular false statements.  Rather, Plaintiffs only generally allege that "outsiders" as well as those who were "already members" made "[d]ecisions to be baptized," "remain a member," and "further commit . . . by serving as a full[-]time mission[ary]" or to "qualify[] and renew[] qualification for temple access and participation" based on the condition of paying 10% of their income as tithing, a sum the Church "extorted" with promises of "eternal salvation," "forever families," and the characterization of tithing as "fire insurance."[217]  Plaintiffs also allege that the Church made false representations (concerning the use of tithing funds and other matters) "to induce all Plaintiffs to enter into an oral contract with [the Church] who offered an LDS temple recommend on the condition that Plaintiffs . . . commit to pay a full tithe."[218]  Plaintiffs allege the "recommend is/was renewable upon the condition that Plaintiffs continue to pay a full tithe."[219]  In short, Plaintiffs offer general allegations about the agreement to tithe, but fail to offer any specific allegations identifying an instance in which any Plaintiff agreed to pay tithing on the basis of a particular misrepresentation, by whom it was made, when it was made, and the like.

The closest the Second Amended Complaint comes to offering the specificity demanded by Rule 9 is by offering allegations describing certain interviews Church members had in which they either affirmed or recommitted to paying tithing.  For example, Plaintiffs allege Church members undergo a confidential interview at age eight with Church leaders in which they are asked, among other things, about whether they can commit to paying tithing.[220]  The Second Amended Complaint also alleges all members have a "temple worthiness" interview "as a young

---

[217] Dkt. 110 ¶ 10.

[218] *Id.* ¶ 386.

[219] *Id.*

[220] *Id.* ¶¶ 286–87.  Notably, for each named plaintiff, this meeting happened long before specific alleged misrepresentations such as the President Hinckley statement.  *See id.* ¶¶ 286, 336, 345 (stating Gaddy and Harris were teenagers at the time of the Hinckley statement and establishing Small was an adult).

adult" in which they are asked if they "obey[] the law of tithing."[221]  Plaintiffs allege that each

year, they have a  meeting with their bishop in December for "tithing settlement," but do not

allege any specific December meeting with any specific person during which they chose to

renew or recommit to paying tithing on the basis of any representations.[222]  Finally, Plaintiffs

generally plead "enter[ing] into ongoing oral contracts" to pay tithing "in order to obtain and

maintain a temple recommend."[223]  Plaintiffs do not allege if at any of these interviews they

specifically chose to begin to pay tithing or to continue to pay tithing on the basis of any

particular representation.

Indeed, Plaintiffs' allegations about their personal involvement with the Church are

marked by general descriptions of their lifelong adherence, rather than identification of specific

instances in which they relied on a misrepresentation in choosing to enter a particular oral

contract with the Church.  For example, the allegations about Gaddy discuss her lifelong

devotion to the Church and continuing commitment, identifying no particular instance in which

her decision to pay tithing was initially induced or even recommitted by way of a

misrepresentation.[224]  The allegations concerning Small state he was a "full tithe payer since age

eight."[225]  Plaintiffs allege Small "would not have paid tithing had he known tithes were used for

commercial development," and further that he specifically heard the Hinckley statement, but

does not allege any specific instance in which he chose or recommitted to paying tithing on the

basis of any particular misrepresentation.[226]  Similarly, Plaintiffs allege Harris "was just a

---

[221] *Id.* ¶ 288.

[222] *Id.* ¶ 290.

[223] *Id.* ¶¶ 393–94.

[224] *Id.* ¶¶ 302–34.

[225] *Id.* ¶ 337.

[226] *See id.* ¶¶ 335–41.

teenager" at the time of the Hinckley statement, and that she "would not have paid tithing had she known tithes were used for commercial investment and development."[227]  In short, while Plaintiffs generally allege they would not have paid tithing had they known what tithing funds were used for, they do not allege with specificity that they entered any particular oral contract while relying on any particular misrepresentation concerning tithing.  And indeed, their allegations establish the opposite—Plaintiffs were lifelong, devoted members to the Church who paid tithing from a young age and until recently never wavered in their commitment.

In short, Plaintiffs' allegations much more closely resemble the insufficient allegations in *George*.  Alleging that they entered into non-specific oral contracts once a year on an ongoing basis in reliance on "the Church's" statements about tithing is not sufficiently particular to make out a claim for fraud in the inducement to enter into an oral contract.  As discussed, Plaintiffs must plead the who, what, when, where, and how of the alleged fraud.  Plaintiffs have not identified which Church leaders specifically induced them to enter "ongoing oral contracts," when these alleged ongoing contracts were made, and whether they entered into the contracts on the basis of specific misrepresentations.  Instead, as discussed, they allege they were lifelong, devoted members of the Church, and fail to allege any specific instance in which they committed to paying tithing on the basis of a misrepresentation.  Moreover, this failure to allege with the necessary specificity is not because the information is within the Church's control.  Quite the opposite—Plaintiffs have the best knowledge of their own experiences and whether there was ever a particular misrepresentation that caused them to enter a particular oral contract with the Church.

---

[227] *Id.* ¶¶ 342–45.

Because the circumstances of an alleged fraud must be pleaded with "enough specificity to put defendants on notice as to the nature of the claim,"[228] and Plaintiffs' Complaint fails to do so under the governing standard, the claim for fraud in the inducement to enter an oral contract must be dismissed.

### 2. Second and Third Claims: Fraudulent Nondisclosure and Fraudulent Concealment

Plaintiffs reassert in the Second Amended Complaint a claim for fraudulent concealment,[229] and assert a new claim for "fraudulent nondisclosure."[230] Plaintiffs maintain the difference between the two claims is that fraudulent nondisclosure does not require a showing of intent.[231] In its Motion to Dismiss, the Church correctly observes Plaintiffs' second and third claims are treated identically under Utah law.[232] Indeed, "Utah . . . does not draw a distinction between the torts of fraudulent nondisclosure and fraudulent concealment."[233] Accordingly, the court considers Plaintiffs' second and third claims together.

"To prevail on a claim for fraudulent nondisclosure, a plaintiff must prove by clear and convincing evidence that (1) the defendant had a legal *duty* to communicate information, (2) the defendant *knew* of the information he failed to disclose, and (3) the nondisclosed information

---

[228] *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (citing *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)).

[229] Dkt. 110 ¶¶ 424–50.

[230] *Id.* ¶¶ 399–423.

[231] *See* Dkt. 118 at 30.

[232] Dkt. 111 at 20–21.

[233] *Jensen v. Cannon*, 473 P.3d 637, 643 (Utah Ct. App. 2020). The *Jensen* court notes that a few other jurisdictions recognize a separate tort of fraudulent concealment, but is clear that Utah courts do not recognize a separate tort. *Id.* In their Opposition, Plaintiffs argue this analysis in *Jensen* is "confusing," and assert they can pursue separate fraudulent intent and fraudulent concealment claims. Dkt. 118 at 30. The court disagrees that *Jensen* is unclear on this point.

was *material*."[234]  The court concludes it cannot adjudicate the duty or materiality elements without running afoul of the church autonomy doctrine.

### a.  Plaintiffs' Allegations and the Church's Arguments in Favor of Dismissal

In their claim for fraudulent nondisclosure, Plaintiffs allege they "entered into a business transaction" with the Church by paying tithing,[235] which created a "confidential relationship that gave rise to [the Church's] duty to disclose material facts,"[236] but the Church failed to disclose material facts concerning tithing's use for commercial development projects.[237]

In its Motion to Dismiss, the Church argues Plaintiffs cannot satisfy the duty element given the court's prior Orders recognizing no fiduciary duty has been recognized by Utah courts, and moreover, there is no legal precedent supporting the proposition that a church has a duty to publicly disclose the use of its funds.[238]  The Church also argues Plaintiffs cannot plead the knowledge element because the Church publicly disclosed that "it invests a portion of its funds for future use,"[239] and finally, Plaintiffs cannot plead the materiality element because that would require an impermissible inquiry into "what information is 'material' to a member of the Church in deciding whether to donate tithing."[240]

---

[234] *Jensen*, 473 P.3d at 642 (internal citations and quotation omitted).

[235] Dkt. 110 ¶¶ 400–01.

[236] *Id.* ¶ 402.

[237] *Id.* ¶ 408.  Plaintiffs also allege the Church violated its duty by failing to disclose material facts concerning Joseph Smith.  *Id.* ¶¶ 404–16.  These claims have already been dismissed as being barred by the church autonomy doctrine.  *See supra* section 1(b) at 28–29.

[238] Dkt. 111 at 21.

[239] *Id.*  Defendants also discuss *Stone v. Salt Lake City*, arguing it supports the proposition that donated funds to a Church not being "disbursed immediately and directly" does not give rise to a cause of action by a donor.  *Id.* (citing *Stone*, 356 P.2d at 634).  Plaintiffs distinguish this case in opposition, noting the plaintiff in *Stone* sought to enjoin two real estate actions but had not brought any cause of action for fraud.  Dkt. 118 at 27.  Because this claim fails for other reasons, the court does not address whether *Stone* separately precludes the claim.

[240] Dkt. 111 at 22.

In opposition, Plaintiffs argue that the recent abrogation of *Franco v. The Church of Jesus Christ of Latter-Day Saints*, a 2001 case in which the Utah Supreme Court refused to recognize a fiduciary duty arising from ecclesiastical relationships,[241] "means that finding a fiduciary duty between the Brethren[242] and LDS members is not foreclosed."[243]  In a paragraph that mostly focuses on Church officials' supposed duty to disclose facts about Joseph Smith, Plaintiffs identify additional factors supporting finding a fiduciary relationship:

> There are many factors which argue in favor of the Court finding a limited fiduciary duty in the relationship between the Brethren and Plaintiffs such that all material facts about the Church's founder, Joseph Smith, and how tithing is used should have been disclosed.  Those factors are privity of contract, confidentiality, imbalance in knowledge, age, influence, bargaining power, etc., factors listed in *Yazd v. Woodside Homes Corp.*,[244] and an invitation to trust the Brethren[.] Combined, a limited fiduciary duty to disclose Smiths' legal history should be found.[245]

Plaintiffs then continue to argue, assuming a duty is found, that the Church should be subject to "commercial development requirements which Utah has found in real estate and other transactions."[246]  Plaintiffs conclude by arguing that a Sixth Circuit decision from 1924, *Hansel v. Purnell*,[247] should be considered "persuasive with regard to [the Church's] management style of hiring lawyers and business men, and those trained in organizational behavior, lack of professionally trained clergy . . . lack of an internal dispute system (with the exception of local

---

[241] 21 P.3d at 205–06; *see also* Dkt. 33 at 18–20 (discussing *Franco*).

[242] In this context, "Brethren" refers to the Church's leadership.

[243] Dkt. 33 at 28.

[244] 143 P.3d 283, 286–87 (Utah 2006).  Those factors appear to be: "[a]ge, knowledge, influence, bargaining power, sophistication, and cognitive ability. . . or where a 'special relationship' exists."  *Id.*  Notably, *Yazd* arises in the context of homebuyers bringing an action about a vendor, it does not analyze the potential existence of a legal duty between a church and its members.  *See id.* at 285.

[245] Dkt. 118 at 28 (internal citations omitted).

[246] *Id.* at 29.

[247] 1 F.2d 266, 270 (6th Cir. 1924).

disciplinary councils) and greed (net worth of $400 billion) while donating just 1.3 billion from 1985-2010."[248]

In reply, the Church argues Plaintiffs have offered no case law to support the argument that a church has a duty to publicly disclose the use of its funds, and Plaintiffs only make the unsupported claim that "Utah requires disclosure of all material facts in order to make representations not misleading."[249]

### b. Analysis

The court agrees with the Church that Plaintiffs fail to state a claim for fraudulent nondisclosure on the tithing theory because Plaintiffs cannot show that a legal duty exists between the Church and its members requiring disclosure of material financial information.[250] The court has already determined that under Utah law there is no legally cognizable general fiduciary duty between a church and its members.[251] And despite Plaintiffs' invitation for the court to reconsider this holding in light of the abrogation of *Franco*,[252] the court does not find that *Franco*'s abrogation changes the analysis of the duty element.

In *Williams v. Kingdom Hall of Jehovah's Witnesses*,[253] the Utah Supreme Court abrogated the *Franco* decision in response to the United States Supreme Court's decision in

---

[248] Dkt. 118 at 29–30.

[249] Dkt. 121 at 9 (citing Dkt. 118 at 27).

[250] Because Plaintiffs fail to allege the duty element, the court declines to reach the question of whether Plaintiffs have pleaded facts supporting the knowledge or materiality elements.

[251] Dkt. 33 at 18–20.  In support of the duty element of their nondisclosure claims, Plaintiffs argue only for a "limited fiduciary duty" requiring disclosure of material financial information. Dkt. 118 at 28.  Because in their briefing Plaintiffs identify no other duty under Utah law requiring this disclosure, the court limits its discuss here to Plaintiffs' reliance on the existence of a fiduciary duty.

[252] Plaintiffs provide no argument or analysis for why the abrogation of *Franco* supports revisiting the court's holding on the duty element.  *See* Dkt. 118 at 28.

[253] 491 P.3d 852 (Utah 2021).

41

*American Legion v. American Humanist Association*,[254] which in turn departed from the *Lemon v. Kurtzman*[255] Establishment Clause test.[256]  The *Williams* court explained, following *American Legion*, that courts should not use the *Lemon* test when analyzing Establishment Clause cases, but rather, "focus on the particular issue at hand and look to history for guidance,"[257] or as Justice Kavanaugh said in concurrence, "identify an overarching set of principles" "based on history, tradition, and precedent."[258]  Because *Franco* relied on *Lemon*'s excessive entanglement analysis, the case was abrogated by *Williams*.[259]  The *Williams* court remanded the case for the district court to consider "history, tradition, and precedent to identify core Establishment Clause principles" to apply to the case.[260]  The *Williams* court also noted that "the conclusion reached by the district court . . . may ultimately prove to be the correct one," but the conclusion simply had to be reconsidered in light of the abandonment of the *Lemon* test.[261]

In the First Order, this court did not rely on the *Lemon* test in setting out overarching First Amendment principles; rather, it relied on the church autonomy doctrine—a doctrine that is rooted in history, tradition, and case precedent dating back to 1871.[262]  In considering Gaddy's claim for a breach of fiduciary duty, the court noted the central issue with Gaddy's theory was that she cited no authority establishing that a legally cognizable fiduciary duty arises from purely

---

[254] 139 S. Ct. 2067 (2019).

[255] 403 U.S. 602 (1971).  The Establishment Clause test consisted of three steps to evaluate challenged governmental action under the Establishment clause: "first, the action must have a secular purpose, second, its principal or primary effect must be one that neither advances nor inhibits religion, and third, it must not foster an excessive government entanglement with religion."  *Williams*, 491 P.3d at 856 (citing *Lemon*, 403 U.S. at 612–13).

[256] 139 S. Ct. 2067 (2019).

[257] *Williams*, 491 P.3d at 857 (citing *American Legion*, 139 S. Ct. at 2087).

[258] *Id.* (citing *American Legion*, 139 S. Ct. at 2093 (Kavanaugh, J., concurring)).

[259] *See Franco*, 21 P.3d at 203.

[260] *Williams*, 491 P.3d at 859.

[261] *Id.*

[262] *See* Dkt. 33 at 9–10 (summarizing church autonomy doctrine history).

ecclesiastical relationships.[263]  The court then cited *Franco*, not for its analysis under the *Lemon* test but for the proposition that the Utah Supreme Court had declined to recognize a fiduciary duty arising from ecclesiastical relationships:

> Defining such a duty would necessarily require a court to express the standard of care to be followed by other reasonable clerics in the performance of their ecclesiastic counseling duties, which, by its very nature, would embroil the courts in establishing the training, skill, and standards applicable for members of the clergy in this state in a diversity of religions professing widely varying beliefs.  This is as impossible as it is unconstitutional.[264]

Once again, Plaintiffs cite no case law—in any jurisdiction—establishing or even suggesting that a legally cognizable fiduciary duty arises or could arise from ecclesiastical relationships.[265]  Nor do Plaintiffs cite case law for the specific proposition that a church has a separate duty to publicly disclose the use of its funds.  The fact that *Franco* was abrogated insofar as it applied the *Lemon* test does not suggest the Utah Supreme Court would now reach a contrary conclusion on these legal questions.

In short, because this court did not rely on the *Lemon* test in its prior Orders, and because the court is not convinced—and Plaintiffs have not cited any case law to the contrary—that the Utah Supreme Court would find the existence of a fiduciary duty arising in ecclesiastical relationships given the abrogation of *Franco*, the court declines to revisit its prior Orders.  Because Plaintiffs have failed to establish the Church owes them a legal duty in this context, the second and third claims for relief are dismissed.

---

[263] *Id.* at 19.  The court noted that Gaddy cited *Yazd* but did not find the case instructive because it arose in a commercial context.  *Id.* at 19 n.105.  Plaintiffs again argue the *Yazd* factors favor finding a limited fiduciary duty between Church leaders and Plaintiffs.  Dkt. 118 at 28.  Yet Plaintiffs provide no legal basis for applying the *Yazd* factors in the ecclesiastical context.  *See id.*  For this reason, the court sees no reason to revisit its former ruling and dismisses this argument as unpersuasive.

[264] *Id.* at 19 (citing *Franco*, 21 P.3d at 206).

[265] Plaintiffs' citation to *Hansel* is unavailing.  That case does not provide any support for finding the existence of a fiduciary duty between a Church and its members.  *See* 1 F.2d 266, 271–72 (6th Cir. 1924) (upholding district court decree against religious leader who molested young women).

**3. Claim 4: Constructive Fraud Based on a Breach of Promises of Future Performance**

Next, Plaintiffs bring a cause of action for "Constructive Fraud Based on a breach of promises of future performance," alleging, among other things, the Church "breached its promise never to lead Plaintiffs astray with respect to its representations" and it provided "less than full and fair disclosure" about its actions concerning Plaintiffs' tithing money.[266]

In its Motion to Dismiss, the Church argues "constructive fraud based on a breach of promises of future performance" is not a cause of action recognized under Utah law, and the allegations raised within this cause of action are duplicative of other claims.[267]  In its Opposition, Plaintiffs assert that the Utah Model Jury Instructions show "constructive fraud" is a separate cause of action, citing Instruction CV 1805.[268]  Plaintiffs also cite two Utah Supreme Court cases analyzing "promises and statements of future performance" in the context of general fraud claims to argue this cause of action exists.[269]  In reply, the Church points out that Instruction CV 1805 is "an instruction for one element of a general fraud claim." [270]

The court is unaware of any case law supporting the proposition that "constructive fraud based on a breach of promises of future performance" is an independent, recognized cause of action in Utah.  Indeed, Instruction CV 1805 is provided in Chapter 1800 of the Utah Model Jury Instructions, which catalogues the model instructions related to general fraud claims.[271] Instruction CV 1805, "Promises and Statements of Future Performance," is merely illustrative of

---

[266] Dkt. 110 ¶ 457.

[267] Dkt. 111 at 23.

[268] Dkt. 118 at 31 (citing Utah Model Civil Jury Instructions CV 1805: Promises and Statements of Future Performance).

[269] *Id.* at 31 (citing *Hull v. Flinders*, 27 P.2d 56, 57 (Utah 1933); *Cerritos Trucking Co. v. Utah Ventures No. 1*, 645 P.2d 608, 610–11 (Utah 1982) (contract)).

[270] Dkt. 121 at 10.

[271] *See* Utah Model Jury Instruction CV 1801 (explaining the jury instructions following 1801, "Elements of fraud," provide "more information" about the basic elements of fraud enumerated in CV 1801).

44

62

one way a plaintiff can show falsity in a general fraud claim.[272]  Moreover, the cases Plaintiffs

cite describe breach of a promise of future performance in the context of general fraud claims.[273]

Neither case supports the proposition that "constructive fraud based on a breach of promises of

future performance" is a recognized cause of action in Utah.

Because "constructive fraud based on a breach of promises of future performance" does

not appear to be a recognized cause of action in Utah, and Plaintiffs provide no support for the

proposition it can stand alone as a cause of action, the court dismisses this claim.

### 4.  Claim 5: Violation of Utah Charitable Solicitations Act

Next, Plaintiffs bring a cause of action for "violation of the Utah Charitable Solicitations

Act" (UCSA), alleging the Church solicited tithing by saying it was required from members for

full temple access to keep families together in the afterlife, while omitting that tithing was used

for commercial projects.[274]  In its Motion to Dismiss, the Church argues the UCSA does not

create a private cause of action, but rather leaves enforcement to the Utah Attorney General's

Office and the Division of Consumer Protection.[275]  In opposition, Plaintiffs apparently concede

the Church is right, providing only two sentences in response to the Church's UCSA argument:

> Concededly, U.C.A. § 13-22-4 is vague.  Assuming arguendo that [the Church] is
> correct, the statute at least demonstrates an intent by the State of Utah that
> churches are not exempt from a fair disclosure in the context of their solicitations,
> with damages which exceed those limited by the statute.[276]

The court construes Plaintiffs' Opposition to have conceded this claim.  But even if

Plaintiffs did not concede the claim, the court agrees with the Church that the UCSA does not

---

[272] *See* Utah Model Jury Instruction CV 1805; *see also id.* CV 1802–06 (instructions for different ways to prove the falsity element of fraud).

[273] *Hull*, 27 P.2d at 57; *Cerritos Trucking Co.*, 645 P.2d at 610–11.

[274] Dkt. 110 ¶ 467, 470.

[275] Dkt. 111 at 23 (citing Utah Code §§ 13-2[2]-3, 4).

[276] Dkt. 118 at 31–32.

create a private cause of action.[277]  In *Siebach v. Brigham Young University*, the Utah Court of

Appeals, addressing a preemption argument, held the UCSA does not *prevent* a donor to a

charitable organization from bringing a cause of action for fraud arising from the donation.[278]

However, nothing in the case, which analyzes the UCSA in some detail, suggests the UCSA

creates a separate, private cause of action.  Rather, the legal issue addressed was whether the

UCSA could prevent a plaintiff from maintaining his own separate cause of action for fraud.[279]

Because the UCSA does not appear create a private cause of action, and because

effectively Plaintiffs concede this point in their Opposition, the court dismisses Plaintiffs' claim

for violation of the UCSA.

### 5.  Claim 6: Civil RICO

Finally, Plaintiffs reassert their civil RICO claim, this time incorporating the broader

tithing-based allegations described above in with a repleaded version of the sole surviving claim

from the Amended Complaint—that the Church "engaged in a scheme or schemes to defraud

[Plaintiffs] by concealing the fact that tithing was used for commercial purposes."[280]  Plaintiffs

allege the Church engaged in a "pattern of racketeering activity," including mail and wire fraud,

in perpetuating the alleged fraud.[281]  Plaintiffs further allege they suffered damages in reliance on

the Church's affirmative misrepresentations that "no tithing was used for City Creek Mall, its

omissions about commercial use of a substantial portion of tithing to bailout Beneficial Life

---

[277] UTAH CODE ANN. § 13-22-3(2)(b) ("[T]he director may bring an action in the appropriate district court of this state[.]").

[278] 361 P.3d 130, 139–40 (Utah Ct. App. 2015).

[279] *See id.*

[280] Dkt. 110 ¶ 484.

[281] *Id.* ¶ 517.

Insurance and for the investment in, purchase and development of numerous commercial entities throughout the United States and the world."[282]

The court agrees with the Church that Plaintiffs have failed to plead a cognizable civil RICO claim.[283] "The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[284] "Racketeering activity is defined . . . as any 'act which is indictable' under federal law and specifically includes mail fraud, wire fraud and racketeering."[285] These underlying acts are referred to as "predicate acts."[286]

In its Motion to Dismiss, the Church argues that to successfully plead a civil RICO claim, a plaintiff must sufficiently plead underlying claims (called "predicate acts"), and because all of Plaintiffs' underlying fraud-based claims fail, the civil RICO claim also fails.[287] Additionally, the Church argues that even if Plaintiffs adequately alleged an underlying predicate act, they have failed to allege a "pattern of racketeering activity," a necessary element of a civil RICO claim.[288] Finally, the Church maintains Plaintiffs have not identified any indictable conduct, which is also a necessary prerequisite for a civil RICO claim.[289]

---

[282] *Id.* ¶ 532.

[283] The Church's earlier Motion to Dismiss the Amended Complaint raised no arguments concerning the merits of the Amended Complaint's civil RICO claim, because the Motion focused entirely on the church autonomy doctrine issue. *See* Dkt. 38. Because the court concluded the tithing claims in the Amended Complaint concerned a secular issue, and in the absence of any additional argument about the civil RICO claim, the claim survived. In its Motion to Dismiss the Second Amended Complaint, the Church supplies extensive arguments on why the civil RICO claim fails on the merits. Faced with a different pleading and different arguments in a Motion to Dismiss, the court reaches a different conclusion.

[284] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. § 1962(a), (b), & (c)).

[285] *Id.* (citing 18 U.S.C. § 1961(c)(1)(B)).

[286] *Id.*

[287] Dkt. 111 at 24.

[288] *Id.*

[289] *Id.* at 25.

47

In opposition, Plaintiffs first outline changes they will propose in a "Motion to Supplement,"[290] including identifying more misrepresentations on the part of the Church.[291] Next, Plaintiffs argue[292]—again[293]—that material omissions can support mail and wire fraud allegations as predicate acts to the civil RICO claim, "in addition to the affirmative misrepresentations of fraud re[:] City Creek."[294]  Finally, Plaintiffs argue the question whether the phrase "earnings on invested reserve funds" was misleading is a fact question for a jury.[295]

Plaintiffs, in alleging the Church engaged in mail fraud and wire fraud, broadly incorporate all preceding allegations in the Second Amended Complaint.[296]  The elements necessary to allege mail or wire fraud, as explained by the Tenth Circuit, are:

> To establish the predicate act of mail fraud, [Plaintiffs] must allege (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme.  The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud.  The common thread among these crimes is the concept of "fraud." Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.  Failure to adequately allege any one of the nine elements is fatal to the fraud claim.[297]

---

[290] As discussed above, Plaintiffs later filed a Motion for Leave to File Third Amended Complaint, which contains many of the changes discussed.  *See* Dkt. 122.

[291] Dkt. 118 at 32.

[292] *Id.* at 33.

[293] *See* Dkt. 47 at 21–22, 25–26.

[294] Dkt. 118 at 35.

[295] *Id.* at 36.

[296] Dkt. 118 at 32.  This incorporates 480 paragraphs of allegations.

[297] *Tal*, 453 F.3d at 1263 (internal citations and quotations omitted).

A "pattern of racketeering activity" must include at least two predicate acts.[298]  And where the alleged predicate acts sound in fraud, a plaintiff must plausibly allege each predicate act with the particularity required by Rule 9(b).[299]  Moreover, "while two acts are necessary, they may not be sufficient to establish a pattern."[300]  Namely, the pattern element requires a plaintiff to show a relationship between the predicate acts as well as "the threat of continuing activity."[301]

In evaluating whether a Plaintiff has adequately pleaded a pattern of predicate acts, the Tenth Circuit cautions courts to be mindful of Rule 9(b)'s purpose of "afford[ing] a defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims."[302]  Courts may also consider whether pleading deficiencies "resulted from the plaintiff's inability to obtain information in the defendant's exclusive control."[303]

Plaintiffs have failed to allege with the necessary specificity a pattern of predicate acts supporting the civil RICO claim.  Plaintiffs allege that the Church "engaged in a scheme or schemes to defraud [Plaintiffs] by concealing the fact that tithing was used for commercial purposes."[304]  But Plaintiffs fail to allege even a single actionable instance of fraud, let alone two, because they do not allege any specific instances in which Plaintiffs relied on the Church's representations concerning tithing.  In their Opposition, Plaintiffs identify specific allegations in the Second Amended Complaint concerning false statements about tithing:[305]

---

[298] *See* 18 U.S.C. § 1961(5); *see also, e.g.*, *Deck v. Engineered Laminates,* 349 F.3d 1253, 1257 (10th Cir. 2003).

[299] *See, e.g.*, *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 50 (10th Cir. 2021).

[300] *George*, 833 F.3d at 1254 (internal citations and quotations omitted).

[301] *Id.* (internal citations and quotations omitted).

[302] *Id.* (internal citations and quotations omitted).

[303] *Id.* (internal citations and quotations omitted).

[304] Dkt. 110 ¶ 484.

[305] *See* Dkt. 118 at 32.

- The President Hinckley statement that tithing funds were not being used for the construction of City Creek Mall,[306]

- Two statements, printed in *Ensign Magazine* and the *Deseret News*, respectively, stating that no tithing funds were used for the development of the mall,[307]

- A statement made by Keith McMullin, "then a member of the Corporation of the President Bishropic" to Caroline Winter, a Bloomberg Businessweek writer, that "not one penny of tithing goes to the Church's for-profit endeavors."[308]

Plaintiffs also identify the above allegations along with the following as examples of "misleading omissions" concerning tithing:[309]

- Ensign Peak Advisors being funded with tithing,[310]

- The bailout of Beneficial Life Insurance using "$600 million of tithing (at least interest if not principal),[311] and

- The creation of 13 companies "to deceive [the Church's] members and others about the amount of tithing it had accumulated and how LDS tithing is used."[312]

Plaintiffs argue, in conclusory manner, that these acts and omissions are "sufficient to be part of a RICO scheme."[313]

---

[306] Dkt. 110 ¶ 236.

[307] *Id.* ¶ 244.

[308] *Id.* ¶ 258.

[309] Dkt. 118 at 34.

[310] Dkt. 110-5 (Exhibit Declaration of David A. Nielsen).

[311] Dkt. 110 ¶ 116; Dkt. 110-5 ¶¶ 9–10.

[312] Dkt. 110 ¶ 266.

[313] Dkt. 118 at 34.

Even assuming Plaintiffs have alleged with sufficient specificity false, material misrepresentations that the Church intended to be acted upon,[314] Plaintiffs fail to allege any single predicate act of mail or wire fraud because they fail to allege that they acted in reliance on any particular false statement in choosing to donate tithing.  As discussed above,[315] Plaintiffs fail to identify any instance in which they relied on a particular misrepresentation in choosing to pay tithing.  Instead, the Second Amended Complaint states each Plaintiff was a lifelong member of the Church who paid tithing from a young age and further states, in conclusory manner, they would not have paid tithing had they known the truth about Church history and tithing practices.[316]  These generalized allegations do not satisfy the heightened pleading standard imposed under Rule 9(b).

Because Plaintiffs fail to allege even a single predicate act of mail or wire fraud, the court agrees with the Church that Plaintiffs have failed to allege a "pattern" of predicate acts sufficient to plead a cognizable civil RICO claim.  Accordingly, the claim fails and must be dismissed.

### 6.  Conclusion

Each of Plaintiffs' seven claims are dismissed to the extent they are based on theories of the Church perpetuating a fraud based on teachings and representations about the First Vision, Book of Mormon Translation, Book of Abraham, locations of events in the Book of Mormon, Church history, locations in the book of Mormon, or Joseph Smith's personal history.  These

---

[314] The court notes it is skeptical that any of these examples, save perhaps the President Hinckley statement, allege intent in a way that could satisfy the pleading standard under Rule 9(b).  For example, Plaintiffs allege that misrepresentations about tithing appeared in "Defendant's publications," quoting a statement printed in *Ensign Magazine* that "[n]o tithing funds will be used" in the City Creek Mall project and a similar statement printed in the "[Church]-owned" *Deseret News*.  *See* Dkt. 110 ¶ 244.  However, nowhere in the Complaint do Plaintiffs allege that the Church controls the content of these publications, or that it had the specific intent to mislead members by placing specific statements in these publications.  As such, it is unclear whether many of Plaintiffs' examples of alleged misrepresentations from the Second Amended Complaint would meet the intent element of fraud and therefore could be considered predicate acts of mail or wire fraud.

[315] *See supra* section 1(b).

[316] *See* Dkt. 110 ¶¶ 302–45 (allegations concerning each Plaintiffs' lifelong involvement in the Church).

claims all fail for the reasons previously articulated in the First Order and Second Order.
Plaintiffs' six claims resting on the allegations concerning tithing (all but the Intentional
Infliction of Emotional Distress claim) are dismissed for the specific reasons given above.
Accordingly, all of Plaintiffs' claims are dismissed in their entirety.

## II.     Motion for Leave to File Third Amended Complaint

Immediately after the Motion to Dismiss the Second Amended Complaint was briefed,
but before the court could issue a decision, Plaintiffs filed a Motion for Leave to Amend,
attaching a proposed Third Amended Complaint as an exhibit.  The Motion identifies the
following proposed changes: (1) the basis of allegations made upon information and belief are
added, (2) the fourth cause of action is reworded as a claim for constructive fraud, (3) an
affirmative misrepresentation from a 2012 tithing form is added, (4) new factual allegations are
added supporting the claim Church brethren and general authorities "do not believe what they
teach," (5) new allegations are added comparing the percent of annual tithing used for
investment funds with the percent of tithing used for humanitarian aid.[317]

Leave to amend should be "freely [given] where justice so requires,"[318] but justice does
not require granting leave where amendment would be "futile."[319]  The court concludes the Third
Amended Complaint would be subject to dismissal and therefore the proposed amendment is
futile.[320]

The primary failing of the Second Amended Complaint—which was also the primary
failing of the original Complaint and Amended Complaint—is that the majority of Plaintiffs'

---

[317] Dkt. 122 at 3–9.

[318] Fed. R. Civ. P. 15(a)(2).

[319] *Prisbry*, 2018 WL 1508559, at *3.

[320] *See Jefferson Cnty.*, 175 F.3d at 85.

fraud-based claims would require the court, in adjudicating the falsity element, to enter impermissible First Amendment territory.  As to the allegations based on tithing payments, the Second Amended Complaint's fraudulent inducement and civil RICO claims failed to allege with the necessary specificity the actions the Plaintiffs took in reliance on alleged Church statements.  The fraudulent nondisclosure claim failed to plead a legally cognizable duty, and the fraudulent concealment claim failed for being duplicative of the fraudulent nondisclosure claim.  The "constructive fraud based on a breach of promises of future performance" claim failed for not being a recognized cause of action under Utah law.  And the UCSA claim failed for not providing a private right of action.

None of Plaintiffs' identified changes rectify the fatal flaws of prior complaints.  The first set of identified changes add additional factual allegations to the complaint: a further basis for allegations made on information and belief, new allegations concerning affirmative misrepresentations on the 2012 tithing form, additional factual allegations that Church authorities do not believe what they teach, and allegations comparing the percent of annual tithing used for investments with the percent used for humanitarian aid.  These additional allegations do not address the failures identified above—the failure to allege any specific instances in which Plaintiffs relied on a misrepresentation and took some kind of action or entered an oral contract on that basis.

Second, repleading "constructive fraud based on a breach of promises of future performance" as constructive fraud would also be futile.  Because constructive fraud is a recognized standalone cause of action in Utah, [321] unlike "constructive fraud based on a breach of promise of future performance," the court will briefly address why this proposed new cause of

---

[321] *See Jensen v. IHC Hospitals, Inc.*, 944 P.2d 237, 339 (Utah 1997).

action would be subject to dismissal.  Constructive fraud requires two elements: "(i) a confidential relationship between the parties; and (ii) a failure to disclose material facts."[322]  As to the first element, Plaintiffs allege a confidential relationship arose between the Church and its members based on the Church's repeated "promise[s] to never lead them astray."[323]  Plaintiffs include a table with several examples of Church leaders making this promise, nearly all in the context of religious proceedings such as the Church's annual general conference.  The promise, as Plaintiffs plead it, was typically made as follows: "Brethren, keep your eye on the President of this Church . . . the Lord will never let his mouthpiece lead this people astray."[324]  As to tithing, Plaintiffs allege the Church "breached that promise to never lead Plaintiffs astray with regard to its representations and less than full and fair disclosure of material facts about what it had done, was doing, and/or intended to do with respect to Plaintiffs' tithing."[325]

The first element, as pleaded, would be subject to dismissal for running afoul of the church autonomy doctrine.[326]  To show a confidential relationship, a plaintiff must indicate "the circumstances are such that the defendant could exercise extraordinary influence over the plaintiff and the defendant was or should have been aware the plaintiff reposed trust and confidence in the defendant and reasonably relied on defendant's guidance."[327]  Thus, the court would have to determine that the Church "could exercise extraordinary influence" over its members, or that it should have been aware its members "reposed trust and confidence" in it, on

---

[322] *Id.*

[323] Dkt. 122-1 (Proposed Third Amended Complaint) ¶ 452.

[324] *Id.* ¶ 144.

[325] *Id.* ¶ 458.

[326] Because the first element fails, the court does not address whether the materiality element could be adjudicated without offending the church autonomy doctrine bar.

[327] *Blodgett v. Marsh*, 590 P.2d 298, 302 (Utah 1978).

the basis of its statements to members that "the Lord will never lead its mouthpiece astray."[328] For the court to make that determination, it would necessarily have to consider matters of "church government as well as those of faith and doctrine," an inquiry forbidden by the Religion Clauses.[329]  Similarly, to determine whether Plaintiffs "reasonably relied on defendant's guidance," it would have to determine whether a reasonable person would rely on the statement "the Lord will never lead its mouthpiece astray," an inquiry that is also forbidden by the church autonomy doctrine because the court would have to consider the reasonableness of internal statements of religious doctrine.[330]

In short, none of the proposed changes in the Third Amended Complaint address the fatal flaws the court identified not just in the Second Amended Complaint, but in the original Compliant and Amended Complaint.[331]  The Third Amended Complaint would be subject to dismissal as well and on the same bases.  Therefore, the court concludes amendment would be futile.

Moreover, in considering any motion to amend, the court must consider the balance between ensuring plaintiffs enjoy ample opportunity to plead their case and preventing prejudice to defendants who have to defend against multiple pleadings.  If the court granted leave to amend in this case, that balance would decidedly tip and cause prejudice to the Church—if it has not done so already.  Plaintiffs have had three opportunities to amend their complaint.  Even when one claim survived Defendants' Second Motion to Dismiss, rather than proceed to discovery, Plaintiffs elected to replead several claims, and theories underlying those claims, that the court

---

[328] Dkt. 122-1 ¶ 144.

[329] *Bryce*, 289 F.3d at 655.

[330] *See id.*

[331] *See* Dkt. 33; Dkt. 100.

had previously rejected.  In fact, Plaintiffs significantly expanded those claims, turning a sixty-

five-page Amended Complaint into a two-hundred-page Second Amended Complaint.  The

Second Amended Complaint contained hundreds of paragraphs of allegations once again asking

the court to adjudicate the truth or falsity of the Church's core beliefs—an inquiry the court twice

before explained it could not undertake.  Moreover, Plaintiffs failed to replead the tithing theory,

the basis for the sole claim that survived the Second Motion to Dismiss, with the specificity

required by Rule 9(b).  The Third Amended Complaint, as discussed above, does not address

these fatal flaws.  Allowing further amendment at this stage would be futile and cause significant

prejudice to the Church.

Accordingly, the Motion for Leave to Amend is denied, and dismissal of the Second

Amended Complaint is with prejudice.[332]

**CONCLUSION**

For the reasons stated above, the Church's Motion to Dismiss Plaintiffs' Second

Amended Complaint is GRANTED.  Plaintiffs' Motion for Leave to File the Third Amended

Complaint and Request for Oral Argument are DENIED.  The Second Amended Complaint is

DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to close the case.

SO ORDERED this 28th day of March, 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[332] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citation omitted).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LAURA A. GADDY, LYLE D. SMALL, and LEANNE R. HARRIS, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, and DOES 1-50,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION FOR RELIEF FROM JUDGMENT**<br><br>2:19-cv-00554-RJS<br><br>Chief District Judge Robert J. Shelby |

Before the court is Plaintiffs' Rule 60(b) Motion for Relief from Judgment.[1] Having considered the briefing and attached affidavit and exhibit, the court concludes the Motion may be resolved without oral argument.[2] For the following reasons, the Motion is DENIED.

### BACKGROUND AND PROCEDURAL HISTORY[3]

On August 5, 2019, Plaintiff Laura A. Gaddy filed a putative class action lawsuit against the Corporation of the President of the Church of Jesus Christ of Latter-day Saints (the Church).[4] Gaddy brought six causes of action on behalf of herself and others similarly situated, alleging the Church was liable for fraudulent misrepresentations it made to induce membership.[5] The Church

---

[1] Dkt. 135, *Rule 60(b) Motion*.

[2] *See* DUCivR 7-1(f).

[3] The court recites only those facts necessary to evaluate the merits of the Motion.

[4] Dkt. 2, *Complaint*.

[5] *See id.* ¶¶ 183–248.

1

moved to dismiss the Complaint with prejudice (First Motion to Dismiss), arguing Gaddy's

claims were barred by the Free Exercise and Establishment Clauses of the First Amendment (the

Religion Clauses).[6]

On March 31, 2020, the court concluded the Religion Clauses barred each of Gaddy's

claims and granted the First Motion to Dismiss without prejudice (the First Order).[7]  In

explaining the standards governing Gaddy's Complaint, the court noted:

> [A] heightened pleading standard applies when fraud is alleged.  Under this
> standard, "a party must state with particularity the circumstances constituting
> [the] fraud or mistake."  Fed. R. Civ. P. 9(b).  Thus, Rule 9(b) generally requires a
> plaintiff "to identify the time, place, and content of each allegedly fraudulent
> representation or omission, to identify the particular defendant responsible for it,
> and to identify the consequence thereof."  *Hafen v. Strebeck*, 338 F. Supp. 2d
> 1257, 1263 (D. Utah 2004) (citation omitted).[8]

Gaddy subsequently filed a Motion for Leave to File Amended Complaint (First

Motion to Amend),[9] which the court granted on account of the Church's Notice of Non-

Opposition to the Motion.[10]

Gaddy filed an Amended Complaint on May 18, 2020.[11]  Although more detailed

than her original Complaint, many of the claims, theories, and allegations in the

Amended Complaint were duplicative of the prior pleading.[12]  The Amended Complaint

did, however, advance a new theory of liability on a civil Racketeer Influenced and

Corrupt Organizations Act (RICO) claim based on alleged misrepresentations the Church

---

[6] Dkt. 6, *First Motion to Dismiss* at 12.

[7] Dkt. 33, *First Order of Dismissal*.

[8] *Id.* at 7 n.46.

[9] Dkt. 34, *First Motion to Amend*.

[10] Dkt. 36, *Order Granting First Motion to Amend*; *see* Dkt. 35, *Notice of Non-Opposition*.

[11] Dkt. 37, *Amended Complaint*.

[12] *Compare Complaint*, *with Amended Complaint*.

2

Case 2:19-cv-00554-RJS   Document 143-1   Filed 07/06/23   Page 31 of 92   PageID #: 3097
Case 2:19-cv-00554-RJS   Document 143-1   Filed 06/23/23   Page 31 of 92   PageID #: 3097
of 92

made concerning its use of tithing.[13]  The Church again moved to dismiss with prejudice (Second Motion to Dismiss), relying largely upon the arguments raised in the First Motion to Dismiss.[14]

In a Second Order, the court granted in part and denied in part the Second Motion to Dismiss.[15]  The court dismissed all Gaddy's claims without prejudice, except for the civil RICO claim relying on the new tithing theory of liability.[16]  The Second Order again noted the heightened pleading standard for fraud claims.[17]

Rather than proceed on her surviving claim, Gaddy again moved to amend (Second Motion to Amend).[18]  Because the Church did not oppose the request,[19] the court granted the Second Motion to Amend.[20]  In granting the Second Motion to Amend, the court explicitly directed Gaddy to "make all changes referenced in her Motion to Amend and any other necessary edits so that the Second Amended Complaint contains all operative allegations in this case."[21]

On October 22, 2021, Gaddy—joined by new Plaintiffs Lyle D. Small and Leanne R. Harris—filed a Second Amended Complaint.[22]  Although the Second Amended Complaint duplicated much of the First Amended Complaint, it added two new fraud-based claims and

---

[13] *See Amended Complaint* ¶¶ 2, 5, 6, 79, 200(C).

[14] *Compare* Dkt. 38, *Second Motion to Dismiss*, *with First Motion to Dismiss*.

[15] Dkt. 100, *Second Order*.

[16] *Id.* at 25–29.

[17] *Id.* at 14 n.85.

[18] Dkt. 105, *Second Motion to Amend*.

[19] Dkt. 107, *Response to Second Motion to Amend*.

[20] Dkt. 109, *Order Granting Second Motion to Amend*.

[21] *Id.* at 2.

[22] Dkt. 110, *Second Amended Complaint*.

3

greatly expanded its allegations concerning misrepresentations about religious teachings, Church history, and tithing usage.[23]

The Church moved for dismissal with prejudice a third time (Third Motion to Dismiss).[24] The Church first argued all claims based on religious teachings must be dismissed under the church autonomy doctrine.[25]  The Church next argued the claims based on tithing usage failed as a matter of law.[26]  Finally, the Church argued the Second Amended Complaint should be dismissed with prejudice as Plaintiffs continued to plead barred claims despite having multiple opportunities to amend.[27]

Before the court could rule on the Third Motion to Dismiss, Plaintiffs moved for leave to file a Third Amended Complaint (Third Motion to Amend).[28]  Plaintiffs argued the Third Amended Complaint would correct issues identified in the Third Motion to Dismiss by adding new factual allegations to support the fraud claims.[29]  The Church filed an Opposition, arguing the court should exercise its discretion to deny the Third Motion to Amend because Plaintiffs had been afforded multiple opportunities to plead and amendment was futile.[30]

---

[23] *See generally id.*

[24] Dkt. 111, *Third Motion to Dismiss*.

[25] *Id.* at 12–13.  As explained in the First Order, the church autonomy doctrine arises from the First Amendment's Religion Clauses and reflects "the fundamental right of churches to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine."  *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 654 (10th Cir. 2002) (internal citation and quotations omitted).  Under this doctrine, courts are restrained from deciding ecclesiastical disputes.  *See id.* at 658.

[26] *Third Motion to Dismiss* at 13–26.

[27] *Id.* at 26.

[28] Dkt. 122, *Third Motion to Amend.*

[29] *Id.* at 2–8.

[30] Dkt. 126, *Opp. to Third Motion to Amend* at 3–10.

On March 28, 2023, the court issued a Memorandum Decision and Order dismissing with prejudice the Second Amended Complaint and denying the Third Motion to Amend.[31]  In dismissing the claims, the court concluded all claims relying on the Church's religious history and teachings failed under the church autonomy doctrine.[32]  The fraudulent inducement claim, based on the Church's tithing usage, was dismissed for failing to meet the particularized pleading standard required for fraud-based claims.[33]  Plaintiffs' claim for fraudulent nondisclosure failed because Plaintiffs could not establish the Church owed them a legal duty.[34]  The court next dismissed the claim for "constructive fraud based on a breach of promises of future promises," as it is not recognized under Utah law.[35]  Plaintiffs appeared to concede their Utah statutory claim, but even still, the court determined the claim could not survive because the statute provided no private right of action.[36]  Finally, Plaintiffs failed to plead the predicate acts required to establish their civil RICO claim.[37]

After dismissing all claims, the court concluded amendment would be futile because the proposed Third Amended Complaint contained the same flaws as the Second Amended Complaint.[38]  Additionally, the court concluded further amendment would prejudice the Church.[39]  Plaintiffs had been afforded three opportunities to plead their claims, and every time

---

[31] Dkt. 133, *Memorandum Decision and Order*.

[32] *Id.* at 26–28.

[33] *Id.* at 33–38.

[34] *Id.* at 41–43.

[35] *Id.* at 44–45.

[36] *Id.* at 45–46.

[37] *Id.* at 46–51.

[38] *Id.* at 52–55.

[39] *Id.* at 55–56.

they significantly expanded the allegations without addressing the deficiencies identified by the court.[40]

The next month, Plaintiffs filed the present Rule 60(b) Motion.[41]  Plaintiffs request the court "vacate its judgments of dismissal and order denying leave to file a third amended complaint."[42]  Plaintiffs attached an affidavit from their attorney (Affidavit) in support of the Motion and a revised proposed third amended complaint with an exhibit.[43]  The Motion is now fully briefed and ripe for decision.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 60(b) provides an exception to finality that allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances."[44]  The Rule seeks to strike a balance between the desire to preserve finality and the need to mete out justice.[45]  Thus, courts should liberally construe the Rule when necessary to serve substantial justice.[46]

While district courts have considerable discretion to vacate a judgment under Rule 60(b), this relief is "extraordinary and may only be granted in exceptional circumstances."[47]  "A litigant shows exceptional circumstances by satisfying one or more of Rule 60(b)'s six grounds for relief

---

[40] *Id.*

[41] Dkt. 135.

[42] *Rule 60(b) Motion* at 1.

[43] Dkt. 135-1, *Decl. of Kay Burningham*; Dkt. 135-2, *Proposed Third Amended Complaint*; Dkt. 135-3, *Decl. of David A. Nielsen.*  Because the court concludes Plaintiffs are not entitled to Rule 60(b) relief, as discussed below, it does not evaluate the viability of the proposed third amended complaint.

[44] *Johnson v. Spencer*, 950 F.3d 680, 694 (10th Cir. 2020) (internal quotations and citations omitted) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70 (2010)).

[45] *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005).

[46] *Kile v. United States*, 915 F.3d 682, 687 (10th Cir. 2019).

[47] *F.D.I.C. v. United Pac. Ins. Co.,* 152 F.3d 1266, 1272 (10th Cir. 1998) (quoting *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990)).

6

from judgment."[48]  The Rule does not provide grounds for a party "to advance new arguments or

supporting facts that were available but not raised at the time of the original argument."[49]

## ANALYSIS

The court first addresses the grounds for relief Plaintiffs raised in the Motion before

turning to those raised in response to the Church's Opposition.

*1. Plaintiffs' Rule 60(b) Motion*

Plaintiffs argue they have demonstrated grounds for relief under Rule 60(b)(1) and

substantial justice would be served by granting their Motion.[50]  But the Church argues, and the

court agrees, that Plaintiffs have failed to state a basis for Rule 60(b)(1) relief.[51]

Rule 60(b)(1) provides relief from judgment due to "mistake, inadvertence, surprise, or

excusable neglect."[52]  Whether a party has established a justification for relief under this rule is

an issue determined on the merits.[53]  The burden is on the moving party to plead and prove its

justification.[54]  All doubts are resolved in favor of the party seeking relief.[55]

---

[48] *Van Skiver v. United States*, 952 F.2d 1241, 1243–44 (10th Cir. 1991).

[49] *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016).

[50] *Rule 60(b) Motion* at 3–6.

[51] Dkt. 139, *Opp. Rule 60(b) Motion* at 3–6.

[52] Fed. R. Civ. P. 60(b)(1).

[53] *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005).

[54] *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011).

[55] *Id.*

7

Relevant here is the excusable neglect provision.[56]  In this context, neglect means "to give little attention or respect to a matter or . . . to leave undone or unattended to especially through carelessness or faultless omission."[57]  It "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."[58]  Neglect does not include deliberate and counseled litigation decisions made by the complaining party,[59] such as when a party "simply misunderstands the legal consequences of his deliberate acts."[60]  It follows that relief is not available to allow a party to advance "supporting facts which were available for presentation at the time of the original argument"[61]—the Rule is not intended to allow a party to "turn back the clock" on its mistakes "once the lesson is learned."[62]

To justify relief under Rule 60(b)(1), "neglect" must also be "excusable."[63]  Assessing excusability requires "taking account of all relevant circumstances surrounding the party's omission."[64]  Relevant factors include: "the danger of prejudice to the opposing party," whether

---

[56] Plaintiffs briefly argue for relief on grounds of "inadvertence" by quoting a dictionary definition of inadvertence and at one point arguing their attorney's inadvertent omissions of particular facts qualify for relief.  *Rule 60(b) Motion* at 5.  Case law in this circuit holds that generally, "inadvertence by an attorney is not a basis for relief under Rule 60(b)(1)."  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000); *see Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (explaining that an attorney's inadvertence is not categorically rejected under Rule 60(b)(1) but requires more to obtain relief under the Rule).  Plaintiffs do not address this case law, nor do they try to explain how the facts here qualify them for relief on grounds of inadvertence.  The substance of the Motion and Reply focus on the excusable neglect provision.  *See Rule 60(b) Motion* at 2–5; Dkt. 140, *Reply Rule 60(b) Motion* at 1–8.  For these reasons, the court focuses its analysis on Plaintiffs' "excusable neglect" arguments.

[57] *Jennings*, 394 F.3d at 856 (cleaned up).

[58] *Id.* (internal citation and quotation omitted).

[59] *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1991); *see Zimmerling v. Affinity Fin. Corp.*, 478 F. App'x 505, 507–08 (10th Cir. 2012).

[60] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996).

[61] *Hilliard v. Dist. Ct. of Comanche Cnty.*, 100 F. App'x 816, 819 (10th Cir. 2004) (internal citations and quotations omitted).

[62] *Yapp*, 186 F.3d at 1231.

[63] Fed. R. Civ. P. 60(b)(1).

[64] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

the omission "was within the reasonable control of the movant, . . . whether the movant acted in

good faith, and "whether the mistake was a single unintentional incident (as opposed to a pattern

of [mistakes])."[65]  Ultimately, determining what sort of neglect is excusable is an equitable

consideration.[66]  Still, "[i]nadvertence, ignorance of rules, or mistakes construing the rules do not

usually constitute 'excusable' neglect."[67]

Plaintiffs argue their failure to plead facts sufficient to satisfy Rule 9(b)'s particularity

standard constitutes excusable neglect.[68]  They argue counsel "believed . . . she had specified in

more than conclusory fashion" the necessary facts to satisfy Rule 9(b) and only "realized her

inadvertent admissions" after reading the Memorandum Decision and Order and the cited cases

explaining what Rule 9(b) requires.[69]  They further assert the necessary facts "exist[ed], but were

not previously pleaded."[70]  As justification for her oversight, counsel submitted an Affidavit

outlining her health struggles between January 2021 and April 2023.[71]  In it, counsel stated she

"did not appreciate the specificity requirements of Rule 9" "due to [her] level of pain and lack of

sleep," until after obtaining relief through new medications and then re-reading the

---

[65] *See Jennings*, 394 F.3d at 856–57.  Some of these factors, known as the *Pioneer* factors, initially arose in the context of determining whether a delay in a bankruptcy filing was attributable to excusable neglect.  *See Wey Invs., LLC v. Lindstrom*, No. 2:22-CV-234 TS, 2022 WL 2704804, at *1 (D. Utah June 7, 2022); *Pioneer*, 507 U.S. at 395.  The Tenth Circuit has applied these factors in the Rule 60 context, along with other equitable factors that may be relevant.  *See Jennings*, 394 F.3d at 857.

[66] *Pioneer*, 507 U.S. at 395.

[67] *Id.* at 392.

[68] While Plaintiffs seek to have the entire Memorandum Decision and Order vacated, their Rule 60(b) Motion only addresses the court's basis for dismissing one claim of seven. *See Rule 60(b) Motion* at 2–3 (arguing excusable neglect for failing to meet Rule 9 heightened pleading standard); *see also Memorandum Decision and Order* at 25–50 (dismissing fraud in the inducement claim under Rule 9 and six other claims for different reasons).  Because Plaintiffs' Motion fails on the merits, the court declines to address the propriety of vacating the dismissal of seven claims when a party has requested relief on only one.

[69] *Rule 60(b) Motion* at 3.

[70] *Id.* at 5.

[71] Dkt. 136-2, *Decl. of Kay Burningham* [sealed] at 2–3.

Memorandum Decision and Order.[72]  Counsel acknowledges the court mentioned Rule 9(b) requirements in prior Orders but asserted she was unable to clearly understand due to her poor health and the scope of the Church's fraud and misrepresentations.[73]

Even resolving all doubts in favor of Plaintiffs, they have not proven excusable neglect. To start, Plaintiffs' pleading failures are not a result of neglect.  It was not through faultless omissions the necessary facts went unpleaded—counsel concedes as much in her Affidavit when she acknowledges she made mistakes in prior filings which led to dismissal.[74]  Neither do the errors qualify as "omissions caused by carelessness."[75]  While Plaintiffs attempt to characterize them as such,[76] this argument overlooks the deliberateness of their acts.  The facts supporting Plaintiffs' fraud-based claims were available, and they knew of the heightened pleading standard for those claims—the court twice noted the rule and case law explaining its requirements—yet, counsel did not include them because "[s]he believed that . . . she had specified in more than conclusory fashion" what was needed to satisfy Rule 9.[77]  This shows counsel made conscious decisions in pleading the case and the omissions were not due to carelessness, rather, they resulted from a misunderstanding of what the law requires.  And "Rule 60(b)(1) relief is not available for a party who simply misunderstands the legal consequences of his deliberate acts."[78]

---

[72] *Id.* at 3.

[73] *Id.* at 4.

[74] *Decl. of Kay Burningham* [sealed] at 3 (acknowledging the pleading deficiencies were "not my clients' fault" rather, a result of "mistakes I had made in my prior filings").

[75] *Id.* (internal citation and quotation omitted).

[76] *Rule 60(b) Motion* at 5 ("Plaintiffs ask the Court to find counsel's omissions of particularity under Fed. R. Civ. P. 9, as inadvertent or excusably neglectful in light of the personal information set forth in her Declaration.").

[77] *Id.* at 3.

[78] *Cashner*, 98 F.3d at 577.

Plaintiffs seek to avoid this conclusion by justifying their pleading choices as excusable.[79]  But litigation mistakes resulting from deliberate and counseled decisions are not excusable under Rule 60.[80]  Moreover, Plaintiffs' justifications fail to qualify as excusable.  In their Motion, Plaintiffs argue counsel's health challenges affected her ability to fully understand Rule 9's pleading requirements.[81]  The problem with this argument is that counsel's health challenges began in January 2021, nearly one year after the court noted the heightened pleading standard for fraud in the First Order.[82]  Thus, Plaintiffs were on notice of the requirements at the time they filed the Amended Complaint in May 2020, and their failures could not be excused by counsel's later health challenges.  Taking as true that counsel's health challenges affected her ability to fully appreciate the Rule 9 pleading standards in the Second Order,[83] this fails to explain why she was not already familiar with the standard from the court's First Order issued in March 2020.[84]

Other equitable factors likewise cannot work to excuse Plaintiffs' pleading failures. Plaintiffs' omissions were entirely within their control and the mistake was not a single unintentional incident but part of a pattern of pleading deficiencies.  While there is no basis to

---

[79] *Rule 60(b) Motion* at 5.

[80] *Yapp*, 186 F.3d at 1231 ("Excusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party.").

[81] *Decl. of Kay Burningham* [sealed] at 3–4.

[82] *See First Order* at 7 n.46.

[83] *See Decl. of Kay Burningham* [sealed] at 3–4.

[84] Because this argument fails on other grounds, the court does not address the merits of whether it is excusable for an attorney's health issues to interfere with her ability to represent a client.  There is case law in this Circuit discussing when counsel's medical issues qualify as excusable neglect, *see Crespin v. City of Espanola,* No. CIV 11-0913 JB/KBM, 2013 WL 2284958, at *6–9 (D.N.M. May 10, 2013) (collecting cases), but Plaintiffs do not address this in their briefing nor show its applicability to the facts here.  And Plaintiffs would be hard-pressed to make such an argument.  It strains credulity to argue counsel's medical issues made her unable to recognize Rule 9 pleading deficiencies, yet she remained capable of drafting and filing over two dozen other legal documents in this case during the same time period.

11

find Plaintiffs acted in bad faith, the court cannot agree with Plaintiffs that the Church would suffer no prejudice from allowing Plaintiffs to proceed with a Third Amended Complaint, this one totaling around eighty-four pages. The court twice dismissed Plaintiffs claims without prejudice and allowed Plaintiffs to replead previously dismissed claims, often with considerable additional allegations.[85] Admittedly, Plaintiffs filed their Motion only a month after the case was dismissed.[86] Still, the parties have been litigating this case for nearly four years and this is Plaintiffs' fifth iteration of a complaint.[87] Equity weighs in favor of upholding the final judgment.

### 2. *Plaintiffs' Reply Brief*

In their Reply Brief, Plaintiffs appear to raise two new arguments why Rule 60(b) provides grounds to relieve them from the consequences of their pleading failures.[88] They argue (1) the Rule 9 heightened pleading standard for fraud claims is ambiguous, and (2) the court erred in applying the standard to their claims.[89] "[T]his court ordinarily does not consider

---

[85] *See First Motion to Dismiss* at 1; *First Order of Dismissal; Second Motion to Dismiss* at 1; *Second Order of Dismissal*; *see also Memorandum Decision and Order* at 18–19 (noting the Second Amended Complaint "significantly expands from the first two Complaints, describing [allegations] in almost encyclopedic detail" and growing to "554 paragraphs over 203 pages").

[86] Plaintiffs argue prejudice in this context is determined by "the length of time that has passed since judgment became final." *Reply Rule 60(b) Motion* at 10. However, they provide no legal support for this assertion. *See id.* More importantly, courts are granted wide discretion in evaluating equitable considerations to determine what sort of neglect is "excusable." *Pioneer*, 507 U.S. at 395 ("Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."). Thus, these considerations are relevant even if not in the context of deciding prejudice.

[87] Plaintiffs filed three complaints operative at different times—Complaint, Amended Complaint, Second Amended Complaint—and have proposed two different versions of a Third Amended Complaint. *See* Dkts. 2, 37, 110, 122, 135-2.

[88] *See* Dkt. 140, *Reply Rule 60(b) Motion* at 2–8.

[89] *Id.*

arguments raised for the first time in a reply brief."[90]  "Federal district courts around the nation follow a similar practice" to promote fairness and efficiency.[91]  An exception is made, however, when the new arguments are responsive to issues raised in opposition.[92]  Plaintiffs' first argument arguably can be considered responsive to the Church's Opposition.  The Church argued Rule 9's pleading standard is "unambiguous" and that misinterpretation of an unambiguous procedural rule is not grounds for Rule 60(b) relief.[93]  Plaintiffs' second argument is entirely new and not responsive to issues raised by the Church.  The court will therefore consider the first argument but not the second.

Plaintiffs' argument in Reply is that the proper application of Rule 9 is ambiguous.[94]  The relevant language of Rule 9 states, "a party must state with particularity the circumstances constituting fraud or mistake."[95]  The Tenth Circuit has expounded on this Rule, explaining "plaintiffs must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[96]  According to Plaintiffs, the plain language of Rule 9 does not require pleading the "consequences" of fraud, it only requires pleading the "circumstances," and "[a]ny standard for pleading consequences is dicta."[97]  This does not a provide a basis for Rule 60(b) relief.

---

[90] *Deseret Tr. Co. v. Unique Inv. Corp.*, No. 2:17-cv-00569, 2018 WL 8110959, at *3 (D. Utah July 3, 2018); *See, e.g.*, *Est. of Jensen by Jensen v. Clyde*, No. 2:17-cv-01031-DBB, 2022 WL 4268787, at *6 (D. Utah Sept. 15, 2022); *Welsh v. Safeco Ins. Co. of Am.*, No. 2:21-cv-00082-RJS-DBP, 2023 WL 2243178, at *12 (D. Utah Feb. 27, 2023).

[91] *Deseret Tr.*, 2018 WL 8110959, at *4.

[92] *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003).

[93] *Opp. Rule 60(b) Motion* at 5.

[94] *Reply Rule 60(b) Motion* at 2.

[95] Fed. R. Civ. P. 9(b).

[96] *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

[97] *Reply Rule 60(b) Motion* at 4–5.

As an initial matter, Plaintiffs do not identify which provision of Rule 60(b) they are relying on to obtain relief for the alleged ambiguity in the law.  A generous reading of the Reply indicates it could be a request under Rule 60(b)(6) or Rule 60(b)(1).[98]  Both arguments are unavailing.

Rule 60(b)(6) is a catchall provision allowing courts to grant a Rule 60(b) motion for "any other reason that justifies relief."[99]  Courts are instructed to grant relief under this provision only in "extraordinary circumstances and only when such action is necessary to accomplish justice."[100]  Stated differently, to warrant Rule 60(b)(6) relief, the circumstances must be "so unusual or compelling" that they offend justice.[101]

In essence, Plaintiffs' argument is that Tenth Circuit case law requires something different than what Rule 9 requires, creating ambiguity in the law concerning what exactly is required to meet the Rule 9 pleading standard.[102]  Yet Plaintiffs do not connect this argument to Rule 60(b)(6) and explain how this qualifies as extraordinary or highly unusual.  On its own, the court is unwilling and unable to construct an argument for Plaintiffs.  Indeed, these circumstances appear typical to what litigants must do in every case—sort out the proper legal

---

[98] *See Reply Rule 60(b) Motion* at 1–5.  The first section of the Reply is titled "The Case at Bar involves Exceptional Circumstances."  *Id.* at 1.  This appears to be a reference to Rule 60(b)(6), which is often invoked for obtaining relief from judgment in extraordinary or exceptional circumstances.  *See, e.g.*, *Kile v. United States*, 915 F.3d 682, 687 (10th Cir. 2019) (explaining a district court may grant a Rule 60(b)(6) motion in "extraordinary circumstances"); *Johnson*, 950 F.3d at 701 ("[R]elief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances." (internal citations and quotations omitted)).  Later in the Reply, Plaintiffs rely on a case that discusses ambiguity in granting relief from judgment under Rule 60(b)(1).  *Reply Rule 60(b) Motion* at 2–3.

[99] Fed. R. Civ. P. 60(b)(6).

[100] *In re Gledhill*, 76 F.3d 1070, 1080 (10th Cir. 1996) (internal citations and quotations omitted).

[101] *Cashner*, 98 F.3d at 590 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir. 1990)).

[102] *Reply Rule 60(b) Motion* at 3–5.  Plaintiffs also seemingly argue that Tenth Circuit law requiring a litigant to plead the consequences of fraud is legally incorrect.  *Reply Rule 60(b) Motion* at 3.  Inasmuch as this is their argument, the court declines to address it because a Rule 60(b) motion is not the proper vehicle for this argument— "such a motion is not a substitute for an appeal."  *See Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004).

14

standard from case law and successfully plead their case according to that standard.  Without more, this argument fails to qualify Plaintiffs for Rule 60(b)(6) relief.

Plaintiffs fare no better under Rule 60(b)(1).  In the context of this argument, Plaintiffs rely on *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, where the Supreme Court granted a Rule 60(b) motion after finding "dramatic ambiguity" in bankruptcy court notices led to counsel missing a deadline.[103]  In that case, the Court granted relief under the "excusable neglect" provision (Rule 60(b)(1)), holding counsel's untimely filing was the result of a negligent omission which was "excusable" under the circumstances.[104]  The fact that the notice in *Pioneer* was ambiguous was just one factor weighing in favor of finding counsel's neglect excusable—the ambiguity was not the sole basis for granting Rule 60(b) relief.[105]  This is unhelpful to Plaintiffs' case because, as explained above, they cannot establish their pleading deficiencies result from a negligent omission.  And even crediting as true Plaintiffs' argument that the Rule 9 standard is ambiguous, the circumstances do not warrant holding in equity that Plaintiffs' pleading deficiencies were excusable.  Not only had the court twice identified the pleading standard it was relying upon for the fraud claims—noting Plaintiffs must "identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof"[106]—the court also directed Plaintiffs to "make all changes referenced . . . and any other necessary edits so that the Second Amended Complaint contains all operative allegations in this case."[107]  The clarity

---

[103] *Reply Rule 60(b) Motion* at 2 (citing *Pioneer*, 507 U.S. at 398).

[104] *Pioneer*, 507 U.S. at 394–95, 397–98.

[105] *Id.* at 397–98.

[106] *First Order* at 7 n.46; *Second Order* at 14 n.85 (quoting *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1263 (D. Utah 2004) (citation omitted)).

[107] *Order Granting Second Motion to Amend* at 2.

15

provided by the court negates any alleged ambiguity over what is required by Rule 9.  Thus, Plaintiffs do not qualify for Rule 60(b)(1) relief for excusable neglect due to alleged ambiguities in Rule 9.[108]

**CONCLUSION**

For the reasons explained, Plaintiffs' pleading deficiencies do not merit relief under Rule 60(b)(1)'s excusable neglect provision, nor are these the type of "extraordinary circumstances" warranting relief under Rule 60(b)(6).  Plaintiffs' Rule 60(b) Motion for Relief from Judgment is DENIED.

SO ORDERED this 25th day of July, 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[108] Because Plaintiffs fail to meet the Rule 60(b) standards for relief, the court has no occasion to evaluate whether the Rule 9 pleading standard is ambiguous as alleged.

Kay Burningham (#4201)
kay@kayburningham.com
**Kay Burningham, Attorney at Law**
299 South Main Street, Suite #1375
Salt Lake City, Utah 84111
Telephone: 1.888.234.3706

*Attorney for Plaintiffs Laura A. Gaddy,*
*Lyle D. Small and Leanne R. Harris*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **LAURA A. GADDY**, **LYLE D. SMALL, LEANNE R. HARRIS,** individually and on behalf of all others similarly situated, | **NOTICE OF APPEAL** |
| *Plaintiffs,* | **Fed. R. App. P. Rules 3 & 4** |
| v. | |
| **[The] CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,** a Utah corporation sole and DOES 1-50 | **2:19-cv-00554-RJS-DBP** |
| *Defendant* | Chief Judge: Robert J. Shelby |

Plaintiffs, **LAURA A. GADDY**, **LYLE D. SMALL,** and **LEANNE R. HARRIS**

appeal to the United States Court of Appeals for the Tenth Circuit from the following

orders of the District Court:

1. Order of 03/31/2020, Dkt 33, *Granting Motion to Dismiss*,

2. Order of 07/28/21, Dkt 100, *Granting in Part and Denying in Part Motion to Dismiss*; and,

3. *Final Decision and Order Dismissing Plaintiffs' Second Amended Complaint with Prejudice*, Dkt. No. 133, and concomitant Judgment, both entered into the docket on March 28, 2023, Dkt. No 134.[1]

Dated: August 23, 2023                                         /s/ Kay Burningham
                                                                      Kay Burningham, Attorney at Law

                          *Counsel for Plaintiffs Lara Gaddy, Lyle Small, and Leanne Harris*

---

[1] Dkt 141, *Order Denying Motion to Vacate* entered on July 26, 2023. Time to appeal extended under Fed. R. App. P. Rule 4(a)(4)(vi)